### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CAMP MYSTIC, LLC, e*t al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90621 (CML)<br><br>(Jointly Administered) |
| CAMP MYSTIC, LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A and JOHN AND JANE DOES 1–1000,<br><br>Defendants. | Adv. Pro. No. 26-03604 |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) DECLARING THAT THE AUTOMATIC STAY PROHIBITS CERTAIN ACTIONS AGAINST NON-DEBTORS OR (B) PRELIMINARILY ENJOINING SUCH ACTIONS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

**TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................iii

Relief Requested ......................................................................................................................1

Jurisdiction and Venue.............................................................................................................2

Preliminary Statement..............................................................................................................3

Background ...............................................................................................................................4

    A.   General Background ......................................................................................................4

    B.   The Prepetition Actions ...............................................................................................6

Basis for Relief ........................................................................................................................8

    A.   This Court Has Subject Matter Jurisdiction................................................................8

        i.   This Court Has "Arising Under" Jurisdiction to Apply and Extend
        the Automatic Stay.................................................................................................9

        ii.   This Court Has Jurisdiction to Enjoin the Pursuit of the Covered Actions
        Against the Individual Defendants.......................................................................10

    B.   The Automatic Stay Prohibits the Continued Prosecution of the Covered Actions .....11

        i.   Section 362(a)(1) Prohibits the Continuation and Commencement of the
        Covered Actions Against the Individual Defendants............................................11

        ii.   362(a)(3) Prohibits the Continuation and Commencement of the Covered
        Actions Against the Individual Defendants .........................................................13

            a.   The Prepetition Actions Include Claims that Are Property of the
            Debtors' Estates .............................................................................................14

            b.   The Debtors' Insurance Policies, which Constitute Property of the Debtors'
            Estates, Would Be Depleted by a Judgment in the Prepetition Actions .......14

    C.   The Automatic Stay Should be Extended to the Covered Actions Against the
    Individual Defendants Due to "Unusual Circumstances"..........................................15

        i.   Unusual Circumstances Exist Due to the Shared Identity of Interests ................16

            a.   The Individual Defendants' Indemnification Rights Create an
            Identity of Interest.........................................................................................16

            b.   The Claims Against the Individual Defendants and Debtors are Inextricably
            Interwoven Creating an Identity of Interest...................................................17

         ii.   Unusual Circumstances Exist Due to the Adverse Impact of the Covered
        Actions on the Debtors' Reorganization Efforts..................................................19

    D.   The Court Should Exercise Its Authority under Section 105(a) to Enjoin the
    Continuation of the Covered Actions Against the Individual Defendants ..................23

        i.   The Debtors Have a Substantial Likelihood of Succeeding on the Merits ...............23

        ii.   Absent Injunctive Relief, the Debtors Will be Irreparably Harmed ........................25

iii.   The Irreparable Harm to the Debtors Outweighs Any Prejudice ............................ 26
iv.   Injunctive Relief Will Further the Public Interest ....................................................... 27
Conclusion ....................................................................................................................... 28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.H. Robins Co., Inc. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ....................................................................... 7, 15, 16, 17, 22, 24

*Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A to Complaint*
  *(In re Aldrich Pump LLC)*,
  No. 20-30608 (JCW), 2021 WL 3729335 (Bankr. W.D.N.C. Aug. 23, 2021).................... 12, 21

*Allied Home Mortg. Corp. v. Donovan*,
  830 F. Supp. 2d 223 (S.D. Tex. 2011).............................................................................. 25

*Am. Film Techs. V. Taritero (In re Am. Film Techs., Inc.)*,
  175 B.R. 847 (Bankr. D. Del. 1994)........................................................................ 19, 22, 27

*Bestwall LLC v. Those Parties Listed on Appendix A (In re Bestwall LLC)*,
  606 B.R. 243 (Bankr. W.D.N.C. 2019) ...................................................................... 21, 26, 27

*Clark v. Prichard*,
  812 F.2d 991 (5th Cir. 1987) .............................................................................................. 28

*Collum v. City of Chicago,*
  No. 23 C 2835, 2023 WL 6127158 (N.D. Ill. Sept. 19, 2023) .................................................. 7

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
  710 F.3d 579 (5th Cir. 2013) .............................................................................................. 25

*Feld v. Zale Corp. (In re Zale Corp.)*,
  62 F.3d 746 (5th Cir. 1995) ........................................................................................... 16, 23

*Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*,
  710 F.3d 299 (5th Cir. 2013) ............................................................................................ 9, 10

*FTC v. Garvey*,
  383 F.3d 891 (9th Cir. 2004) .............................................................................................. 20

*GATX Aircraft Corp. v. M/V Courtney Leigh*,
  768 F.2d 711 (5th Cir. 1985) .............................................................................................. 11

*Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*,
  115 Fed. Appx. 565 (2004)............................................................................................ 20, 23

*HealthCor Offshore Master Fund, L.P. v. Mallinckrodt PLC (In re Mallinckrodt PLC)*,
  No. AP 20-50850-JTD, 2021 WL 5275781 (D. Del. Nov. 10, 2021) ...................................... 22

*In re Bestwall LLC,*
    71 F.4th 168 (4th Cir. 2023) ........................................................................... 24

*In re Brier Creek Corp. Ctr. Assocs. Ltd.,*
    486 B.R. 681 (Bankr. E.D.N.C. 2013) ............................................................. 10

*In re Caesars Entertainment Operating Co., Inc.,*
    808 F.3d 1186 (7th Cir. 2015) ......................................................................... 24

*In re Colonial Realty Co.,*
    980 F.2d 125 (2d Cir. 1992) ............................................................................ 12

*In re Commonwealth Oil Ref. Co.,*
    805 F.2d 1175 (5th Cir. 1986) ......................................................................... 24

*In re Cont'l Airlines, Inc.,*
    177 B.R. 475 (D. Del. 1993) ............................................................................ 18

*In re Divine Ripe, L.L.C.,*
    538 B.R. 300 (Bankr. S.D. Tex. 2015) .............................................................. 9

*In re Eagle-Picher Indus., Inc.,*
    963 F.2d 855 (6th Cir. 1992) ........................................................................... 24

*In re Excel Innovations, Inc.,*
    502 F.3d 1086 (9th Cir. 2007) ......................................................................... 24

*In re Fuel Oil Supply & Terminaling, Inc.,*
    30 B.R. 360 (Bankr. N.D. Tex. 1983) ................................................................ 9

*In re Jefferson Cnty.,*
    491 B.R. 277 (Bankr. N.D. Ala. 2013) ............................................................. 22

*In re Johns-Manville, Co.,*
    45 B.R. 823, (S.D.N.Y. 1983) ............................................................................ 7

*In re OGA Charters, LLC,*
    901 F.3d 599 (5th Cir. 2018) ..................................................................... 14, 15

*In re Halo Wireless, Inc.,*
    684 F.3d 581 (5th Cir. 2012) ........................................................................... 11

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,*
    458 F.3d 244 (3d Cir. 2006) ............................................................................ 21

*Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC),*
    407 B.R. 606 (E.D. Pa. 2009) .......................................................................... 11

*Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.)*,
   462 B.R. 615 (Bankr. S.D. Miss. 2011)..................................................................... 23

*LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*
   *(In re LTL Mgmt., LLC)*,
   638 B.R. 291 (Bankr. D.N.J. 2022) .............................................................. 20, 22, 26

*Lubrizol Corp. v. Exxon Corp.*,
   871 F.2d 1279 (5th Cir. 1989) ............................................................................... 20

*Matter of S.I. Acquisition, Inc.*,
   817 F.2d 1142 (5th Cir. 1987) .......................................................................... 14, 23

