**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>CAMP MYSTIC, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90621 (CML)<br><br>(Jointly Administered) |
| CAMP MYSTIC, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A,<br><br>Defendants. | Adv. Pro. No. 26-ap-03604 |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (I) DECLARING THAT THE AUTOMATIC STAY PROHIBITS CERTAIN ACTIONS AGAINST NON-DEBTORS, AND (II) PRELIMINARILY ENJOINING SUCH ACTIONS**

Camp Mystic, LLC, and its debtor affiliates, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") and as plaintiffs in the above-captioned adversary proceeding (the "**Adversary Proceeding**"), hereby file this First Amended Complaint (the "**Complaint**") against the parties listed on **Appendix A** attached hereto (collectively, the "**Claimants**"). In support of this Complaint, the Debtors respectfully state as follows:

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

## Introduction

1. The Debtors have commenced this adversary proceeding pursuant to Bankruptcy Rules 7001(g), 7001(i), and 7065 and sections 105(a) and 362(a) of the Bankruptcy Code seeking declaratory and injunctive relief. The Debtors have commenced this adversary proceeding not to deny claimants any potential for recovery, or to prevent parties from ultimate accountability, but to pause matters so that the Debtors can work to consolidate disputes, pursue mediation, address claims in an appropriate manner, and work to confirm a plan of reorganization. To accomplish that goal, the relief requested in this Complaint and associated motion practice is necessary.

2. By this adversary proceeding, the Debtors seek a declaration that the automatic stay under section 362 of the Bankruptcy Code applies and extends to prohibit (a) the continued prosecution of the actions identified in **Appendix B** to the Complaint (the "**Prepetition Actions**"), (b) the filing of any actions (together with the Prepetition Actions, the "**Covered Actions**") during the pendency of these Chapter 11 Cases that in any way relate to or arise out of the events of the July 4, 2025 flood with respect to the Camp (the "**Claims**") as against (i) Willetta "Tweety" Eastland, (ii) George Albritton Eastland, as Personal Representative of the Estate of Richard "Dick" Eastland, (iii) Edward S. Eastland, (iv) Mary E. "Mary Liz" Eastland, and (v) William Neely Bonner III (collectively, the "**Individual Defendants**"), and (c) the expansion of any Prepetition Action to name as a party any Individual Defendant not named in such Prepetition Action as of the Petition Date.

3. Pursuant to section 105(a) of the Bankruptcy Code, the Debtors further request a preliminary injunction, to the extent necessary, enjoining the prosecution of the Covered Actions as against the Individual Defendants while the Chapter 11 Cases remain pending.

4. The relief requested in this adversary proceeding is necessary and appropriate. Commencement or continuation of the Covered Actions against the Individual Defendants during

these Chapter 11 Cases will prejudice the Debtors and their estates in multiple ways. For example, certain claims in the Prepetition Actions assert liability against the Individual Defendants as the controlling persons of the Debtors. Such actions are enjoined by section 362(a)(1) because they constitute actions or proceedings against the debtor to recover a prepetition claim. Other claims in the Prepetition Actions (veil piercing, alter ego, joint business enterprise) constitute property of the Debtors' estates, the pursuit of which is enjoined by section 362(a)(3) of the Bankruptcy Code.

5. In addition, the Individual Defendants have indemnification rights against the Debtors pursuant to certain company agreements, a lease agreement between Debtors Camp Mystic, LLC and Natural Fountains Properties, LLC, and potentially Texas state statutes, which will entitle the Individual Defendants to file a claim for indemnification against the Debtors in these Chapter 11 Cases. The continued prosecution of the Covered Actions could therefore increase claims against the Debtors' estates, potentially decreasing recoveries to other stakeholders.

6. Further, continued prosecution of the Covered Actions could potentially diminish the Debtors' assets by depleting the proceeds or available limits of the Debtors' Insurance Policies. The proceeds of those Insurance Policies may be critical to the compensation of the Debtors' creditors, and would be best administered in a consolidated forum for the benefit of the Debtors and their stakeholders.

7. Moreover, findings of fact, conclusions of law, and judgments against Individual Defendants in litigation in which the Debtors are not participating could result in res judicata, collateral estoppel, or other results that would be prejudicial *to the Debtors* in later suits to which the Debtors are parties.

