**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CAMP MYSTIC, LLC, *et al.*, | ) | Case No. 26-90621 (CML) |
| Debtors.[1] | ) | (Jointly Administered) |
| CAMP MYSTIC, LLC, *et al.*, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 26-03604 |
| THOSE PARTIES LISTED ON APPENDIX A AND JOHN AND JANE DOES 1-1000, | ) | |
| Defendants. | ) | |

**CERTAIN HEAVEN'S 27 FAMILIES' PRELIMINARY OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) DECLARING THAT THE AUTOMATIC STAY PROHIBITS CERTAIN ACTIONS AGAINST NON-DEBTORS OR (B) PRELIMINARILY ENJOINING SUCH ACTIONS**

Certain Heaven's 27 Families (the "Families"),[2] for their preliminary objection to the *Debtors' Motion for Entry of an Order (A) Declaring that the Automatic Stay Prohibits Certain*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

[2] The Families include: the Baker Family; the Bellows Family; the Bonner Family; the Childress Family; the DeWitt Family; the Dillon Family; the Ferruzzo Family; the Getten Family; the Hanna Family; the Hollis Family; the Hunt Family; the Jacobe Family; the Landry Family; the Lytal Family; the Marsh Family; the McCown Family; the McCrory Family; the Naylor Family; the Peck Family; the Pohl Family; the Sheedy Family; the Stevens Family; the Steward Family; and the Toranzo Family. The Baker and Marsh Families did not commence lawsuits prepetition and, thus, were not initially included in Appendix A to the Original Complaint. The Debtors added them through the First Amended Complaint [Docket No. 5].

*Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions* [Docket No. 2] (the "Motion"), respectfully represent as follows:

## Introduction

1. The Eastlands own and control the Debtors. "The Debtors" have sought to extend their automatic stay to the Eastlands on a variety of questionable grounds. The Eastlands, therefore, are using the Debtors' chapter 11 cases to protect themselves from having to answer to the Families, and the public, for their manifest failure to protect the children entrusted to their care in the summer of 2025. Plainly and simply, the Eastlands (and the other third-party defendants) seek the extraordinary remedy of giving themselves one of the central benefits of chapter 11—the automatic stay—without putting all of their assets on the table in exchange. *See Harrington v. Purdue Pharma*, 604 U.S. --, 144 S. Ct. 2071 (2024). The Court should not countenance this abuse of process.

2. This Motion and this Adversary Proceeding illustrate the Eastlands' poor judgment and the Debtors' utter lack of independence. Through their control of the Debtors, the Eastlands directed, or approved, or both directed and approved, the filing of this Adversary Proceeding to enjoin the Families from pursuing their direct claims against the Eastlands and other non-debtors for their roles in the tragic and preventable deaths of 27 girls and young women.

3. The Motion was filed on August 5, 2026, and, the following week on August 13, 2026, the Families served their discovery requests on the Debtors and the Eastlands. To date, neither the Debtors nor the Eastlands have responded to such requests.[3] Thus, the Families file

[3] As of the filing of this preliminary objection, Counsel to the Debtors have only forwarded copies of specifically curated documents that were used as exhibits in other, unrelated pleadings filed in various proceedings.

this objection on a preliminary basis and will supplement the same once the Debtors comply with their discovery obligations.

## Preliminary Objection

4. As set forth more fully in *Certain Heaven's 27 Families' Substituted Motion for Entry of an Order Confirming that the Automatic Stay Does Not Apply to Direct Claims Against Non-Debtor Individual Defendants* [Docket No. 132] (the "Comfort Order Motion"),[4] the Families hold direct tort claims against both the Debtors and individual non-debtors—Willetta Eastland, George Albritton Eastland, as Personal Representative of the Estate of Richard "Dick" Eastland, Edward S. Eastland, Mary E. Eastland, and William Neely Bonner III (the "Individual Defendants"). The Debtors, through the Motion,[5] contend that the existence of indemnities justifies *extending* the automatic stay to the Individual Defendants, but they have neither (i) identified any provision providing absolute indemnification nor (ii) connected any particular indemnity to any particular claim asserted by the Families or presented evidence establishing that the asserted indemnities cover those claims.

