**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>CAMP MYSTIC, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-90621 (CML)<br><br>(Jointly Administered) |
| CAMP MYSTIC, LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A,<br><br>Defendants. | Adv. Pro. No. 26-03604 |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING INTERVENTION IN ADVERSARY PROCEEDING**

**Emergency relief has been requested. Relief is requested not later than 5 p.m. on Friday, September 4, 2026. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The Official Committee of Unsecured Creditors (the "Committee") of Camp Mystic, LLC and Camp Mystic, LLC's debtor affiliates in the above-captioned Chapter 11 cases (collectively,

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is 2689 Highway 39, Hunt, TX 78024.

the "Debtors" in the "Chapter 11 Cases"), by and through its undersigned counsel, hereby files this motion to intervene in the above-captioned adversary proceeding (the "Adversary Proceeding"). The Committee seeks intervention pursuant to Sections 105(a) and 1109(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 24 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in support thereof, respectfully represents as follows:

**INTRODUCTION**

1. Following the deaths of twenty-seven children and counselors in the July 4, 2025 flood at Camp Mystic, their families (the "Families") sought to hold accountable the individuals whose knowledge, decisions, and conduct that night precipitated those deaths, and whose personal actions in its aftermath compounded the Families' suffering (collectively, the "Individual Defendants").[2] The Debtors initiated this Adversary Proceeding seeking to enjoin the Families' cases against the non-debtor Individual Defendants and to prevent the filing of new lawsuits against those non-debtors that "in any way relate to or arise out of the events of the July 4, 2025 flood with respect to" Camp Mystic. The Committee seeks leave to intervene in this Adversary Proceeding, not as an advocate for any individual defendant or family, but as an estate fiduciary charged with representing the interests of all unsecured creditors in the Chapter 11 Cases.

2. The outcome of this Adversary Proceeding will materially affect the path forward in the Chapter 11 Cases. The Debtors commenced this proceeding seeking to extend the automatic stay to the Individual Defendants, whom the Families allege bear direct, personal responsibility

[2] The Individual Defendants are Willetta "Tweety" Eastland, George Albritton Eastland (as personal representative of the Estate of Richard "Dick" Eastland), Edward S. Eastland, Mary E. Eastland, and William Neely Bonner III.

for their children's deaths. The Committee does not believe that extending the stay serves the interests of its constituency and, as will be explained more fully in the Committee's response to the Debtors' motion to extend the stay, the relief sought is not supported by the "well-established rule" in the Fifth Circuit.

3. In coming weeks, the Court will be asked to decide significant questions about the scope of the automatic stay, the availability of injunctive relief to protect non-debtors, and the rights of the Families whose children died in the July 4, 2025 flood at Camp Mystic. The Committee—comprised of a subset of those Families acting as fiduciaries for all unsecured creditors—has a direct and immediate stake in whether the Families' wrongful death claims against the Individual Defendants may proceed. Indeed, how claims related to the flood will be liquidated is a crucial issue in the Chapter 11 Cases. Before resolving questions that the Debtors summarily present as benefitting "the Debtors' creditors as a whole," the Court should have the benefit of the Committee's perspective.

4. The Committee satisfies all requirements for intervention as of right under Federal Rule 24(a)(2): this Motion is timely and filed in the infancy of the Adversary Proceeding; the Committee has a direct, substantial interest in the subject matter; disposition of the proceeding will impair the Committee's ability to protect that interest; and the parties to the Adversary Proceeding will not adequately represent the Committee's constituency, which is the fiduciary for unsecured creditors in the Chapter 11 Cases. In the alternative, the Committee satisfies the standard for permissive intervention under Rule 24(b). The Committee's participation will be narrowly tailored to addressing the legal, factual, and procedural issues before this Court and it will neither delay nor unduly burden the proceedings.

