**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAMP MYSTIC, LLC, *et al.*,[1] | Case No. 26-90621 (CML) |
| Debtors. | (Jointly Administered) |
| CAMP MYSTIC, LLC, *et al.*, | |
| Plaintiff, | Adv. Pro. No. 26-03604 |
| v. | |
| THOSE PARTIES LISTED ON APPENDIX A, | |
| Defendants. | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING INTERVENTION IN ADVERSARY PROCEEDING**

The Official Committee of Unsecured Creditors (the "Committee") of Camp Mystic, LLC and Camp Mystic, LLC's debtor affiliates in the above-captioned Chapter 11 cases (collectively, the "Debtors" in the "Chapter 11 Cases"), by and through its undersigned counsel, hereby files this reply in support of its motion to intervene in the above-captioned adversary proceeding (the "Adversary Proceeding"). The Committee seeks intervention pursuant to Sections 105(a) and 1109(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 24 of the Federal

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is 2689 Highway 39, Hunt, TX 78024.

Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and in support thereof, respectfully represents as follows:

**INTRODUCTION**

1. During the first three months of these Chapter 11 Cases, the most significant motion the Debtors filed was their motion to extend the automatic stay to their non-debtor insiders in this Adversary Proceeding. There is no question that the extension of the automatic stay to the Debtors' insiders—along with the other stay-related matters being heard at the same time—are fundamental issues that will dictate the path these Chapter 11 Cases will take. And yet, for some reason, the Debtors are seeking to block the Committee from participating in what they acknowledge is a central dispute in the cases—one that they assert is necessary to protect "creditors as a whole." The Debtors' unusual decision to contest the Committee's ability to fully participate and be heard on the stay-extension motion is out of step with common practice. The Committee is not aware of a single case in which a creditors' committee was denied intervention in an adversary proceeding to extend the automatic stay to non-debtors. Rather, debtors seeking this relief invariably take the easy and obvious path—consenting to intervention so the Committee can be fully heard on the significant question of extending the automatic stay. And there is a good reason for that: when debtors claim they are acting to protect the interests of creditors, the Committee should be allowed to share its perspective.

2. The Committee seeks only what is necessary to fulfill its fiduciary duties: access to discovery materials, the ability to participate in depositions, and the opportunity to be fully heard on the issues raised in the Adversary Proceeding. The Debtors' objection to the Committee's Motion (the "Debtors' Opposition," ECF No. 14) would preclude that, preventing the Committee

from presenting its unique perspective to the Court.[2] And the Debtors' fallback position—permitting the Committee to file one brief as *amicus curiae*—would be a half-measure. Under that proposal, the Committee could not participate in discovery, examine witnesses at depositions or the hearing, or present argument at the hearing. The Debtors' proposal would shut the Committee out of all discovery currently ongoing for the October 9 hearing, and would require the Committee to sit out of major portions of the hearing before the Court. That is both unworkable and unnecessary.

3. As the central bases for their opposition, the Debtors contend that (i) intervention of right is not appropriate because the Committee's interests are adequately represented by the state court plaintiffs, (ii) permissive intervention is not justified because the Committee lacks a "claim or defense" in common with this action, and (iii) the Committee "tenders no pleading under Rule 24(c)." Debtors' Opposition ¶ 3. As explained more fully below, each of these arguments fails. First, the Committee, as an estate fiduciary and statutory representative of all unsecured creditors, has a clear interest in whether the Court extends the automatic stay to non-debtor insiders. It is inappropriate to ask or expect the state court plaintiffs to fulfill the Committee's role representing the interests of the estate and all unsecured creditors in this adversary proceeding. Second, the Committee has clearly articulated, both in its Motion and in the proposed answer attached to the Motion, the "claims and defenses" it intends to pursue if allowed to intervene, which all go directly to the issues raised in the Amended Complaint and the stay extension motion. And third, the proposed answer attached to the Motion clearly satisfies Rule 24(c), which, in any

[2] Capitalized terms not defined in this filing should be given the meaning ascribed to those terms in the Committee's motion to intervene (the "Motion"). Adversary Proceeding, ECF No. 11.

event, the Fifth Circuit has repeatedly emphasized is not an independent basis for denying intervention.