*McCartney v. Integra Nat'l Bank N.*,
   106 F.3d 506 (3d Cir. 1997) .................................................................................. 16

*McDuffie v. Estelle,*
   935 F.2d 682 (5th Cir. 1991) ................................................................................. 21

*N. Star Contracting Corp. v. McSpedon (In re N. Star Contracting Corp.)*,
   125 B.R. 368 (S.D.N.Y. 1991) ............................................................................... 17

*Nat'l Oilwell Varco, L.P. v. Mud King Prods.*,
   No. 4:12-3120, 2013 WL 1948766 (S.D. Tex. May 9, 2013) ............................... 6, 16

*Nat'l Union Fire Ins. v. BSA (In re BSA)*,
   650 B.R. 87 (D. Del. 2023)..................................................................................... 18

*Nesloney v. Midway Oilfield Constructors, Inc.*,
   2018 U.S. Dist. LEXIS 180915 (S.D. Tex. Oct. 22, 2018) ................................17-18

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979) .............................................................................................. 21

*Reliant Energy Servs., Inc. v. Enron Canada Corp.*,
   349 F.3d 816 (5th Cir. 2003) .......................................................................... 11, 16

*Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs.)*,
   199 B.R. 498 (Bankr. D. Del. 1996)....................................................................... 27

*Schimmelpenninck v. Byrne (In re Schimmelpenninck)*,
   183 F.3d 347 (5th Cir. 1999) ................................................................................. 14

*Terrell v. De Conna*,
   877 F.2d 1267 (5th Cir. 1989) ............................................................................... 21

*Test Masters Educ. Servs., Inc. v. Singh*,
   428 F.3d 559 (5th Cir. 2005) ........................................................................... 20, 21

v

*Tringali v. Hathaway Mach. Co.*,
  796 F. 2d 553 (1st Cir. 1986)........................................................................... 15

*Turner v. Frascella Enters. (In re Frascella, Enters.)*,
  349 B.R. 421 (Bankr. E.D. Pa. 2006) .............................................................. 18

*Villarreal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*,
  554 B.R. 415 (Bankr. S.D. Tex. 2016) ................................................. 26, 27, 28

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*,
  386 B.R. 17 (Bankr. D. Del. 2008)............................................................ 18, 22

*Williams v. Reliance Acceptance Corp. (In re Reliance Acceptance Group, Inc.)*,
  No. 98-288 (PJW), 2000 WL 33712305 (Bankr. D. Del. Dec. 6, 2000) .................................. 18

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008) ........................................................................................... 26

*Wood v. Wood (In re Wood)*,
  825 F.2d 90 (5th Cir. 1987) ......................................................................... 9, 10

## **Statutes**

11 U.S.C. § 105.........................................................................................*passim*

11 U.S.C. § 362.........................................................................................*passim*

11 U.S.C. § 541............................................................................................... 13

11 U.S.C. § 548................................................................................................. 9

11 U.S.C. § 549................................................................................................. 9

28 U.S.C. § 157....................................................................................... 2, 7, 8

28 U.S.C. § 1334.......................................................................................... 2, 8

28 U.S.C. § 1409............................................................................................... 2

## **Rules**

Fed. R. Bankr. P. 7001 ................................................................................. 1, 3

Fed. R. Bankr. P. 7008 .................................................................................... 3

Fed. R. Bankr. P. 7065 ................................................................................. 1, 3

## <u>Other Authorities</u>

1978 U.S.C.C.A.N. 5963, 6296 ................................................................................................... 11

H.R. Rep. No. 95-595 ................................................................................................................ 11

Camp Mystic, LLC, and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") and as plaintiffs in the above-captioned adversary proceeding (the "**Adversary Proceeding**") respectfully submit this *Debtors' Motion for Entry of an Order (A) Declaring that the Automatic Stay Prohibits Certain Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions* (the "**Motion**") and respectfully state as follows in support:

### RELIEF REQUESTED

1.      On June 24, 2026 (the "**Petition Date**"), the Debtors filed voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). On the Petition Date, the Debtors were being sued by twenty-two (22) sets of plaintiffs in five (5) separate lawsuits (the "**Prepetition Actions**") pending in Travis County, Texas.  In addition to the Prepetition Actions, there are other potential personal injury tort and/or wrongful death claimants who may assert similar claims against the Debtors arising out of the same set of facts.  The Debtors filed these Chapter 11 Cases to prevent a race to the courthouse and provide a centralized forum to address all such claims against the Debtors.  Further, to ensure appropriate application of the automatic stay in place by virtue of the Debtors' chapter 11 filings, the Debtors commenced the above-captioned Adversary Proceeding and filed this Motion.

2.      Pursuant to Rules 7001(g), 7001(i), and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek an order declaring that the automatic stay under section 362 of the Bankruptcy Code applies and extends to prohibit (a) the continued prosecution of the Prepetition Actions, which are identified in **Appendix A** to the Complaint (defined below); (b) the filing of any actions (together with the Prepetition Actions, the "**Covered Actions**") for a reasonable period that in any way relate to or arise out of the events of the July 4, 2025 flood with respect to the Camp (the "**Claims**") as against the Individual Defendants (defined

1

below); and (c) the expansion of any Prepetition Action to name as a party any Individual Defendant not so named as of the Petition Date.  The Debtors further request a preliminary injunction, to the extent necessary, enjoining the prosecution of the Covered Actions as against the Individual Defendants pursuant to section 105 of the Bankruptcy Code for a reasonable time during the pendency of these Chapter 11 Cases.

3.      The defendants in this Adversary Proceeding (the "**Claimants**") are, collectively, (a) the named plaintiffs in the Prepetition Actions and (b) John and Jane Does 1–1000, as prospective plaintiffs who may, at any time during these Chapter 11 Cases, commence or seek to commence an action to pursue the Claims.  The Individual Defendants are, collectively, (a) Willetta "Tweety" Eastland; (b) George Albritton Eastland, as Personal Representative of the Estate of Richard "Dick" Eastland, deceased; (c) Edward S. Eastland; (d) Mary E. "Mary Liz" Eastland; and (e) William Neely Bonner III.

4.      In conjunction with this Motion, the Debtors have also filed Debtors' *Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Prohibits Certain Actions Against Non-Debtors, and (II) Preliminarily Enjoining Such Actions* (the "**Complaint**") that initiated this adversary proceeding (the "**Adversary Proceeding**").

### JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of Texas (this "**Court**") has jurisdiction over the Debtors, their estates, these Chapter 11 Cases, and this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 as this proceeding takes place in and is related to the Chapter 11 Cases under the Bankruptcy Code.

6.      Venue is proper under 28 U.S.C. § 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157.

7.      The Debtors confirm their consent to the entry of a final order by the Court pursuant

2

to Bankruptcy Rule 7008 and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**").

8.        The statutory bases for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rules 7001(g), 7001(i), and 7065.

### PRELIMINARY STATEMENT

9.        These Chapter 11 Cases arise from one of the most tragic natural disasters in recent Texas history, which resulted in the heartbreaking loss of twenty-five (25) campers and two (2) counselors at Camp Mystic.  The Debtors commenced these Chapter 11 Cases to provide a single, orderly forum in which the Claims may be addressed, and to protect the interests of the Debtors' employees, campers and their families, creditors, and other stakeholders by preserving the Debtors' estates.  The centralized process under the Bankruptcy Code, overseen by the United States Trustee and other estate fiduciaries, will ensure that all stakeholders, including Claimants, are treated fairly, equitably, and consistently.  The automatic stay is imperative to the success of these Chapter 11 Cases by preventing a proverbial "race to the courthouse" and piecemeal litigation that could undermine the orderly administration of the Debtors' estates and the prospects for a global resolution.