8. Even if the Debtors did not actively participate as parties to the Covered Actions,

given the common nucleus of operative facts and inextricably intertwined nature of the allegations against the Individual Defendants and the Debtors, the Debtors, as the repository of information likely relevant to the disputes, would inevitably be forced to participate in discovery.

9. Realistically, however, without the requested relief, the Debtors would likely be forced to participate in the Covered Actions to protect their interests and minimize their potential exposure, depriving the Debtors of one of the fundamental protections provided by the Bankruptcy Code, the automatic stay. Being forced to participate in the Covered Actions would also result in estate resources being diverted toward participating in the litigation rather than negotiating an equitable, global resolution, and pursuing confirmation of a chapter 11 plan.

10. A stay and injunction with respect to all Covered Actions is therefore critical to give proper effect to the automatic stay of section 362 of the Bankruptcy Code and avoid irreparable harm to the Debtors' reorganization efforts.

## Jurisdiction and Venue

11. The United States Bankruptcy Court for the Southern District of Texas (this "**Court**") has jurisdiction over the Debtors, their estates, these chapter 11 cases (these "**Chapter 11 Cases**"), and this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 as this proceeding takes place in and is related to the Chapter 11 Cases under title 11 of the United States Code (the "**Bankruptcy Code**").

12. Venue is proper under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157.

13. The Debtors confirm their consent to the entry of a final order by the Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**").

14. The statutory bases for the relief requested herein are sections 105(a) and 362(a) of

the Bankruptcy Code and section 2201(a) of title 28 of the United States Code. The Debtors have commenced this Adversary Proceeding pursuant to Bankruptcy Rules 7001(g), 7001(i), and 7065.

## Parties

15. The Debtors are the debtors-in-possession in the above-referenced Chapter 11 Cases, which are currently pending before this Court.

16. Each named defendant in **Appendix A** is either (i) a plaintiff in the Prepetition Actions who has asserted Claims against the Debtors and one or more of the Individual Defendants, or (ii) a prospective plaintiff who may, at any time while the Chapter 11 Cases are pending, seek to commence an action to pursue a Claim against one or more of the Individual Defendants.

## Background

### A. General Background

17. The Debtors own and operate Camp Mystic (the "**Camp**"), a private Christian summer camp for girls on the South Fork of the Guadalupe River, near Hunt in Kerr County, Texas. Originally built in 1926, the Camp developed a substantial reputation among Texas families, with multi-generational enrollment and sustained demand.

18. The Camp operates on an approximately 725-acre property in the Texas Hill Country comprising two campuses: (a) the original Camp Mystic Guadalupe River campus, situated along the Guadalupe River; and (b) the newer Camp Mystic Cypress Lake campus, located on the same property adjacent to Cypress Lake / Cypress Creek and developed in approximately 2019–2020.

19. The Individual Defendants are officers, members, managers, and/or employees of one or more of the Debtors. Individual Defendants Tweety and Dick Eastland became the executive directors of the Camp in the mid-1980s and acquired ownership interests at various dates. Individual Defendants Mary Liz and Edward Eastland are the directors of the Camp's

Guadalupe River campus. Individual Defendant Bonner is the president of Debtor Natural Fountains Properties, Inc., which owns the real property where the Camp is operated.

20. Given each Individual Defendant's position, the Debtors have, through their organizational documents, agreements, or statute, agreed to certain indemnification obligations. For example, the LLC operating agreements for Debtors Mystic Camps Management, LLC and Camp Mystic, LLC both provide that the applicable company must indemnify its managers, members, and officers from and against all actions, suits or proceedings arising out of the management of the applicable company or such indemnified person's service as the governing authority of the applicable company, but limit the indemnity to matters that arise out of the negligence, strict liability, or other fault or responsibility of the indemnified person.[2] Tweety, Dick, and Edward Eastland were each a member and/or manager of one or both of these Debtor entities, making them indemnified parties.

21. Debtor Mystic Family Partnerships, Ltd. also provides indemnity as to any claims asserted against limited partners solely because they are limited partners. Individual Defendants Edward Eastland, George A. Eastland, and Tweety Eastland were also limited partners of Debtor Mystic Camps Family Partnership, Ltd.

22. As the officers of Natural Fountains Properties, Inc., Tweety and Dick Eastland and William Neely Bonner, III are entitled to certain mandatory and permissive indemnification under the Texas Business Organizations Code. Finally, pursuant to a lease agreement, Camp Mystic, LLC, as tenant,[3] agreed to indemnify Natural Fountains Properties, Inc., as landlord, and its

[2] The indemnification provisions include standard exclusions for gross negligence and willful misconduct, as well as an exclusion for claims based on a breach of the operating agreements.