5. "Ordinarily, the automatic stay under § 362 does not apply to actions against a nondebtor." *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 302 (Bankr. S.D. Tex. 2015) (citations

[4] The Families incorporate herein the arguments set forth in the Comfort Order Motion with respect to (i) application of the automatic stay to the Individual Defendants, and (ii) the Families' claims against the Individual Defendants are direct, not derivative. That the Families assert legal theories arising from the same underlying events does not change the character of their direct harms that are not estate claims; overlapping direct and derivative allegations do not require that those prepetition actions be stayed in their entirety. *See In re Tommy's Fort Worth, LLC*, 671 B.R. 712, 743 (Bankr. N.D. Tex. 2025) (holding that mixture of direct and derivative allegations does not justify extension of the stay to direct claims between non-debtor parties).

[5] Notably, the Debtors did not object to the Comfort Order Motion, thus implicitly acknowledging that the automatic stay does not extend to the Individual Defendants. Indeed, the filing of this Adversary Proceeding and the Motion together confirm this acknowledgment, otherwise both would serve no purpose. The Court should, therefore, promptly enter an order granting the Comfort Order Motion. In that regard, although the Eastlands objected to the Comfort Order Motion [Main Case Docket No. 147], they lack standing to "enforce" the automatic stay.

omitted). To extend the stay to a non-debtor, there must be "unusual circumstances." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). This exception is exceedingly narrow and has "stringent factual requirements." *In re Divine Ripe, L.L.C.*, 538 B.R. at 308.

6. In addition to unusual circumstances, the Debtors must show an "*actual, as opposed to an alleged or potential*, identity of interests" to obtain an extension of the automatic stay to protect non-debtor third-parties. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723–24 (S.D. Tex. 2010) (emphasis added). A possible or contingent indemnification obligation cannot satisfy this exacting standard. *See A.H. Robins Co.*, 788 F.2d at 999 (limiting the unusual circumstances exception to the rare case where the non-debtor is entitled to absolute indemnification from the debtor for any resulting judgment).

7. In the Fifth Circuit, the exception also requires a showing that the third-party action will adversely impact the Debtors' ability to reorganize. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995).

8. Most recently, the Fifth Circuit reiterated that "a bankrupt debtor and non-bankrupt parties are not subject to the same automatic stay analysis." *Am. Warrior Inc. v. Found. Energy Fund IV-A, L.P. (In re McConathy)*, 111 F.4th 574, 581 (5th Cir. 2024). The *McConathy* court observed that "[i]t is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor 'even if they are in a similar legal or factual nexus with the debtor.'" *Id.* at 582 (quoting *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991)); *see also Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 n.4 (5th Cir. 1986) (citing *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)) ("The well

established rule is that an automatic stay of judicial proceedings against one defendant does not apply to proceedings against co-defendants.").

9. The mere presence of overlapping or identical allegations against both debtor and non-debtor defendants is insufficient to trigger the exception. *Divine Ripe* is instructive. In that case, Judge Rodriguez denied a motion to extend the automatic stay to a non-debtor managing member of a debtor LLC, even though the claims against the non-debtor and the debtor were similar. *Divine Ripe*, 538 B.R. at 312–13. The court explained that "the presence of identical allegations against the debtor and non-debtor defendants is an insufficient ground to extend the stay to the non-debtor . . . . There must be an actual, as opposed to an alleged or potential, identity of interests, such that a judgment against the non-bankrupt party would in fact be a judgment against the bankrupt party." *Id.* at 312. The non-debtor in that case "ha[d] not demonstrated such a relationship and ha[d] not carried his burden to demonstrate that the § 362 stay may be extended to him." *Id.*

10. Here, based on the limited information currently available to the Families, it is clear that the indemnities alleged in the Motion are anything but absolute. The Debtors identify four different sources of purported indemnification: (1) the operating agreements for Camp Mystic, LLC and Mystic Camps Management, LLC; (2) the governing documents for Mystic Camps Family Partnership, Ltd.; (3) the Texas Business Organizations Code; and (4) the ground and building lease between Camp Mystic, LLC and Natural Fountains Properties, Inc (the "<u>Lease</u>"). Without more, this is insufficient for the Debtors to carry their heavy burden.