5. Prior to filing this Motion, the Committee asked the Debtors and the Defendants if they would stipulate to the Committee's intervention. Counsel for the Defendants agreed. Counsel for the Debtors, however, stated that the Debtors would not stipulate to the Committee's intervention, but would not object to the Committee's motion to intervene if such motion complies with Rule 24. Accordingly, the Committee files this Motion to intervene as a party to the Adversary Proceeding, and respectfully requests that the Court enter the order attached hereto.

**JURISDICTION AND VENUE**

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over the Debtors' Chapter 11 Cases and this Motion pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges (District Court General Order 2012-6)*, dated May 24, 2012 (the "Standing Order"). This is a core proceeding within the meaning of 28 U.S.C. §§ 157 and 1334.

7. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief sought herein are sections 105(a) and 1109(b) of the Bankruptcy Code and Rule 24 of the Federal Rules, as made applicable to this Adversary Proceeding by Rule 7024 of the Bankruptcy Rules.

**BACKGROUND**

**A. The Camp Mystic Flood Disaster and Its Fallout**

9. As will be explained more fully in the Committee's response in opposition to the Debtors' pending motion in this Adversary Proceeding, Camp Mystic was a summer camp located on the Guadalupe River in Hunt, Texas—in the Texas Hill Country region known as "Flash Flood Alley." The camp had operated for nearly a century and was owned and managed by members of

the Eastland family, including several of the Individual Defendants.[3] On the morning of July 4, 2025, the Guadalupe River flooded Camp Mystic, resulting in the deaths of twenty-seven children and counselors.

10. In the months following the disaster, several families of the deceased filed wrongful death and negligence actions in Texas state court (the "Prepetition Actions"). These actions assert claims against both the Debtor entities and the Individual Defendants.[4]

11. The Families' complaints allege that the Individual Defendants bear direct, personal responsibility for the deaths of their children. The Families assert claims for negligence, gross negligence, premises liability, wrongful death, and intentional infliction of emotional distress against the Individual Defendants in their individual capacities—based on their personal knowledge of flood risks developed over decades, their personal decisions that created and perpetuated dangerous conditions at Camp Mystic, their conduct on the night of July 4, 2025, and their actions in the aftermath of the tragedy. The complaints allege that the Individual Defendants prioritized business interests over child safety, ordering campers to shelter in place rather than evacuate when clear escape routes remained open, and that their post-flood conduct—including communications to families that falsely held out hope that their children were alive—compounded the Families' injuries.

---

[3] Unless otherwise noted, the facts described in this subsection are drawn from the Texas Legislature's Report discussed below.

[4] Original Petition, *Steward v. Camp Mystic, LLC*, No. D-1-GN-26-000758 (200th Dist. Ct., Travis Cnty., Tex. Feb. 4, 2026); Second Amended Petition, *Getten v. Nat. Fountains Props., Inc.*, No. D-1-GN-25-009976 (459th Dist. Ct., Travis Cnty., Tex. May 4, 2026); Original Petition, *Bellows v. Camp Mystic, LLC*, No. D-1-GN-25-009963 (455th Dist. Ct., Travis Cnty., Tex. Nov. 10, 2025); Original Petition, *Naylor v. Camp Mystic, LLC*, No. D-1-GN-25-010016 (200th Dist. Ct., Travis Cnty., Tex. Nov. 10, 2025); Original Petition, *Peck v. Camp Mystic, LLC*, No. D-1-GN-25-009983 (261st Dist. Ct., Travis Cnty., Tex. Nov. 10, 2025).

12. On June 18, 2026, the Texas Senate and House General Investigating Committees released their "Report on the Camp Mystic Flood Disaster of July 4, 2025" (the "Report").[5] The Report concluded, among many other things, that Camp Mystic "did not have written emergency plans that complied with state requirements," "did not adequately prepare for the July 3-4, 2025 storm," and "did not timely evacuate in advance of the July 3-4, 2025 storm, despite ample opportunity to do so." Report at 104–05. Critically, the Report identified specific conduct by Individual Defendants supporting their personal culpability. *See, e.g.*, *id.* at 69, 81, 104.