4. Finally, and more broadly, the Committee is deeply disappointed by the antagonism toward the Committee the Debtors have shown in the early stages of these cases. Allowing the Committee to intervene and be heard on one of the central issues in these cases should have been an easy decision for the Debtors. It was also an opportunity for the Debtors to gain some early goodwill with the Committee. Instead, the Debtors chose the path of *maximum* resistance—proposing to allow intervention only on unreasonably restrictive terms, forcing the Committee to draft and file the Motion, and opposing the motion after repeatedly suggesting they would not do so. The Debtors' inability to work constructively with the Committee on the easiest issues in the case does not bode well for their ability to work with the Committee on the more difficult ones. And, unfortunately, resistance to the Committee's efforts to fulfill its statutory duty has become a pattern—it also includes, among other things, a series of delays in turning over diligence information, resistance to discovery regarding the tragedy that led to the Chapter 11 Cases, and a failure to consult with the Committee about potential candidates to be the Debtors' proposed independent directors. The Committee has an important role to play in these Chapter 11 Cases, and it is well past time for the Debtors to begin to understand that in order for these Chapter 11 Cases to progress, the Debtors will need to work cooperatively with the Committee, not against it.

## ARGUMENT

### A. Intervention as of Right is Appropriate Because the Committee Has an Interest in the Adversary Proceeding that Cannot be Represented by the Existing Parties

5. The Debtors repeatedly admit that the Adversary Proceeding will affect unsecured creditors. *See, e.g.*, Debtors' Stay-Extension Motion ¶ 42 ("The Debtors' indemnity obligations would deplete the Debtors' assets to the detriment of the creditor body as a whole."); ¶ 57 ("Absent

the requested injunction, the prosecution of the Claims would result in losses to the Debtors' estates and, in turn, the Debtor's [*sic*] creditors as a whole."); ¶ 60 ("Furthermore, as discussed above, the Debtors' creditors as a whole are benefitted by the injunction requested . . . ."); ¶ 62 ("Without the requested preliminary injunction, piecemeal litigation of the Claims outside of this Court would . . . significantly challenge the Debtors' ability to confirm a chapter 11 plan that provides equitable and meaningful returns to creditors."); Debtors' Opposition ¶ 22 ("The automatic stay serves to assist the debtor in protecting its assets by providing temporary relief from creditors and allowing for all creditors to be at the same table by filing proofs of claim, forestalling a race to the courthouse."); ¶ 23 ("Each purpose benefits creditors[.]").

6. Yet the Debtors assert that the Committee has no interest in the Adversary Proceeding and that the Families "adequately represent the Committee's stated objective." Debtors' Opposition ¶¶ 14–15.

7. The Debtors cannot have it both ways: they cannot invoke creditors' interests to justify extraordinary relief while simultaneously barring the Committee from the proceeding in which those interests are squarely at stake. Because the Adversary Proceeding will directly affect estate assets and creditors' recoveries, the Committee has a significant protectable interest in its outcome. *E.g.*, *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) ("The Committee has a fiduciary duty to maximize their recovery of the Estate's assets.").

8. Indeed, the Debtors later acknowledge "the Committee's status as fiduciary for 'all unsecured creditors'" but suggest the problem is that the Motion "does not mention" unsecured creditors beyond the Families—such as "deposit holder camper families," "employees," and "vendors." Debtors' Opposition ¶ 20. And the Debtors likewise suggest that the Committee's Motion fails to address "the differences among the estates" of the four Debtor entities. *Id.*

9. Setting aside that it is not the Committee's burden on a motion to intervene to explain how the Stay-Extension Motion will affect each of the Debtors and their constituencies, the result of the Adversary Proceeding will fundamentally affect the trajectory of the Chapter 11 Cases and affect *all* unsecured creditors, including the Families and those creditors listed in the Debtors' Opposition, as well as *each* of the four Debtor entities.

10. In fact, the complexity of the Debtor entities, and the differences among the various groups of creditors, is a reason to support the Committee's intervention, not oppose it. Neither the Debtors nor the named defendant Families can adequately represent the Committee's interests. The Debtors attempt to minimize (*Id.* ¶ 15) the "structural difference" between the *Families*, who are necessarily focused on litigating their individual claims against the Debtors and the Individual Defendants, and the *Committee*, which, as an estate fiduciary, is focused on advancing the Chapter 11 Cases to a resolution that benefits unsecured creditors. That structural difference comes even more starkly into view against the backdrop of the multiplicity of debtors and creditors.