10.        Allowing litigation against the Individual Defendants to proceed outside of these Chapter 11 Cases would threaten the very interests that the automatic stay is designed to protect. By the very nature of the Claims, suits against the Individual Defendants are, in essence, suits against the Debtors that would be litigated in a different forum.  As a result, any judgments or findings against the Individual Defendants for the Claims could directly affect the Debtors by depleting shared insurance coverage and triggering contractual indemnification obligations or vicarious liability.  The entry of findings against the Individual Defendants would also present

3

meaningful risks of collateral estoppel, res judicata, and the creation of factual records that could inevitably affect the Debtors' defenses.

11.  Moreover, continued piecemeal litigation would impose divergent discovery burdens on the Debtors.  Without the requested relief, the Debtors would likely be forced to participate in the Covered Actions to protect their interests and minimize their potential exposure, depriving the Debtors of one of the fundamental protections provided by the Bankruptcy Code— the automatic stay.

12.  The relief requested in this Motion is not an effort to prevent Claimants from pursuing their Claims against the Debtors or others for an extended period of time.  Rather, the Debtors seek to pause the litigation against the Individual Defendants for a reasonable period, to allow the Debtors sufficient time to negotiate with Claimants in an effort to resolve the Claims through a chapter 11 plan.  If the Claims cannot be consensually resolved, then all Claims should be liquidated against the Debtors and the Individual Defendants as part of a consolidated proceeding.  Accordingly, the Court can, and should, extend the automatic stay to the Individual Defendants under section 362 of the Bankruptcy Code, to the extent not already applicable, and preliminarily enjoin the Covered Actions under section 105(a) from proceeding against the Individual Defendants separately from the claims against the Debtors.

**BACKGROUND**

**A.      General Background**

13.  The Debtors own and operate a private Christian summer camp for girls named Camp Mystic on the South Fork of the Guadalupe River, near Hunt in Kerr County, Texas (the "**Camp**").  Originally built in 1926, the Camp developed a substantial reputation among Texas families, with multi-generational enrollment and sustained demand.

14.  The Camp operates on an approximately 725-acre property in the Texas Hill

Country comprising two campuses: (a) the original Camp Mystic Guadalupe River campus, situated along the Guadalupe River; and (b) the newer Camp Mystic Cypress Lake campus, located on the same property adjacent to Cypress Lake / Cypress Creek and developed in approximately 2019–2020.

15.     The Individual Defendants are officers, members, managers, and/or employees of one or more of the Debtors.  Individual Defendants Tweety and Dick Eastland acquired ownership interests and became the executive directors of the Camp in 1987.  Individual Defendants Mary Liz and Edward Eastland are the directors of the Camp's Guadelupe River campus.  Individual Defendant Bonner is the president of Debtor Natural Fountains Properties, Inc., which owns the real property where the Camp is operated.

16.     Given each Individual Defendants' position, the Debtors have, through their organizational documents, agreements, or statute, agreed to certain indemnification obligations. For example, the LLC operating agreements for Debtors Mystic Camps Management, LLC and Camp Mystic, LLC both provide that the applicable company must indemnify its managers, members, and officers from and against all actions, suits or proceedings arising out of the management of the applicable company or such indemnified person's service as the governing authority of the applicable company, but limits the indemnity to matters that arise out of the negligence, strict liability, or other fault or responsibility by the indemnified person.[2]  Tweety, Dick, and Edward Eastland were each a member and/or manager of one or both of these Debtor entities, making them indemnified parties.

17.     Debtor Mystic Camps Family Partnerships, Ltd. also provides indemnity as to any claims asserted against limited partners solely because they are a limited partner.  Individual

---

[2] The indemnification provisions include standard exclusions for gross negligence and willful misconduct, as well as an exclusion for claims based on a breach of the operating agreements.

Defendants Edward Eastland and Tweety Eastland were also limited partners of Debtor Mystic Camps Family Partnership, Ltd.

18.     As the officers of Natural Fountains Properties, Inc., Tweety and Dick Eastland and William Neely Bonner, III are entitled to certain mandatory and permissive indemnification under the Texas Business Organization Code.  Finally, pursuant to a ground and building lease, Camp Mystic, LLC, as tenant, agreed to indemnify Natural Fountains Property, Inc., as landlord, and its officers, directors, and employees, against any claims or injuries occurring on the leased premises. This contractual indemnification provision requires Camp Mystic, LLC to indemnify Tweety and Dick Eastland and William Neel Bonner, III, as officers of Natural Fountains Properties, Inc. These indemnification obligations create an identity of interest between the Individual Defendants and the Debtors.  *See Nat'l Oilwell Varco, L.P. v. Mud King Prods.*, No. 4:12-3120, 2013 WL 1948766, *5 (S.D. Tex. May 9, 2013) ("If the indemnity is enforceable and applicable, there is an 'actual' identity of interests between the indemnified [non-debtor defendant] and [debtor] itself.").

19.     As part of their operations, the Debtors maintain various insurance policies (the "**Insurance Policies**").  The Insurance Policies include a per-occurrence aggregate coverage limit of $6 million.  Certain of the Individual Defendants are named insureds on certain Insurance Policies, and where they are not named insureds, they are covered under the applicable Insurance Policy as indemnitees and/or employees.

**B.     The Prepetition Actions**

20.     On July 4, 2025, a severe and sudden flood occurred in the Texas Hill Country, including the Guadalupe River valley where the Camp's Guadalupe River campus is located.  The flood claimed 136 lives and caused extensive damage to area.  Among those who died were 25

6

campers and 2 counselors at the Camp ("**Heaven's 27**"), as well as the Camp's longtime director and co-owner, Dick Eastland.

21.     Prior to the Petition Date, certain of the families of Heaven's 27 filed the Prepetition Actions against the Debtors and one or more of the Individual Defendants in Texas state court. The Prepetition Actions were removed by the Debtors to the United States District Court for the Western District of Texas, where they remain pending.[3]  The Debtors also filed a motion to transfer the Prepetition Actions from the Western District of Texas to the Southern District of Texas, as the district court with jurisdiction over the bankruptcy cases, pursuant to 28 U.S.C. § 157(b)(5).[4] The Debtors are seeking to transfer the Prepetition Actions to the Southern District of Texas so they can be consolidated and adjudicated with any similar claims made against the Debtors in the bankruptcy case.[5]  The Debtors have also asked the Heaven's 27 families and Official Committee of Unsecured Creditors to participate in mediation to discuss the formulation of a chapter 11 plan in an effort to either resolve the Claims or at least provide an agreed path for the consolidated liquidation of such claims and, if such request is denied, a request of this Court to require mediation will be made.

22.     The Debtors are hopeful that a consensual resolution of the Claims can be reached.

---

[3] *See* Case Nos. 1:26-cv-01916 (*Bellows*), 1:26-cv-01919 (*Getten*), 1:26-cv-01922 (*Peck*), 1:26-cv-01923 (*Naylor*), and 1:26-cv-01926 (*Steward*) pending in the Western District of Texas.

[4] *See* Case No. 4:26-mc-01321 (ECF 1) pending in the Southern District of Texas.