[3] Camp Mystic, Inc. was the original tenant under the lease agreement; however, Camp Mystic, Inc. was formally converted to Camp Mystic, LLC on October 28, 2021.

owners, joint venturers, members, managers, officers, shareholders, directors, partners, agents, representatives, and employees, against any claims or injuries occurring on the leased premises. This contractual indemnification provision requires Camp Mystic, LLC to indemnify Tweety and Dick Eastland and William Neely Bonner, III, as officers of Natural Fountains Properties, Inc.

23. As part of their operations, the Debtors maintain various insurance policies (the "**Insurance Policies**"). Certain of the Individual Defendants are named insureds on certain Insurance Policies, and where they are not named insureds, they are covered under the applicable Insurance Policy as indemnitees and/or employees.

24. On June 24, 2026 (the "**Petition Date**"), the Debtors commenced voluntary cases under the Bankruptcy Code.

**B. The Prepetition Actions**

25. On July 4, 2025, a severe and sudden flood occurred in the Texas Hill Country, including the Guadalupe River valley where the Camp's Guadalupe River campus is located. The flood caused catastrophic loss of life and extensive damage to that campus. Among those who died were 25 campers and 2 counselors at the Camp ("**Heaven's 27**"), as well as the Camp's longtime director and co-owner, Dick Eastland.

26. The Prepetition Actions were removed by the Debtors to the United States District Court for the Western District of Texas, where they remain pending.[4] The Debtors also filed a motion to transfer the Prepetition Actions from the Western District of Texas to the Southern District of Texas, as the district court with jurisdiction over the bankruptcy cases, pursuant to 28 U.S.C. § 157(b)(5).[5] The Debtors are seeking to transfer the Prepetition Actions to the Southern

[4] See Case Nos. 1:26-cv-01916 (*Bellows*), 1:26-cv-01919 (*Getten*), 1:26-cv-01922 (*Peck*), 1:26-cv-01923 (*Naylor*), and 1:26-cv-01926 (*Steward*) pending in the Western District of Texas.

[5] See Case No. 4:26-mc-01321 (ECF 1) pending in the Southern District of Texas.

District of Texas so they can be consolidated and adjudicated with any similar claims made against the Debtors in the bankruptcy case. The Debtors have also asked the Heaven's 27 families and Official Committee of Unsecured Creditors to participate in mediation to discuss the formulation of a chapter 11 plan in an effort to either resolve the Claims or at least provide an agreed path for the consolidated liquidation of such claims. If such request is denied, the Debtors expect to ask this Court to require mediation.

27. The Debtors are hopeful that a consensual resolution of the Claims can be reached. Absent such an agreement, however, the Prepetition Actions against the Debtors and the Individual Defendants should be tried together because they are based on disputed issues of fact that cannot be resolved without the Debtors' involvement and without impinging on the Debtors' interests.

28. In particular, the Claimants allege numerous causes of action against the Debtors and the Individual Defendants based on their alleged failures and actions in connection with the July 4, 2025 flood, including, without limitation, claims for wrongful death and survival, negligence, premises liability, intentional infliction of emotional distress, breach of fiduciary duty, breach of express and implied warranties, and failure to warn. The Claimants assert numerous theories of vicarious liability including, without limitation, respondeat superior, participatory liability, concert of action, ratification, and agency. The Claimants also seek to disregard the Debtors' corporate forms based on alter ego, veil piercing, joint business enterprise, and similar legal theories. Asserting joint and several liability, the Claimants seek compensatory and exemplary damages from the Debtors and the Individual Defendants.

29. Since the Petition Date, the Claimants have sought an opinion from this Court confirming that the automatic stay does not apply to the Individual Defendants. *See Certain Heaven's 27 Families' Motion for Entry of Order Confirming That the Automatic Stay Does Not*

*Apply to Direct Claims Against Non-Debtor Individual Defendants* [Docket No. 132, Case No. 26-90621] (the "**Heaven's 27 Motion**").