11. The Families reserve all rights to supplement this preliminary objection once the Debtors comply with the Families' discovery requests. But, based solely on the bare allegations

in the Motion, none of the identified sources of potential indemnification to the Individual Defendants is absolute:

> a. By the Debtors' own admission, alleged indemnification provisions in the Camp Mystic, LLC and Mystic Camps Management, LLC operating agreements are limited to matters arising out of negligence, strict liability, or other fault or responsibility of the indemnified person *and exclude gross negligence and willful misconduct*. Motion ¶ 16.
>
> b. The Family Partnership indemnity is allegedly limited to claims arising solely from a person's status as a limited partner. *Id.* at ¶ 17.
>
> c. The Debtors make sweeping statements about the Texas Business Organizations Code affording permissive or mandatory indemnification to officers of Natural Fountains Properties, Inc. without citing any specific statutory provisions that would apply to the Families' claims. *Id.* at ¶ 18.

12. The alleged Lease indemnification fares no better, as it carves out claims for damage to persons resulting directly from a "Landlord Party's" gross negligence or willful misconduct. Those are the *exact* types of allegations the Families assert against the Individual Defendants in connection with the July 4, 2025 flood. A contractual indemnification cannot be treated as absolute when it expressly excludes the alleged conduct in question. Nor does a generalized reference to the Lease establish that (i) any particular Individual Defendant is an indemnified party thereunder, (ii) an Individual Defendant acted in a covered capacity, or (iii) the Families' specific claims fall within the indemnity rather than an exclusion. The Lease therefore cannot establish the actual identity of interests required for stay extension.

13. Even if the Individual Defendants hold valid indemnification claims against the Debtors, those claims would be subject to disallowance under 11 U.S.C. § 502(e)(1)(B), which requires disallowance of a contingent claim for reimbursement where the claiming entity is co-liable with the debtor. *See In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 589 (5th Cir. 2024). The Individual Defendants' purported indemnification claims satisfy all three elements for disallowance: they are contingent because they remain unpaid, are claims for reimbursement, and

are asserted by parties co-liable with the Debtors. *See In re Alta Mesa Res., Inc.*, No. 19-35133, 2022 WL 17984306, at *3 (Bankr. S.D. Tex. Dec. 28, 2022) (explaining that § 502(e)(1)(B) requires disallowance where the debtor is co-liable with the claimant, the claim is contingent, and the claim is for reimbursement or contribution, and that an indemnification claim is generally contingent unless the claimant has actually paid the third party).

14. Because the Individual Defendants' purported indemnification claims would be disallowed under section 502(e)(1)(B), those claims cannot "deplete the Debtors' assets to the detriment of the creditor body as a whole," as the Debtors contend.[6] Motion ¶ 42. This further undermines the Debtors' identity-of-interest theory and their assertion that prosecution of claims against the Individual Defendants would constitute a de facto proceeding against the Debtors.

15. The Debtors also have failed to provide the claim-specific analysis required to carry their burden. They do not identify in the Motion which indemnification provision applies to which Individual Defendant, which claims fall within that provision, or how the alleged indemnity covers the Families' particular allegations.

16. Finally, the Debtors cannot meet their burden to establish the preliminary-injunction factors to obtain a stay under 11 U.S.C. § 105(a): (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the balance of harms favors the movant; and (4) the injunction will not disserve the public interest. *Matter of Zale Corp.*, 62 F.3d at 765; *Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1188 (5th Cir. 1986).