**B. The Bankruptcy Filing and Certain Families' Motion to Confirm that the Automatic Stay Does Not Extend to the Individual Defendants**

13. A few days after the Texas Legislature released the Report, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code—commencing these jointly administered cases before this Court.

14. On July 13, 2026, an ad hoc group comprised of families of the deceased (the "Ad Hoc Group") filed a motion seeking entry of an order confirming that the automatic stay did not apply to the direct claims against the non-debtor Individual Defendants (the "Comfort Motion"). *See* Chapter 11 Cases, ECF No. 77.

15. Following the U.S. Trustee's appointment of the Committee—comprised of certain family members of the children and counselors who lost their lives in the July 4, 2025 flood—the Ad Hoc Group disbanded and the families that previously comprised that group filed a substituted version of the Comfort Motion on August 2, 2026 (such families, the "Certain Heaven's 27

[5] Senate General Investigating Committee on the July 2025 Flooding Events & House General Investigating Committee on July 2025 Flooding Events, *Report on the Camp Mystic Flood Disaster of July 4, 2025* (June 18, 2026), https://senate.texas.gov/_assets/pdf/2026.06.26-FINAL-report-corrected.pdf.

Families”). *See id.*, ECF Nos. 130, 132. The Individual Defendants objected to the substituted Comfort Motion on August 5, 2026. *See id.*, ECF No. 147.

**C. This Adversary Proceeding**

16. As part of an effort to prevent the Families’ claims against the Individual Defendants from proceeding, the Debtors commenced this Adversary Proceeding on August 5, 2026,[6] and filed a motion seeking a declaration that the automatic stay extends to the Individual Defendants, or, alternatively, a preliminary injunction staying all actions against them. *See* Adversary Proceeding, ECF No. 2 (the “Debtors’ Stay-Extension Motion”). That motion requests extension of the stay not only to the Families’ already-filed Prepetition Actions, but also to not-yet-filed claims against the Individual Defendants that “may” be brought by unidentified “prospective plaintiffs” and that “in any way relate to or arise out of the events of the July 4, 2025 flood with respect to” Camp Mystic (collectively, the “Non-Debtor Actions”). Debtors’ Stay-Extension Motion ¶¶ 2–3.[7]

17. On August 26, 2026, the Certain Heaven’s 27 Families filed a preliminary objection to the Debtors’ Stay-Extension Motion. Adversary Proceeding, ECF No. 6. The Certain Heaven’s 27 Families explained that “neither the Debtors nor the Eastlands ha[d] responded” to the Certain Heaven’s 27 Families’ discovery requests and that the Certain Heaven’s 27 Families would “supplement [their objection] once the Debtors comply with their discovery obligations.” *Id.* ¶ 3.

[6] On August 25, 2026, the Debtors filed their First Amended Complaint in the Adversary Proceeding. *See* Adversary Proceeding, ECF No. 5.

[7] The scope of that requested relief—extending to hypothetical claims by parties who have not yet filed suit—raises serious questions about the Court’s authority to grant such sweeping relief, an issue the Committee would address more fully in its response to the Debtors’ Stay-Extension Motion.

**D. The Committee's Efforts to Consensually Intervene**

18. In an effort to obviate the need for this Motion, counsel for the Committee approached counsel for the Certain Heaven's 27 Families and counsel for the Debtors regarding a stipulated, consensual intervention to allow the Committee to advocate for and protect the interests of unsecured creditors in the Adversary Proceeding.

19. Counsel for the Certain Heaven's 27 Families do not oppose the Committee's intervention.

20. In response to the Committee's request, counsel for the Debtors sent a draft stipulation that would have conditioned the Committee's intervention on terms that were, from the Committee's perspective, inappropriate and unworkable. The Debtors' proposed stipulation would have permitted the Committee to intervene for the "Limited Purpose" of "filing a single brief addressing the relief requested in the Stay Motion" and "attending depositions," while expressly prohibiting the Committee from "fil[ing] any supplemental brief, sur-reply, or additional papers," "assert[ing], join[ing], adopt[ing], or prosecut[ing] any claim, counterclaim, crossclaim, third-party claim, or any other cause of action," or "seek[ing] affirmative relief of any kind." The Debtors' draft further sought to bar the Committee from serving "any document request, interrogatory, request for admission, subpoena, or notice of deposition" absent the Debtors' "prior written consent." Additionally, the Debtors' proposed stipulation provided that the Committee's intervention would "terminate[] automatically, without further order, upon entry of a final order disposing of the Stay Motion." At bottom, the Debtors' stipulation would have limited the Committee's participation in the Adversary Proceeding to a single filing while granting the Debtors veto power over the Committee's discovery rights.