11. At bottom, the Committee more than satisfies the "minimal" burden of establishing inadequate representation by the existing parties. *See* Motion ¶¶ 40–44 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)). The Committee has a distinct voice—as the statutory fiduciary for unsecured creditors—that no existing party can provide. Intervention as of right under Rule 24(a)(2) is necessary to ensure that voice is heard.

**B. Permissive Intervention Under Rule 24(b) is Justified**

12. Next, the Debtors argue that permissive intervention is inappropriate because the Committee does not have a "claim or defense" to litigate, and because the Committee's participation will cause delay. Debtors' Opposition ¶ 16–17. Both arguments fail.

13. For one, the Debtors misunderstand the point of Rule 24(b)(1)'s requirement that an intervenor have a "claim or defense that shares with the main action a common question of law

or fact." Fed. R. Civ. P. 24(b)(1)(B). In the Fifth Circuit, that "portion of Rule 24(b)(2) has been construed liberally." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006); *see SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940) ("This provision [Rule 24(b)(2)] plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."). A party has a "claim" if it has "an 'interest or remedy recognized at law.'" *United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 577 (5th Cir. 2023) (quoting *Claim*, Black's Law Dictionary (11th ed. 2019)).

14. Here, the Committee clearly has an "interest . . . recognized at law." *Id.* (quotation omitted). As explained above and in the Motion, that interest is in the protection of unsecured creditors—whose interests the Debtors admit are implicated by the Adversary Proceeding—and in advancing these Chapter 11 Cases. The proposed answer attached to the Motion reinforces that interest and asks the Court to deny "all the relief requested in the Amended Complaint by the Debtors with prejudice." Adversary Proceeding, ECF No. 11-1 at 11.

15. The Debtors' suggestion that the Committee should not be allowed to intervene because it is not a defendant is hyper-technical. *See* Debtors' Opposition ¶ 16. The Fifth Circuit has repeatedly endorsed intervention by parties who are "not a defendant" (Debtors' Opposition ¶ 16)—such as parties seeking to intervene to "investigat[e] alleged audit failures," *Newby*, 443 F.3d at 422, to challenge a protective order, or to challenge the sealing of records, *see Team Fin., L.L.C.*, 80 F.4th at 577 (citing *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979)). The answer should be no different here. In any event, the Committee does not intend to stand on ceremony. Although the Committee believes it does not need to intervene as either a plaintiff or a defendant, to the extent the Court disagrees, the Committee can intervene as a defendant and has already submitted its proposed answer to the Amended Complaint.

16. Next, the Debtors suggest that allowing the Committee to intervene will cause delay because "[t]he Committee is pressing for discovery aimed, in the Debtors' view, at other litigation." Debtors' Opposition ¶ 17. This makes no sense. The Committee has repeatedly told the Debtors that, if allowed to intervene, it does not intend to propound additional discovery. The Committee is content to rely on the discovery requests already made by the Certain Heaven's 27 Families. The Committee simply wants access to the documents being produced in response to the Certain Heaven's 27 Families' document requests, and to be able to participate in the depositions currently scheduled to take place. Indeed, prior to filing the Motion, the Committee proposed a stipulation that would have allowed the Committee to intervene but required the Committee to coordinate with the parties to avoid delays and duplication of efforts, and the Committee remains willing to abide by those commitments. There will be no delay from the Committee's intervention.

17. Under the circumstances, and for the reasons given in the Committee's Motion, granting permissive intervention is therefore well "within the Court's discretion." Motion ¶ 46 (quoting *In re Charter Co.*, 50 B.R. 57, 63 (Bankr. W.D. Tex. 1985)).

**C. The Committee's Motion Complies With Rule 24(c)**

18. The Debtors next assert that the Committee "tenders no pleading under Rule 24(c), and instead attaches a proposed answer while disclaiming defendant status." Debtors' Opposition ¶ 3. They argue that the Motion therefore does not comply with Rule 24(c) and must be denied. The Debtors are wrong.