[5] Because the Prepetition Actions assert personal injury tort and wrongful death claims, which are excluded from the Bankruptcy Court's core jurisdiction under 28 U.S.C. § 157(b)(2)(B), any trial of the Prepetition Action would have to be conducted by the District Court.  However, the Bankruptcy Court can still estimate the claims and preside over pretrial matters until the claims are ready for trial.  *See, e.g., A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986) (section 157(b)(2)(B) "does not in express terms deny to the bankruptcy court the authority, or relieve it of the duty, to estimate the contingent personal injury claims for purposes of determining the feasibility of a reorganization."); *In re Johns-Manville Co.*, 45 B.R. 823, 826 (S.D.N.Y. 1983) (claims estimation for purposes other than distribution remain within the jurisdiction of the bankruptcy court and the Bankruptcy Code does "not require immediate withdrawal of [personal injury tort and wrongful death claims] for trial before a reorganization plan has been confirmed."); *Collum v. City of Chicago,* Case No. 23 C 2835, 2023 WL 6127158, *2 (N.D. Ill. Sept. 19, 2023) ("As numerous courts have held, § 157(b)(5) allows for pretrial consideration of personal injury tort claims by the bankruptcy court, including a determination that such a claim is legally unenforceable.") (internal quotations omitted).

7

Absent such an agreement, however, the Prepetition Actions against the Debtors and the Individual Defendants should be tried together because they are based on disputed issues of fact that cannot be resolved without the Debtors' involvement and without impinging on the Debtors' interests.

23.     In particular, the Claimants allege numerous causes of action against the Debtors and the Individual Defendants based on their alleged failures and actions in connection with the July 4, 2025 flood, including, without limitation, claims for wrongful death and survival actions, negligence, premises liability, intentional infliction of emotional distress, breach of fiduciary duty, breach of express and implied warranties, and failure to warn.  The Claimants assert numerous theories of vicarious liability including, without limitation, respondeat superior, participatory liability, concert of action, ratification, and agency.  The Claimants also seek to disregard the Debtors' corporate form based on alter ego, veil piercing, joint enterprise, and similar legal theories.  The Claimants seek compensatory and exemplary damages from the Debtors and the Individual Defendants.

24.     Since the Petition Date, the Claimants have sought an opinion from this Court confirming the automatic stay does not apply to the Individual Defendants.  *See Certain Heaven's 27 Families' Substituted Motion for Entry of Order Confirming that the Automatic Stay Does Not Apply to Direct Claims Against Non-Debtor Individual Defendants* [Dkt. No. 132, Case No. 26-90621] (the "**Heaven's 27 Motion**").

**BASIS FOR RELIEF**

**A.      This Court Has Subject Matter Jurisdiction.**

25.     Section 1334(b) of title 28 of the United States Code identifies three types of proceedings over which this Court has jurisdiction: (a) "arising under title 11"; (b) "arising in" a case under title 11; and (c) "related to" a case under title 11.  11 U.S.C. § 1334(b).  The

8

classification of a proceeding depends on the connection of the proceeding to the underlying bankruptcy case.

26.     "Arising under" jurisdiction "describe[s] those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987). "Arising in" jurisdiction is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 97. Finally, "related to" jurisdiction exists when the outcome of the matter "could conceivably have any effect on the estate being administered in bankruptcy." *Fire Eagle L.L.C. v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013).  Proceedings "arising under" and "arising in" a chapter 11 case are considered "core" proceedings, whereas proceedings "related to" a chapter 11 case are considered "non-core."  *In re Wood*, 825 F.2d at 97.

   i.     **This Court Has "Arising Under" Jurisdiction to Apply and Extend the Automatic Stay.**

27.     This Court has "arising under" jurisdiction to interpret the scope of the automatic stay and extend the automatic stay to the Individual Defendants.  The Bankruptcy Code creates the automatic stay and provides the debtor and courts with the means to invoke it and to implement its protections.  Accordingly, any proceeding to determine the scope and applicability of the automatic stay "arises under" the Bankruptcy Code.  *See In re Fuel Oil Supply & Terminaling, Inc.*, 30 B.R. 360, 362 (Bankr. N.D. Tex. 1983) ("As to the 'arising under' jurisdiction nothing needs to be said other than its claims arise under §§ 362, 548 and 549 of the Bankruptcy Code.").  Alternatively, relief extending the automatic stay to a non-debtor would "arise in" the bankruptcy case involving the primary debtor.  *See In re Divine Ripe, L.L.C.*, 538 B.R. 300, 306 (Bankr. S.D. Tex. 2015) (holding that a motion to extend the automatic stay to a non-debtor was "a matter that can only arise in bankruptcy"). Under either analysis, the matter is core and this Court has jurisdiction to

apply and extend the automatic stay.

> **ii.      This Court Has Jurisdiction to Enjoin the Pursuit of the Covered Actions Against the Individual Defendants.**

28.      This Court has both "arising in" and "related to" jurisdiction to enjoin, for some appropriate period of time, the pursuit of the Covered Actions against the Individual Defendants. A proceeding "arising in" a bankruptcy case is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood*, 825 F.2d at 97.  Accordingly, this Court has "arising in" jurisdiction because injunctive relief under section 105 of the Bankruptcy Code is unique to bankruptcy.  *See In re Brier Creek Corp. Ctr. Assocs. Ltd.*, 486 B.R. 681, 685 (Bankr. E.D.N.C. 2013) (holding that the bankruptcy court had "arising in" jurisdiction over the debtors' request for a § 105 injunction).

29.      A bankruptcy court has "related to" jurisdiction if the outcome "*could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt[cy] estate." *In re Spillman Dev. Grp.*, 710 F.3d at 304 (emphasis in original) (internal citations omitted).  This Court has "related to" jurisdiction over this matter and the claims asserted in the Covered Actions for several reasons, each as further detailed in sections II and III below.  *First*, any judicial determination regarding the Covered Actions could (i) adversely affect the availability of insurance coverage to the Debtors, (ii) trigger indemnification obligations owed to the Individual Defendants, and (iii) result in vicarious liability against the Debtors, such that any claim liquidated against the Individual Defendants will in effect be a claim liquidated against the Debtors. *Second*, the claims against the Debtors are inextricably intertwined with the claims against the Individual Defendants such that any such claims are, in effect, claims against the Debtors' estates. *Third*, there is a substantial risk that should the Covered Actions continue, the preclusive doctrines of

10

collateral estoppel, res judicata, and record taint could prejudice the Debtors, thus forcing the Debtors to participate to protect their interests. *Fourth*, continued prosecution of the Covered Actions, even if the Debtors did not participate, would still negatively affect the Debtors' chances of a successful reorganization because critical estate resources would be diverted from these Chapter 11 Cases. Thus, this Court has, at a minimum, "related to" jurisdiction to enter a preliminary injunction enjoining the continued prosecution of the Covered Actions pursuant to section 105 of the Bankruptcy Code. *See Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*, 407 B.R. 606, 615 (E.D. Pa. 2009) (finding "related to" jurisdiction due to the impact of the litigation on the debtors' reorganization efforts and the debtors' practice of indemnifying its employees).

**B.      The Automatic Stay Prohibits the Continued Prosecution of the Covered Actions.**

30.      The automatic stay provision of section 362 of the Bankruptcy Code is one of the fundamental debtor protections. *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012) (quoting H.R. Rep. No. 95-595, at 340, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296). "The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'" *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)).

> **i.      Section 362(a)(1) Prohibits the Continuation and Commencement of the Covered Actions Against the Individual Defendants.**

31.      Section 362(a)(1) of the Bankruptcy Code prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced prior to the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of

11

the bankruptcy case. *See* 11 U.S.C. § 362(a)(1).