## <u>Claims for Relief</u>

### Count I: Declaratory Relief Pursuant to Section 362(a)(1) of the Bankruptcy Code

30. The Debtors incorporate by reference the allegations of paragraphs 1 through 29 as if fully set forth herein.

31. Section 362(a)(1) of the Bankruptcy Code prohibits the commencement or continuation of any actions against a debtor that were or could have been commenced prior to the bankruptcy filing, or which seek to recover for any claim that arose prior to the commencement of the bankruptcy case. *See* 11 U.S.C. § 362(a)(1).

32. Fifth Circuit precedent recognizes that the automatic stay imposed by section 362(a)(1) may be extended to non-debtor defendants to enjoin actions in unusual circumstances, including when the non-debtor and the debtor enjoy such an identity of interests that the suit against the non-debtor is essentially a suit against the debtor or when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. Such unusual circumstances exist here to justify extension of the automatic stay to the Claims against the Individual Defendants because (a) an identity of interests exists between the Debtors and each of the Individual Defendants and (b) continued litigation of the Claims outside of these Chapter 11 Cases will have an adverse impact on the Debtors' ability to accomplish a reorganization.

33. Here, the Individual Defendants and the Debtors enjoy such an identity of interests that the Claims against the Individual Defendants are claims against the Debtors. Litigating, settling, or attempting to establish the value of such claims against the Individual Defendants outside of the Chapter 11 Cases would liquidate claims against the Debtors, including by triggering

indemnification duties of the Debtors to the Individual Defendants.

34. Even if such claims are allegedly for the Individual Defendants' independent conduct, any litigation would involve litigation of the same key facts as the claims asserted against the Debtors, creating a risk of binding the Debtors through res judicata or collateral estoppel and allowing the Claimants to use evidence generated in those proceedings to establish the Debtors' liability for the exact same claims. Accordingly, commencement or continuation of the Covered Actions will require the Debtors to participate in the defense to protect their own interests. Such continued piecemeal litigation would also impose divergent discovery burdens on the Debtors.

35. Accordingly, and in line with Fifth Circuit precedent with respect to application of the automatic stay, the declaratory relief the Debtors seek in this Complaint is necessary and appropriate to protect the integrity of the automatic stay and the bankruptcy proceeding.

**Count II: Declaratory Relief**
**Pursuant to Section 362(a)(3) of the Bankruptcy Code**

36. The Debtors incorporate by reference the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. Section 362(a)(3) of the Bankruptcy Code prohibits the commencement or continuation of any act to obtain possession of, or exercise control over, the property of the debtor's estate. *See* 11 U.S.C. § 362(a)(3). The Prepetition Actions include claims for veil piercing, alter ego, joint business enterprise, and similar claims. Such claims constitute property of the Debtors' estates under section 541(a), and the continued pursuit of such claims violates section 362(a)(3).

38. The proceeds of the Debtors' insurance policies are property of the estate pursuant to section 541(a) of the Bankruptcy Code. The Individual Defendants are covered by the Debtors' Insurance Policies and therefore have the right to claim the proceeds of such policies with respect to any covered loss. Coverage for any judgment against the Individual Defendants will reduce

coverage available to the Debtors. Accordingly, section 362(a)(3) bars the Claimants from commencing or continuing the Covered Actions against the Individual Defendants because the right to insurance coverage is property of the estate and such actions could result in depletion of an estate asset.

39. Thus, the Covered Actions are stayed under section 362(a)(3) of the Bankruptcy Code because commencement or continuation of the Covered Actions as against the Individual Defendants constitutes an act to control property of the Debtors' estates.

**Count III – Preliminary Injunctive Relief**
**Pursuant to Sections 105 and 362 of the Bankruptcy Code**

40. The Debtors incorporate by reference the allegations of paragraphs 1 through 39 as if fully set forth herein.

41. Section 105(a) of the Bankruptcy Code authorizes and empowers this Court to issue any orders that will further the purposes and goals of the Bankruptcy Code, assist in the orderly and effective administration of the Chapter 11 Cases, aid in the preservation of the assets of the Debtors' estates, and aid in the formulation and confirmation of a chapter 11 plan that maximizes recovery to all of the Debtors' creditors. *See* 11 U.S.C. § 105(a).

42. Relief under section 105(a) of the Bankruptcy Code is proper in a chapter 11 case when necessary to protect a debtor's ability to effectively reorganize and to preserve property of the debtor's estate.