---

[6] The Debtors also argue that allowing the Families to pursue the Individual Defendants would deplete the Debtors' insurance policies, which they assert are property of the estate under *In re OGA Charters, LLC*, 901 F.3d 599 (5th Cir. 2018). This argument is a red herring and does not warrant an extension of the automatic stay. Even if the Families' claims against the Individual Defendants were covered under the policies (an open question to be sure), the Court need not enjoin the Families from liquidating their claims against non-debtor third-parties to ensure an equitable distribution of the estate property. Moreover, even if the Debtors' insurance proceeds constitute property of the estate, shared insurance coverage does not trigger the automatic stay over claims against non-debtor co-insureds, particularly when the asserted claims can be satisfied from sources other than insurance. *See, e.g., In re Roman Catholic Diocese of Rockville Center, New York*, 651 B.R. 622, 642–45 (Bankr. S.D.N.Y. 2023).

17. No Likelihood of Success. The Debtors cannot show a substantial likelihood of success or irreparable harm. They filed these chapter 11 cases on June 24, 2026. More than 60 days later, the Debtors have made no meaningful progress toward reorganization or resolution of the Families' claims. These bankruptcy cases were filed, and continue to exist, as nothing more than a litigation strategy to obfuscate, delay the Families' efforts to liquidate their claims, deny the Families their day in court, and protect the Eastlands—who have not filed for bankruptcy or otherwise put all of their assets on the table for creditors. *See Harrington, supra*. The camp is not operating, has not operated in a year, and the Debtors do not have a license to operate going forward. As a result, there is no likelihood of "success" in any sense of the word.

18. No Irreparable Harm to the Debtors. The Debtors also cannot demonstrate irreparable injury from allowing the Families' claims against the Individual Defendants to proceed. Those claims seek to impose personal liability for the Individual Defendants' own grossly negligent and willful acts and omissions—liability that would exist regardless of the Debtors' bankruptcy. Permitting creditors to pursue direct claims against non-debtor individuals does not injure the estate, particularly where such claims are expressly carved out of the asserted indemnities. The Debtors' existing automatic stay protects them from direct collection actions; it does not entitle the Individual Defendants to any relief.

19. Balance of Equities and Public Interests. If there was ever a case where the balance of the equities and the public interest was against the plaintiff and favored the party to be enjoined, this is it. The Families lost their children in the July 4, 2025 tragedy. In the months that followed, the Families filed five lawsuits in Travis County state court to hold the offending parties accountable for their manifest—and preventable—failure that resulted in unimaginable losses that no human should ever have to suffer. The Families should have their day in court and be permitted

to hold the offending parties accountable. Extending the stay would sanction an abuse of the bankruptcy process. There is nothing about extending the automatic stay that remotely serves the public interest in this case. Instead, it profoundly undermines public confidence in the integrity of the bankruptcy, and legal, system.

20. The Debtors cannot come close to bearing the burden of proof on the extraordinary remedy they have requested. The Motion should be denied. [7]

[*Remainder of page intentionally left blank*]

[7] As noted during the Status Conference held on August 26, 2026, the Families intend to seek separate relief from the automatic stay to liquidate their claims against all defendants, including the Debtors. It is clear from the lack of meaningful progress in the chapter 11 cases over the past 60 days that no real progress can be made until liability has been established and claims have been fully liquidated. As such, the present Motion will likely become a moot point if this Court agrees to lift the stay to allow litigation to continue.

WHEREFORE, the Families respectfully request that the Court deny the Motion and grant such other and further relief as may be just and proper.

Respectfully submitted this 26th day of August, 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
Aaron M. Kaufman
Texas Bar No. 24060067
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com
lwebb@grayreed.com
akaufman@grayreed.com

*Counsel to Certain Heaven's 27 Families*

**Certificate of Service**

I certify that on August 26, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, which includes counsel of record for the Plaintiffs/Debtors. Counsel for the Families will serve a courtesy copy of this objection by e-mail to counsel of record for both the Debtors and the Committee.

*/s/ Jason S. Brookner*
Jason S. Brookner