21. Despite good-faith efforts to negotiate mutually acceptable terms, the parties were unable to agree on the conditions under which the Committee would intervene. The Debtors'

position is that, "[s]o long as the [Committee's] motion fully complies with [Rule 24], the Debtors will not object to the motion to intervene."

22. Accordingly, the Committee now files this Motion.

**RELIEF REQUESTED**

23. The Committee seeks entry of an order authorizing the Committee to intervene in this Adversary Proceeding and setting a deadline for the Committee's response to the Debtors' Stay-Extension Motion.

**BASIS FOR RELIEF REQUESTED**

24. Under the Bankruptcy Code, a "party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Intervention rights under Section 1109 "are quite broad in keeping with the policies of the Bankruptcy Code and the prior Bankruptcy Act." *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1363 (5th Cir. 1986).

25. Although the right to "appear and be heard" does not confer "an absolute statutory right to intervene in an adversary proceeding," parties in interest like the Committee "may still intervene as of right under Rule 24(a)(2)." *Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1285, 1287 (5th Cir. 1985).

26. As explained more fully below, the Committee is entitled to intervene as of right under Rule 24(a) because (i) this Motion is timely; (ii) the Committee's constituency has an interest in the property, causes of action, and the transactions that are the subject of the Adversary Proceeding; (iii) the Committee's constituency's rights and recoveries in the Chapter 11 Cases would be negatively affected should the Court make findings of fact and conclusions of law without the Committee's involvement; and (iv) neither the Debtors nor the Certain Heaven's 27

Families can adequately represent the Committee's interests in the Adversary Proceeding as neither party is a fiduciary for unsecured creditors.

27. In the alternative, the Court should grant the Committee permissive intervention under Rule 24(b) for similar reasons and because the Committee "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

**A. The Committee is Entitled to Intervene Under Rule 24(a)(2)**

28. Rule 24(a)(2) of the Federal Rules, made applicable to this Adversary Proceeding by Rule 7024 of the Bankruptcy Rules, provides that a court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

29. To intervene as of right under Rule 24(a)(2), the Committee must show that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that is the subject of the action; (iii) the disposition of the action may, as a practical matter, impair or impede the Committee's ability to protect that interest; and (iv) the Committee's interests are not adequately represented by the existing parties. *See Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001) (*per curiam*); *In re Prescott*, 17-10199, 2019 WL 1889491, at *3 (Bankr. S.D. Tex. Apr. 26, 2019). The Committee satisfies each element.

**i. The Motion Is Timely**

30. The Fifth Circuit has identified four factors for courts to consider when determining the timeliness of a motion to intervene: (i) the length of time the intervenor knew or should have known of its interest in the case; (ii) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (iii) prejudice to the intervenor if its application for

intervention is denied; and (iv) the existence of unusual circumstances. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)). "These factors are not a formula for determining timeliness; instead, [timeliness] should be determined based on all the circumstances." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003) (internal quotation omitted). Each factor weighs decisively in the Committee's favor.

31. First, the Committee is seeking to intervene at the earliest possible juncture. The Debtors filed their complaint initiating this Adversary Proceeding just weeks ago. *See* Adversary Proceeding, ECF No. 1 (filed Aug. 5, 2026). Since that filing, the Committee has been working diligently to analyze the complex legal and factual issues implicated in this Adversary Proceeding as well as more broadly in these Chapter 11 Cases. The Adversary Proceeding remains in its infancy: no scheduling conference has been set, and no party has answered or otherwise responded to the Debtors' First Amended Complaint filed just days ago. *See* Adversary Proceeding, ECF No. 5 (filed Aug. 25, 2026); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) ("By filing their petition less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly.").

32. Second, no party can legitimately assert prejudice based on the Committee having filed this Motion at this juncture. As explained above, the Adversary Proceeding remains at the pleading stage. Allowing the Committee to intervene at this stage will not cause any delay at all, much less undue delay. *See Wagner v. Harris Cnty.*, No. 4:23-CV-02886, 2024 WL 1639910, at *4 (S.D. Tex. Apr. 15, 2024), *reconsideration denied,* No. 4:23-CV-2886, 2025 WL 950088 (S.D. Tex. Mar. 28, 2025) (finding that "intervention will not unduly delay or prejudice the existing parties" where "litigation is in its early stages.").

33. Third, should the Court deny this Motion, the Committee and its constituents face profound and irreversible prejudice. The outcome of this Adversary Proceeding—the Court's decision to either enjoin or not enjoin suits by non-debtors against non-debtors—will have a profound impact on the direction of these Chapter 11 Cases. The Debtors' unsecured creditors will be the parties who are primarily impacted by any plan confirmed in the Chapter 11 Cases, and the Committee—acting as a fiduciary for all unsecured creditors—has a unique perspective on these issues that must be heard.

34. Fourth, there are no unusual circumstances that affect the timeliness of the Committee's Motion or otherwise counsel against the Committee's intervention right. *See Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ("Federal courts should allow intervention where no one would be hurt and greater justice could be attained." (internal quotation omitted)). The balance of considerations thus weighs strongly in favor of finding the Motion timely.

**ii. The Committee Has a Significant Protectable Interest in the Subject Matter of the Adversary Proceeding**

35. In their Stay-Extension Motion, the Debtors purport to speak for creditors. The Debtors suggest that the relief they seek is "to protect the interests of the Debtors' employees, campers and their families, *creditors*, and other stakeholders by preserving the Debtors' estates," and they claim the relief they request will benefit "the Debtors' creditors as a whole." Debtors' Stay-Extension Motion ¶¶ 9, 60 (emphasis added). They assert that "[t]he centralized process under the Bankruptcy Code, overseen by the United States Trustee and other estate fiduciaries, will ensure that all stakeholders, including [the creditor Families], are treated fairly, equitably, and consistently." *Id.* ¶ 9. And they contend that extending the stay to the Individual Defendants is necessary to prevent a "deplete[ion] [of] the Debtors' assets to the detriment of the creditor body as a whole" and to ensure "equitable and meaningful returns to creditors." *Id.* ¶¶ 42, 62.

36. But it is the *Committee*—not the Debtors—that is best positioned to determine what is in the interest of unsecured creditors. The Committee has a significant protectable interest in the subject matter of the Adversary Proceeding because, unlike the Debtors, it is the fiduciary body established under the Bankruptcy Code to represent the interests and advance the goals of unsecured creditors. *See* 11 U.S.C. § 1103(c) (providing that the Committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan"); *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("The Committee has a fiduciary duty to maximize their recovery of the Estate's assets."). The Committee's members include family members of the children and counselors who lost their lives in the July 4, 2025 flood, and its constituents have a direct, substantial interest in holding the Individual Defendants accountable—a determination that will shape whether those wrongful death claims proceed or are frozen indefinitely while the Debtors' insiders shelter behind the protections of the Bankruptcy Code.

37. The Committee does not share the Debtors' view that extending the automatic stay to shield the Individual Defendants from accountability is in the best interests of the unsecured creditors. To the contrary, as the Committee will explain more fully in response to the Debtors' Stay-Extension Motion, settled Fifth Circuit precedent makes clear that the automatic stay does not extend to non-debtors, the Individual Defendants cannot satisfy the demanding "unusual circumstances" standard, and allowing the Families' direct claims against personally culpable non-debtor defendants to proceed—rather than freezing them indefinitely—will advance, not impede, the efficient administration of these Chapter 11 Cases. Respectfully, when the Debtors assert what

is best for unsecured creditors, the Court should hear from the party that Congress designated to speak on their behalf.

**iii. Disposition of the Adversary Proceeding May Impair the Committee's Interests**

38. Relatedly, without intervention, disposition of the Adversary Proceeding could impair the Committee's ability to fulfill its fiduciary duties. The issues raised in this proceeding bear directly on the Committee's constituency. If the relief the Debtors seek is granted—extending the automatic stay to the Individual Defendants or enjoining the Prepetition Actions and any new lawsuits against the Individual Defendants—the Committee's constituency would be unable to pursue their claims against individuals they allege are personally responsible for their children's deaths.

39. In turn, if the Court resolves these questions without the Committee's input, the Committee's ability to advocate for its constituency will be diminished. *See Sierra Club*, 18 F.3d at 1207 (finding that the proposed intervenor's interests could be impaired by the "precedential effect" of an adverse resolution of the underlying action); *Laredo Energy Holdings, LLC v. E&D Servs.*, No. 5:07-CV-67, 2007 WL 3342603, at *3 (S.D. Tex. Nov. 6, 2007). Before the Court resolves the issues at the heart of this Adversary Proceeding, the body assigned to be the voice of the unsecured creditors should be heard on whether that outcome serves creditors' interests.

**iv. The Committee's Interests Are Not Adequately Represented by the Existing Parties**

40. Finally, absent intervention, the Committee's interests will not be adequately represented by the existing parties. The burden of establishing inadequate representation is "minimal": it "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (internal quotation omitted). Where the would-be intervenor's "ultimate objective" differs from that of the existing

parties, inadequate representation is established. *Id.* at 1006; *see Sierra Club*, 18 F.3d at 1207–08. Here, the Committee's objectives differ from the Debtors' and diverge from the named defendant Families'.

41. The Debtors' objectives are not aligned with the Committee's. The Debtors commenced this Adversary Proceeding seeking to extend the automatic stay to the Individual Defendants and enjoin the Families' wrongful death claims against them. As the Committee has previously noted, it is concerned that this Adversary Proceeding is more in the interests of the Individual Defendants—including the Eastland family members who own the Debtors—rather than the Debtors or their estates. *See* Chapter 11 Cases, ECF No. 164 ¶ 1 ("[A]s the Debtors' recently-filed adversary proceeding seeking to extend the automatic stay to the Eastlands demonstrates, the Eastland family is willing to put their own interests ahead of the Debtors'."). The Committee's objective, by contrast, is to protect the interests of unsecured creditors.

42. This case presents a particularly clear divergence. The Individual Defendants face potential personal liability for their own conduct—their decisions, their actions, and their inaction. The Debtors appear interested in shielding the Individual Defendants from such accountability. The Committee's interest lies in ensuring that the Families can pursue accountability for that conduct and ensure that these Chapter 11 Cases actually progress. These objectives are not merely misaligned; they are opposed.

43. Nor can the named defendant Families, including the Certain Heaven's 27 Families, adequately represent the Committee's interests. Although certain Families are defendants in this proceeding, they represent only a subset of the Committee's constituency and are not fiduciaries to all unsecured creditors. That structural difference—between parties litigating their own claims and a fiduciary charged with representing a constituency—is precisely the kind of divergence that

warrants intervention. *See Sierra Club*, 18 F.3d at 1207–08. Accordingly, neither the Debtors nor the named defendant Families can adequately represent the Committee's interests. The Committee has a distinct voice—as the statutory fiduciary for unsecured creditors—that no existing party can provide. Intervention is necessary to ensure that voice is heard.

44. For all of these reasons, the Committee is entitled to intervene in this Adversary Proceeding as a matter of right under Rule 24(a)(2) of the Federal Rules. The Committee has satisfied each element for mandatory intervention, and the Court should grant this Motion.

**B. In the Alternative, the Court Should Permit Intervention Under Rule 24(b)(1)**

45. In the alternative, the Committee should be permitted to intervene under Rule 24(b) of the Federal Rules. That Rule provides, in relevant part, that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

46. If a proposed intervenor timely files a motion and "there is a common question of law or fact, the requirement of the rule has been met and then it is within the Court's discretion to allow or refuse intervention." *In re Charter Co.*, 50 B.R. 57, 63 (Bankr. W.D. Tex. 1985). In exercising its discretion under Rule 24(b), the only consideration that the Court must undertake is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see also, e.g.*, *Charter*, 50 B.R. at 63. The Court may also consider "'whether the intervenors' interests are adequately represented by other parties and whether they will significantly contribute to full development of the underlying factual issues in the suit.'" *In re Smith*, 521 B.R. 767, 778 (Bankr. S.D. Tex. 2014) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984)).

47. Bankruptcy courts regularly permit unsecured creditors' committees to intervene in adversary proceedings "on behalf of any creditors who may feel that the debtor-in-possession

would not adequately represent their interests." *In re D'Lites of Am., Inc.*, 100 B.R. 612, 614 (Bankr. N.D. Ga. 1989); *see also, e.g.*, *In re Babcock & Wilcox Co.*, 274 B.R. 230, 233 (Bankr. E.D. La. 2002) ("The Official Committee of Unsecured Creditors filed a motion to intervene, which was granted by order of June 4, 2001."); *In re Devault Mfg. Co.*, 4 B.R. 382, 388 (Bankr. E.D. Pa. 1980).

48. This Court should do so here as well. The Committee easily satisfies the standard for permissive intervention because (i) it has filed a timely motion, (ii) the Committee has claims that share common questions of law and fact with those that will be addressed in this Adversary Proceeding, and (iii) intervention will not unduly delay or prejudice the adjudication of the parties in the proceeding.

**i. The Motion Is Timely**

49. First, for the reasons stated above, this Motion is timely. *See supra* ¶¶ 30–34. The Committee is seeking to intervene at the earliest possible juncture—and at a time when the Adversary Proceeding remains in its infancy, avoiding any risk that the Committee's intervention would prejudice the parties to the proceeding.

**ii. The Committee Has Claims That Share Common Questions of Law and Fact with the Parties to the Adversary Proceeding**

50. The Adversary Proceeding concerns whether the automatic stay should be extended to the Individual Defendants. The Committee, as the statutory fiduciary for unsecured creditors, has a significant interest in the questions of law and fact that will govern the outcome of this proceeding. *See* 11 U.S.C. § 1103(c).

51. The Debtors' Motion asks this Court to determine, among other things: (i) whether the automatic stay applies to the Individual Defendants under Section 362(a)(1) or Section 362(a)(3); (ii) whether "unusual circumstances" justify extending the stay to non-debtor

defendants; (iii) whether there is an "identity of interest" between the Debtors and the Individual Defendants; and (iv) whether the Debtors are entitled to a preliminary injunction under Section 105 of the Bankruptcy Code. *See generally* Adversary Proceeding, ECF No. 2. Each of these questions directly concerns the rights and interests of the Committee's constituency.

52. The Committee's participation is warranted here because the Debtors seek the extraordinary remedy of extending the automatic stay to non-debtor parties. As discussed above, the Debtors assert that this relief is in the best interests of creditors. *See supra* ¶ 35. The Committee—as the statutory fiduciary for unsecured creditors—disagrees and has a perspective on that issue that no other party can provide. *See supra* ¶¶ 36–37. Accordingly, the Committee's involvement will contribute to the full development of the factual and legal issues before the Court.

**iii. Committee Intervention Will Not Unduly Delay or Prejudice the Adjudication of the Parties' Rights**

53. Finally, as explained above, the Adversary Proceeding remains in its very early stages: no schedule has been set and no answer to the Debtors' complaint has been filed. *See supra* ¶¶ 31–32. Allowing the Committee to intervene at this stage will not cause any delay, much less undue delay, or prejudice to the adjudication of the parties' rights. *See, e.g.*, *Wagner v. Harris Cnty.*, No. 4:23-CV-02886, 2024 WL 1639910, at *4 (S.D. Tex. Apr. 15, 2024), *reconsideration denied,* No. 4:23-CV-2886, 2025 WL 950088 (S.D. Tex. Mar. 28, 2025). Furthermore, should the Court permit intervention, the Committee will coordinate with the other parties to avoid duplication of effort.

54. For the foregoing reasons, as well as those described above in connection with the explanation for why the Committee is entitled to intervene under Rule 24(a), *see supra* ¶¶ 28–44, if the Court determines that the Committee is not entitled to intervene as a matter of right, it should nonetheless grant the Committee permissive intervention under Federal Rule 24(b).

**PROPOSED RESPONSE TO AMENDED COMPLAINT**

55. Attached hereto as Exhibit A is a proposed response to the Amended Complaint, substantially in the form of which the Committee would intend to file on or before any deadline for responding to the Amended Complaint established by the Court. The Committee does not believe it is required to respond to the Amended Complaint, given that none of the allegations in the Amended Complaint are directed at the Committee and that the Committee is not seeking to intervene as a defendant in the Adversary Proceeding. Nonetheless, to minimize disputes and in light of the Debtors' insistence that the Committee "comply with Rule 24," the Committee has attached a proposed response to the Amended Complaint out of an abundance of caution.

**BASIS FOR EXPEDITED REQUEST**

56. The Committee understands that counsel for the Certain Heaven's 27 Families are negotiating a discovery timeline with the Debtors and that the Certain Heaven's 27 Families have sought to take the depositions of corporate representatives of the Debtors. The Committee further understands that the Debtors and Certain Heaven's 27 Families are negotiating a timeline for resolution of the Debtors' Stay-Extension Motion and that the Certain Heaven's 27 Families intend to file a supplemental objection to the Debtors' motion after the Debtors have responded to the Certain Heaven's 27 Families' discovery in the Adversary Proceeding.

57. The Committee requests that the Court rule on this request on an expedited basis, by no later than Friday, September 4, 2026, so that the Committee can participate without the need for duplicative discovery or depositions by the Committee.

58. Moreover, the Committee requests that the Court set a deadline for the Committee to file its answer to the Amended Complaint and response to the Debtors' Stay-Extension Motion that is the later of (a) seven days after this Court grants intervention, or (b) the date the Certain

Heaven's 27 Families must file their answer to the Amended Complaint and supplemental objection to the Debtors' Stay-Extension Motion.

**CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially similar in form to that attached hereto, (i) granting the Motion; (ii) allowing the Committee to intervene in the Adversary Proceeding as of right under Rule 24(a) of the Federal Rules, or, in the alternative, granting permissive intervention under Rule 24(b) of the Federal Rules; (iii) setting a deadline for the Committee to file its response to the Debtors' Stay-Extension Motion that is the later of (a) seven days after the Court grants intervention, or (b) the date the Certain Heaven's 27 Families file their supplemental objection to the Debtors' Stay-Extension Motion; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ *Jennifer J. Hardy*
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Facsimile: 713-510-1799
Email: jhardy2@willkie.com

**AND**

Brett H. Miller (*pro hac vice*)
Hon. Shelley C. Chapman (Ret.) (*pro hac vice*)
James H. Burbage (*pro hac vice*)
Gabrielle Antonello (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019

Telephone: 212-728-8000
Facsimile: 212-728-8111
Email: bmiller@willkie.com
schapman@willkie.com
jburbage@willkie.com
gantonello@willkie.com

**AND**

Christopher DiPompeo (*pro hac vice*)
Justin D. Rattey (*pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006
Telephone: 202-303-1000
Facsimile: 202-303-2000
Email: cdipompeo@willkie.com
jrattey@willkie.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I certify that on August 31, 2026, a true and correct copy of the foregoing and the attached exhibit were served on all parties registered to receive electronic notice of filings in this Adversary Proceeding via this Court's ECF notification system.

/s/ *Jennifer J. Hardy*
Jennifer J. Hardy