19. As an initial matter, the Committee's Motion clearly satisfies Rule 24(c). Rule 24(c) requires a "pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). The Committee attached to its Motion a proposed answer to the Amended Complaint that, paragraph by paragraph, admits, denies, or disclaims knowledge about each of the Amended Complaint's allegations. With respect to the "Claims for Relief" in the Amended Complaint, the

proposed answer denies the central allegations in Count I (that section 362(a)(1) applies to the state court litigation), Count II (that section 362(a)(3) applies), and Count III (that the circumstances justify an injunction of the state court action under section 105(a)). Adversary Proceeding, ECF No. 11-1 ¶¶ 30–49. And at the end of the pleading, the proposed answer seeks denial of all relief asserted in the Adversary Proceeding with prejudice. *Id.* at 11. There can be no question that this pleading makes clear the claims and defenses of the Committee if allowed to intervene.

20. In any event, it is well settled in the Fifth Circuit that "[t]he failure to comply with Rule 24(c) is not a sufficient basis to deny the motion to intervene." *Liberty Surplus Ins. Companies v. Slick Willies of Am., Inc.*, No. CIV.A. H-07-0706, 2007 WL 2330294, at *2 (S.D. Tex. Aug. 15, 2007) (permitting intervention where movant failed to submit a proposed complaint in intervention); *Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1074 (5th Cir. 1980) (refusing to deny intervention where there was no formal petition to intervene because the Federal Rules disclaim the need for "technical forms of pleadings or motions" and require "[a]ll pleadings [to] be so construed as to do substantial justice."); *The Aransas Project v. Shaw*, No. CIVA C-10-75, 2010 WL 2522415, at *7 (S.D. Tex. June 17, 2010) (finding sufficient for purposes of Rule 24(c) intervenor's assertion that "it is prepared to file all required documents promptly after entry of an order allowing its intervention."); *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00235-JRG, 2017 WL 6059303, at *7 (E.D. Tex. Dec. 7, 2017) (observing the Fifth Circuit's "permissive interpretation of Rule 24(c)" and declining to preclude intervention based on the intervenor's failure to file a proposed answer); *see also City Bank v. Compass Bank*, 2010 WL 1424275, at *7 (W.D. Tex. Apr. 6, 2010) ("[T]he Court adopts a 'lenient approach' to this issue,

finding that it can resolve the basic question of Miller's standing to intervene, given the present record, and have the required Rule 24(c) pleadings filed at a later time.").

21. Where an intervenor puts the parties on notice of its grounds for intervention, technical adherence to Rule 24(c) may be disregarded. *Liberty Surplus Ins. Companies*, No. CIV.A. H-07-0706, 2007 WL 2330294, at *2. Here, as the Debtors acknowledge, the Committee attached a proposed answer to its motion to intervene, thereby satisfying its obligation under Rule 24(c) and putting the Debtors on notice of the Committee's positions. *See U.S. Bank Tr. Nat'l Ass'n v. Kingman Holdings LLC*, No. 4:23-CV-597-ALM-KPJ, 2024 WL 818337, at *2 n.3 (E.D. Tex. Feb. 26, 2024); *Siesta Vill. Mkt., LLC v. Perry*, No. 3:06-CV-0585-D, 2006 WL 1880524, at *2 (N.D. Tex. July 7, 2006). The Committee admitted, for example, that certain of the factual allegations made by the Debtors were accurate (*id.* ¶¶ 17–18, 25), while denying others (*see, e.g.*, *id.* ¶ 4 (denying that "[t]he relief requested in this adversary proceeding is necessary and appropriate" and that actions "against the Individual Defendants during these Chapter 11 Cases will prejudice the Debtors and their estates in multiple ways").

22. The Debtors' Opposition confirms that they understand the Committee's positions regarding their Stay-Extension Motion. There can be no claim of surprise about the positions the Committee is likely to take, or the role the Committee will seek to fulfill in the Adversary Proceeding. There is therefore no basis to deny the Motion under Rule 24(c).

### D. The Debtors' "One Brief" Alternative to Intervention is Untenable

23. The Debtors request, in the alternative, that the Committee be limited to "fil[ing] one amicus brief on the Stay Extension Motion by September 25, 2026" and that the Committee's "amicus role terminate[] on entry of a final order on the Stay Motions." Debtors' Opposition ¶ 26. In effect, the Debtors are reverting to the draft stipulation under which they endeavored to constrain the Committee's intervention. *See* Motion ¶¶ 20–21.

24. The Debtors' one-brief alternative is unworkable for several reasons.

25. ***First***, such a limitation would impair the Committee's ability to advocate for unsecured creditors. As explained above (and acknowledged repeatedly by the Debtors), the Adversary Proceeding will affect estate assets and creditors' recoveries. The Committee—the statutory fiduciary for unsecured creditors—has a significant protectable interest in its outcome. It is premature to assume one brief will suffice; that arbitrary cap is incompatible with the Committee's fiduciary obligations and the evolving needs of this proceeding.[3]

26. ***Second***, the Debtors' one-brief proposal would limit the Committee's ability to participate in discovery in the Adversary Proceeding and to present argument on the Debtors' Stay-Extension Motion at the October 9 hearing. To be clear: the Committee has already agreed "to comply with the Schedule" in the Adversary Proceeding. Adversary Proceeding, ECF No. 10 ¶ 1. And the Committee has no current plan to serve discovery requests on any party in the

---

[3] The Debtors contend that the Committee can be heard on the questions raised in the Adversary Proceeding via motions pending in the main bankruptcy case. According to them, the Committee will be able to address "the question, before the same judge, at the same hearing." Debtors' Opposition ¶ 12. But that point counsels *in favor of* intervention, not against it. If the "question" is asked in the main bankruptcy case and in the Adversary Proceeding, it makes little sense to constrain the Committee's ability to respond in the latter. Rather, intervention in the Adversary Proceeding will facilitate a consistent treatment of the "question" across the different motions.

proceedings.[4] The Committee should nonetheless have access to discovery materials produced by any party, an opportunity to participate in depositions, an opportunity to cross-examine witnesses at the hearing, and an opportunity to present its views in oral argument on the Stay-Extension Motion. Such participation would not materially delay the Adversary Proceeding and would give the Court a fully informed perspective on issues affecting creditors and the estate.

27. ***Third***, the Adversary Proceeding is on an expedited timeline. Discovery will be completed in a matter of weeks, and the Debtors' Stay-Extension Motion is scheduled to be resolved in approximately one month, on October 9, 2026. *See* Adversary Proceeding, ECF No. 10 ¶ 4. That expedited schedule—upon which the Committee premised the emergency relief requested in its Motion, ¶¶ 56–57—would not accommodate *seriatim* requests by the Committee to participate in discovery or depositions, or to file additional briefs beyond the "one brief" contemplated by the Debtors, should the Committee later determine that such actions are necessary to protect its constituents.

28. In short, the Debtors' one-brief proposal is untenable. The Court should reject it and authorize the Committee's full intervention in the Adversary Proceeding.

**CONCLUSION**

29. The Committee's intervention and participation in the Adversary Proceeding will meaningfully contribute to resolution of the proceeding and advancement of the Chapter 11 Cases. For the foregoing reasons, and for the reasons contained in the Committee's Motion, the

---

[4] The Debtors wrongly suggest that the Committee has served discovery in connection with the Adversary Proceeding. *See* Debtors' Opposition ¶ 17. The Committee is negotiating the Debtors' production in response to diligence requests and draft Rule 2004 discovery requests in the main bankruptcy case. The Committee has not served any discovery requests in the Adversary Proceeding.

Committee respectfully requests that the Court grant the Motion and enter an order substantially similar in form to that attached to the Committee's Motion.

Dated: September 8, 2026

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ *Jennifer J. Hardy*
Jennifer J. Hardy (Texas Bar No. 24096068)
600 Travis Street
Houston, Texas 77002
Telephone: 713-510-1700
Facsimile: 713-510-1799
Email: jhardy2@willkie.com

**AND**

Brett H. Miller (*pro hac vice*)
Hon. Shelley C. Chapman (Ret.) (*pro hac vice*)
James H. Burbage (*pro hac vice*)
Gabrielle Antonello (*pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Facsimile: 212-728-8111
Email: bmiller@willkie.com
schapman@willkie.com
jburbage@willkie.com
gantonello@willkie.com

**AND**

Christopher DiPompeo (*pro hac vice*)
Justin D. Rattey (*pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006
Telephone: 202-303-1000
Facsimile: 202-303-2000
Email: cdipompeo@willkie.com
jrattey@willkie.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I certify that on September 8, 2026, a true and correct copy of the foregoing was served on all parties registered to receive electronic notice of filings in this Adversary Proceeding via this Court's ECF notification system.

/s/ *Jennifer J. Hardy*
Jennifer J. Hardy