32.     Typically, the automatic stay applies only to debtors, but courts in the Fifth Circuit, and others, have recognized that the automatic stay may apply on its own force to prohibit the prosecution of claims against non-debtors when the ultimate liquidation and recovery of claims is against the debtor. *See Tehum Care Servs., Inc. v. Those Parties Listed in Appendix A to the Complaint (In re Tehum Care Services, Inc.)*, No. 23-03049 (CML) (Bankr. S.D. Tex. May 18, 2023) Docket No. 43, ¶ 1 ("[T]he automatic stay prohibits the commencement or continuation of any action by the Defendants to recover prepetition claims against [non-debtor affiliates]"); *Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A to Complaint (In re Aldrich Pump LLC)*, No. 20-30608 (JCW), 2021 WL 3729335, at *30 (Bankr. W.D.N.C. Aug. 23, 2021) (holding that claims against non-debtor parties that "would necessarily result in the liquidation and recovery of claims against the Debtors outside of the bankruptcy case [are] barred by the automatic stay."); *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992) ("Section 362(a)(1) provides that actions 'against the debtor' *or* 'to recover a claim against the debtor' are subject to the automatic stay.  The latter category must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage.") (emphasis in original).

33.     The Claims asserted against the Individual Defendants are premised upon the theory that the Individual Defendants are the controlling persons of the Debtors.  Indeed, the Prepetition Actions contend that the Debtors and the Individual Defendants are a single entity and allege the same injuries using the same evidence in support of the Claims under alter ego, joint enterprise, concert of action, joint and several liability, and other theories.[6]  Accordingly, any

---

[6] *See, e.g.*, *Jacobe et al. v. Camp Mystic, LLC et al.*, No. D-1GN-25-009963, Intervenors' Original Petition (Tex. Dist. Ct. Jan. 16, 2026) (asserting joint and several liability based on theories of joint enterprise and alter ego and stating

12

action against the Individual Defendants to recover such claims is expressly enjoined by section 362(a)(1) because it constitutes an "action or proceeding against the debtor" to recover a prepetition claim. *HONX, Inc. v. Those Parties Listed in Appendix A (In re HONX, Inc.)*, No. 22-03129 (MI), Docket No. 6 ¶ 1 (Bankr. S.D. Tex. Apr. 28, 2022) ("any attempt to proceed in [another forum] would violate the automatic stay. This would include any attempt to proceed against others with the Debtor nominally severed from the litigation, and any attempt to proceed against any entity that may have liability arising out of its dominion or control of the Debtor. The automatic stay serves as an injunction.").

**ii.**      **Section 362(a)(3) Prohibits the Continuation and Commencement of the Covered Actions Against the Individual Defendants.**

34.      Section 362(a)(3) of the Bankruptcy Code prohibits the commencement or continuation of any act to obtain possession of, or exercise control over, the property of the debtor's estate. *See* 11 U.S.C. § 362(a)(3). In turn, section 541 of the Bankruptcy Code establishes that the filing of a bankruptcy case creates an "estate." 11 U.S.C. § 541(a). That estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. 11 U.S.C. § 541(a)(1).

---

"[t]he Individual Eastland Defendants so dominated and controlled the day-to-day operations of Camp Mystic Corporate Defendants that they are essentially one and the same as far as responsibility is concerned with regard to [the] claims."); *Bellows et al. v. Camp Mystic, LLC et al.*, No. D-1-GN-25-009963, Original Petition (Tex. Dist. Ct. Nov. 10, 2025) (asserting joint and several liability based on theories of alter ego, single business enterprise, and veil piercing); *Peck et al. v. Camp Mystic, LLC et al.*, No. D-1-GN-25-009983, Plaintiffs' Original Petition (Tex. Dist. Ct. Nov. 10, 2025) (asserting joint and several liability based on theories of joint enterprise, assisting & encouraging, assisting & participating, concert of action, and ratification); *Naylor et al. v. Camp Mystic, LLC et al.*, No. D-1-GN-25-010016, Plaintiffs' Original Petition (Tex. Dist. Ct. Nov. 10, 2025) (asserting joint and several liability); *Steward et al. v. Camp Mystic, LLC et al.*, D-1-GN-26-000758, Plaintiffs' Original Petition (Tex. Dist. Ct. Feb. 4, 2026) (asserting joint and several liability based on theories of joint enterprise, veil piercing, and alter ego and stating "Plaintiffs assert the following causes of action against all Defendants, jointly and severally, based on their ownership, operation, management, and control of Camp Mystic and related entities."); *Getten et al. v. Natural Fountains Properties, Inc. et al.*, D-1-GN-25-009976, Plaintiffs' Second Amended Petition (Tex. Dist. Ct. May 4, 2026) (asserting joint and several liability based on theories of joint enterprise, ratification, and alter ego and stating "[t]he Individual Defendants have at all times exercised total dominion and control over the Camp Mystic Defendants and have exercised such control in a manner indistinguishable from their own personal affairs.").

       **a.**     ***The Prepetition Actions Include Claims That Are Property of the Debtors' Estates.***

35.     As reflected in Appendix A, several of the Prepetition Actions assert claims or remedies seeking to disregard the corporate separateness between the Debtors and the Individual Defendants based on theories of alter ego, veil piercing, joint business enterprise, or similar theories. After the commencement of the Debtors' Chapter 11 Cases, such claims became property of the Debtors' estates under section 541(a) of the Bankruptcy Code. As a result, only the Debtors have standing to pursue such claims and the continued pursuit of such claims in the Covered Actions violates section 362(a)(3). *See, e.g., Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1153 (5th Cir. 1987) (finding an alter ego action belongs to the debtor, constitutes property of the estate, and is subject to section 362(a)(3)); *Schimmelpenninck v. Byrne (In re Schimmelpenninck)*, 183 F.3d 347, 360-61 (5th Cir. 1999) (finding alter ego and single business enterprise claims assert a generalized injury to the debtor's estate, which can only be pursued by the debtor on behalf of all creditors). The continuation of the Prepetition Actions is thus prohibited by the automatic stay.

       **b.**     ***The Debtors' Insurance Policies, Which Constitute Property of the Debtors' Estates, Would Be Depleted by a Judgment in the Prepetition Actions.***

36.     The Claims asserted against the Debtors in the Prepetition Actions exceed the amount of the Insurance Policies. The proceeds of the Debtors' Insurance Policies therefore constitute property of the Debtors' estate because the Debtors have an equitable interest in having the proceeds applied to satisfy as much of the Claims as possible. *In re OGA Charters, LLC*, 901 F.3d 599, 604 (5th Cir. 2018) ("[W]here a siege of tort claimants threaten the debtor's estate over and above the policy limits, we classify the proceeds as property of the estate."). Further, where there are multiple claimants to the policy proceeds, the Fifth Circuit has held that the bankruptcy court should oversee the distribution of the proceeds to assure an equitable distribution of available

14

assets. *Id.* at 604-05 (*quoting Tringali v. Hathaway Mach. Co.*, 796 F. 2d 553, 560 (1st Cir. 1986) (Breyer, J.) ("A holding to the contrary would prevent the bankruptcy court from marshalling the insurance proceeds, and, along with other assets, arranging for their distribution so as to maximize the ability both to satisfy legitimate creditor claims and preserve the debtor's estate.").

37.     Once an insurance policy has been found to be property of the estate, section 362(a)(3) bars plaintiffs from prosecuting actions that threaten to deplete the debtor's policy proceeds. *See, A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001–02 (4th Cir. 1986) (finding actions related to a bankruptcy proceeding against a debtor's officers or employees who may be entitled to indemnification under a liability policy or who qualify as additional insureds under the policy, which would deplete the policy proceeds, "are to be stayed under section 362(a)(3)"); *Tringali,* 796 F.2d at 560-63 (1st Cir. 1986) (finding debtor's liability insurance proceeds subject to competing creditor claims constituted property of the debtor's estate and should have remained protected by the automatic stay).

38.     Each of the Individual Defendants is covered by the Debtors' Insurance Policies as either an indemnitee or an employee, and therefore, has the right to claim the proceeds of such policies with respect to any covered loss.  The Insurance Policies carry per-occurrence aggregate coverage limits, therefore coverage for any judgment against the Individual Defendants will result in a dollar-for-dollar reduction of the Debtors' insurance coverage.  Such a depletion of an estate asset violates the automatic stay, and, therefore, section 362(a)(3) bars prosecuting the Claims against the Individual Defendants.

## C.     The Automatic Stay Should Be Extended to the Covered Actions Against the Individual Defendants Due to "Unusual Circumstances."

39.     Even when the automatic stay does not apply of its own force, courts have extended the automatic stay to non-debtor third parties using their authority under section 362(a) in "unusual

15

circumstances." *See, e.g., Reliant Energy Servs., Inc.*, 349 F.3d at 825 (citing *A.H. Robins Co.*, 788 F.2d 994); *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997).  In the Fifth Circuit, "unusual circumstances" exist  "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization."  *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995).  Here, unusual circumstances justify extending the stay to the Individual Defendants because there is both an identity of interests between the Debtors and Individual Defendants and commencement or continuation of the Covered Actions against the Individual Defendants would have an adverse impact on the Debtors' ability to reorganize.

> **i.      Unusual Circumstances Exist Due to the Shared Identity of Interests.**

40.      An identity of interests arises when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs.*, 349 F.3d at 825 (quoting *A.H. Robins Co.*, 788 F.2d at 999).  Here, the Individual Defendants share an identity of interest with the Debtors because the Claims implicate indemnification obligations of the Debtors and are inextricably interwoven.

> ### a.      *The Individual Defendants' Indemnification Rights Create an Identity of Interests*.

41.      Courts in the Fifth Circuit and elsewhere have held that indemnification creates an identity of interests between the debtor and non-debtor party.  *See Nat'l Oilwell Varco, L.P.,* 2013 WL 1948766, at *5 ("If the indemnity is enforceable and applicable, there is an 'actual' identity of interests between the indemnified [non-debtor defendant] and [debtor] itself."); *A.H. Robins Co*, 788 F.2d at 999 ("An illustration of [an identity of interests] would be a suit against a third-party

16

who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case."); *see also N. Star Contracting Corp. v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370–71 (S.D.N.Y. 1991) ("*Robins* and other courts have recognized that an identity of interest exists between a debtor and a third party non-debtor when a right to indemnification exists. These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets.") (collecting cases).

42. The Debtors and the Individual Defendants share such identity of interests such that the commencement or continuation of Covered Actions as to the Individual Defendants would be a de facto proceeding against the Debtors, in frustration of the policies underlying the automatic stay. The Individual Defendants have contractual and statutory indemnity rights against the Debtors for the Covered Actions based on the Debtors' organization documents or structures. The commencement or continuation of prosecution or entry of a judgment on the Claims against Individual Defendants would entitle those Individual Defendants to file a claim for indemnification against the Debtors in these Chapter 11 Cases. The Debtors' indemnity obligations would deplete the Debtors' assets to the detriment of the creditor body as a whole. Under these circumstances, declining to extend the automatic stay to the Individual Defendants "would defeat the very purpose and intent of the statute" meant to provide the Debtors with repose from litigation and its associated costs and distractions. *In re A.H. Robins Co.*, 788 F.2d at 999.

> **b.** **The Claims Against the Individual Defendants and Debtors Are Inextricably Interwoven Creating an Identity of Interests.**

43. Courts have found that an identity of interests exists justifying extension of the automatic stay to non-debtors when the claims against the non-debtors and the debtor "are inextricably interwoven, presenting common questions of law and fact, and should be resolved in one proceeding." *Nesloney v. Midway Oilfield Constructors, Inc.*, 2018 U.S. Dist. LEXIS 180915,

17

*4 (S.D. Tex. Oct. 22, 2018) (internal quotations omitted); *see also W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.),* 386 B.R. 17, 36–39 (Bankr. D. Del. 2008) (finding identity of interests where debtor's conduct and operations were "at the core" of third-party claims against non-debtors and non-debtor third parties' "liability [was] alleged to arise from its dealings with Debtors"); *In re Cont'l Airlines, Inc.*, 177 B.R. 475, 479–80 (D. Del. 1993) (finding debtor was real party in interest in action against non-debtors where "the substantive allegations raised in the pleadings filed by plaintiffs . . . demonstrate that [the debtor] is the alleged wrongdoer in those actions and that there is an identity of interest between [the debtor] and the parties-defendant therein."); *Turner v. Frascella Enters. (In re Frascella Enters.)*, 349 B.R. 421, 434 (Bankr. E.D. Pa. 2006) (finding identity of interests between debtor and non-debtors where the "[t]he claims of unlawful activity by the Debtor are the same claims of unlawful activity by the [non-debtors]" and the complaint "often makes no distinction" between such claims); *Nat'l Union Fire Ins. v. BSA (In re BSA)*, 650 B.R. 87, 127 (D. Del. 2023) ("Courts have found an identity of interest between a debtor and a non-debtor where third-party claims center on the debtor's product or operations and allege joint responsibility among the debtor and non-debtor defendants.")

44.     Here, the Debtors and the Individual Defendants share a clear identity of interests because the only basis on which the Individual Defendants could be sued in the Covered Actions involves their affiliation with the Debtors and the Debtors' business operations.  The Individual Defendants' liability is alleged to have arisen from their connection to the Debtors, which is a sufficient basis on which to extend the stay.  *See Williams v. Reliance Acceptance Corp. (In re Reliance Acceptance Group, Inc.)*, No. 98-288 (PJW), 2000 WL 33712305, *16 (Bankr. D. Del. Dec. 6, 2000) (staying action against non-debtor where claims were based on non-debtor's "alleged improper conduct engaged in with [the debtor]").  Specifically, the Claims, as pled, clearly arise

18

from the Individual Defendants acting in the course and scope of their employment with the Debtors.[7]  Thus, if the Individual Defendants are found liable for the Claims, the liability will be as agents of the Debtors and will likely expose the Debtors to vicarious liability under respondeat superior.  *See Am. Film Techs. V. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 850 (Bankr. D. Del. 1994).  Further, as discussed above in section II.A, the Claimants generally do not draw a distinction between claims and allegations against the Debtors and those against the Individual Defendants, and the Prepetition Actions assert various theories of liability that make the Debtors the real parties in interest.  The Claimants further assert the same claims arising from the same facts, same time period, same injuries, and same evidence against the Individual Defendants as the Debtors.  Accordingly, an identity of interests exists because it is the Debtors' operations and conduct that are at the core of the Claims such that a judgment against the third-party defendant will, in effect, be a judgment or finding against the debtor.

### ii.    Unusual Circumstances Exist Due to the Adverse Impact of the Covered Actions on the Debtors' Reorganization Efforts.

45.    In addition to the existence of an identity of interests between the Debtors and the Individual Defendants, unusual circumstances exist here because commencement or continuation of the Covered Actions against the Individual Defendants would have an adverse effect on the Debtors' ability to reorganize due to the risks of res judicata, collateral estoppel, and evidentiary prejudice.

46.    Litigation of the Covered Actions against the Individual Defendants gives rise to the risk of res judicata, collateral estoppel, and evidentiary prejudice.  The Debtors are not required

---

[7] *See e.g., Bellows v. Camp Mystic, LLC*, No. D-1-GN-25-009963, Original Petition (Tex. Dist. Ct. Nov. 10, 2025) ("The individual Camp employees acted in the course and scope of their employment.  The Camp is liable for their acts and omissions under the doctrine of respondeat superior."); *Getten et al. v. Natural Fountains Properties, Inc. et al.*, D-1-GN-25-009976, Plaintiffs' Second Amended Petition (Tex. Dist. Ct. May 4, 2026) ("At all relevant times, all agents, servants, and/or employees of Defendants were working within the course and scope of their employment for Defendants in furtherance of Defendants' operations and business.").

19

to definitively establish the preclusive or evidentiary harm they will suffer, "[r]ather, it suffices to acknowledge that there *exists a risk* that the doctrine of res judicata could adversely impact Debtor in future litigation." *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 638 B.R. 291, 316 (Bankr. D.N.J. 2022) (emphasis in original) (citing *Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)*, 115 Fed. Appx. 565, 570 (2004)).  Given the clearly stated nature of the Claims, the Debtors satisfy their burden on this issue.

47.     Res judicata bars relitigation in a subsequent action by the parties—or any of their privies—of claims and defenses that were brought, or that could have been brought, in the prior action. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (holding res judicata arises when "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions").  Any number of relationships may give rise to privity for purposes of claim preclusion. A risk of preclusion may exist, for example, between an indemnitor and indemnitee, *FTC v. Garvey*, 383 F.3d 891, 898 (9th Cir. 2004), or between and employer and employee, *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989) ("Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued.").  As a result, unless the Covered Actions are stayed against the Individual Defendants, a risk exists that Claimants may attempt to bar the Debtors from raising defenses to the Claims that were not raised by the Individual Defendants in ongoing litigation outside of these Chapter 11 Cases, causing an obvious prejudicial impact on the Debtors.

48.     Collateral estoppel, or issue preclusion, bars the re-litigation of issues where

20

"(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." *See Test Masters*, 428 F.3d at 572. Importantly, nonmutual collateral estoppel has been applied offensively by litigants against non-parties in prior litigation. *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) (authorizing offensive use of collateral estoppel to prevent a corporation from defending against the stockholder class action of plaintiffs who were not parties to prior SEC litigation against the corporation); *McDuffie v. Estelle*, 935 F.2d 682, (5th Cir. 1991) (finding offensive collateral estoppel precluded agents of party to prior suit from relitigating issue disposed of in the prior suit); *cf., Terrell v. De Conna*, 877 F.2d 1267, 1270 (5th Cir. 1989) (collateral estoppel may be used defensively "against a non-party by a party to the prior suit"); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248–49 (3d Cir. 2006) (discussing nonmutual offensive use of collateral estoppel). A clear risk exists here that Claimants who had never before litigated their Claims against the Debtors could seek to bar the Debtors' defenses by pointing to a prior judgment in the Covered Actions against Individual Defendants.

49. Courts consistently conclude that the risks of collateral estoppel and res judicata are factors supporting the extension of the automatic stay to non-debtor parties. *See, e.g., Bestwall LLC v. Those Parties Listed on Appendix A (In re Bestwall LLC)*, 606 B.R. 243, 256 (Bankr. W.D.N.C. 2019) (determining that the risks posed by the doctrines of res judicata and collateral estoppel, among other factors, warrant a preliminary injunction of litigation against non-debtor affiliates) (collecting cases); *In re Aldrich Pump LLC*, 2021 WL 3729335, at *30 (observing that the reasoning set forth in *A.H. Robins Co.* for extending the stay in situations where the third-party is entitled to indemnity from the debtor "applies equally where third party litigation raises

21

collateral estoppel and res judicata issues for the debtor.") (citing *A.H. Robins Co.*, 788 F.2d at 999)); *In re Am. Film Techs., Inc.*, 175 B.R. at 855 (staying prosecution of wrongful discharge claims against debtor's former and present directors because of debtor's indemnification obligations and its possible exposure to collateral estoppel prejudice).

50. In addition to the preclusion doctrines, the continued prosecution of the Covered Actions against the Individual Defendants carries a risk of evidentiary prejudice, supporting the need to extend the automatic stay. *See LTL Mgmt.*, 638 B.R. at 317 ("the risk that litigation against the Protected Parties could result in adverse consequences for Debtor—such as record taint— weighs in favor of extending the automatic stay."); *In re Jefferson Cnty.*, 491 B.R. 277, 295 (Bankr. N.D. Ala. 2013) (extending automatic stay when "[e]ven if, as the [debtor] contends, an actual collateral estoppel claim might not succeed, the [debtor's] legal position could still be adversely impacted by testimony given in the [action against the non-debtor] to the detriment of its positions" as a defendant in the same action); *In re W.R. Grace & Co.*, 386 B.R. at 35 (in determining whether to extend the automatic stay, "this court takes into account the risks of collateral estoppel and record taint"); *HealthCor Offshore Master Fund, L.P. v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, NO. AP 20-50850-JTD, 2021 WL 5275781, *1-2 (D. Del. Nov. 10, 2021) (denying leave to file interlocutory appeal of order extending preliminary injunction because bankruptcy court appropriately performed "unusual circumstances" test and held that continued proceedings created significant risk of, among other thing, record taint). As discussed above, the Covered Actions arise out of a common nucleus of operative facts associated with the July 4, 2025 flood. Thus, even if the Covered Actions were to proceed only against the Individual Defendants, the evidentiary record created in the Covered Actions could be used to prejudice the Debtors in litigation and negotiations in these Chapter 11 Cases.

51. Unless the Covered Actions are stayed against the Individual Defendants, the Debtors will likely be compelled to defend their interests in such actions to prevent harm to their estates, thereby defeating the "breathing spell" intended by the automatic stay. These are consequences that the Debtors should not be required to suffer or be compelled to protect against, and the extent of this risk should not be tested at the Debtors' peril. *See In re W.R. Grace & Co.*, 115 Fed. App'x at 569.

**D.** **The Court Should Exercise Its Authority Under Section 105(a) to Enjoin the Continuation of the Covered Actions Against the Individual Defendants.**

52. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). "Section 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities." *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 n.3 (5th Cir. 1987) (internal citations omitted). Fifth Circuit precedent permits a bankruptcy court to issue such an injunction where "unusual circumstances" are present. *Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.)*, 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011).

53. To be entitled to a preliminary injunction, the moving party carries the burden of satisfying the following factors: (a) a substantial likelihood that the movant will prevail on the merits; (b) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (c) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (d) that the granting of the injunction will not disserve the public interest. *In re Zale Corp.*, 62 F.3d at 765 (quoting *In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1189 (5th Cir. 1986)). Here, each factor favors an injunction.

**i.** **The Debtors Have a Likelihood of Success on the Merits.**

54. In the context of a section 105 preliminary injunction, the focus of the "likelihood

23

of success on the merits" element focuses on whether the debtor has a reasonable or realistic likelihood of successfully reorganizing. *See, e.g., In re Bestwall LLC*, 71 F.4th 168, 184-85 (4th Cir. 2023) (joining its sister circuits in finding "the 'merits' that must be considered for purposes of a preliminary injunction in a chapter 11 bankruptcy case are the debtor's rehabilitation and reorganization); *In re Excel Innovations, Inc.*, 502 F. 3d 1086, 1095-96 (9th Cir. 2007) (holding that "a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization."); *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 860 (6th Cir. 1992) (affirming injunction against continuation of suit against debtor's non-debtor co-defendants where it was implicit in bankruptcy court's decision that the debtor "had some realistic possibility of successfully reorganizing under Chapter 11."); *see also, In re Caesars Entertainment Operating Co., Inc.*, 808 F.3d 1186, 1188-89 (7th Cir. 2015) (finding question to be addressed in determining whether to grant injunctive relief is whether the requested injunction "is likely to enhance the prospects for a successful resolution" and if denying it would "endanger the success of the bankruptcy proceedings…."); *A.H. Robbins,* 788 F.2d at 1008 (sustaining bankruptcy court's grant of a preliminary injunction enjoining suits against non-debtors where "any effort at reorganization of the debtor [would] be frustrated, if not permanently thwarted," if the suits were permitted to continue).

55.     The Debtors have a reasonable or realistic likelihood of confirming a plan of reorganization.  The Debtors have sufficient assets to provide in a plan for the treatment of allowed claims in a manner that satisfies the requirement of section 1129 of the Bankruptcy Code.  The Debtors filed these Chapter 11 Cases to provide a centralized forum in which to negotiate in earnest for a global resolution with Claimants, other creditors, and other estate constituents, or to litigate in a centralized forum if a negotiated resolution cannot be achieved.  Granting the requested

24

injunction is likely to enhance the Debtors' prospects for bringing these Chapter 11 Cases to a successful resolution.  Accordingly, this factor weighs in favor of injunctive relief.

**ii.        Absent Injunctive Relief, the Debtors Will be Irreparably Harmed.**

56.    A debtor satisfies the requirement of irreparable harm where it will suffer an injury "for which there is no adequate remedy at law" that is not speculative or remote, but actual and imminent. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).

57.    The same reasons detailed above in sections II and III.B also support this factor. Absent the requested injunction, the prosecution of the Claims would result in losses to the Debtors' estates and, in turn, the Debtor's creditors as a whole. The exact same Claims that exist against the Debtors in these chapter 11 cases would be prosecuted through piecemeal litigation against the Individual Defendants outside of this Court. Indeed, certain of the Claimants have contended that the Debtors and the Individual Defendants are a single entity and allege the same injuries using the same evidence in support of the Claims under alter ego, joint enterprise, concert of action, and joint and several liability theories. *See supra* note 6.  Accordingly, prosecution of the claims against the Individual Defendants would result in the liquidation of claims against the Debtors.  Similarly, the prosecution of the Covered Actions could result in additional claims against the Debtors' estates due to the Debtors' indemnification obligations and vicarious liability and could deplete insurance coverage for the Debtors.  Those obligations and insurance implications, combined with the risks of collateral estoppel, res judicata, record taint, and discovery burdens would essentially *force* the Debtors to participate in the Covered Actions, draining and diverting the Debtors' limited resources.

58.    In short, continuation of the Covered Actions would defeat the purpose of these

25

Chapter 11 Cases and irreparably harm the Debtors, their estates, and their stakeholders. *See, e.g., In re Bestwall*, 606 B.R. at 255–57 (finding debtor would suffer irreparable harm absent § 105 injunction because of debtor's indemnification obligations and the threat of collateral estoppel, res judicata, and record taint would irreparably harm the debtor by compelling the debtor to participate in the third-party actions thus diverting key resources and personnel from the estate); *In re LTL Mgmt.*, 638 B.R. at 320–21 (finding debtor would suffer irreparable harm absent section 105 injunction because of the debtor's indemnification obligation and the disruption continued litigation against the non-debtors could cause to the debtor's funding of the debtor's trust).  Thus, this factor also strongly supports issuance of a preliminary injunction.

        **iii.**        **The Irreparable Harm to the Debtors Outweighs Any Prejudice to the Claimants.**

59.      In considering a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008).  Under this prong, "the analysis focuses on the degree to which each party will be harmed if a preliminary injunction should be entered and whether, in consideration of those harms, the harm of one party outweighs another."  *Villarreal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*, 554 B.R. 415, 431 (Bankr. S.D. Tex. 2016).

60.      In contrast to the immediate and irreparable harm the Debtors, including the outsized risk to the Debtors' reorganization posed by continued piecemeal litigation of the Covered Actions outside these Chapter 11 Cases, the potential harm to the Claimants is only a short delay.  Issuing an injunction will not deprive Claimants of an opportunity to pursue their Claims because such Claims can be pursued alongside their claims against the Debtors.   The Debtors fully recognize the Claimants' need to liquidate their claims, and the Debtors do not seek to prohibit the

26

Claims from moving forward indefinitely. The Debtors request only a reasonable breathing spell to allow the Debtors time to negotiate with Claimants and other estate constituents regarding the formulation of a chapter 11 plan that either resolves the Claims against the Debtors and the Covered Individuals, or at least provides an agreed process for the resolution of the Claims on a consolidated basis. "[I]t is well established that mere delay is insufficient to prevent the issuance of an injunction." *In re Bestwall*, 606 B.R. at 257; *see also Am. Film Techs., Inc. v. Taritero (In re Am. Film Techs)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) (weighing this factor in favor of enjoining the litigation where non-debtor plaintiff was "not being asked to forego his prosecution against the individual defendants, only to delay it."). Furthermore, as discussed above, the Debtors' creditors as a whole are benefitted by the injunction requested in this Motion because any judgment against the Individual Defendants could increase the claims against the Debtors' estates through the Debtors' indemnification obligations and/or decrease insurance proceeds available to the Debtors' estate. Thus, the balance of equities weighs in the Debtors' favor.

### iv.	Injunctive Relief Will Further the Public Interest.

61.	"In bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate, such that the debtor may be able to gain a fresh start, by satisfying valid claims against that estate." *In re OGA Charters, LLC*, 554 B.R. at 426; *see also Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs.)*, 199 B.R. 498, 501 (Bankr. D. Del. 1996) ("[T]here is a strong public interest in promoting a successful Chapter 11 reorganization."). For all the reasons set forth above, a preliminary injunction of the Covered Actions is necessary to facilitate the successful reorganization of the Debtors.

62.	Preliminarily enjoining the Covered Actions against the Individual Defendants will serve the public interest by allowing the Debtors to focus on the most important task at hand:

27

negotiating and confirming a plan of reorganization. Without the requested preliminary injunction, piecemeal litigation of the Claims outside of this Court would circumvent the bankruptcy process, dissipate the value of the Debtors' estates, detract from the Debtors' chapter 11 efforts, and significantly challenge the Debtors' ability to confirm a chapter 11 plan that provides equitable and meaningful returns to creditors. Moreover, since enjoining the Covered Actions as against the Individual Defendants will prevent the depletion of insurance coverage, a preliminary injunction will further serve the public interest by "preserving [the Debtors'] . . . assets that can be potentially used to satisfy valid claims against the bankruptcy estate." *In re OGA Charters, LLC*, 554 B.R. at 426. The losses that would result cannot be presently measured by any certain pecuniary standard. Accordingly, an injunction temporarily barring the Claimants from prosecuting the Claims against the Individual Defendants outside of the Chapter 11 Cases is appropriate and essential to the orderly and effective administration of the Debtors' estates. This factor thus also weighs heavily in favor of granting a preliminary injunction.

## CONCLUSION

63.     The Debtors therefore respectfully request that this Court enter an order (a) granting the declaratory and injunctive relief requested herein, and (b) granting such other and further relief as the Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: August 5, 2026.

Respectfully submitted,

/s/ Martin Sosland
Martin Sosland (State Bar No. 18855645)
Candice Carson (State Bar No. 24074006)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 4600E
Dallas, Texas 75201
Tel: (469) 654-1340
Email: martin.sosland@vkhh.com
      candice.carson@vkhh.com

-and-

Jeff P. Prostok (State Bar No. 16352500)
Emily S. Chou (State Bar No.
Suzanne K. Rosen (State Bar No. 00798518)
Lynda L. Lankford (State Bar No.
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vkhh.com
      emily.chou@vkhh.com
      suki.rosen@vkhh.com
      lynda.lankford@vkhh.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Motion will be served on the Claimants concurrently with service of the summons and Complaint, after which time an updated certificate of service will be filed.

/s/ Martin Sosland
Martin Sosland

29