43. An injunction is appropriate in this case to prohibit the Claimants from filing or continuing to prosecute the Covered Actions against the Individual Defendants for a reasonable period because the commencement or continuation of the Covered Actions against the Individual Defendants will frustrate and jeopardize the Debtors' effort to successfully reorganize.

44. An order enjoining the Covered Actions as against the Individual Defendants would

also preserve property of the Debtors' estates, because such property would necessarily be expended in the Debtors' participation (directly as a party or through discovery) in such actions were they to proceed.

45. An order enjoining the Covered Actions is proper here because the Fifth Circuit's four factors for injunctive relief are satisfied.

46. Likelihood of Success on the Merits: In the context of a section 105 preliminary injunction, the "likelihood of success on the merits" element focuses on whether the debtor has a reasonable or realistic likelihood of successfully reorganizing. The Debtors have a reasonable or realistic likelihood of confirming a plan of reorganization. The Debtors have sufficient assets to provide in a plan for the treatment of allowed claims in a manner that satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors filed these Chapter 11 Cases to provide a centralized forum in which to negotiate in earnest for a global resolution with the Claimants, other creditors, and other estate constituents, or to litigate in a centralized forum if a negotiated resolution cannot be achieved. Granting the requested injunction is likely to enhance the Debtors' prospects for bringing these Chapter 11 Cases to a successful resolution. Accordingly, this factor weighs in favor of injunctive relief.

47. Irreparable Harm: The Debtors' estates are likely to suffer immediate and irreparable harm if the Covered Actions are not enjoined. This threat includes (a) the pursuit of estate claims and causes of action by the Claimants, (b) the risk that claims will be liquidated against the Debtors' estates due to indemnification obligations and vicarious liability, and (c) the risk of collateral estoppel, res judicata, and record taint prejudicing the Debtors such that the Debtors would be forced to participate in the Covered Actions, thereby depleting estate resources.

48. The Balance of Harms: The likelihood of irreparable harm to the Debtors in the

absence of injunctive relief outweighs any harm to the Claimants. An injunction would merely pause the Covered Actions for a reasonable time to allow the Debtors time to negotiate with the Claimants and other estate constituents regarding the formulation of a chapter 11 plan that either resolves the Claims against the Debtors and the Individual Defendants or at least provides an agreed process for the resolution of the Claims on a consolidated basis. Comparatively, commencement or continuation of the Covered Actions will almost certainly deplete assets that could have been used to fund the Chapter 11 Cases, and any judgment against the Individual Defendants could increase the claims against the Debtors' estates to the detriment of existing creditors.

49. Public Interest: It is in the public interest for the law to be followed and for bankruptcy courts to protect debtors, bankruptcy estates, and creditors. It is also in the public interest that creditors follow the Bankruptcy Code and abide by the automatic stay provision that bankruptcy affords debtors. Accordingly, the injunctive relief the Debtors seek in this Complaint is appropriate and serves the public interest by promoting the orderly and effective administration of the Debtors' estates. The Debtors also believe that the public interest is best served through the extension of the stay because it provides the Debtors an opportunity to try to resolve all claims and causes of action against the Debtors, which also affect the Individual Defendants. The extension of the stay is not intended to thwart the Claimants from obtaining relief, or to indefinitely shield parties from accountability, but rather to attempt to reach a global resolution of the Claims in a centralized forum. The Debtors firmly believe, in these unique circumstances, that the extension of the stay will therefore benefit the public interest.

**Conclusion and Request for Relief**

50. The Debtors respectfully request that this Court enter an order (a) granting the

declaratory and/or injunctive relief requested herein, and (b) granting such other and further relief as the Court may deem just and proper.

Dated: August 25, 2026

Respectfully submitted,

*<u>/s/ Martin Sosland</u>*
Martin Sosland (State Bar No. 18855645)
Candice Carson (State Bar No. 24074006)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
2200 Ross Avenue, Suite 4600E
Dallas, Texas 75201
Tel: (469) 654-1340
Email: martin.sosland@vkhh.com
candice.carson@vkhh.com

-and-

Jeff P. Prostok (State Bar No. 16352500)
Emily S. Chou (State Bar No. 24006997)
Suzanne K. Rosen (State Bar No. 00798518)
Lynda L. Lankford (State Bar No. 11935020)
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: 817-214-4990
Email: jeff.prostok@vkhh.com
emily.chou@vkhh.com
suki.rosen@vkhh.com
lynda.lankford@vkhh.com

ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION