**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CAMP MYSTIC, LLC, *et al.*, | ) | Case No. 26-90621 (CML) |
| Debtors.[1] | ) | (Jointly Administered) |
| CAMP MYSTIC, LLC, *et al.*, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 26-03604 |
| THOSE PARTIES LISTED ON APPENDIX A AND JOHN AND JANE DOES 1-1000, | ) | |
| Defendants. | ) | |

**CERTAIN HEAVEN'S 27 FAMILIES' SUPPLEMENTAL OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) DECLARING THAT THE AUTOMATIC STAY PROHIBITS CERTAIN ACTIONS AGAINST NON-DEBTORS OR (B) PRELIMINARILY ENJOINING SUCH ACTIONS**

Certain Heaven's 27 Families (the "Families"),[2] for their supplemental objection to the *Debtors' Motion for Entry of an Order (A) Declaring that the Automatic Stay Prohibits Certain*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Camp Mystic, LLC (4064), Natural Fountains Properties, Inc. (1414), Mystic Camps Family Partnership, Ltd. (9861), and Mystic Camps Management, LLC (9688). The location of the Debtors' service address for purposes of these chapter 11 cases is: 2689 Highway 39, Hunt, TX 78024.

[2] The Families include: the Baker Family; the Bellows Family; the Bonner Family; the Childress Family; the DeWitt Family; the Dillon Family; the Ferruzzo Family; the Getten Family; the Hanna Family; the Hollis Family; the Hunt Family; the Jacobe Family; the Landry Family; the Lytal Family; the Marsh Family; the McCown Family; the McCrory Family; the Naylor Family; the Peck Family; the Pohl Family; the Sheedy Family; the Stevens Family; the Steward Family; and the Toranzo Family. The Baker and Marsh Families did not commence lawsuits prepetition and, thus, were not initially included in Appendix A to the Original Complaint. The Debtors added them through the First Amended Complaint [Docket No. 5].

*Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions* [Docket No. 2] (the "Motion"), respectfully represent as follows:[3]

## Preliminary Statement

1. On August 26, 2026, the Families filed their Preliminary Objection, which expressly reserved the Families' right to supplement once the Debtors responded to the Families' outstanding discovery requests. The Debtors have now produced documents in discovery that confirm what the Families argued in the Preliminary Objection: the indemnification provisions the Debtors rely upon to justify extending the automatic stay to the Individual Defendants are anything but absolute. Every purported indemnity either (a) expressly excludes the type of conduct alleged by the Families (gross negligence and willful misconduct), (b) is limited to claims unrelated to the Families' tort claims, or (c) does not exist as a contractual matter. The Debtors therefore cannot establish the "actual identity of interests" required to extend the stay to the Individual Defendants.

## Argument

### I. The Debtors' Document Production Does Not Support Extension of the Stay to the Individual Defendants.

2. As detailed in the Preliminary Objection, the Debtors identified four purported sources of indemnification to justify extending the automatic stay to the Individual Defendants: (1) the operating agreements for Camp Mystic, LLC and Mystic Camps Management, LLC; (2) the governing documents for Mystic Camps Family Partnership, Ltd.; (3) the Texas Business Organizations Code; and (4) the ground and building lease between Camp Mystic, LLC and Natural Fountains Properties, Inc. The Families challenged each of these sources as inadequate to

[3] This objection supplements the *Certain Heaven's 27 Families' Preliminary Objection to Debtors' Motion for Entry of an Order (A) Declaring that the Automatic Stay Prohibits Certain Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions* [Adv. Pro. Docket No. 6] (the "Preliminary Objection"). The Families incorporate by reference the Preliminary Objection as though fully set forth herein. Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Preliminary Objection.

establish an "actual identity of interests." The Debtors' document production has now confirmed that the Families were right.

**A. The Camp Mystic, LLC and Mystic Camps Management, LLC Operating Agreement Indemnities Expressly Exclude Gross Negligence and Willful Misconduct.**

3. The Amended & Restated Company Agreement of Camp Mystic, LLC (effective February 1, 2023) provides at Section 14:[4]

> 14. Indemnification. The Company must indemnify, defend, protect, and hold harmless the Managers, Members, and officer (each, an "Indemnified Person") from and against all actions, suits or proceedings (collectively, "Proceedings"), and all other claims, demands, losses, damages, liabilities, judgments, awards, penalties, fines, settlements, costs and expenses (including court costs and reasonable attorneys' fees), arising out of the management of the Company or such Indemnified Person's service as the governing authority of the Company. **THIS INDEMNITY WILL APPLY TO MATTERS THAT ARISE OUT OF THE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR RESPONSIBILITY BY THE INDEMNIFIED PERSON; PROVIDED, HOWEVER, THAT THIS INDEMNITY WILL NOT APPLY TO MATTERS ARISING OUT OF THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR BREACH OF THIS AGREEMENT BY ANY INDEMNIFIED PERSON.**

4. The First Amended & Restated Company Agreement of Mystic Camps Management, LLC (effective February 15, 2023) and the Second Amended & Restated Company Agreement (effective October 31, 2023) contain materially identical indemnification provisions with the same exclusions for gross negligence, willful misconduct, and breach of the agreement.[5]

5. The Families' tort claims arise from the July 4, 2025 flood and allege, among other things, gross negligence, willful misconduct, and reckless conduct by the Individual Defendants. These claims fall squarely within the exclusions. The indemnification provisions are therefore inapplicable to the Families' claims and cannot establish the "actual identity of interests" required for stay extension. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (limiting

---

[4] *See* **Exhibit A** (26-90621_DEBTORS_002638).

[5] *See* **Exhibit B** (26-90621_DEBTORS_002679); **Exhibit C** (26-90621_DEBTORS_00029352).

the unusual circumstances exception to the rare case where the non-debtor is entitled to *absolute* indemnification from the debtor).

6. Additionally, the Camp Mystic, LLC company agreement provides that a Manager ceases to serve immediately upon "[g]ross negligence or willful misconduct in the performance of his/her/its duties as a Manager."[6] The very organizational documents the Debtors rely upon thus contemplate that the indemnified persons may engage in the precise conduct that would strip them of both their managerial authority *and* their indemnification protection.

### B. The Family Partnership Indemnity Is Limited to Claims Arising from Status as a Limited Partner.

7. The Second Amended & Restated Limited Partnership Agreement of Mystic Camps Family Partnership, Ltd. (effective October 31, 2023) provides:[7]

> Except as otherwise provided by applicable law, Limited Partners shall be liable for Capital Contributions but shall not be required to lend or otherwise advance any funds to the Partnership. The Partnership shall indemnify, to the extent of the Partnership assets, each Limited Partner against any claims of liability asserted against him/her/it solely because he/she/it is a Limited Partner.

8. This indemnity is (i) limited to claims arising solely because of one's status as a Limited Partner; (ii) capped at the extent of Partnership assets; and (iii) wholly unrelated to the Families' claims. The Families are suing the Individual Defendants for their direct tortious conduct in connection with the July 4, 2025 flood—their roles as camp directors, officers, and managers—not because they happen to be limited partners. This indemnity is entirely inapplicable and cannot support stay extension.

---

[6] *See* **Exhibit A** (26-90621_DEBTORS_002638).

[7] *See* **Exhibit D** (26-90621_DEBTORS_019973).

### C. No Contractual Indemnity Exists for Directors and Officers of Natural Fountains Properties, Inc.

9. As the Preliminary Objection noted, the Debtors made "sweeping statements about the Texas Business Organizations Code affording permissive or mandatory indemnification to officers of Natural Fountains Properties, Inc. without citing any specific statutory provisions that would apply to the Families' claims." Preliminary Objection ¶ 11(c). The document production now confirms that *no* operative contractual indemnification provision for NFP's directors and officers exists:

a. The 2023 Amended & Restated Bylaws of Natural Fountains Properties, Inc. do not contain an indemnification provision for directors and officers;[8] and

b. The 2012 Certificate of Amendment to the Articles of Incorporation added Article Thirteen, which concerns director *exculpation* (limiting personal liability for monetary damages in certain circumstances)—*not* indemnification.[9]

10. On the face of the Debtors' own production, there is no contractual indemnification for the directors and officers of Natural Fountains Properties, Inc. The Debtors' vague reliance on the Texas Business Organizations Code cannot substitute for the contractual indemnification required to establish an "actual identity of interests." Statutory indemnification under the TBOC is subject to conditions (good faith, reasonable belief, no unlawful conduct) and does not provide the absolute protection required for stay extension. *See A.H. Robins*, 788 F.2d at 999.

---

[8] *See* **Exhibit E** (26-90621_DEBTORS_019942). [redacted]

[9] *See* **Exhibit G** (26-90621_DEBTORS_002689).

## D. The Lease Expressly Carves Out Gross Negligence and Willful Misconduct.

11. The 2019 Lease Agreement between Natural Fountains Properties, Inc. (Landlord) and Camp Mystic, Inc. (Tenant), effective January 1, 2019, contains a Release and Indemnity provision in Section 12. The lease defines "Landlord Parties" broadly to include the Landlord and "any of its owners, joint venturers, members, managers, officers, shareholders, directors, partners, agents, representatives and employees." The provision states:[10]

> 12. RELEASE AND INDEMNITY: AS MATERIAL CONSIDERATION TO LANDLORD, TENANT AGREES THAT NEITHER LANDLORD NOR ANY OF ITS OWNERS, JOINT VENTURERS, MEMBERS, MANAGERS, OFFICERS, SHAREHOLDERS, DIRECTORS, PARTNERS, AGENTS, REPRESENTATIVES AND EMPLOYEES (COLLECTIVELY, THE "LANDLORD PARTIES") SHALL BE LIABLE TO TENANT FOR ANY DAMAGES TO TENANT OR TENANT'S PROPERTY FROM ANY CAUSE, AND TENANT WAIVES ALL CLAIMS AGAINST THE LANDLORD PARTIES FOR DAMAGE TO PERSONS OR PROPERTY ARISING FOR ANY REASON, EXCEPT FOR DAMAGE TO PERSONS RESULTING DIRECTLY FROM A LANDLORD PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. WITHOUT LIMITATION OF THE FOREGOING, TENANT WAIVES ALL CLAIMS AGAINST THE LANDLORD PARTIES FOR DAMAGE TO PROPERTY THAT IS INSURED BY TENANT OR REQUIRED TO BE INSURED BY ANY POLICY OF INSURANCE TENANT IS REQUIRED TO CARRY PURSUANT TO THIS LEASE. TENANT SHALL INDEMNIFY AND HOLD THE LANDLORD PARTIES HARMLESS FROM ALL DAMAGES ARISING OUT OF ANY DAMAGE TO ANY PERSON OR PROPERTY OCCURRING IN, ON OR ABOUT THE IMPROVEMENTS OR PROPERTY OR TENANT'S USE THEREOF OR TENANT'S BREACH OF ANY TERM OF THIS LEASE. THE LANDLORD PARTIES SHALL NOT BE LIABLE TO TENANT FOR ANY LOSS OR DAMAGE, INCLUDING ANY LOST PROFIT, LOSS OF BUSINESS OR CONSEQUENTIAL DAMAGES, THAT MAY BE OCCASIONED BY OR THROUGH THE ACTS OR OMISSIONS OF OTHERS, OR FOR ANY LOSS OR DAMAGE, INCLUDING ANY LOST PROFIT, LOSS OF BUSINESS OR CONSEQUENTIAL DAMAGES, RESULTING TO TENANT OR ITS PROPERTY FROM BURST OR LEAKING WATER, SPRINKLER OR SEWER PIPES OR FROM ROOF LEAKS. TENANT SHALL FURTHER INDEMNIFY, DEFEND AND HOLD THE LANDLORD PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSS OF RENTS OR DAMAGES, LIABILITIES, JUDGMENTS, CLAIMS, EXPENSES, PENALTIES, AND ATTORNEYS' AND CONSULTANTS' FEES ARISING OUT OF OR INVOLVING ANY HAZARDOUS SUBSTANCE BROUGHT ONTO THE IMPROVEMENTS OR PROPERTY BY OR FOR TENANT, ITS EMPLOYEES, AGENTS, CONTRACTORS, OR INVITEES. TENANT'S OBLIGATIONS SHALL INCLUDE, BUT NOT BE LIMITED TO, THE EFFECTS OF ANY CONTAMINATION OR INJURY TO PERSON, PROPERTY OR THE ENVIRONMENT CREATED OR SUFFERED BY TENANT, AND THE COST OF INVESTIGATION, REMOVAL, REMEDIATION, RESTORATION OR ABATEMENT, AND SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS LEASE. NO TERMINATION, CANCELLATION OR RELEASE AGREEMENT ENTERED INTO BY LANDLORD AND TENANT SHALL RELEASE TENANT FROM ITS OBLIGATIONS UNDER THIS LEASE WITH RESPECT TO HAZARDOUS SUBSTANCES, UNLESS SPECIFICALLY SO AGREED BY LANDLORD IN WRITING AT THE TIME OF SUCH AGREEMENT.

[10] *See* **Exhibit H** (26-90621_DEBTORS_002697).

12. This provision *expressly carves out* damage to persons resulting directly from a Landlord Party's gross negligence or willful misconduct. The Families' claims arise from precisely this type of conduct. The Individual Defendants—as officers and directors of NFP—are Landlord Parties. The Families allege that their children died as a result of the Landlord Parties' gross negligence and willful misconduct. The lease indemnity, on its face, does not protect the Individual Defendants from these claims.

13. On the face of the documents the Debtors themselves produced, every purported indemnity obligation they rely upon to justify stay extension either (a) expressly excludes the type of conduct alleged by the Families (gross negligence and willful misconduct), (b) is limited to claims unrelated to the Families' tort claims (limited partner status), or (c) does not exist as a contractual matter (NFP directors and officers). The Debtors therefore cannot establish the "actual identity of interests" required to extend the stay to the Individual Defendants. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723–24 (S.D. Tex. 2010) (acknowledging that the stay should only extend to nonbankrupt codefendants when there is a formal or contractual relationship between the debtor and the nondebtor). The indemnification provisions do not provide "absolute" indemnification—they provide qualified, conditional indemnification that, by its own terms, excludes the Families' claims.

## II. The Debtors Continue to Demonstrate Poor Judgment and Are Acting to Entrench Themselves in Control of the Litigation.

14. Since the filing of the Preliminary Objection, the Debtors have taken actions that further demonstrate the Eastland family's intent to use the bankruptcy process to maintain control over the litigation and insulate themselves from accountability. These actions underscore why extending the automatic stay to the Individual Defendants is inappropriate.

15. On September 1, 2026, the Debtors filed their *Motion for Entry of an Order (I) Authorizing the Appointment of an Independent Director and an Independent Manager, (II) Establishing Special Committees, (III) Approving Governance Amendments, and (IV) Granting Related Relief* [Docket No. 205] (the "Independent Director Motion"). The Independent Director Motion seeks to appoint Mark Andrews as Camp Mystic's Independent Manager and Craig A. Gargotta as NFP's Independent Director.

16. As set forth more fully in the Families' preliminary objection to the Independent Director Motion [Docket No. 228], the proposed governance structure is designed to create an illusion of independence while preserving the Eastlands' control over the matters most important to the Families: (i) the settlement of any personal injury tort or wrongful death claims, (ii) the sale of all or substantially all of the assets of the applicable Debtor, and (iii) the filing of the actual chapter 11 plan. The managers and directors of all four Debtor entities are Eastland family members—Willetta "Tweety" Eastland, Richard G. Eastland, Jr., George A. "Britt" Eastland, and Edward S. Eastland—the very individuals who are co-defendants in the wrongful death lawsuits and who have asserted indemnification claims against the Debtors. Extending the stay under these circumstances would reward the very conflicts of interest that undermine the Debtors' claim to good faith.

**III. The Debtors' Insurance Policies Are Not Eroding.**

17. A central pillar of the Debtors' preliminary injunction argument is the assertion that prosecution of claims against the Individual Defendants will deplete the Debtors' insurance proceeds, thereby harming the estates. *See* Motion ¶¶ 19, 42. The Debtors' document production reveals that this assertion is false. Defense costs under the Debtors' primary insurance policies do *not* reduce the limits of available coverage; the insurance policies are not "eroding."

18. The Debtors' primary general liability policy is the Granite State Insurance Company Policy No. AIP0003450404902, effective March 1, 2025 through March 1, 2026. The CGL policy's supplementary payments provision expressly states: "[t]hese payments will not reduce the limits of insurance."[11] This means that defense costs under the primary CGL policy are *in addition to* the policy limits and do not erode available coverage.

19. The excess liability policy (National Union Fire Insurance Company, Policy No. AIX0003450405002) similarly provides that "[d]efense expenses to which this policy applies shall not reduce the Limits of Insurance stated above except to the extent defense expenses covered under the First Underlying Insurance Policy reduce the limits of liability of the First Underlying Insurance Policy."[12] Because defense costs under the First Underlying Insurance Policy (the CGL policy) do not reduce that policy's limits, defense costs likewise do not reduce the excess policy limits.

20. Because defense costs do not reduce the available limits of coverage under these policies, allowing the Families to prosecute their claims against the Individual Defendants will *not* diminish the insurance proceeds available to satisfy judgments. The insurance coverage available to the estates is not being "eroded" by defense costs, as the Debtors assert.

21. The Debtors therefore cannot establish the irreparable harm they claim supports issuance of a preliminary injunction—that prosecution of the Families' claims will deplete insurance that is alleged to be property of the Debtors' estates. The policies are structured so that

---

[11] *See* **Exhibit I** (26-90621_DEBTORS_00021645).

[12] *See* **Exhibit J** (26-90621_DEBTORS_00029969).

defense costs are paid *outside* the limits. The Debtors' Motion rests on a factual premise that their own insurance policies refute.[13]

**IV. The Court Lacks Subject Matter Jurisdiction to Enjoin Unfiled Actions.**

22. The Debtors seek extraordinary relief that would enjoin all actions that may be brought by any "prospective plaintiffs" that "in any way relate to or arise out of the events of the July 4, 2025 flood." Motion ¶¶ 2–3. But the Court cannot determine whether hypothetical claims against non-debtors fall within its "related to" jurisdiction without knowing the claims, parties, or factual and legal theories at issue. To establish "related to" jurisdiction, the Debtors must demonstrate that the actions "(1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the bankruptcy estate." *In re Reliant Exploration Ltd.*, 336 B.R. 286, 289 (Bankr. S.D. Tex. 2005). That inquiry requires assessment of actual causes of action, not hypothetical ones.

23. The Third Circuit's decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225, 232 (3d Cir. 2004), reinforces this point. There, the court held that the bankruptcy court erred by merely "assuming" that claims against non-debtors would reduce estate assets. *Id.* Here, the Court cannot assess whether unpled claims would "relate to" the Chapter 11 Cases, much less whether they would affect administration of the estates. An injunction entered without that jurisdictional foundation would be advisory and beyond the Court's authority.

24. Enjoining unnamed third parties from filing future lawsuits also raises due process concerns. Families who have not yet filed suit may face statutes of limitations issues. Those Families must be able to file an action to preserve their rights against the Individual Defendants.

[13] The one exception in the record is the Employment Practices Liability endorsement, which states that defense costs reduce the EPL limit. But EPL coverage is inapplicable to the Families' wrongful-death and personal-injury tort claims. The EPL carve-in for defense-within-limits has no bearing on the coverage relevant here.

Precluding future claimants from filing suit—or even from commencing an action so that their claims can be adjudicated and preserved—would eliminate state-law rights against non-debtors without notice, an opportunity to be heard, or any concrete claim before the Court.

25. Even assuming the Court possesses jurisdiction, it should decline to exercise it. The Debtors have identified no imminent harm from the mere filing of future lawsuits against the Individual Defendants. Filing a complaint does not deplete insurance proceeds, bind the Debtors to any judgment, or create preclusive effects. If and when such actions are filed, and if they later warrant extension of the stay, the Debtors can seek appropriate relief at that time based on an actual record. The requested injunction is therefore premature and should be denied.

### V. The Families' Pending Motion to Lift the Stay as to All Prepetition Actions Renders the Debtors' Extension Motion Moot.

26. On August 31, 2026, the Families filed the *Certain Heaven's 27 Families' Motion for Relief from the Automatic Stay* [Docket No. 204] (the "Lift Stay Motion"), seeking to lift the automatic stay as to the entirety of the prepetition actions against both the Debtors and the Individual Defendants. The Lift Stay Motion, if granted, would afford the Families complete relief—the ability to prosecute their claims against all defendants, including the Individual Defendants, in whichever court has jurisdiction over the prepetition actions. A grant of the Lift Stay Motion would necessarily supersede the Debtors' request to extend the stay to the Individual Defendants. The Debtors' Motion to extend the stay is therefore moot, or, at a minimum, should be considered in conjunction with and subordinate to the Lift Stay Motion.

## Conclusion

WHEREFORE, the Families respectfully request that the Court deny the Motion and grant such other and further relief as may be just and proper.

Respectfully submitted this 25th day of September, 2026.

**GRAY REED**

By: */s/ Jason S. Brookner*
Jason S. Brookner
Texas Bar No. 24033684
Lydia R. Webb
Texas Bar No. 24083758
Aaron M. Kaufman
Texas Bar No. 24060067
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100
Email: jbrookner@grayreed.com
lwebb@grayreed.com
akaufman@grayreed.com

*Counsel to Certain Heaven's 27 Families*

**Certificate of Service**

I certify that on September 25, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, which includes counsel of record for the Plaintiffs/Debtors. Counsel for the Families will serve a courtesy copy of this objection by e-mail to counsel of record for both the Debtors and the Committee.

*/s/ Jason S. Brookner*
Jason S. Brookner

# AMENDED & RESTATED COMPANY AGREEMENT of CAMP MYSTIC, LLC

This Amended & Restated Company Agreement (this "Agreement") of CAMP MYSTIC, LLC, a Texas limited liability company (the "Company"), is adopted, executed, and agreed to by the sole Member and Managers (both defined below) as of February 1, 2023 (the "Effective Date").

1. Name. The business of the Company shall be conducted under its registered name, or any other name adopted by the Managers.

2. Purpose. The purpose of the Company is to engage in any lawful business activity.

3. Registered Agent. The name and address of the initial registered agent of the Company for service of process in the State of Texas is set forth on the Certificate of Formation of the Company and may be changed with the consent of the Members.

4. Sole Member. The sole member of the Company is MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.

5. Membership.

(a) The Company is authorized to issue a single class of membership interest (the "Membership Interest") representing all of the rights and duties of a member of the Company under this Agreement and the Texas Business Organizations Code (as it may be amended from time to time, the "TBOC").

(b) No person may be a Member other than (i) Richard G. Eastland, (ii) Willetta A. Eastland, (iii) the descendants of Richard G. Eastland and Willetta A. Eastland, (iv) the trustee of a trust that is only for the benefit of one or more descendants of Richard G Eastland and Willetta A. Eastland, (v) the trustee of a trust that is only for the benefit of the surviving spouse of a descendant of Richard G. Eastland and Willetta A. Eastland for the balance of his/her lifetime or a terms of years and of which one or more descendants of Richard G. Eastland and Willetta A. Eastland are the only remainder beneficiaries, and (vi) an entity of which any one or more of the foregoing [i.e., (i) – (v)] is/are the only owner(s).

6. Capital Contributions. Members may be required to make capital contributions to the Company, from time to time. The Managers shall cause the Company to maintain records of all capital contributions by the Members to the Company.

EXHIBIT A

7. Tax Characterization and Returns.

(a) At any time that two or more unmarried persons or entities own a Membership Interest, the Company will be treated as a partnership for all relevant federal and state tax purposes and will make all elections necessary to be treated as such. Until such time, however, the Company will be treated as a disregarded entity for all relevant federal and state tax purposes.

(b) In the event that the Company is treated as a partnership for tax purposes in any fiscal year, then the Company will cause a Form K-1 to be delivered to the Members, together with such other information with respect to the Company, if any, as may be necessary for the preparation of the Members' federal, state, or local income tax (or information) returns, within ninety (90) days after the end of such fiscal year.

8. Management.

(a) Subject to the next-following subsection, the management of the Company is fully reserved to, and shall be exercised by or under the authority of the Managers of the Company ("Managers"), and the Members, in that capacity, have no right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

(b) Notwithstanding any power or authority granted to the Managers under the TBOC or this Agreement, the Managers may not make any of the following decisions or take any of the following actions without first obtaining the consent of the Members:

(i) To cause the Company to merge or otherwise combine with any other entity,

(ii) To cause the Company to sell or otherwise dispose of any property or assets of the Company other than in the ordinary course of business of the Company,

(iii) To cause the Company to admit a new Member,

(iv) To take any action that would make it impossible to carry on the ordinary business of the Company, or

(v) To make any decision or take any action for which the consent of the Members is expressly required under this Agreement.

(c) The Company will have as many Managers as determined by the Members, from time to time. A Manager need not be a Member nor a resident of the State of Texas; however, no person may be a Manager other than (i) Richard G. Eastland, (ii) Willetta A. Eastland, and (iii) the descendants of Richard G. Eastland and Willetta A. Eastland.

(d) The current Managers are Richard G. Eastland and Willetta A. Eastland.

(e) Each manager other than Richard G. Eastland and Willetta A. Eastland will have a single vote, and Richard G. Eastland and Willetta A. Eastland will each have a number of votes that is one more than the aggregate number of votes of all other Managers (by way of example, if there are five Managers, inclusive of Richard G. Eastland and Willetta A. Eastland, then Richard G. Eastland and Willetta A. Eastland will each have four votes).

(f) Each Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earliest to occur of any of the following events:

(i) Gross negligence or willful misconduct in the performance of his/her/its duties as a Manager, in which case removal shall be effective immediately (no notice to the Manager required),

(ii) His/her/its resignation as a Manager, upon notice thereof delivered to the Members,

(iii) Immediately upon his/her death, or its dissolution, as applicable, or

(iv) Immediately upon his/her/its bankruptcy.

Each Manager vacancy may be filled by the Members.

(g) Annual and special meetings of the Managers may, but need not, be held.

(h) The Managers shall receive such compensation, if any, for his/her services as may be designated by the Members from time to time. In addition, the Managers are entitled to be reimbursed for out-of-pocket costs and expenses incurred in the course of his/her/its service hereunder.

(i) The Managers shall be liable to the Company and the Members for acts or omissions in the management of the Company only in the case of gross negligence, willful misconduct, or breach of this Agreement but the Managers shall not be liable to the Company or the Members for any other acts or omissions, including the negligence, strict liability, or other fault or responsibility. Except for those duties that are expressly set forth in this Agreement, the Managers shall not be subject to any duties (including fiduciary duties) in the management of the Company.

9. Officers. One or more individuals may be appointed as officers of the Company by the Managers. All officers of the Company shall have authority to perform such duties in the management of the Company as may be determined by the Managers. Any officer may be removed, with or without cause, by the Managers at any time.

10. Actions Without Meeting. Any action that may be taken by the members or Managers pursuant to this Agreement or controlling law may be taken without a meeting by unanimous written consent.

11. Distributions. The Managers may cause the Company to distribute any cash held by the Company to the Members at any time and from time to time, in their discretion; *provided, however*, that the Company may not make any distributions in violation of the TBOC or applicable law.

12. Dissolution. The Company will dissolve, and its affairs will be wound up, upon the earlier to occur of (i) the decision of the Members, or (ii) an event of dissolution under the TBOC.

13. Distributions upon Dissolution. Upon dissolution, the Members will be entitled to receive the remaining funds of the Company after paying or making reasonable provision for all the Company's creditors to the extent required by the TBOC.

14. Indemnification. The Company must indemnify, defend, protect, and hold harmless the Managers, Members, and officer (each, an "Indemnified Person") from and against all actions, suits or proceedings (collectively, "Proceedings"), and all other claims, demands, losses, damages, liabilities, judgments, awards, penalties, fines, settlements, costs and expenses (including court costs and reasonable attorneys' fees), arising out of the management of the Company or such Indemnified Person's service as the governing authority of the Company. **THIS INDEMNITY WILL APPLY TO MATTERS THAT ARISE OUT OF THE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR RESPONSIBILITY BY THE INDEMNIFIED PERSON; PROVIDED, HOWEVER, THAT THIS INDEMNITY WILL NOT APPLY TO MATTERS ARISING OUT OF THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR BREACH OF THIS AGREEMENT BY ANY INDEMNIFIED PERSON.**

15. Amendment. This Agreement may be amended only by a subsequent written agreement signed by the Members.

16. Governing Law. This Agreement will be governed by and construed under the laws of the State of Texas, excluding any rules or principles of conflicts of laws that might refer the governance or construction of this Agreement to the law of another jurisdiction.

17. Severability. Every term and provision of this Agreement is intended to be severable, and if any term or provision of this Agreement is illegal or invalid for any reason whatsoever, then such illegality or invalidity will not affect the legality or validity of the remainder of this Agreement.

As of the Effective Date.

MYSTIC CAMPS FAMILY PARTNERSHIP, LTD., Shareholder

By: MYSTIC CAMPS MANAGEMENT, LLC,
General Partner

By: [signature] Richard G. Eastland, Manager

[signature] Willetta A. Eastland, Manager

# FIRST AMENDED & RESTATED COMPANY AGREEMENT of MYSTIC CAMPS MANAGEMENT, LLC

This First Amended & Restated Company Agreement (this "Agreement") of MYSTIC CAMPS MANAGEMENT, LLC, a Texas limited liability company (the "Company"), is adopted, executed, and agreed to by the initial Members (defined below) as of February 15, 2023 (the "Effective Date"). This Agreement supersedes all prior operating agreements of the Company.

1. Name. The business of the Company shall be conducted under its registered name, or any other name adopted by the Managers (defined below).

2. Purpose. The purpose of the Company is to engage in any lawful business activity.

3. Registered Agent. The name and address of the initial registered agent of the Company for service of process in the State of Texas is set forth on the Certificate of Formation of the Company and may be changed with the consent of the Members.

4. Initial Members. The initial members of the Company (each, a "Member"; collectively, "Members") are Richard G. Eastland and Willetta A. Eastland. Each of the initial Members owns an undivided 50% of the Company.

5. Membership Interest. The Company is authorized to issue a single class of membership interest (the "Membership Interest") representing all rights and duties of a Member of the Company under this Agreement and the Texas Business Organizations Code (as it may be amended from time to time, the "TBOC"). No person may be a Member other than (i) Richard G. Eastland, (ii) Willetta A. Eastland, (iii) the descendants of Richard G. Eastland and Willetta A. Eastland, and (iv) a trust(s) created for one or more descendants of Richard G. Eastland and Willetta A. Eastland.

6. Capital Contributions. The Members have made one or more capital contributions to the Company. The Managers shall cause the Company to maintain records of all capital contributions by the Members to the Company.

7. Additional Contributions. The Members may, but are not required to, make additional capital contributions to the Company.

8. Tax Characterization and Returns.

(a) At any time that two or more unmarried persons or entities own a Membership Interest, the Company will be treated as a partnership for all relevant federal and state tax purposes and will make all elections necessary to be treated as such. Until such time, however, the Company will be treated as a disregarded entity for all relevant federal and state tax purposes.

EXHIBIT B

(b) In the event that the Company is treated as a partnership for tax purposes in any fiscal year, then the Company will cause a Form K-1 to be delivered to each Member, together with such other information with respect to the Company, if any, as may be necessary for the preparation of each Member's federal, state, or local income tax (or information) returns, within ninety (90) days after the end of such fiscal year.

9. Management.

(a) Subject to the next-following subsection, the management of the Company is fully reserved to, and shall be exercised by or under the authority of the managers of the Company ("Managers"), and the Members, in that capacity, have no right, power, or authority to act for or on behalf of the Company, to do any act that would be binding on the Company, or to incur any expenditures on behalf of the Company.

(b) Notwithstanding any power or authority granted to the Managers under the TBOC or this Agreement, the Managers may not make any of the following decisions or take any of the following actions without first obtaining the consent of a majority of Members:

(i) To cause the Company to merge or otherwise combine with any other entity,

(ii) To cause the Company to sell or otherwise dispose of any property or assets of the Company other than in the ordinary course of business of the Company,

(iii) To cause the Company to admit a new Member,

(iv) To take any action that would make it impossible to carry on the ordinary business of the Company, or

(v) To make any decision or take any action for which the consent of the Members is expressly required under this Agreement.

(c) The Company will have five Managers unless and until such number is changed by the Members. A Manager need not be a Member or a resident of the State of Texas. No person may be a Manager other than (i) Richard G. Eastland, (ii) Willetta A. Eastland, and (iii) the descendants of Richard G. Eastland and Willetta A. Eastland, unless all Members agree to the contrary.

(d) The initial Managers are Richard G. Eastland, Willetta A. Eastland, Richard G. Eastland, Jr., George A. Eastland, and Edward S. Eastland.

(e) Each Manager other than Richard G. Eastland and Willetta A. Eastland will have a single vote; Richard G. Eastland and Willetta A. Eastland will each have a number of votes that is one more than the aggregate number of votes of all other Managers (by way of example, Richard G. Eastland and Willetta A. Eastland each have four votes pursuant to the previous subsection). If Richard G. Eastland or Willetta A. Eastland dies or becomes incapacitated, then his/her

number of votes will be added to the other's votes.

(f) Each Manager (whether an initial or a successor Manager) shall cease to be a Manager upon the earliest to occur of any of the following events:

(i) Gross negligence or willful misconduct in the performance of his/her duties as a Manager, in which case removal shall be effective immediately (no notice to the Manager required),

(ii) His/her/its resignation as a Manager, upon notice thereof delivered to the Members,

(iii) Immediately upon his/her death or incapacity, and

(iv) Immediately upon his/her bankruptcy.

Each Manager vacancy may be filled by the Members.

(g) Annual and special meetings of the Managers may, but need not, be held.

(h) Each Manager shall receive such compensation for services provided to and for the Company as may be designated by the Members from time to time. In addition, each Manager shall be entitled to be reimbursed for out-of-pocket costs and expenses incurred in the course of service hereunder.

(i) The Managers shall be liable to the Company and the Members for acts or omissions in the management of the Company only in the case of gross negligence, willful misconduct, or breach of this Agreement; but the Managers shall not be liable to the Company or the Members for any other acts or omissions, including the negligence, strict liability, or other fault or responsibility. Except for those duties that are expressly set forth in this Agreement, the Managers shall not be subject to any duties (including fiduciary duties) in the management of the Company.

(j) For purposes of this section, an individual is "incapacitated" if, due to a physical, mental, or emotional condition, he/she is substantially unable to (i) provide food, clothing, or shelter for himself/herself, (ii) care for his/her own health, or (iii) manage his/her own financial affairs.

10. Officers. One or more persons, who may or may not be a Member or Manager, may be appointed as officers of the Company by the Managers. All officers of the Company shall have authority to perform such duties in the management of the Company as may be determined by the Managers. Any officer may be removed, with or without cause, by the Managers at any time.

11. Distributions. The Managers may cause the Company to distribute any cash held by the Company to the Members at any time and from time to time, in their discretion; provided however, that the Company may not make any distributions in violation of the TBOC or applicable law. All cash distributions shall be made to and among the Members *pro rata*.

12. Dissolution. The Company will dissolve, and its affairs will be wound up, upon the earlier to occur of (i) the decision of the Members, or (ii) an event of dissolution under the TBOC.

13. Distributions upon Dissolution. Upon dissolution, the remaining assets of the Company will first be used to pay or make reasonable provision for all the Company's creditors to the extent required by the TBOC. Thereafter, any remaining assets of the Company shall be distributed to and among the Members as necessary to extinguish each Member's positive capital account balance. To the extent that the remaining assets of the Company are insufficient to extinguish all Members' positive capital account balances, they will be extinguished in the percentages that each positive capital account balance has to the aggregate positive capital account balances. Thereafter, any remaining assets of the Company shall be distributed to and among the Members, *pro rata*.

14. Indemnification. The Company must indemnify, defend, protect, and hold harmless each Manager, Member, and officer (each, an "Indemnified Person") from and against all actions, suits or proceedings (collectively, "Proceedings"), and all other claims, demands, losses, damages, liabilities, judgments, awards, penalties, fines, settlements, costs and expenses (including court costs and reasonable attorneys' fees), arising out of the management of the Company or such Indemnified Person's service as the governing authority of the Company. **THIS INDEMNITY WILL APPLY TO MATTERS THAT ARISE OUT OF THE NEGLIGENCE, STRICT LIABILITY OR OTHER FAULT OR RESPONSIBILITY BY THE INDEMNIFIED PERSON; PROVIDED, HOWEVER, THAT THIS INDEMNITY WILL NOT APPLY TO MATTERS ARISING OUT OF THE GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR BREACH OF THIS AGREEMENT BY ANY INDEMNIFIED PERSON.**

15. Amendment. This Agreement may be amended only by a subsequent written agreement signed by the Members.

16. Governing Law. This Agreement will be governed by and construed under the laws of the State of Texas, excluding any rules or principles of conflicts of laws that might refer the governance or construction of this Agreement to the law of another jurisdiction.

17. Severability. Every term and provision of this Agreement is intended to be severable, and if any term or provision of this Agreement is illegal or invalid for any reason whatsoever, then such illegality or invalidity will not affect the legality or validity of the remainder of this Agreement.

As of the Effective Date.

Richard G. Eastland

RICHARD G. EASTLAND,
Member

Willetta A. Eastland

WILLETTA A. EASTLAND,
Member

**Exhibit C**

**[FILED UNDER SEAL]**

# SECOND AMENDED & RESTATED LIMITED PARTNERSHIP AGREEMENT of MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.

This Second Amended & Restated Limited Partnership Agreement is made as of October 31, 2023 ("Effective Date") by and between MYSTIC CAMPS MANAGEMENT, LLC ("General Partner") and the initial limited partners as identified in Exhibit A (each a "Limited Partner" and collectively "Limited Partners") to amend and restate the original Limited Partnership Agreement, dated October 21, 2021, and the First Amended & Restated Limited Partnership Agreement, dated February 15, 2023. The General Partner and the Limited Partners, as well as any substituted or additional partner(s), are each referred to as a "Partner" and/or collectively referred to as "Partners".

## ARTICLE I
## FORMATION OF LIMITED PARTNERSHIP; NAME PRINCIPAL PLACE OF BUSINESS

**Section 1.1 Formation.** MYSTIC CAMPS FAMILY PARTNERSHIP, LTD. ("the Partnership") was formed and registered in the State of Texas on October 21, 2021, by Certificate of Formation filed with the Texas Secretary of State pursuant to the provisions of the Texas Revised Limited Partnership Act ("the Act").

**Section 1.2 Name.** The Partnership shall operate under the name stated on its Certificate of Formation; provided however, the General Partner may, at any time and from time to time, amend the Certificate of Formation to utilize a different name or elect to utilize one or more assumed business names.

**Section 1.3 Principal Place of Business.** The current, principal place of business of the Partnership is [redacted] however, the business of the Partnership may be conducted at any place(s) designated by the General Partner.

## ARTICLE II
## PURPOSES OF THE PARTNERSHIP

The Partnership shall have authority to engage in all purposes permitted by law; provided however, absent the affirmative vote of all Partners, the assets of the Partnership shall be utilized only for the administration, operation, management, and support of *Camp Mystic*, a private, nondenominational Christian summer camp for girls, and its related business operations, or the successor(s) thereto.

## ARTICLE III
## TERM OF THE PARTNERSHIP

The term of the Partnership will be perpetual unless earlier dissolved by operation of law or as provided herein.



EXHIBIT
D

## ARTICLE IV
## ACCOUNTING FOR THE PARTNERSHIP

**Section 4.1 Annual Statements.** The Partnership shall keep true and accurate books of accounting and other Partnership records required to be maintained under the Act at the principal place of business of the Partnership and make them available at any time during normal business hours within five days after receipt of a written request from a Partner. At least annually, the General Partner shall furnish the information that is necessary for the Partners to complete their federal and state income tax returns. The duties and services to be performed by the General Partner shall be an expense of the Partnership.

**Section 4.2 Partnership Bank Account.** All monies of the Partnership and received by the Partnership shall be deposited in one or more bank accounts in the name of the Partnership and all expenditures for and on behalf of the Partnership shall be paid from such account(s).

**Section 4.3 Fiscal Year.** The fiscal year of the Partnership shall be the calendar year.

## ARTICLE V
## CAPITAL CONTRIBUTIONS

**Section 5.1 Contributions.** The Partners may be required to make Capital Contributions, from time to time, as determined by the General Partner, at its discretion. All capital contributions shall be made in proportion to the Partners' Percentage Interests. Notice of the requirement of additional Capital Contribution(s) shall be delivered by the General Partner to each of the Partners, in writing, and each notice shall advise of (i) the total amount required, (ii) the proportionate amount required from the Partner to whom the notice is directed, and (iii) the date by which each proportionate amount must be received by the Partnership.

**Section 5.2 Failure to Make Additional Capital Contribution.** If the General Partner requires an additional Capital Contribution and a Limited Partner fails to make his/her/its proportionate share in the amount or by the date stated in the notice of same, then such failing Limited Partner shall be considered a "Delinquent Partner".

(a) The General Partner may, in its sole and absolute discretion and without further notice, pursue any remedy at law or in equity against a Delinquent Partner, including, without limitation, the commencement of legal proceedings to collect the Delinquent Partner's due and unpaid share of an additional Capital Contribution(s) plus interest thereon at the rate of ten percent per annum. If any legal proceedings are commenced because of the failure of any Delinquent Partner(s) to make his/her/its/their proportionate share(s) of an additional Capital Contribution(s), the Delinquent Partner(s) shall pay all costs and expenses incurred by the Partnership, including attorney's fees, that result from the proceedings.

(b) In addition, or as an alternative, to the foregoing, the General Partner may, in its sole and absolute discretion and without further notice, cause the Partnership to impose any one or more of the following remedies, whether simultaneously, contemporaneously, or in any order, against any Delinquent Partner(s) and the imposition of any one or more of the following remedies does not preclude the later imposition of any other(s):

(1) Designation of any Limited Partner(s) who is/are not then a Delinquent Partner(s), or any third party or parties, to assume responsibility for any Delinquent Partner's due and unpaid share of an additional Capital Contribution(s) and assume and succeed to the rights of the Delinquent Partner's Percentage Interest to the extent they are attributable to the due and unpaid share.

(2) Cancellation of any portion of a Delinquent Partner's due and unpaid share of an additional Capital Contribution(s), recalculation of all Percentage Interests following such cancellation, and adjustment of Capital Account balances to cause them to reflect, as closely as possible, the balances that would have resulted if the Delinquent Partner's Capital Account and Percentage Interest did not include such cancelled portion; provided however, in no event shall a Delinquent Partner's Capital Account ever be increased as a result of this provision.

(3) Reduction of a Delinquent Partner's interest in future items of profit and gain (but not items of loss or expense) by a fixed percentage, as determined by the General Partner in its sole and absolute discretion, up to 100% and reallocation of that interest among the other Partners who are not then Delinquent Partners, in proportion to their Percentage Interests.

(4) Reduction of a Delinquent Partner's Capital Account balance (calculated as of the date of delinquency as if the Partnership had closed its books and allocated net profit and net loss immediately prior thereto) by a fixed percentage, as determined by the General Partner in its sole and absolute discretion, up to but not exceeding 50% and reallocation of the forfeited balance among the other Partners who are not then Delinquent Partners, in proportion to their Percentage Interests.

(5) Deeming that the Delinquent Partner withdrew from the Partnership as of the date of the delinquency.

(6) Offering the Percentage Interest of the Delinquent Partner ("Optionor") for sale, as follows:

(i) Each of the other Limited Partners who is not then a Delinquent Partner (each, an "Optionee") shall have the option to purchase the Optionor's Percentage Interest. The General Partner shall notify the Optionee(s), in writing, that the option is exercisable and by when and in what manner it must be exercised. The Optionor's Percentage Interest and the purchase price to be paid therefor shall be divided equally among the Optionees who exercised the option. The aggregate purchase price to be paid for the Optionor's Percentage Interest shall be 50% of the *lesser* between (A) the Optionor's Capital Account balance as of the date of the delinquency and adjusted to reflect the allocation of the appropriate portion of the Partnership's unrealized gains and/or losses as of that date, or (B) the aggregate amount of all Capital Contributions actually made by the Optionor (and/or any prior holder of the Optionor's Percentage Interest) less all distributions made to the Optionor. The aggregate purchase price to be paid for the Optionor's Percentage Interest shall be paid within the time and in the manner designated by the General Partner, in its sole and absolute discretion. The Optionee(s) acquiring the Optionor's Percentage Interest shall be further obligated to contribute the Optionor's due and unpaid share of the additional Capital Contribution(s) that gave rise to the delinquency and all future additional Capital Contributions shall be prorated among the Limited Partners in proportion to their adjusted Percentage Interests as they result from this subsection.

(ii) If no Optionee exercises an option to purchase the Optionor's Percentage Interest, then the General Partner may, within thirty days after the expiration of the option, purchase the Optionor's Percentage Interest. The purchase price to be paid by the General Partner shall be calculated in the same manner as in the preceding subsection and shall be paid, at the General Partner's election, in cash within 120 days after the expiration of the option or pursuant to a non-recourse promissory note that matures 1 year after such date, accrues interest at the short-term Applicable Federal Rate prevailing on the date of the delinquency, and is secured by the Percentage Interest being acquired. The General Partner may, but shall not be obligated to, contribute the Optionor's due and unpaid share of the additional Capital Contribution(s) that gave rise to the delinquency, nor shall the General Partner be obligated to contribute any portion of additional Capital Contributions thereafter (all future additional Capital Contributions shall be prorated

only among the other Limited Partners as if their aggregate Percentage Interests are the entire Limited Partner interests).

(iii) If no Optionee, nor the General Partner, exercises an option to purchase the Optionor's Percentage Interest, then the Percentage Interest may be offered and sold to a third party or parties. The aggregate purchase price to be paid by the third party or parties shall be calculated in the same manner as in subsection (i), shall be divided equally among the third parties, and shall be paid within the time and in the manner designated by the General Partner, in its sole and absolute discretion. The third party or parties acquiring the Optionor's Percentage Interest shall be further obligated to contribute the Optionor's due and unpaid share of the additional Capital Contribution(s) that gave rise to the delinquency, and all future additional Capital Contributions shall be prorated among the Limited Partners in proportion to their adjusted Percentage Interests as they result from this subsection. Each sale pursuant to this subsection must further comply with Sections 11.1 and 11.2.

## ARTICLE VI
## ALLOCATIONS AND DISTRIBUTIONS

**Section 6.1 Determination of Net Profits or Net Losses.** The net profits or net losses of the Partnership shall be determined in accordance with generally accepted accounting principles consistently applied.

**Section 6.2 Allocation of Net Profits or Net Losses.**

(a) General Rule. Subject to the special allocations set forth in Section 6.2(b), the annual net profits, or losses (including all items of income, gain, loss, deduction, or credit) of the Partnership, if any, shall be allocated to the Partners in accordance with their Percentage Interests.

(b) Required Allocations. Prior to making any allocations provided above, the following required allocations shall be made:

(i) Allocation Regulations. The General Partner shall allocate items of Partnership income, gain, loss, and deduction as necessary to cause the allocations provided in this Agreement to have substantial economic effect or with respect to nonrecourse deductions, to be deemed to be in accordance with the Partners' interests in the Partnership, as provided in the Allocation Regulations. The allocations required pursuant to this subsection are intended to constitute a "qualified income offset" and, if necessary, a "minimum gain chargeback" as such terms are defined in the Allocation Regulations.

(ii) Preferred Interest Allocations. Notwithstanding the foregoing clause, preferential distributions from the Partnership must be matched by a corresponding allocation(s) of income or gain.

(iii) Code Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Code Section 734(b) or 743(b) is required pursuant to the Allocation Regulations, to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such item of gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their capital Accounts are required to be adjusted pursuant to the Allocation Regulations.

**Section 6.3 Tax Allocations.**

(a) Except as otherwise provided in this section, each item of income, gain, loss, and deduction of the Partnership will be allocated between or among the Partners for federal income tax purposes in accordance with the way that net profits or net losses were allocated as provided in Section 6.2.

(b) With respect to any Adjusted Property, the General Partner may (i) make allocations of gain, loss, depreciation, and cost recovery deductions attributable to such property pursuant to this section, and (ii) make any adjustments to Capital Accounts in any manner consistent with Code Section 704 and the Allocation Regulations.

(c) All items of income, gain, loss, deduction, credit, and basis allocation recognized by the Partnership for federal income tax purposes and allocated to the Partners in accordance with this section will be determined without regard to any election under Code Section 754 that may be made by the Partnership; provided however, such allocations, once made, must be adjusted as necessary or appropriate to take into account the adjustments permitted by Code Sections 734 and 743 and, where appropriate, to provide only Partners recognizing gain on Partnership distributions covered by Code Section 734 with the federal income tax benefits attributable to the increased basis in Partnership property resulting from any election under Code Section 754.

(d) If any Recapture Income results from the sale or other taxable disposition of a Partnership asset, then the amount of gain from such disposition that is allocated to or recognized, for federal income tax purposes, by a Partner or its successor in interest pursuant to this section will be deemed to be Recapture Income to the extent that the Partner or its successor has been allocated or claimed any deduction directly or indirectly giving rise to the treatment of the gain as Recapture Income.

(e) Each item of Partnership income, gain, loss, and deduction that is attributable to a transferred Partnership interest will, for federal income tax purposes, be determined on a monthly or other basis, as required or permitted by Code Section 706, and allocated to the holder of the Partnership interest as of the close of business on the day preceding the first day of such month or other period; provided however, gain or loss on a sale or other disposition of all or a substantial portion of the assets of the Partnership will be allocated to the holder of the Partnership interest on the date of the sale or other disposition. The General Partner may revise, alter, or otherwise modify the methods of determination and allocation as necessary and to the extent permitted by Code Section 706 and regulations or rulings promulgated thereunder.

**Section 6.4 Tax Distributions.** In any year, the General Partner may cause the Partnership to distribute from Available Cash in amounts equal to the estimated federal income tax liabilities of the Partners resulting from allocations of Net Income for the immediately preceding year. Distributions pursuant to this section must be made between or among the Partners in the same proportions that net profits were allocated between or among them for the applicable tax year.

**Section 6.5 Other Distributions.** In addition to distributions made pursuant to the preceding section, the General Partner, in its sole and absolute discretion, may distribute from Available Cash to the Partners from time to time, pursuant to this section. The Preferred Limited Partnership Interest owners are hereby entitled to receive all distributions of Available Cash pursuant to this section up to, but not more than, $500,000.00 in each calendar year; such preferred distributions must be made equally between or among the Preferred Limited Partnership Interest owners. Thereafter, the balance of Distributed Cash in each calendar year must be distributed to the Partners in proportion to their Percentage Interests.

## ARTICLE VII
## CAPITAL ACCOUNTS

**Section 7.1 In General.** The Partnership shall maintain a separate Capital Account for each Partner. Each Capital Account shall be increased by (i) the face amount or Net Agreed Value of all Capital Contributions made by the Partner and (ii) all items of Partnership income and gain computed in accordance with this section and allocated to the Partner pursuant to Section 6.2. Each Capital Account shall be decreased by (x) the cash amount or Net Agreed Value of all actual and deemed distributions of cash or property made to the Partner and (y) all items of Partnership deduction and loss computed as provided in this section and allocated to the Partner pursuant to Section 6.2. For purposes of computing the amount of any item of income, gain, deduction, or loss to be reflected in the Capital Accounts, the determination, recognition, and classification of any item shall be the same as its determination, recognition, and classification for federal income tax purposes (including any method of depreciation, cost recovery, or amortization used for this purpose) subject to adjustments or other methods as permitted or required by the Allocation Regulations as interpreted and applied in the discretion of the General Partner. It is the intent of the Partners that Capital Accounts shall be maintained in accordance with and as provided in the Allocation Regulations as interpreted and applied at the discretion of the General Partner.

**Section 7.2 Interest.** Except as expressly provided herein, interest shall not be paid by the Partnership on Capital Contributions or Capital Account balances.

**Section 7.3 No Withdrawal of Capital.** No Partner may withdraw any part of any Capital Contribution or its Capital Account or receive any distribution from the Partnership except as provided in Section 6.4 and Article XII.

**Section 7.4 Loans from Partners.** Loans from a Partner shall not be considered Capital Contributions but shall be treated as loans from an unrelated third party.

## ARTICLE VIII
## ADMINISTRATIVE PROVISIONS

**Section 8.1 Management.** (a) The General Partner shall conduct, direct, and exercise full control over the Partnership and its activities and assets. Except as otherwise expressly provided herein, all management powers over the business and affairs of the Partnership shall be exclusively vested in the General Partner and the Limited Partners shall not have any right of control or management power over the business and affairs of the Partnership. In addition to the powers now or hereafter granted to the General Partner under applicable law or this Agreement, but subject to Article II hereof, the General Partner shall have full power and authority to do all things that it deems to be necessary or advisable to conduct the business and affairs of the Partnership including, without limitation:

(i) the determination of business activities in which the Partnership will participate,

(ii) the making of any expenditures, the borrowing of money, the guaranteeing of indebtedness and other liabilities, the issuance of evidence of indebtedness, and the incurring of any obligations it deems necessary or advisable,

(iii) the acquisition, disposition, or exchange of Partnership assets,

(iv) the use of Partnership assets on any terms it sees fit including, without limitation, financing business activities, lending funds, paying obligations or reimbursing therefor, and conducting of additional businesses and operations,

(v) the negotiation and execution, on terms it deems advisable, of, and the performance of, any contracts, conveyances, or other instruments that it considers necessary or advisable for business activities or the implementation of its powers hereunder,

(vi) the distribution of cash or other assets,

(vii) the selection and dismissal of employees and attorneys, accountants, consultants, and contractors and the determination of their scope of employment or services and compensation,

(viii) the maintenance of insurance as it deems to be necessary or advisable,

(ix) the control of any matters affecting the rights and obligations of the Partnership including litigation and incurring of legal expenses and the settlement of claims and litigation,

(x) to prepare (or cause to be prepared) and file all tax compliance documents for the Partnership, and

(xi) to make any election(s) under the Code including to cause the basis of Partnership assets to be adjusted for federal income tax purposes as provided in Code Sections 734 and 743.

(b) Each of the Partners hereby agrees that the General Partner shall be authorized to execute, deliver, and perform all agreements, acts, transactions, and matters related to the Capital Contributions described in Section 5.1 without any further act, approval, or vote of the Partners or the Partnership, notwithstanding any other provision of this Agreement, the Act, or any applicable law, rule, or regulation.

(c) The General Partner is hereby appointed to serve as the "Partnership Representative" as provided in Code Section 6223(a); provided however, the Partnership Representative may resign at any time and can be removed by a vote of a majority of the Percentage Interests of the Limited Partners. In the event of resignation or removal, a majority of the Percentage Interests of the Limited Partners shall select a replacement. If the resignation or removal of the Partnership Representative occurs prior to the effectiveness of the resignation or removal under applicable Treasury Regulations or other administrative guidance, then the resignation or removal shall be effective upon the earliest date provided in such regulations or administrative guidance.

(d) The Partnership Representative is authorized and required to represent the Partnership (at the Partnership's expense) in connection with all examinations of the Partnership's affairs by any taxing authority, including resulting administrative and judicial proceedings, and to expend Partnership funds for professional services and costs associated therewith. The Partnership Representative shall have the sole authority to act on behalf of the Partnership in such examinations and proceedings and shall have sole discretion to determine whether the Partnership (either on its own behalf or on behalf of the Partners) will contest or continue to contest any tax deficiency assessed or proposed to be assessed by any taxing authority.

(e) To the extent permitted by applicable law and regulations, the Partnership will annually elect out of the procedures created by the Bipartisan Budget Act of 2015 ("BBA Procedures") pursuant to Code Section 6221(b). For any year in which applicable law and regulations do not permit the Partnership to elect out of the BBA Procedures, then within 45 days of any notice of final partnership adjustment, the Partnership will elect the alternative procedure under Code Section 6226 and furnish to the Internal Revenue Service and each Partner, during the year or years to which the notice of final partnership adjustment relates, a statement of the Partner's share of any adjustment set forth in the notice of final partnership adjustment.

(f) Any deficiency for taxes imposed on any Partner (including penalties, additions to tax, or interest imposed with respect to such taxes or taxes imposed pursuant to Code Section 6226) shall be paid by the Partner and, if required to be paid (and actually paid) by the Partnership, shall be recoverable from the Partner.

(g) Except as otherwise provided herein, the Partnership Representative shall have the sole discretion to make any determination regarding income tax elections that it deems to be advisable for and on behalf of the Partners; provided however, the Partnership Representative will make an election under Code Section 754 if requested in writing by another Partner.

**Section 8.2 Compensation and Reimbursement of General Partner.**

(a) Compensation. Except as provided in this section, the General Partner shall not be compensated for its services rendered to the Partnership.

(b) Reimbursement of Expenses; Advances. The General Partner shall be reimbursed for all expenses, disbursements, and advances incurred or made for the organization and start-up of the Partnership and the qualification of the Partnership to do business. The General Partner shall be reimbursed for all direct expenses it incurs or makes on behalf of the Partnership (including amounts paid to any Person to perform services for the Partnership) and for that portion of the General Partner's accounting costs and expenses, telephone, secretarial, travel and entertainment expenses, interest expenses, office rent and other office expenses, salaries and other compensation of employees, officers and directors, other administrative expenses and other expenses that are (i) necessary or appropriate to the conduct of the business of the Partnership and (ii) fairly and reasonably allocable to the Partnership. The Partnership shall advance funds to the General Partner, when requested, for payment of expenses to be incurred by the General Partner in the performance of its duties under this Agreement. The General Partner shall account to the Partnership expenses reimbursed and funds advanced.

**Section 8.3 Conflicts of Interest.** Neither the Partners nor any director, officer, partner, or employee of any Partner(s), nor any Affiliate thereof, may own any other business(es) or engage in any other business or activities that are in competition with those of the Partnership, for their own account or for the account of others; provided however, nothing in this section shall prohibit any person or entity from owning any interest and/or engaging in any business that is an Affiliate of the Partnership and only the Partnership may enforce the foregoing prohibition.

**Section 8.4 Liability of Partners.** The satisfaction of any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, proceedings, costs, expenses and disbursements, of any kind or nature whatsoever (including, without limitation, all costs and expenses of litigation and settlement of any and all suits, actions, or proceedings instituted against the Partnership and all costs of investigation in connection therewith) which may be imposed on, incurred by, or asserted against the Partnership that, in any way, relate to or arise from, or are alleged to relate to or arise from, any action or inaction on the part of the Partnership shall be from and limited to the assets of the Partnership and no Limited Partner shall have any personal liability on account thereof.

Except as otherwise provided by applicable law, Limited Partners shall be liable for Capital Contributions but shall not be required to lend or otherwise advance any funds to the Partnership. The Partnership shall indemnify, to the extent of the Partnership assets, each Limited Partner against any claims of liability asserted against him/her/it solely because he/she/it is a Limited Partner.

**Section 8.6 Power of Attorney.** By executing this Agreement, the Limited Partners irrevocably appoint the General Partner as their true and lawful attorney in fact and agent with full power and authority to act in their name and place in executing, filing, and recording (a) any certificates or other documents required to be filed pursuant to the Texas Business and Commerce Code or the Texas Business Organizations Code, (b) any amendments to this Agreement to reflect the admission of a substituted Limited Partner, (c) any amendments to or the cancellation of the Certificate of Formation, and (d) any amendment to this Agreement pursuant to Article XII or upon the final dissolution and winding up of the Partnership. This power of attorney is coupled with an interest, is irrevocable, survives the death, incompetency, or legal disability of each Limited Partner, and is binding upon any successor to or assignee of any part of a Limited Partnership interest hereunder.

## ARTICLE IX
## REMOVAL OF GENERAL PARTNER

The General Partner may be removed for cause upon the affirmative vote of Limited Partners holding at least 75% of the aggregate Percentage Interests. Any action for removal of the General Partner must provide the General Partner no less than 30 days written notice and opportunity to cure, unless notice is waived by the General Partner, and shall provide for the election of a successor General Partner. The right of the Limited Partners to remove the General Partner shall not be exercised unless the Partnership has received an Opinion of Counsel that the removal of the General Partner and the election of a successor General Partner would not cause a loss of limited liability of the Limited Partners or cause the Partnership to be treated as an association taxable as a corporation for federal income tax purposes. Removal shall be effective immediately after the election of the successor General Partner.

In this Article, "cause" means an act or omission by the General Partner that constitutes a breach of its duties including, without limitation, mismanagement of Partnership assets and a failure to file tax returns or other documents required under applicable law.

## ARTICLE X
## WITHDRAWAL, DISSOLUTION, OR BANKRUPTCY OF GENERAL PARTNER; ADDITIONAL EVENTS OF DISSOLUTION

**Section 10.1 Withdrawal, Dissolution or Bankruptcy of General Partner.** The withdrawal, dissolution, or bankruptcy of the General Partner shall be an event causing the dissolution and termination of the Partnership, and the Partnership shall thereafter conduct only activities that are necessary to wind up its affairs unless, within 90 days after the date of withdrawal, dissolution, or bankruptcy of the General Partner, all remaining Partners elect to continue the Partnership, in writing.

**Section 10.2 Additional Events of Dissolution.** In addition to the preceding section, the Partnership shall be dissolved upon:

(a) the General Partner's election to dissolve the Partnership if also approved by Limited Partners holding at least 75% of the aggregate Percentage Interests, or

(b) the death or incapacity of the General Partner, if the General Partner is an individual, unless, within 90 days thereafter, all remaining Partners elect to continue the Partnership, in writing.

**Section 10.3 Additional Provisions.** If an election to continue the Partnership is made by all remaining Partners pursuant to the preceding sections, then a successor General Partner shall be selected, and all necessary steps shall be taken to amend the certificate of Limited Partnership accordingly. For the purposes of this Article, an individual is incapacitated if he/ she is unable to take an active part in the management of the Partnership's business and/or affairs for 10 consecutive days due to illness, injury, or substance use or abuse.

**ARTICLE XI**
**TRANSFER OF A PARTNERSHIP INTEREST**

**Section 11.1 Transfer of a Limited Partner's Interest.** (a) No Limited Partner may sell, assign, or otherwise convey his/her/its Percentage Interest, or any portion thereof, to any recipient other than the following (each, an "Authorized Recipient"):

(1) a descendant of Richard G. Eastland and Willetta A. Eastland,

(2) the trustee of a trust that is only for the benefit of one or more descendants of Richard G. Eastland and Willetta A. Eastland, or

(3) the trustee of a trust that is for the benefit of the surviving spouse of a descendant of Richard G. Eastland and Willetta A. Eastland for the balance of his/her lifetime or a term of years and of which one or more descendants of Richard G. Eastland and Willetta A. Eastland are the only remainder beneficiaries.

(b) In addition, no Limited Partner may sell, assign, or otherwise convey his/her/its Percentage Interest, or any portion thereof, without:

(1) the written consent of the General Partner, which may be given or withheld in its sole discretion, to substitution is obtained,

(2) a conveyance document that is approved by the General Partner in form and substance,

(3) the execution and acknowledgment of all other instruments that the General Partner deems necessary or advisable, including, but not limited to, a power of attorney,

(4) the recipient's acceptance and adoption of this Agreement, as amended, in writing, and

(5) payment of all reasonable expenses connected with the transaction including, but not limited to, the cost of preparing, filing, and publishing any amendment of the Certificate of Formation or this Agreement, as allocated by the General Partner.

(c) The General Partner may require a legal opinion, paid for by the parties to the transaction as allocated by the General Partner, to confirm that the transaction will not violate the registration provisions of the Securities Act of 1933, as amended, or the qualification provisions of applicable Texas securities laws, and/or that the transfer complies with the following Section 11.2.

(d) In addition, no Partner may transfer or assign any part of his Percentage Interest if the transfer or assignment would, when considered with all other transfers during the same applicable 12-month period, cause a termination of the Partnership for federal income tax purposes.

**Section 11.2 Permitted Sales.** Subject to the preceding section, a Limited Partner may sell his Percentage Interest to another Limited Partner(s) on terms that are agreed between or among them and approved by the General Partner (both in writing). Absent such agreement and approval, a Limited Partner may only sell his Percentage Interest as follows:

(a) Each Limited Partner has a first right to acquire the Percentage Interest of each other limited Partner. Before committing to, agreeing to, or making any other sale or transfer, a Limited Partner must offer his/her/its Percentage Interest (or part thereof) via written notice to all other Partners. Any Limited Partner may assign such first right to acquire, in whole or part, but only to an Authorized Representative (each, in this section, an "Assignee").

(b) Each other Limited Partner and/or Assignees must exercise the first right by written notice delivered to all other Partners within 90 days after receipt of the offer. Unless extended by the General Partner (which it may or may not do, in its discretion), the first rights are waived if not exercised within the 90-day period. If more than one other Limited Partner and/or assignee exercises the first right, then they will acquire the Percentage Interest that is the subject of the offer equally between or among them unless they otherwise agree, in writing.

(c) If none of the other Limited Partners or Assignees exercise the first right, then the General Partner may exercise a second right for the Partnership to redeem any portion of the Percentage Interest that is the subject of the offer. The General Partner may exercise the second right by written notice delivered to all Limited Partners within 30 days after the first right exercise period expires.

(d) Unless the offering Limited Partner and the exercising Partner(s) and/or Assignee(s) otherwise agree, the purchase price to be paid by an existing Partner, an Assignee, or the Partnership for the Percentage Interest that is the subject of the offer, or part thereof, is 75% of its fair market value as of the offer date, as determined by an independent appraiser selected and engaged by the General Partner; provided however, (i) one-half of the cost of the appraisal will be paid by the offering Limited Partner, (ii) the other one-half of the cost of the appraisal will be paid by the exercising Partner(s), Assignee(s), and/or the Partnership in the same proportions that they are acquiring the Percentage Interest that is the subject of the offer, and (iii) the cost of the appraisal will be paid to the appraiser directly from the closing(s) of the sale(s) of the Percentage Interest that is the subject of the offer.

(e) Each sale to a Partner, Assignee, or the Partnership must close within 30 days after the later between the date the applicable right of refusal is exercised and the date on which the purchase price is determined unless the offering Limited Partner and the acquiring party otherwise agree, and such agreement is approved by the General Partner, in writing; provided however, no sale may close later than 120 days after the date on which the purchase price is determined. Each acquiring party may pay (i) the entirety of his/her/its share of the purchase price in cash at closing or (ii) 20% of his/her/its share of the purchase price in cash at closing and the remaining 80% in four, equal, annual installments, each of which due on the succeeding anniversaries of the closing, without interest or penalty for prepayment.

## ARTICLE XII
## DISSOLUTION AND TERMINATION OF PARTNERSHIP

**Section 12.1 Right to Dissolve the Partnership.** Except as provided in Article X, no Partner may cause dissolution of the Partnership before the expiration of the term of the Partnership.

**Section 12.2 Winding Up the Partnership.** In the event of a sale or disposition of substantially all assets of the Partnership, or a voluntary dissolution or the withdrawal, dissolution, or bankruptcy of the General Partner, and if the remaining Partners do not elect to continue the Partnership as provided herein, the Partnership shall immediately commence to wind up its affairs and the net proceeds received from liquidation of Partnership assets shall be applied as follows:

(a) Payment to creditors of the Partnership, other than Partners, in the order of priority provided by law,

(b) Payment to Partners for loans, if any, made to the Partnership,

(c) Payment to the Partners in proportion to and to the extent of the positive Capital Account balances in their respective Capital Accounts,

(d) Payment to the Partners in proportion to their Percentage Interests.

## ARTICLE XIII
## AMENDMENT OF THIS AGREEMENT; MEETINGS; RECORD DATE

**Section 13.1 Amendments to be Adopted Solely by General Partner.** Pursuant to the power of attorney granted in Section 8.6, the General Partner, without the consent of any Limited Partner or assignee, may amend any provision of this Agreement and may execute, swear to, acknowledge, deliver, file, and record documents as required in connection therewith, to reflect:

(a) a change in the name or location of the principal place of business of the Partnership,

(b) admission and/or substitution of Partners in accordance with this Agreement,

(c) a change that the General Partner determines to be necessary or appropriate to qualify or continue the qualification of the Partnership as a limited partnership or a partnership in which the Limited Partners have limited liability under the laws of any state, or to ensure that the Partnership will not be treated as an association taxable as a corporation for federal income tax purposes,

(d) a change:

(i) that, in the sole discretion of the General Partner, does not adversely affect the Limited Partners in any material respect,

(ii) that is necessary or advisable to satisfy any requirement, conditions, or guidelines contained in any opinion, directive, order, ruling, or regulation of any federal or state agency or judicial authority, or contained in any federal or state statute, the compliance with any of which the General Partner deems to be in the best interests of the Partnership and the Limited Partners, or

(iii) that is required or contemplated by this Agreement,

(e) any other change like the foregoing.

**Section 13.2 Amendment Procedures.** Except as provided in Sections 13.1 and 13.3, all amendments to this Agreement may be proposed only by the General Partner and, if proposed, the General Partner shall seek the written consent of the requisite Percentage Interest or call a meeting of the Partners to consider and vote on such proposed amendment. A proposed amendment shall be effective upon its approval by Partners holding greater than 75% of the Percentage Interests unless a greater percentage is required elsewhere herein. The General Partner shall notify all Partners upon final adoption of any proposed amendment.

**Section 13.3 Amendment Requirements.** Notwithstanding Sections 13.1 and 13.2, no provision of this Agreement that establishes a percentage of the Limited Partners that is required to take any action may be amended, altered, changed, repealed, or rescinded in any respect unless such amendment, alteration, change, repeal, or rescission is approved by the written consent or the affirmative vote of Limited Partners whose aggregate Percentage Interests constitute not less than the voting requirement sought to be reduced.

**Section 13.4 Action Without a Meeting.** Any action that may be taken by the Partners may be taken without a meeting if a written consent stating the action so taken is signed by Partners having not less than the minimum Partnership Interests necessary to authorize or take the action pursuant to the terms of this Agreement. Prompt notice of the taking of action shall be given to Limited Partners who do not consent in writing. The General Partner may specify that any written consent submitted to the Partners for action without a meeting be returned to the General Partner within the time specified by the General Partner, but not less than 10 days.

## ARTICLE XIV
## DEFINITIONS

**Section 14.1 Definitions.** As used in this Agreement, the following terms shall have the following meanings. A defined term has its defined meaning throughout this Agreement and in each exhibit, attachment, and schedule attached hereto regardless of whether it appears before or after the place where it is defined.

*"Act"* shall have the meaning stated in Section 1.1.

*"Adjusted Property"* means any property of which the value has been adjusted on the books of the Partnership pursuant to Section 1.704-1(b)(2)(iv)(g) of the Allocation Regulations.

*"Adjusted value"* means, with respect to any Adjusted Property, the fair market value of the property, as approved by the Partners, at the time the property became Adjusted Property.

*"Affiliate"* means another entity that, directly or indirectly, controls, is controlled by, or is under common control with the Partnership. In this definition, "control" means the possession (directly or indirectly) of the power to direct or cause the direction of the management and policies of a Person, whether through ownership, by contract, or otherwise.

*"Agreement"* means this Limited Partnership Agreement, as amended, or restated from time to time.

*"Allocation Regulations"* means Treas. Reg. §1.704-1(b) *et seq*. as amended and in effect from time to time and any corresponding provisions of succeeding regulations.

*"Available Cash"* means, at the time of determination, receipts derived from the conduct of the Partnership's business (including sales of part of the Partnership's assets but excluding Capital Contributions, loans made by Partners, and proceeds from the sale of all or substantially all of the Partnership's assets) reduced by (i) amounts necessary to pay current operating expenses and debt service of the Partnership, and (ii) amounts reserved for the reasonable needs of the Partnership's business as determined by the General Partner in its sole discretion, including reserves for replacements, capital improvements, and additions.

*"Capital Account"* means the capital account maintained for a Partner pursuant to Section 7.1.

*"Capital Contribution"* means the cash or other property contributed to the Partnership

pursuant to Section 5.1.

*"Code"* means the Internal Revenue Code of 1986, as amended and in effect from time to time, and any successor to such statute.

*"Common Limited Partnership Interest"* means a Percentage Interest owned by a Limited Partner that is not a Preferred Limited Partnership Interest.

*"Distributed Cash"* means the amount of Available Cash that the General Partner elects to distribute pursuant to Section 6.5.

*"Net Agreed Value"* means (a) in the case of any property contributed to the Partnership, the fair market value of the property reduced by any indebtedness assumed by the Partnership upon such contribution or to which the property is subject when contributed, and (b) in the case of any property distributed to a Partner, the fair market value of the property at the time of the distribution reduced by any indebtedness assumed by the Partner upon distribution or to which the property is subject at the time of distribution.

*"Percentage Interest"* means, with respect to any Partner or assignee, the percentage of Partnership equity that the Partner or assignee owns.

*"Person"* can mean an individual, partnership, corporation, joint venture, limited liability company, or any other entity.

*"Preferred Limited Partnership Interest"* means a Percentage Interest owned by a Limited Partner that is entitled to preferential distributions as provided herein.

*"Recapture Income"* means any gain recognized by the Partnership (but computed without regard to any adjustment required by Code Sections 734 or 743) upon disposition of any property or assets of the Partnership that is not capital gain because the gain represents the recapture of deductions previously taken for federal income tax purposes with respect to the disposed property or assets.

## ARTICLE XV
## GENERAL PROVISIONS

**Section 15.1 Addresses and Notices.** The address of each Partner for all purposes shall be the address opposite their signature on this Agreement or another address provided to the General Partner in writing. Any notice, demand, request, or report required or permitted to be given or made to a Partner under this Agreement (a "Notice") shall be in writing and sent to the Partner's address or to the Partner via electronic mail. Each Notice is deemed to have been delivered on the date indicated in a proof of delivery to the Partner's address or when sent via electronic mail.

**Section 15.2 Titles and Captions.** All article or section titles or captions in this Agreement are for convenience only, shall not be deemed part of this Agreement, and shall not define, limit, extend, or describe the scope or intent of any provision herein. Except if specifically provided otherwise, references to "Articles" and "Sections" herein are to articles and sections of this Agreement.

**Section 15.3 Pronouns and Plurals.** Whenever the context may require, any pronoun used in this Agreement includes the masculine, feminine, and neuter forms, and the singular form of nouns, pronouns, and verbs includes the plural and vice versa.

**Section 15.4 Further Action.** The Partners shall execute and deliver all documents, provide all information, and take all actions (or refrain from acting), as necessary or appropriate to achieve the purposes of this Agreement.

**Section 15.5 Binding Effect.** This Agreement is binding upon and inures to the benefit of the Partners and their respective heirs, executors, administrators, successors, legal representatives, and permitted assigns.

**Section 15.6 Integration.** This Agreement constitutes the entire agreement among the Partners hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

**Section 15.7 Creditors.** None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership or any Partner.

**Section 15.8 Waiver.** No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition herein, or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver to any extent.

**Section 15.9 Counterparts.** This Agreement may be executed in counterparts, all of which together shall constitute a single binding agreement notwithstanding that all parties are not signatories to the original or the same counterpart.

**Section 15.10 Applicable Law.** This Agreement shall be construed in accordance with and governed by the laws of the State of Texas without regard to the principles of conflicts of law.

**Section 15.11 Invalidity of Provisions.** If any provision of this Agreement is or becomes invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions shall not be affected thereby.

**Section 15.12 Waiver of Action for Partition.** Each of the Partners irrevocably waives any right that he/she/it may have to maintain any action for partition with respect to any property acquired or at any time owned by the Partnership.

**IN WITNESS WHEREOF,** the parties have executed this Second Amended & Restated Limited Partnership Agreement as of the day and year first stated above.

**GENERAL PARTNER**

MYSTIC CAMPS MANAGEMENT, LLC

By: Richard G. Eastland
Richard G. Eastland, Manager

Willetta A. Eastland
Willetta A. Eastland, Manager

**LIMITED PARTNERS**

Richard G. Eastland
RICHARD G. EASTLAND

Willetta A. Eastland
WILLETTA A. EASTLAND

**EXHIBIT "A"**

| Partner | Percentage Interest |
| --- | --- |
| **GENERAL PARTNER:** | |
| MYSTIC CAMPS MANAGEMENT, LLC<br>[redacted]<br>dickeastland@gmail.com<br>tweetyeastland@gmail.com | 1% |
| **LIMITED PARTNERS:** | |
| PREFERRED: | |
| RICHARD G. EASTLAND<br>[redacted]<br>dickeastland@gmail.com | 0.5% |
| WILLETTA A. EASTLAND<br>[redacted]<br>tweetyeastland@gmail.com | 0.5% |
| COMMON: | |
| RICHARD G. EASTLAND<br>[redacted]<br>dickeastland@gmail.com | 49% |
| WILLETTA A. EASTLAND<br>[redacted]<br>tweetyeastland@gmail.com | 49% |
| **TOTAL** | **100%** |

# AMENDED & RESTATED BYLAWS OF NATURAL FOUNTAINS PROPERTIES, INC.

## Article One
*Offices*

The principal office of the corporation is located at 2689 Highway 39, Hunt, Texas 78024; provided however, the Board of Directors has the power and authority to change the principal office and/or establish and maintain branch or subordinate offices at other locations.

## Article Two
*Shareholders*

(A) Annual Meeting. An annual meeting of the shareholders may be held on a date selected by the President for the purpose of electing Directors and for the transaction of such other business as may come before the shareholders. If the election of Directors is not held during any annual meeting of the shareholders, or following any adjournment of such annual meeting, then any shareholder may call a special meeting of the shareholders for the purpose of the election of Directors.

(B) Special Meetings. Unless otherwise proscribed by statute, special meetings of the shareholders may be called by the President or the Board of Directors for any purpose(s) and shall be called by the President at the request of the holders of at least 60% of all outstanding shares of the corporation entitled to vote at the meeting.

(C) Place of Meeting. Any place within the State of Texas may be designated as the place of any meeting of the shareholders; provided however, all shareholders entitled to vote at a meeting may designate, in writing and signed by them, any other place, within the State of Texas or not, as the place of such meeting. If no place for any meeting of the shareholders is designated by the Board of Directors or shareholders as provided in this section, then the place of such meeting is the principal office of the corporation.

(D) Notice of Meeting. Written notice stating the place, day, and hour of a meeting of the shareholders and, in case of a special meeting, the purpose or purposes for which the meeting is called, must be delivered to each shareholder entitled to vote at the meeting not less than ten (10) nor more than ninety (90) days before the date of the meeting by or at the direction of the President, Secretary, or other officer or persons calling the meeting.

(E) Closing Transfer Books or Fixing Record Date. To determine the shareholders who are entitled to notice of and/or to vote at any meeting of the shareholders, or receive payment of any dividend, or to determine the shareholders for any other proper purpose, the Board of Directors may provide that the stock transfer book be closed for a stated period not to exceed thirty (30) days. If the stock transfer book is closed for the purpose of determining shareholders entitled to notice of and/or to vote at a meeting of the shareholders, then it must be closed for at least ten (10) days immediately preceding such meeting. In lieu of closing the stock transfer book, the Board of Directors may fix, in advance, the record date for a determination of shareholders which may not less than ten (10) days nor more than thirty (30) days prior to the date on which the particular action requiring the determination is to be taken.



EXHIBIT E

If the stock transfer book is not closed and no record date is fixed for the determination of shareholders entitled to notice of and/or to vote at a meeting of shareholders, or entitled to receive payment of a dividend, then the date that the notice of the meeting is delivered, or the date on which the resolution of the Board of Directors declaring the dividend is adopted, as the case may be, will be the record date for such determination of shareholders. When a determination of shareholders entitled to vote at any meeting of the shareholders has been made as provided in this paragraph, the determination will apply to any adjournment of such meeting except where the determination has been made through the closing of the stock transfer book and the stated period of closing has expired.

(F) Quorum. A majority of the outstanding shares of the corporation entitled to vote, represented in person or by proxy, will constitute a quorum at a meeting of the shareholders. If less than a quorum is represented at a meeting, then a majority of the shares represented may adjourn the meeting from time to time without further notice. The shareholders who are present at a meeting at which a quorum was represented may continue to transact business unless and until the meeting is adjourned even if enough shareholders left the meeting that leaves less than a quorum represented.

(G) Proxies. At all meetings of the shareholders, a shareholder may vote by proxy executed in writing by the shareholder or his duly authorized agent. Each proxy must be delivered to the Secretary before or at the time of the meeting. No proxy will be valid after six (6) months from the date of its execution unless otherwise provided in the proxy.

(H) Voting of Shares. Subject to the provisions of any applicable law, each outstanding share entitled to vote will be entitled to one vote on each matter submitted to a vote.

## Article Three
*Board of Directors*

(A) General Powers. The business and affairs of the corporation will be managed by its Board of Directors.

(B) Number, Tenure, and Qualifications. The number of Directors of the corporation will not be less than one (1). Directors will be elected by a majority of the shareholders at each annual meeting of shareholders unless the shareholders waive any such election. Unless a successor is duly elected and qualified, the term of office of each Director will be until his or her death, disability, resignation, or removal. Directors need not be residents of the State of Texas nor shareholders of the corporation.

(C) Regular Meetings. A regular meeting of the Board of Directors will be held without notice other than these Bylaws immediately after and at the same place as each annual meeting of shareholders. The Board of Directors may provide, by resolution, the time and place for holding additional regular meetings of the Board of Directors without other notice than such resolution. Each additional regular meeting will be held at the principal office of the corporation in the absence of any other location stated in the resolution.

(D) Special Meetings. Special meetings of the Board of Directors may be called by or at the request of the President or any Director and will be held at the principal office of the corporation. Notice of any special meeting must be given at least ten (10) days before the time fixed for the meeting, in writing delivered to each Director; provided however, any Director may waive the notice of any meeting, in writing, and the attendance of a Director at a special meeting will constitute a waiver of the notice of such

meeting except if a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting was not lawfully called or convened. Neither the business to be transacted at nor the purpose of any special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.

(E) Quorum. A majority of the Directors then serving constitutes a quorum for the transaction of business at any meeting of the Board of Directors, but if less than a majority is present at a meeting, then a majority of the Directors present may adjourn the meeting from time to time without further notice.

(F) Board Decisions. The act of a majority of the Directors who are present at a meeting at which a quorum is present will be the act of the Board of Directors.

(G) Vacancies. Any vacancy occurring in the Board of Directors may be filled by the affirmative vote of a majority of the shareholders if deemed necessary or advisable. If the shareholders increase the number of Directors, then the additional Directors will be elected at the next annual meeting of shareholders or at a special meeting of shareholders called for that purpose.

(H) Compensation. The shareholders may agree to pay expenses, if any, incurred by the Directors to attend any meeting of the Board of Directors and/or a fixed sum for attendance at each meeting of the Board of Directors. No such payment will preclude any Director from serving the corporation in any other capacity and receiving compensation for such service.

(I) Presumption of Assent. A Director who is present at a meeting of the Board of Directors at which action on any corporate matter is taken is presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or he or she delivers a written dissent to the action to the Secretary before or immediately after the adjournment of the meeting; provided however, no Director who voted in favor of any action may thereafter dissent to the action.

## Article Four
*Officers*

(A) Number. The officers of the corporation will not be less than two – a President and a Secretary - each of whom will be elected by the Board of Directors. Other officers and assistant officers as deemed necessary or advisable may be elected or appointed by the Board of Directors. Any two or more offices other than President and Secretary may be held by the same person.

(B) Election and Term of Office; Vacancy. The officers of the corporation will be elected annually at the first meeting of the Board of Directors held after each annual meeting of the shareholders. If the election of officers is not held at such meeting, then the election will be held as soon afterward as is convenient. Unless a successor is duly elected and qualified, the term of office of each officer will be until his or her death, disability, resignation, or removal. Officers need not be residents of the State of Texas nor shareholders of the corporation. A vacancy in any office may be filled by the Board of Directors.

(C) Removal. Any officer elected or appointed by the Board of Directors may be removed by the Board of Directors whenever, in its judgment, the best interests of the corporation would be served by such removal, but such removal will be without prejudice to the contract rights, if any, of the person so removed.

(D) Powers and Duties. The powers and duties of the officers will be as provided from time to time by resolution or other directive of the Board of Directors. In the absence thereof, the respective officers will have the powers and discharge the duties customarily and usually held and performed by like officers of corporations similar in organization and business purposes to this corporation.

(E) Salaries. The salaries of the officers, if any, may be fixed from time to time by the Board of Directors and, if so, then no officer will be prevented from receiving a salary by reason of the fact that he or she is also a Director or employee of the corporation.

## Article Five

*Contracts, Loans, Checks, and Deposits*

(A) Contracts. The President is authorized to make any contract or execute and deliver any instrument in the name of and on behalf of the corporation, provided that the Board of Directors may authorize any other officer or agent to make any contract or execute and deliver any instrument in the name of and on behalf of the corporation; if another officer is so authorized, such authority may be general or confined to a specific instance(s).

(B) Loans. No loans may be contracted on behalf of the corporation and no evidences of indebtedness may be issued in its name unless authorized by a resolution of the Board of Directors. Such authority may be general or confined to a specific instance(s).

(C) Checks, Drafts, or Orders. All checks, drafts, or other orders for the payment of money, notes, or other evidences of indebtedness that are issued in the name of the corporation must be signed (i) by an officer or agent of the corporation and (ii) in such manner as determined by resolution of the Board of Directors from time to time.

(D) Deposits. All funds of the corporation not otherwise employed must be deposited from time to time to the credit of the corporation in such bank(s) or other depositaries as the Board of Directors may select.

## Article Six

*Certificates for Shares; Transfers*

(A) Certificates for Shares. Certificates representing shares of the corporation must be in such form as determined by the Board of Directors and signed by the President and by the Secretary. All certificates for shares shall be consecutively numbered or otherwise identified. The corporation may maintain a stock transfer book and, if so, register the issuances and transfers of shares therein (i.e., the name and address of the shareholder with the number of shares and date of issue). All certificates surrendered to the corporation for transfer must be canceled and no new certificate may be issued until the former certificate for a like number of shares has been surrendered and cancelled, except that a new certificate may be issued on such terms and indemnity to the corporation as the Board of Directors may prescribe if a certificate is lost, destroyed, or mutilated.

(B) Transfer of Shares. Transfers of shares of the corporation must be made in the manner specified by these Bylaws, any agreement among the shareholders, and all applicable laws. The Board of Directors is authorized to determine and recognize the person(s) who is the owner(s) of all shares for all proper corporate purposes, including voting at a regular or special meeting of shareholders and the issuance and payment of dividends.

**Article Seven**

*Fiscal Year*

The fiscal year of the corporation will end at midnight on December 31st of each year.

**Article Eight**

*Dividends*

The Board of Directors may, at any time and from time to time, declare a dividend on its outstanding shares, to be paid by the corporation in the manner and on the terms and conditions provided by law.

**Article Nine**

*Delivery and Waiver of Notice; Action Without Meeting*

(A) Whenever any notice is required to be given to any shareholder or Director of the corporation under the provisions of these Bylaws or by law, it must be sent by receipted courier or electronic mail and will be deemed delivered when delivered, if by receipted courier, or when sent if by electronic mail to an accurate address. A waiver of any notice in writing, signed by the shareholder or Director, whether before or after the time stated in the same, will be the equivalent of delivery of such notice.

(B) Any action that may be taken at a meeting of the shareholders or the Board of Directors pursuant to these Bylaws or by law may be taken without a meeting by unanimous written consent.

**Article Ten**

*Amendments*

These Bylaws may be altered, amended, or repealed and/or new Bylaws may be adopted by the shareholders at any time.

Adopted as of February 1, 2023.

MYSTIC CAMPS FAMILY PARTNERSHIP, LTD.,
Shareholder

By: MYSTIC CAMPS MANAGEMENT, LLC,
General Partner

By: Richard G. Eastland
Richard G. Eastland, Manager

Willetta A. Eastland
Willetta A. Eastland, Manager

**Exhibit F**

**[FILED UNDER SEAL]**

FILED
In the Office of the
Secretary of State of Texas

DEC 2 1 2012

Corporations Section

**CERTIFICATE OF AMENDMENT TO THE ARTICLES OF INCORPORATION OF NATURAL FOUNTAINS PROPERTIES, INC.**

Pursuant to the provisions of the Texas Business Organizations Code, the undersigned hereby certifies as follows:

**ARTICLE I.**

The name of the corporation is Natural Fountains Properties, Inc. ("Corporation"). The filing number issued by the Secretary of State of Texas for Corporation is 13315900 and Corporation's date of formation is May 31, 1956.

**ARTICLE II.**

The following amendments to the Articles of Incorporation were approved in the manner required by the Texas Business Organizations Code and the governing documents of Corporation:

A. Article Nine of the Articles of Incorporation of Corporation is hereby added to deny the shareholders a right to cumulative voting as shall read as follows:

"ARTICLE NINE

The right of cumulative voting shall not be available to each shareholder entitled to vote for election of directors."

B. Article Ten of the Articles of Incorporation of Corporation is hereby added to permit the shareholders of Corporation the right to take action by less than unanimous written consent and shall read as follows:

"ARTICLE TEN

Any action required to be taken at any annual or special meeting of the shareholders, or any action which may be taken at any annual or special meeting of the shareholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the shareholders having not less than the minimum number of votes necessary to take such action at a meeting at which the shareholders entitled to vote on the action were present and voted, sign a written consent or consents stating the actions taken."

C. Article Eleven of the Articles of Incorporation of Corporation is hereby added to permit a change in the required shareholder vote in connection with certain "fundamental actions" and "fundamental business transactions," as such terms are defined in the Texas Business Organizations Code and shall read as follows:



RECEIVED
DEC 2 1 2012
Secretary of State

EXHIBIT
G

"ARTICLE ELEVEN

The affirmative vote of the holders of a majority of the outstanding shares or, if applicable, a majority of the outstanding shares of a class or series entitled to vote on or approve any matter or action as to which the Texas Business Organizations Code (the "Code") requires a vote of two-thirds or any other specified portion of the shares will be sufficient to effect the matter or action subject to that vote, notwithstanding the vote required by the Code."

D. Article Twelve of the Articles of Incorporation of Corporation is hereby added to deny preemptive rights to the shareholders of Corporation and shall read as follows:

"ARTICLE TWELVE

Unless otherwise determined by the directors of the corporation, no holders of shares of the corporation shall be entitled as such as a matter of right to purchase or subscribe for any shares of any class which the corporation may issue or sell, whether or not exchangeable for any shares of the corporation of any class or classes and whether or not there are unissued shares authorized by the Articles of Incorporation of the corporation as originally filed, or by any amendment thereof, or out of shares of the corporation acquired by it after the issue thereof and whether issued for cash, labor done, personal property or real property, or leases thereof, nor shall a shareholder be entitled to any right of subscription to any thereof; nor, unless otherwise determined by the directors of the corporation, shall any holder of any shares of the corporation be entitled as such, as a matter of right, to purchase or subscribe for any obligation which the corporation may issue or sell that shall be convertible into or exchangeable for any shares of the corporation of any class or classes, or to which shall be attached or appended any warrant or warrants or other instrument or instruments which shall convey upon or grant the holder or holders of such obligation the right to subscribe for or purchase from the corporation any shares of any class or classes."

E. Article Thirteen of the Articles of Incorporation of Corporation is hereby added to include a limitation on liability of the directors of Corporation and shall read as follows:

"ARTICLE THIRTEEN

The directors of the corporation will not be liable to the corporation or its shareholders for monetary damages for acts or omissions that occur in the directors' capacity as directors. This article does not limit the directors' liability for acts or omissions for: (a) a breach of the duty of loyalty to the corporation or its shareholders; (b) a bad-faith breach of a director's duty to the corporation, intentional misconduct, or a knowing violation of the law; (c) a transaction from which a director received an improper benefit, whether or

not the benefit resulted from an action taken within the scope of the director's office; or (d) an act or omission for which a director's liability is expressly provided by statute. If the Code or other applicable law is amended to authorize action further eliminating or limiting the liability of directors, then the liability of a director of the corporation shall be eliminated or limited to the fullest extent permitted by the Code or other applicable law, as so amended.

Any repeal or modification of the foregoing paragraph by the shareholders shall not adversely affect any right or protection of a director existing at the time of such repeal or modification."

**ARTICLE III.**

This Certificate of Amendment to the Articles of Incorporation shall become effective when it is filed by the Secretary of State of Texas.

**ARTICLE IV.**

The undersigned signs this Certificate of Amendment subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

EXECUTED this 21st day of December 2012.

**NATURAL FOUNTAINS PROPERTIES, INC.,**
a Texas corporation

By: Richard G. Eastland
Richard G. Eastland, Chief Executive Officer

# LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this "**Lease**") is made and entered into effective as of the 1st day of January, 2019 (the "**Effective Date**"), by and between NATURAL FOUNTAINS PROPERTIES, INC., a Texas corporation ("**Landlord**"), and CAMP MYSTIC, INC., a Texas corporation ("**Tenant**") (collectively referred to herein as the "**Parties**," or each individually, as a "**Party**").

Recitals

WHEREAS, the Parties executed that certain Ground and Building Lease dated effective as of August 1, 2013 covering the Property described herein (the "**Existing Lease**");

WHEREAS, the Parties desire to enter into a new lease based upon certain material changes in circumstances;

WHEREAS, the Landlord has recently expended approximately $5,000,000.00 in substantial capital improvements to buildings, structures, appurtenances and other improvements to the Property; and

WHEREAS, the said capital improvements constitute material and substantial benefits to the Tenant, including increased revenues for Tenant's business.

IN CONSIDERATION of the foregoing as well as the mutual covenants, terms and conditions set forth herein, the Parties hereby agree as follows:

1. **TERMINATION OF EXISTING LEASE**: The Existing Lease is hereby terminated as of December 31, 2018.

2. **LEASE OF PROPERTY**: Landlord hereby leases to Tenant, and Tenant does hereby lease from Landlord, the grounds and property described on Exhibit "A", attached hereto and incorporated by reference herein, including all buildings, structures, appurtenances and improvements located thereon (the "**Improvements**") (the Improvements as well as the grounds and property described in Exhibit "A" are collectively referred to herein as the "**Property**").

3. **USE**: Tenant's use of the Property shall be for the operation of a faith based Camp for youth and, as Tenant deems appropriate, church groups and other similar uses and activities. Tenant shall use, operate and maintain Property in the same manner in which it has used, operated and maintained prior to the Effective Date. Tenant shall comply with all laws, ordinances, orders, rules, and regulations (state, federal, municipal and other governmental agencies or bodies having jurisdiction thereof) with respect to the use, condition or occupancy of the Property.

4. **TERM**: The term of this Lease (the "**Term**") shall commence on January 1, 2019 (the "**Commencement Date**"), and shall automatically renew annually on the anniversary of the Commencement Date ("Anniversary Date") unless a Party provides written notice of termination to the other Party at least ninety days prior to the next Anniversary Date or unless terminated sooner pursuant to the provisions hereof.



EXHIBIT
H

5. **RENT:** Tenant shall pay rent ("Rent") as follows: (i) Monthly Rent of $80,000.00 per month. Monthly Rent shall be due and payable in advance each month commencing on January 1, 2019 and continuing on the 1st day of each successive month thereafter during the Term and any extended Term; (ii) As additional Rent, Tenant shall, within sixty (60) days of Tenant's fiscal year-end, pay annual Rent to Landlord in an amount equal to 45% Tenant's net cash flow from Tenant's business operations conducted on the Property during Tenant's immediately preceding fiscal year (the "Annual Revenue Sharing Amount").

6. **UTILITIES**. Tenant shall be solely responsible for the establishment and payment of all utilities utilized by Tenant in the Premises and on the Property.

7. **TENANT IMPROVEMENTS AND ALTERATIONS**: Tenant will not make or allow to be made any material improvements, alterations or physical additions to the Property or Improvements without the prior written consent of Landlord (which consent shall not be unreasonably withheld).

8. **REPAIRS AND RE-ENTRY**: In addition to maintaining the Property and Improvements, Tenant, at its sole cost and expense throughout the Term, shall repair any damage to the Property and Improvements that is caused by Tenant or Tenant's agents, employees, vendors or invitees. If Tenant fails to make any necessary repairs or replacements required under this paragraph, Landlord may at its option make such repair or replacement, and Tenant shall repay the cost thereof to Landlord upon demand by Landlord. For the avoidance of doubt, Landlord shall not be obligated to make any repairs or replacements, or otherwise incur any costs for capital expenditures at the Property. Tenant shall not commit or allow any waste or damage to be committed on any portion of the Property or Improvements, and shall, at the termination of this Lease by lapse of time or otherwise, deliver up the Property to Landlord cleared of any personal property in as good condition as at the Commencement Date, ordinary wear and tear excepted. Upon such termination of this Lease, Landlord shall have the right to re-enter and resume possession of the Property and all Improvements.

9. **SERVICES PROVIDED BY LANDLORD**: Landlord will not provide any services to Tenant or the Improvements except for maintenance and repair of the roadways, parking lots, roofs, exterior walls, structural walls and foundations (the "**Landlord Services**"). Landlord will engage the contractors and/or service providers for the Landlord Services as Landlord deems reasonable and necessary. Any failure by Landlord to furnish the Landlord Services shall not render Landlord liable in any respect for damages to either persons (including Tenant) or property, nor be construed as eviction of Tenant, nor relieve Tenant from fulfillment of any covenant or agreement set forth in this Lease.

10. **NO ASSIGNMENT OR SUBLETTING**: Tenant shall not: (a) transfer, pledge, mortgage or assign this Lease or any interest hereunder; (b) permit any assignment of this Lease by voluntary act, operation of law or otherwise, (c) sublet the Improvements of any part thereof, or (d) permit the use of the Improvements by any parties other than Tenant or Tenant's affiliates without Landlord's consent.

11. **INSURANCE**: Tenant shall maintain a policy or policies of commercial general liability insurance covering the Improvements and Tenant's use thereof, insuring against claims for personal or bodily injury or death or property damage (including contractual indemnity and liability coverage without contractual exclusion) occurring upon, in or about the Improvements and Property. Tenant's liability insurance policy shall provide minimum protection of not less than $1,000,000.00 per occurrence for bodily injury, property damage, personal and advertising injury, $2,000,000.00 for general aggregate liability, $5,000,000.00 in umbrella coverage and such other coverage as Landlord may reasonably deem appropriate including business interruption, loss-of-income and extra-expense insurance in such amounts as will reimburse Tenant for direct or indirect loss of earnings attributable to all perils commonly insured against by prudent tenants or attributable to prevention of access to the Improvements/Property or to the Improvements/Property as a result of such perils. Tenant's insurance shall contain an endorsement that Tenant's insurance is primary and non-contributory for claims arising out of an incident or event occurring within the Improvements or on the Property. Tenant's insurance shall contain a provision naming Landlord as an additional insured and as a loss payee. Tenant shall, at Landlord's request, provide to Landlord a current certificate of insurance evidencing Tenant's compliance with this requirement. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord at least thirty (30) days prior to any cancellation, modification or expiration of a liability insurance policy. All such insurance policies shall be in form and substance satisfactory to Landlord and shall be issued by companies with an A.M. Best Rating of not less than A-:VII or otherwise be acceptable to Landlord and licensed to do business in the State of Texas.

Each policy required to be provided by Tenant shall have attached thereto (a) an endorsement that such policy shall not be cancelled or materially changed without at least thirty (30) days' prior written notice to Landlord, (b) an endorsement to the effect that the insurance as to the interest of Landlord shall not be invalidated by any act or neglect of Landlord or Tenant, and (c) an endorsement that Tenant's insurance is primary and non-contributory for claims arising out of an incident or event occurring within the Improvements or on the Property. All policies of insurance, together with any endorsements reflecting the changes to the policies required to comply with this Lease, shall contain a provision naming Landlord (and any mortgagee designated by Landlord) as additional insureds.

All insurance policies required to be delivered by Tenant pursuant to this Lease shall permit releases of liability as provided herein and/or a waiver of subrogation clause as to Landlord. Tenant waives, releases and discharges Landlord and Landlord's agents, employees and contractors from all claims and demands whatsoever which Tenant may have or acquire arising out of damage to or destruction of the machinery, equipment, furniture, fixtures, personal property, and loss of use thereof occasioned by fire or other casualty, whether such claim or demand may arise because of the negligence or fault of Landlord or its agents, employees, contractors or otherwise, and Tenant agrees to look only to the insurance coverage in the event of such loss.

Tenant shall not occupy or use, nor permit any portion of the Improvements or Property demised hereunder to be occupied or used, for any business or purpose which is unlawful in part or in whole or deemed to be disreputable in any manner, or extra hazardous on account of fire, nor permit anything to be done which will in any way increase the rate of fire insurance on the Property, the Improvements or contents, and in event that, by reasons of acts of Tenant, there shall

be any increase in insurance premiums on the Property, the Improvements or contents created by Tenant's act or conduct of business, then Tenant shall pay such increase.

**12. RELEASE AND INDEMNITY: AS MATERIAL CONSIDERATION TO LANDLORD, TENANT AGREES THAT NEITHER LANDLORD NOR ANY OF ITS OWNERS, JOINT VENTURERS, MEMBERS, MANAGERS, OFFICERS, SHAREHOLDERS, DIRECTORS, PARTNERS, AGENTS, REPRESENTATIVES AND EMPLOYEES (COLLECTIVELY, THE "LANDLORD PARTIES") SHALL BE LIABLE TO TENANT FOR ANY DAMAGES TO TENANT OR TENANT'S PROPERTY FROM ANY CAUSE, AND TENANT WAIVES ALL CLAIMS AGAINST THE LANDLORD PARTIES FOR DAMAGE TO PERSONS OR PROPERTY ARISING FOR ANY REASON, EXCEPT FOR DAMAGE TO PERSONS RESULTING DIRECTLY FROM A LANDLORD PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. WITHOUT LIMITATION OF THE FOREGOING, TENANT WAIVES ALL CLAIMS AGAINST THE LANDLORD PARTIES FOR DAMAGE TO PROPERTY THAT IS INSURED BY TENANT OR REQUIRED TO BE INSURED BY ANY POLICY OF INSURANCE TENANT IS REQUIRED TO CARRY PURSUANT TO THIS LEASE. TENANT SHALL INDEMNIFY AND HOLD THE LANDLORD PARTIES HARMLESS FROM ALL DAMAGES ARISING OUT OF ANY DAMAGE TO ANY PERSON OR PROPERTY OCCURRING IN, ON OR ABOUT THE IMPROVEMENTS OR PROPERTY OR TENANT'S USE THEREOF OR TENANT'S BREACH OF ANY TERM OF THIS LEASE. THE LANDLORD PARTIES SHALL NOT BE LIABLE TO TENANT FOR ANY LOSS OR DAMAGE, INCLUDING ANY LOST PROFIT, LOSS OF BUSINESS OR CONSEQUENTIAL DAMAGES, THAT MAY BE OCCASIONED BY OR THROUGH THE ACTS OR OMISSIONS OF OTHERS, OR FOR ANY LOSS OR DAMAGE, INCLUDING ANY LOST PROFIT, LOSS OF BUSINESS OR CONSEQUENTIAL DAMAGES, RESULTING TO TENANT OR ITS PROPERTY FROM BURST OR LEAKING WATER, SPRINKLER OR SEWER PIPES OR FROM ROOF LEAKS. TENANT SHALL FURTHER INDEMNIFY, DEFEND AND HOLD THE LANDLORD PARTIES HARMLESS FROM AND AGAINST ANY AND ALL LOSS OF RENTS OR DAMAGES, LIABILITIES, JUDGMENTS, CLAIMS, EXPENSES, PENALTIES, AND ATTORNEYS' AND CONSULTANTS' FEES ARISING OUT OF OR INVOLVING ANY HAZARDOUS SUBSTANCE BROUGHT ONTO THE IMPROVEMENTS OR PROPERTY BY OR FOR TENANT, ITS EMPLOYEES, AGENTS, CONTRACTORS, OR INVITEES. TENANT'S OBLIGATIONS SHALL INCLUDE, BUT NOT BE LIMITED TO, THE EFFECTS OF ANY CONTAMINATION OR INJURY TO PERSON, PROPERTY OR THE ENVIRONMENT CREATED OR SUFFERED BY TENANT, AND THE COST OF INVESTIGATION, REMOVAL, REMEDIATION, RESTORATION OR ABATEMENT, AND SHALL SURVIVE THE EXPIRATION OR TERMINATION OF THIS LEASE. NO TERMINATION, CANCELLATION OR RELEASE AGREEMENT ENTERED INTO BY LANDLORD AND TENANT SHALL RELEASE TENANT FROM ITS OBLIGATIONS UNDER THIS LEASE WITH RESPECT TO HAZARDOUS SUBSTANCES, UNLESS SPECIFICALLY SO AGREED BY LANDLORD IN WRITING AT THE TIME OF SUCH AGREEMENT.**

13. **ENTRY FOR REPAIRS AND INSPECTION**: Tenant shall permit Landlord and its agents, assigns and representatives the right to enter any and all parts of the Improvements and Property at all reasonable hours to inspect same or clean or make repairs or alterations or additions as Landlord deems necessary. Tenant shall properly reimburse Landlord for repairs to damage caused by Tenant or any one or more of the Tenant Parties.

14. **CASUALTY, CONDEMNATION OR OTHER LOSS**: If the Improvements or Property is so damaged by fire or other casualty that substantial alteration or reconstruction of the Improvements, will, in the reasonable judgment of Landlord, be required, or in the event that Landlord determines that insurance proceeds will be insufficient to restore the Improvements, then either Landlord or Tenant may terminate this Lease by giving written notice thereof to the other party. If the Improvements or the Property are taken or condemned in whole or in substantial part for public purposes, then (i) the Term shall at the option of either Party hereto forthwith cease and terminate and (ii) Landlord shall receive the entire award or other compensation paid in connection with such taking or condemnation.

Pursuant to this Paragraph 14, Landlord will not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from the casualty, condemnation or its repair.

Notwithstanding anything contained in this Lease to the contrary, Landlord will not be liable for damages to Tenant or any party claiming through Tenant for any injury to, or death of, any person or damage to property or for interruption or damage to business resulting from theft, fire, act of God, public enemy, injunction, riot, strike, insurrection, war, court order, requisition or order of governmental body or authority, or any other matter beyond the control of Landlord, except to the extent such damage is caused by the gross negligence or willful misconduct of Landlord.

15. **HOLDING OVER**: Any holdover by Tenant beyond a termination pursuant to the terms hereof, without the written consent of Landlord, shall constitute a tenancy-at-will and the rent (the "**Rent**") owed by Tenant shall be $100,000.00 per month plus the Annual Revenue Sharing Amount. In addition to any other liabilities to Landlord accruing therefrom, Tenant shall protect, defend, indemnify and hold Landlord harmless from all loss, cost (including reasonable attorneys' fees) and liability resulting from such holdover, including any claims made by any succeeding tenant founded upon a failure of Tenant to surrender the Improvements, and, if such holding over continues more than thirty (30) days, any lost profits or other consequential damages to Landlord resulting therefrom.

16. **DEFAULT BY TENANT**: The following events will be deemed to be events of default by Tenant under this Lease (each an "**Event of Default**"):

(a) Tenant fails to timely pay any Rent or any other sum(s) due under this Lease as and when due;

(b) Tenant fails to comply with any non-monetary term, provision or covenant of this Lease and such failure continues for a period of fourteen (14) days after written notice of such failure has been given to Tenant;

(c) Tenant fails to pay and release of record, or diligently contest and bond around to the satisfaction of Landlord, within ten (10) days after the filing thereof, any mechanic's lien filed against the Improvements or the Property for any worked performed, materials furnished, or obligation incurred by or at the request of Tenant;

(d) Tenant takes any action to, or notifies Landlord that Tenant intends to, file a petition under any section or chapter of the United States Bankruptcy Code, as amended from time to time, or under any similar law or statute of the United States or any state thereof; or a petition is filed against Tenant under any such statute and is not dismissed within sixty (60) days thereafter; or

(e) A receiver or trustee is appointed for Tenant's leasehold interest in the Improvements or for all or a substantial part of the assets of Tenant.

17. **LANDLORD'S REMEDIES**:

(a) Upon the occurrence of any Event of Default, Landlord may, at its option and without further notice to Tenant and without judicial process, in addition to all other remedies given hereunder or at law or in equity, do any one or more of the following: (i) terminate this Lease, in which event Tenant will immediately surrender possession of the Improvements and Property to Landlord; (ii) enter upon and take possession of the Improvements and Property and expel or remove Tenant therefrom, with or without having terminated this Lease; (iii) change or re-key all locks to entrances to the Improvements, and Landlord will have no obligation to give Tenant a new key to the Improvements until such Event of Default is cured; and (iv) remove from the Improvements and Property any furniture, fixtures, equipment, vehicles or other personal property of Tenant, without liability for trespass or conversion, and store such items at the sole cost of Tenant and without liability to Tenant. Any of such furniture, fixtures, equipment, vehicles or personal property not claimed within thirty (30) days from the date of removal will be deemed abandoned and Landlord may dispose of same in any lawful manner deemed appropriate by Landlord.

(b) Upon the occurrence of the Event of Default described in hereinabove, Tenant shall, in addition to all other remedies given hereunder or at law or in equity, pay to Landlord as liquidated damages (and not as a penalty) a fee in the amount of $50,000.00 (the "**Removal Fee**"). Tenant acknowledges and agrees that (i) the harm to Landlord caused by Tenant's failure to remove Tenant's personal property is incapable or difficult of estimation, and (ii) the amount of the Removal Fee is a reasonable estimate of the damages Landlord will suffer if Tenant fails to remove all of Tenant's personal property prior to the Termination Date.

(c) Exercise by Landlord of any one or more remedies hereunder will not constitute forfeiture or an acceptance of surrender of the Improvements and Property by Tenant. Such surrender can be effected only by the written agreement of Landlord and Tenant.

(d) If Landlord terminates this Lease by reason of an Event of Default, Tenant shall pay to Landlord the sum of (i) the cost of recovering the Improvements (including attorney's fees and costs), (ii) the unpaid Rent and Operating Expenses and all other indebtedness accrued hereunder to the date of such termination, and (iii) any other damages or relief which Landlord may be entitled to at law or in equity.

(e) If Tenant fails to make any payment, perform any obligation, or cure any default hereunder within ten (10) days after receipt of written notice thereof, Landlord, without obligation to do so and without thereby waiving such failure or default, may make such payment, perform such obligation, and/or remedy such other default for the account of Tenant (and enter the Improvements for such purpose). Tenant must pay immediately all costs, expenses and disbursements (including attorneys' fees) incurred by Landlord in taking such remedial action, plus, at the option of Landlord, interest thereon at the lesser of (i) ten percent (10%) per annum and (ii) the maximum rate permitted by applicable law.

(f) No act or thing done by Landlord or its agents during the Term shall be deemed an acceptance of a surrender of the Improvements and Property and no agreement to accept a surrender of the Improvements and Property shall be valid unless the same be made in writing and subscribed by Landlord. The receipt by Landlord of any sums due under this Lease with knowledge of the breach of any covenant contained in this Lease shall not be deemed a waiver of such breach. The receipt by Landlord of any sums due under this Lease from any assignee, subtenant or occupant of the Improvements or Property shall not be deemed a waiver of the covenant in this Lease against assignment and/or subletting or an acceptance of the assignee, subtenant or occupant as Tenant, or a release of Tenant from further observance or performance by Tenant of the covenants in this Lease. No provision of this Lease shall be deemed to have been waived by Landlord unless such waiver be in writing and signed by Landlord.

18. **NO WAIVER OF DEFAULT**: Failure of Landlord to declare any default immediately upon occurrence thereof or delay in taking action in connection therewith shall not waive such default, but Landlord shall have the right to declare any such default at any time and take such action as might be lawful or authorized hereunder, at law or in equity. Tenant shall pay all costs, attorney's fees, and expenses incurred or to be incurred in connection with the enforcement of any covenant or agreement hereof, and any action taken in connection herewith.

19. **QUIET POSSESSION**: Landlord hereby covenants that Tenant, upon the timely payment of Rent and all sums due under this Lease and performing all covenants and agreements herein contained on part of Tenant, shall and may peacefully and quietly have, hold and enjoy the Improvements hereby demised without interference from Landlord.

20. **LIMITATION ON LANDLORD'S LIABILITY**: The liability of Landlord Parties to Tenant (or any person or entity claiming by, through or under Tenant) for any default by Landlord under the terms of this Lease or any other matter relating to or arising out of the occupancy or use of the Improvements and/or other areas of the Property shall be limited to Tenant's actual direct, but not consequential, damages therefore and shall be recoverable only from the interest of Landlord in the Improvements, and no Landlord Party shall be personally liable for any deficiency. Additionally, Tenant hereby waives its statutory lien under Section 91.004 of the Texas Property Code.

21. **NO RELIANCE:** In signing this Lease, Tenant acknowledges and agrees that it has not relied on nor been induced to execute this Lease by any statement, representation, agreement or promise, oral or written, made by any Landlord Party, other than the statements expressly set forth in this Lease. Tenant expressly represents and warrants that it is relying solely upon its own judgment in executing this Lease and disclaims reliance upon any statement or representations made by any of the Landlord Parties.

22. **TRANSFER OF LANDLORD'S RIGHTS**: Landlord shall have the right to transfer and assign, in whole or in part, any or all of its rights and obligations hereunder and in the Improvements and Property. Such transfers or assignments may be made either to a corporation, limited liability company, partnership, limited partnership, limited liability partnership, trust company or other entity, or individual or group of individuals, and howsoever made are to be in all things respected and recognized by Tenant.

23. **NOTICES**: All notices and other communications given pursuant to this Lease shall be in writing and shall be (i) mailed by first class, United States Mail, postage prepaid, certified, with return receipt requested, and addressed to the Parties hereto at the address specified below, (ii) hand delivered to the intended addressee, or (iii) sent by nationally recognized overnight courier service, in each case, addressed to the parties hereto at the respective addresses set out below, or at such other address as they have theretofore specified by written notice delivered in accordance herewith. All notices sent pursuant to (i) through (iii) above shall be effective upon delivery at the address of the addressee (even if such addressee refuses delivery thereof). The Parties hereto may change their addresses by giving notice thereof to the other in conformity with this provision.

To Landlord:

Richard G. Eastland
2689 Highway 39
Hunt, Texas 78024

To Tenant:

Richard G. Eastland
2689 Highway 39
Hunt, Texas 78024

24. **GOVERNING LAW AND VENUE**: This Lease shall be construed and enforced in accordance with the laws of the State of Texas. All claims, disputes and other matters in question arising out of or relating to this Lease, or the breach thereof, shall be decided by proceedings instituted and litigated in a court of competent jurisdiction in Kerr County, Texas.

25. **BINDING EFFECT**: This Lease shall not be binding on any Party until executed by both Landlord and Tenant. This Lease shall be binding upon and inure to the benefit of Landlord and Tenant, and their respective successors and permitted assigns.

26. **ENTIRE AGREEMENT**: This Lease, together with any other documents or exhibits attached hereto, embody the entire agreement between the Parties concerning the subject matter hereof and supersedes and replaces all prior leases, conversations, proposals, negotiations, understandings and contracts, whether written or oral.

27. **AMENDMENTS**: To be effective, any amendment or modification of this Lease must be in writing and signed by Landlord and Tenant.

28. **SEVERABILITY**: If any clause or provision of this Lease is determined to be illegal, invalid or unenforceable under present or future laws effective during the Term, then and in that event, it is the intention of Parties hereto that the remainder of this Lease shall not be affected thereby, and it is also the intention of the Parties that in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable, there be added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable. The caption of each paragraph hereof is added as a matter of convenience only and shall be considered to be of no effect in the construction of any provision or provisions of this Lease.

29. **COUNTERPARTS**: This Lease may be executed in multiple counterparts, each of which will constitute an original instrument, but all of which will constitute one and the same agreement. This Lease may be executed by electronic delivery of signatures which shall be binding on the Parties hereto, with original signatures to be delivered as soon as reasonably practical thereafter.

30. **TIME OF THE ESSENCE**: It is expressly agreed by the Parties hereto that time is of the essence under this Lease and any aspect thereof.

[Signature Page Follows]

IN WITNESS WHEREOF, the Parties hereto have executed this Lease or caused it to be executed by their duly authorized representatives as of the date first above written.

**LANDLORD:**

NATURAL FOUNTAINS PROPERTIES, INC.,
a Texas corporation

By: William N. Bonner, III
Name: WILLIAM NEELY BONNER, III
Title: PRESIDENT
Date: 2-18-19

**TENANT:**

CAMP MYSTIC, INC.,
a Texas corporation

By: Dick Eastland
Name: DICK EASTLAND
Title: PRESIDENT
Date: 2/18/19

K&K INSURANCE
1712 Magnavox Way P.O. Box 2338
Fort Wayne, Indiana 46801
PH (800) 237-2917
Fax (312) 381-9077
http://www.kandkinsurance.com

# K&K INCIDENT REPORT

(PLEASE PRINT)

| | |
|---|---|
| NATURE | ☐ BODILY INJURY ☐ PROPERTY DAMAGE ☐ OTHER ____ |
| TIME & PLACE OF INCIDENT | DATE: ____ TIME: ____ ☐ AM ☐ PM<br>EVENT NAME: ____<br>EVENT TYPE: ____ SANCTIONED BY: ____<br>LOCATION: ____ |
| HAPPENED TO | NAME: ____ SSN: ____<br>DATE OF BIRTH: ____ SEX: ☐ MALE ☐ FEMALE PHONE: ( ) ____<br>ADDRESS: ____<br>CITY: ____ STATE: ____ ZIP: ____ |
| FUNCTION | AS: ☐ ATHLETE ☐ PARTICIPANT ☐ VOLUNTEER ☐ SPECTATOR ☐ BYSTANDER ☐ OFFICIAL<br>☐ OTHER: ____ |
| APPARENT INJURY OR DAMAGE | BODY PART: ____<br>CONDITION: (Laceration, Concussion, Sprain, Fracture, Etc.): ____<br>☐ ON-SITE CARE ONLY, BY (PHYSICIAN) (EMT) (TRAINER) OTHER: ____<br>☐ AMBULANCE, TAKEN TO: ____ CITY: ____<br>☐ FATALITY |
| OCCASION | WHAT WAS THE SITUATION AND EXACT LOCATION AT THE TIME OF THE INCIDENT? ____ |
| INCIDENT DESCRIPTION | DESCRIBE WHAT HAPPENED: ____ |
| WITNESSES (If known) | NAME: ____ NAME: ____<br>ADDRESS: ____ ADDRESS: ____<br>PHONE: ( ) ____ PHONE: ( ) ____ |
| INSURED | NAME OF INSURED: ____ POLICY #: ____<br>CLUB NAME: ____ PHONE: ( ) ____<br>CITY: ____ STATE ____ |
| INSURED REPRESENTATIVE | ☐ COACH ☐ OFFICIAL ☐ TRAINER ☐ PROMOTER ☐ TEAM/LEAGUE REPRESENTATIVE ☐ OTHER: ____<br>NAME: ____ PHONE: ( ) ____<br>TITLE: ____ ORGANIZATION ____<br>SIGNATURE: ____ DATE: ____ |

COMPLETE ALL SECTIONS AND FAX OR MAIL IMMEDIATELY TO:
K&K INSURANCE GROUP, INC., P.O. BOX 2338, FORT WAYNE, IN 46801-2338
THIS FORM MUST INCLUDE THE INSURED NAME, POLICY NUMBER, AND SIGNATURE OF THE INSURED/REPRESENTATIVE BEFORE RETURNING OR PROCESSING MAY BE DELAYED

(NON-PA)1029-07/22

EXHIBIT
I

Dear Participant: If you have an appointment with a doctor as the result of a sport related injury, please show this document to the doctor's insurance secretary. You should be identified as a member of the following preferred provider networks and/or their affiliates.

Dear Doctor or Provider: This document indicates that this patient is a participant in the following preferred provider networks and/or their affiliates:

The First Health Network HYGEIA PHCS

## INSTRUCTIONS FOR COMPLETING THE ACCIDENT INSURANCE FORM TO THE INJURED PERSON/PARENT /GUARDIAN

To the injured person/parent/guardian:

Complete part II of this claim form. Attach current itemized physician, hospital, or other provider's bills for accident medical expenses as well as the primary carrier's explanation of benefit showing their payment and denial. These bills must show the patient's name, condition (diagnosis), type of treatment given, date the expense was incurred, and the charges made. Return this form to K&K Insurance Group, Inc. Please note: Claim forms will be returned if not fully completed and signed. Omission of vital information will cause a delay in claim processing.

(NON-PA)1029-07/22

# FRAUD WARNINGS

NOTICE TO APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME, AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO ALABAMA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION, FINES, OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

NOTICE TO ARKANSAS, LOUISIANA, RHODE ISLAND, AND WEST VIRGINIA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AUTHORITIES.

NOTICE TO DISTRICT OF COLUMBIA APPLICANTS: WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

NOTICE TO FLORIDA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

NOTICE TO KANSAS APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN, ELECTRONIC, ELECTRONIC IMPULSE, FACSIMILE, MAGNETIC, ORAL, OR TELEPHONIC COMMUNICATION OR STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE THAT SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT.

NOTICE TO KENTUCKY APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

NOTICE TO MAINE APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

NOTICE TO MARYLAND APPLICANTS: ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NOTICE TO MINNESOTA APPLICANTS: A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

NOTICE TO NEW JERSEY APPLICANTS: ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO NEW MEXICO APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

SIGNATURE: ______________________________________________

NOTICE TO OHIO APPLICANTS: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

NOTICE TO OKLAHOMA APPLICANTS: WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

NOTICE TO OREGON APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE GUILTY OF A FRAUDULENT ACT, WHICH MAY BE A CRIME, AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

K&K INSURANCE
1712 Magnavox Way PO Box 2338
Fort Wayne, IN 46801-2338
Phone: (800)237-2917
Fax: Property & Casualty (312) 381-9079
Fax: Participant Accident (312) 381-9077
www.kandkinsurance.com CA #0334819

# INCIDENT REPORTING INSTRUCTIONS & EMERGENCY PROCEDURES

## EMERGENCY PROCEDURES

1. ***ACTION:*** Follow your written plan and take appropriate care of all injured persons.

2. ***NOTICE:*** Incidents can happen anywhere. Advising K&K as soon as practical after an incident occurs surrounding your event, regardless of the location of the incident or whether or not you feel you are responsible for the bodily injury or property damage, is essential. If appropriate, an adjuster will be assigned immediately.

3. ***STATEMENT:*** Do not make any statements regarding the cause of the accident. Give no opinions or conjectures to anyone other than your insurance company representative.
**DO NOT ADMIT TO LIABILITY. DO NOT INFER OR PROMISE TO PAY. Use only the acceptable statement: "The accident is under investigation," NOTHING MORE!**

4. ***INVESTIGATION:*** Cooperate with your insurance company representative. Let this person make any and all conclusive investigations.

5. ***WITNESSES:*** Secure names, addresses and phone numbers (home and work) of witnesses as soon as possible after the accident. NOTHING MORE!

6. ***WAIVER & RELEASE:*** (If required) If insured person was in restricted area, locate signed Waiver and Release immediately and store in safe place. Send to the insurance company <u>only by request and by registered mail.</u> Retain photocopy of Waiver and Release for your file.

7. ***LOCAL AUTHORITIES:*** If the incident is investigated by local authorities, identify to K&K i.e. police, from what town, county and state.

8. ***INCIDENT REPORT FORM:*** Complete all information required and available within 24 hours. Minimum information should include facility name and address, date of accident, victim's name, address and phone number; family name and phone number if fatality; and the signature of the person that completed form.

**Mail ASAP – nothing can be handled by the insuring company without this information.**

**REMEMBER: NOTIFY K&K OF ALL INCIDENTS, NOT JUST THOSE CATASTROPHIC IN NATURE.**

## PREPARE FOR EMERGENCIES

1. Have a qualified person designated to make ALL private, public or media statements. Make all personnel aware that only the designated statement person inquires about a loss.

2. Make a separate qualified person designated for all emergency medical, fire and security operations.

3. Have adequate personnel on site: security, medical, and fire protection services and equipment. "Adequate" means proper and prudent for your anticipated attendance and event activity.

4. Have backup personnel and equipment, including backup power sources, in place to maintain event integrity.

5. Have a written crisis management plan that addresses all "worst scenario" situations, including evacuation.

6. Train and practice all emergency procedures.

7. If policy wording requires it, have adequate supplies of Waiver and Release forms. Have adequate accident reporting forms on site. Those who must sign a Waiver and Release form are those persons practicing and/or participating in any athletic event sponsored by you, as well as anyone entering a restricted area, which is generally defined as any area where admittance to the general public is prohibited.

8. Have the name and number of your Insurance Contact posted prominently. In case of a major spectator loss or fatality, K&K's 24-hour number is 260-459-5000. Have one person responsible for this call. Call K&K direct; do not rely on a Broker, etc. to relay the call.

# PRAESIDIUM



## BACKGROUND SCREENING

### WHO IS PRAESIDIUM?

Praesidium is the national leader in abuse risk management. With more than three decades of experience, and serving thousands of clients, our dedicated team of researchers, attorneys, social workers, and human resource professionals have analyzed thousands of cases of abuse in organizations and synthesized the latest scientific research. We know how abuse happens in organizations…and how to prevent it.

### WHAT YOU DON'T KNOW CAN HURT THOSE IN YOUR CARE AND YOUR ORGANIZATION.

Adopting a solid screening and selection process is your first line of defense in creating a safe environment. A thorough, consistent screening process may also discourage would-be offenders from targeting your organization. Failure to discover a known offender can affect those in your care and the organization's reputation, financial stability, and trust within the community. Who you should screen can depend on many factors, such as if the person is a new full-time hire, a season hire, or even a current employee. In determining the types of checks to utilize, organizations should follow all state, federal, and licensing regulations and consider an individual's level of access. Level of access may be influenced by:

- **Frequency**: How frequently does the individual work around or interact with consumers? Is it a one-time event or every day?
- **Duration**: What is the duration of the individual's interactions? Is it a one-time, one-hour event or an entire summer?
- **Level of Supervision**: Are the individual's interactions always supervised by another adult or are they one-on-one with consumers?
- **Nature of the Relationship**: What is the nature of the relationship between the individual and the consumers in the program? Does the individual merely supervise an area during an event that has consumers, or are they getting to know individual consumers and families while counseling, tutoring, or providing more intimate, personal care services?

**AIG Programs has partnered with Praesidium to offer you discounted background screening services for your organization.**

For more information contact us at: 800.743.6354 | AIGPrograms@praesidiuminc.com

***IN ORDER TO RECEIVE THIS EXCLUSIVE BENEFIT PLEASE IDENTIFY THE APPLICABLE AIG PROGRAM.***

# PRAESIDIUM

## FOUR ELEMENTS FOR A THOROUGH BUT COST EFFECTIVE BACKGROUND CHECK:

- **Check Facts:** Aliases, DOBs, and address history all drive research and help to paint a complete picture.
- **Search Wide:** Multi State criminal and national sex offender databases will identify the unexpected.
- **Search Deep:** Targeted county level searches will give real-time information where records are most likely to be found.
- **Ask Questions:** References can provide insights on behavior and clues to non-criminal boundary issues.

## WHO SHOULD YOU SCREEN, AND HOW OFTEN?

- **New Hires/Volunteers:** A thorough, consistently applied background screening process at the time of hire is your first and best opportunity to identify the problem.
- **Seasonal Hires/Volunteers:** Seasonal staff present a unique risk because you don't see them for months at a time, but it's often not practical to complete a full new hire process each season. An annual check-in plan is key.
- **Re-Screening:** Conducting targeted checks on your full-time employees at least every 3 years helps you identify issues before they impact your organization.

## BACKGROUND SCREENING FOR AIG PROGRAMS INSUREDS

Praesidium offers a selection of background screening packages plus a la carte services to empower your organization to conduct right-sized research. Praesidium's team can help contextualize the screening process as part of an overall culture of safety and discuss how screening works in hand with other abuse prevention efforts. Praesidium's team can also help you understand who to screen, how often, and the importance of re-screening.

In addition to Background Screening - you can now access **Praesidium Academy** to add further training on maintaining professional boundaries and abuse prevention. Praesidium Academy Online Training includes supporting tools that enhance both the short and long term effectiveness of the training experience and produce sustainable changes in employee and volunteer behavior. **Access to this system is free to AIG Programs Insureds.**

| | EMPLOYEES | HIGH ACCESS VOLUNTEERS | LOW ACCESS VOLUNTEERS | ANNUAL HIRE RESCREEN | 3-YEAR RESCREEN | A LA CARTE |
|---|---|---|---|---|---|---|
| | STARTING AT $19.95 | STARTING AT $19.95 | $19.95 | $19.95 | STARTING AT $19.95 | INDIVIDUAL COST PER SERVICE |
| Employment Credit ($60 one-time set up fee required) | | | | | | $15.00 |
| Confidence Multi State Criminal & Sex Offender Database w/Alias** | ✓ | ✓ | ✓ | ✓ | ✓ | $9.95 |
| 7 Yr County Criminal Records Search: Current County of Residence* | ✓ | ✓ | ✓ | ✓ | ✓ | $10.00 |
| *Add'l Counties Added As Needed Based on 3-7yr Address History** | ✓ | ✓ | | | ✓ | $10.00 |
| Motor Vehicle Records Search* | | | | | | $5.00 |
| Employment Verification: 1 Position* | | | | | | $15.00 |
| Education Verification: 1 Degree* | | | | | | $15.00 |
| Personal Reference: 1 Reference | | | | | | $15.00 |
| Professional Reference: 1 Reference | | | | | | $15.00 |
| International Criminal Search 1 Jurisdiction* | | | | | | $50.00 |

3rd Party keeper fees may apply and will be passed on at cost when incurred.

* Criminal records found in the Multi State database check are subject to verification at the source and additional costs may apply.

** An in-county acquisition fee will apply to all international criminal record searches.

For more information contact us at: 800.743.6354 | AIGPrograms@praesidiuminc.com

***IN ORDER TO RECEIVE THIS EXCLUSIVE BENEFIT PLEASE IDENTIFY THE APPLICABLE AIG PROGRAM.***

# POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

# AIG TEXAS NOTICE TO POLICYHOLDER

## LOSS CONTROL INFORMATION/SERVICES

This notice is to inform you of our loss control programs available in the State of Texas for insureds purchasing commercial automobile, commercial general liability, professional liability for insureds other than hospitals, medical professional liability for insureds other than hospitals, and professional liability for hospitals.

Pursuant to the Texas Insurance Code we will provide you with loss control information/services based on the risk, exposure, loss experience, and other considerations of your business.

In the state of Texas, loss control services, including surveys, recommendations, consultations, training and analysis of accident causes, are available at no additional charge. A summary of these services are listed below. For more information or to access any of these services, please call us at 1-800-611-3994 or send an email to ProgramsLC@aig.com.

**Telephone or On-Site Loss Control Survey:** Professional expertise to evaluate your company's risk exposures and controls and make recommendations for improvement.

**On-Line Safety Training:** Dozens of driver training and general safety courses are available through our dedicated website. Your employees complete the selected courses at their own pace and you can easily and efficiently track their progress.

**Educational Webcasts:** Leading industry experts discuss a variety of risk management topics.

**Customer Service Line:** Professional staff members are available every business day to answer your questions and provide loss control advice.

**Discounted Service for Criminal Background Checks:** A 50-state criminal and sexual offender record check service offered by IntelliCorp, a state of the art ISO Company.

**Bulletin Library:** Dozens of relevant risk management bulletins in a downloadable PDF format that can help clients identify and evaluate exposures and implement best practices to control losses. A wide range of topics are offered in the areas of; crime, fire, liability, auto and more. You may access this library through www.aig.com\programslosscontrol.

**We encourage you to respond to us within the next 60 days with your name, policy number, phone number and/ or email address** to take advantage of these services that can assist you in preventing losses. Please call or email us indicating the services you are interested in.

In the event you decide not to utilize our loss control services and opt to use your own safety department or hire an outside contractor, the service must be provided by qualified loss prevention representatives who are recognized by the State of Texas.

If you elect not to utilize our loss control services we require you to provide us with the following information (on your company letterhead stationery, signed by an officer of your firm):

- Acknowledgement of our offer of loss control services and your written rejection.
- Your reasons for selection of an alternative.
- Your alternative loss control program, which must be reasonably commensurate with the risk.
- Verification of the qualification of those who will be performing your loss control services.
- Acknowledgment that quarterly summaries of activities outlined in your loss control program will be submitted to us for review.

If you have any questions or wish to discuss this matter, contact us at 1-800-611-3994 or send an email to ProgramsLC@aig.com .

 © All rights reserved. 

# ADVISORY NOTICE TO POLICYHOLDERS

# 2023 GENERAL LIABILITY MULTISTATE ENDORSEMENTS ADDRESSING CYBER, DATA PRIVACY AND ORDER OF RESPONSE

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**
Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new and revised endorsements which may apply to your renewal policy being issued by us.

**FOR USE WITH THE COMMERCIAL GENERAL LIABILITY (CGL) COVERAGE PART**
**CG 00 69 12 23 – Exclusion – Violation Of Law Addressing Data Privacy**
**CG 21 23 12 23 – Alaska Exclusion – Violation Of Law Addressing Data Privacy**
When this endorsement is attached to your policy, an exclusion is added to Coverage **A** and Coverage **B** that excludes coverage for bodily injury, property damage or personal and advertising injury that generally arises out of the violation of statutes, ordinances, regulations or other laws generally pertaining to any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information. This exclusion is a reinforcement of coverage intent. Damages related to violations of laws pertaining to data privacy are not intended to be covered under this Coverage Part.

**CG 21 06 12 23 – Exclusion – Access Or Disclosure Of Confidential Or Personal Material Or Information**
This endorsement is revised to delete the provisions addressing the Electronic Data Exclusion, replace "damages" with "bodily injury" or "property damage" and add biometric information to the types of material or information addressed in the endorsement. Additionally, the types of expenses addressed in the last paragraph of the exclusion are expressly extended to identity monitoring expenses, data restoration expenses and extortion expenses.
With respect to bodily injury, property damage and personal and advertising injury arising out of access or disclosure of confidential or personal material or information, the various changes in this revised endorsement are a reinforcement of coverage intent.
With respect to deletion of the Electronic Data Exclusion, the changes in this revised endorsement result in no impact on coverage.

**CG 21 08 12 23 – Exclusion – Access Or Disclosure Of Confidential Or Personal Material Or Information (Coverage B Only)**
This endorsement is revised, in part, to add biometric information to the types of material or information addressed in the endorsement. Additionally, the types of expenses addressed in the last paragraph of the exclusion are expressly extended to identity monitoring expenses, data restoration expenses and extortion expenses.
The changes in this revised endorsement are a reinforcement of coverage intent.

**CG 21 85 12 23 – Exclusion – Electronic Data – Deletion Of Bodily Injury Exception**
When this endorsement is attached to your policy, the limited exception for bodily injury is deleted from Exclusion **p.** Electronic Data under Coverage **A.**
Attachment of this endorsement replacing Endorsement **CG 21 07** Exclusion – Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability – Limited Bodily Injury Exception Not Included results in no coverage impact with respect to loss of electronic data in Coverage **A.** Otherwise, attachment of this endorsement results in reduction of coverage.

 © Insurance Services Office, Inc., 2023 

**CG 40 35 12 23 – Exclusion – Cyber Incident**
When this endorsement is attached to your policy, coverage is excluded under Coverage **A** and Coverage **B** with respect to bodily injury, property damage or personal and advertising injury arising out of a cyber incident.
To the extent that current policy exclusions do not apply to liability arising out of cyber incidents, attachment of this endorsement will result in a reduction of coverage.

 © Insurance Services Office, Inc., 2023 

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

**Exclusion Of Loss Due To Virus Or Bacteria Endorsement CP 01 40 07 06**

This endorsement makes an explicit statement regarding a risk that is not covered under your Commercial Property insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your Commercial Property insurance, including (if any) property damage and business income coverages.

 © ISO Properties, Inc., 2006 

# POLICYHOLDER NOTICE

## Taxes, Assessments and/or Surcharges

The taxes, assessments and/or surcharges shown on the declarations page or any premium schedule are collected on behalf of the applicable State(s) and in accordance with such State's laws and regulations. The payment of these taxes, assessments and/or surcharges is the responsibility of the Named Insured. In the event the applicable State implements a new tax, assessment and/or surcharge or increases such tax, assessment and/or surcharge during the term of this policy, the Named Insured shall remain responsible for the payment of all amounts due under the policy, including those newly implemented or increased taxes, assessments and/or surcharges.

Any newly implemented or increased taxes, assessments and/or surcharges shall apply on the effective date dictated by the applicable State regardless:

1. Of when the Insurance Company implements the new or increased tax, assessment or surcharge into its systems; or
2. If the Insurance Company recalculates the Named Insured's premium in accordance with the policy's terms and conditions as part of a premium audit after the end of the policy period.

 © All rights reserved. 

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**GRANITE STATE INSURANCE COMPANY**
To get information or file a complaint with your insurance company or HMO:
**Call: AIG at 212-770-7000**
**Toll-free: 866-397-1933**
**Email: GCMS@aig.com**
**Mail: Attn: Complaints, 1271 Avenue of the Americas, Floor 37**
**New York, NY 10020-1304**

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state: Call with a question: 1-800-252-3439
File a complaint: www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov
Mail: Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**GRANITE STATE INSURANCE COMPANY**
Para obtener información o para presentar una queja ante su compañía de seguros o HMO:
**Llame a: AIG al 212-770-7000**
**Teléfono gratuito: 866-397-1933**
**Correo electrónico: GCMS@aig.com**
**Dirección postal: Attn: Complaints, 1271 Avenue of the Americas, Floor 37**
**New York, NY 10020-1304**

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:
Llame con sus preguntas al: 1-800-252-3439 Presente una queja en: www.tdi.texas.gov
Correo electrónico: ConsumerProtection@tdi.texas.gov
Dirección postal: Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

AIG

# GRANITE STATE INSURANCE COMPANY

(A stock company)

1271 Ave of the Americas FL 37
New York, NY 10020-1304

## COMMON POLICY DECLARATIONS

**POLICY NO:** AIP0003450404902
**RENEWAL OF:** AIP0003450404901

| **NAMED INSURED AND MAILING ADDRESS** | **PRODUCER MAILING ADDRESS** |
|---|---|
| CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.<br>2689 HIGHWAY 39<br>HUNT, TX 78024 | **K&K INSURANCE GROUP, INC.<br>1712 MAGNAVOX WAY<br>P.O. BOX 2338<br>FORT WAYNE, IN 46801** |

**POLICY PERIOD:** From 03/01/2025 to 03/01/2026 at 12:01 A.M. Standard Time at your mailing address shown above.

**THE NAMED INSURED IS:** CORPORATION **BUSINESS DESCRIPTION:** CAM/CONFERENCE CENTER

**AUDIT FREQUENCY:** N/A

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| **THIS POLICY CONSISTS OF THE COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.** | **PREMIUM** |
|---|---|
| COMMERCIAL PROPERTY | $119,995.00 |
| COMMERCIAL GENERAL LIABILITY | $52,217.00 |
| CRIME AND FIDELITY | $943.00 |
| COMMERCIAL INLAND MARINE | $2,942.00 |
| PROFESSIONAL LIABILITY | |
| TOTAL POLICY PREMIUM | $176,097.00 |
| POLICY WRITING NONREFUNDABLE PREMIUM | See Form 128499 |

| | | | | |
|---|---|---|---|---|
| PREMIUM PAYABLE: | $176,097.00 | AT INCEPTION; | 1ST ANNIVERSARY; | 2ND ANNIVERSARY |

**FORMS AND ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS**

| | | | | |
|---|---|---|---|---|
| 141636(05/21) | IL0017(11/98) | 118950(02/20) | 89644(06/13) | IL0021(09/08) |
| IL0288(12/19) | IL0275(11/13) | IL0168(03/12) | IL0171(09/07) | |

**NOTE: IF NO ENTRY APPEARS ON THE ABOVE ENDORSEMENTS, INFORMATION REQUIRED TO COMPLETE THE FORM WILL BE SHOWN ON THE SUPPLEMENTAL FORM DECLARATION IMMEDIATELY FOLLOWING THE APPLICABLE ENDORSEMENT.**

**THESE DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, AND SUPPLEMENTAL FORM DECLARATION(S), IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.**

# ADDENDUM TO THE DECLARATIONS

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this Policy.

President

Secretary

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurance Company, either below or on the Declarations page of the Policy.

Thomas McGrath
AUTHORIZED COMPANY REPRESENTATIVE

Granite State Insurance Company
Illinois National Insurance Co.
New Hampshire Insurance Company
American Home Assurance Company
National Union Fire Insurance Company of Pittsburgh, Pa.

# Notification

## CHANGE TO INSURER'S ADDRESS

Please be advised that all references to the address 175 Water Street, New York, NY 10038 contained in the Policy, Policy Declarations, riders, endorsements, and Policy notices are hereby deleted in their entirety and replaced with the following: 1271 Ave of the Americas FL 37, New York, NY 10020-1304

All other terms and conditions of the Policy remain the same.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIP0003450404902
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** GRANITE STATE INSURANCE COMPANY

# TERRORISM EXCLUSION – CERTIFIED AND NON-CERTIFIED ACTS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**I. Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **certified act of terrorism** as defined in the Terrorism Risk Insurance Act of 2002, as amended (hereinafter, "TRIA") regardless of any other cause or event contributing concurrently or in any sequence with a **certified act of terrorism.**

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

**A.** to be an act of terrorism;

**B.** to be a violent act or an act that is dangerous to:

**1.** human life;

**2.** property; or

**3.** infrastructure;

**C.** to have resulted in damage within the United States, or outside of the United States in the case of:

**1.** an air carrier or vessel described in TRIA; or

**2.** the premises of a United States mission; and

**D.** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**II. Non-Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **non-certified act of terrorism** regardless of any other cause or event contributing concurrently or in any sequence with a **non-certified act of terrorism.**

**A. Non-certified act of terrorism** means any act that is not a **certified act of terrorism** as defined herein and:

**1.** involves the use of force or violence against person or property; or

**2.** is dangerous to human life or property; or

**3.** interferes with or disrupts an electronic or communication system; and

**4.** is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**a.** a government;

**b.** the civilian population of a country, state or community; or

**c.** to disrupt the economy of a country, state or community.

**B.** However, the exclusion provided under Subsection **II.A.** only applies when one or more of the following are attributed to an incident of a **non-certified act of terrorism.**


© American International Group, Inc.
All Rights Reserved.

1. The **non-certified act of terrorism** involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of:
   a. Any nuclear reaction;
   b. Radioactive materials or **nuclear materials** in any form and from any source;
   c. Radionuclides;
   d. Radiation emitted from any radioactive source whether natural or manmade; and/or
   e. Electromagnetic pulses; or
2. The **non-certified act of terrorism** involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of pathogenic or poisonous chemical or **biological** materials, whether natural, manmade, living or dead; or
3. The total insured industry-wide losses exceed $25,000,000. In determining whether the$25,000,000 threshold is exceeded, the Company will include all insured industry-wide loss or damage sustained by all persons and entities affected by the **non-certified act of terrorism**. For the purpose of this provision, insured industry-wide loss or damage means loss or damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

   Multiple incidents of **non-certified acts of terrorism** which occur within a 72-hour period and objectively appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in this Subsection **II.B.3.** are met.
4. With respect to commercial liability policies, fifty or more persons sustain death or serious physical injury. For purposes of this provision, serious physical injury means:
   a. Physical injury that involves substantial risk of death; or
   b. Protracted and obvious physical disfigurement; or
   c. Protracted loss of or impairment of the function of a bodily member or organ.

**III.** With respect to commercial property policies:

**A.** If a **certified act of terrorism** or **non-certified act of terrorism** (hereinafter, collectively an **act of terrorism**) results in an ensuing fire, this Policy covers such loss or damage caused by such fire following, subject to the Policy's terms and conditions, but only if the covered property insured hereunder is located in a state of the United States, the District of Columbia, Puerto Rico or a territory or possession of the United States that, pursuant to an applicable standard fire policy statute, regulation or other law, prohibits the exclusion of fire following an **act of terrorism**. Such coverage for fire following an **act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

**B.** Notwithstanding Subsection **III.A.** above, to the extent not prohibited by the law of the jurisdiction to which this Policy is subject, this Policy does not cover fire following an **act of terrorism** that involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of any nuclear reaction; radioactive materials or **nuclear materials** in any form and from any source; radionuclides; radiation emitted from any radioactive source whether natural or manmade; electromagnetic pulses; and/or pathogenic or poisonous chemical or **biological** materials, whether natural, manmade, living or dead.

**C.** Notwithstanding any other valuation provision of this Policy to the contrary, any covered property insured hereunder that sustains loss or damage due to fire following an **act of terrorism**, covered pursuant to Subsection **III.A**. above, shall be valued at Actual Cash Value at the time and place of the loss.

**IV. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy, such as losses excluded by a nuclear exclusion, pollution exclusion or war exclusion.

**V. Definitions:** The following definitions apply to this endorsement:


© American International Group, Inc.
All Rights Reserved.

A. **Nuclear materials** means **source material**, **special nuclear material** or **by-product material**. **Source material, special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

B. **Biological** materials include all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin- producing agents, and poisons produced by biological organisms.

All other terms and conditions of the Policy remain the same.

Authorized Representative


© American International Group, Inc.
All Rights Reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIP0003450404902
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** GRANITE STATE INSURANCE COMPANY

# ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

Scott Fischer

Authorized Representative

 © All rights reserved. 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".


© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7.** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**8.** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**a.** Fraud in obtaining coverage;

**b.** Failure to pay premiums when due;

**c.** An increase in hazard within the control of the insured which would produce an increase in rate;

**d.** Loss of our reinsurance covering all or part of the risk covered by the policy; or

**e.** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**C.** The following condition is added:

**Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, not later than the 60th day before the expiration date. If notice is mailed or delivered later than the 60th day before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's rate.

 © Insurance Services Office, Inc., 2019 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy:

**a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the first Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

 © Insurance Services Office, Inc., 2013 

**b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two- family dwellings:

**(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(a)** Fraud in obtaining coverage;

**(b)** Failure to pay premiums when due;

**(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

**(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

**(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for less than 90 days, we may cancel coverage for any reason.

**(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel coverage, only for the following reasons:

**(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

**(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

**(c)** If the Named Insured submits a fraudulent claim; or

**(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

**B.** The following condition is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This paragraph, **2.,** applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

**a.** The first Named Insured; and

**b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

 © Insurance Services Office, Inc., 2013 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

**1.** An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

**2.** Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

 © Insurance Services Office, Inc., 2011 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – LOSS PAYMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART

**A. Loss Payment**

**1.** With respect to the Crime And Fidelity Coverage Part and Equipment Breakdown Coverage Part, the following conditions are added.

**2.** With respect to the Commercial Inland Marine Coverage Part, the following conditions replace Item **E. Loss Payment** in the Commercial Inland Marine Loss Conditions:

**a. Claims Handling**

**(1)** Within 15 days after we receive written notice of claim, we will:

**(a)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(b)** Begin any investigation of the claim; and

**(c)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**(2)** We will notify you in writing as to whether:

**(a)** The claim or part of the claim will be paid;

**(b)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(c)** More information is necessary; or

**(d)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **(2)(a)** through **(2)(d)** above, within:

**(i)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(ii)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

 © ISO Properties, Inc., 2006 

**b.** We will pay for covered loss or damage within 5 business days after:

**(1)** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this policy, we will make payment within 5 business days after the date you have complied with such terms.

**c. Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **a.** and **b.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which is:

**(1)** Declared a disaster under the Texas Disaster Act of 1975; or

**(2)** Determined to be a catastrophe by the State Board of Insurance.

**d.** The term "business day", as used in this endorsement, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**B.** With respect to the Commercial Inland Marine Coverage Part the following is added:

We will not be liable for any part of a "loss" that has been paid or made good by others.


© ISO Properties, Inc., 2006

# Commercial Property Coverage Part Declarations Page

**POLICY NO.** AIP0003450404902 **EFFECTIVE DATE** 03/01/2025 ☐ **"X" if Supplemental Declarations is attached.**

**NAMED INSURED** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.

**DESCRIPTION OF PREMISES**

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|---|---|---|
| 1 | 1 | 2689 HIGHWAY 39, HUNT, TX 78024 ADMIN OFFICE & COUNSELOR'S DORM - Frame |
| 1 | 2 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN 7TH HEAVEN - Frame |
| 1 | 3 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN ANGEL'S ATTIC - Frame |
| 1 | 4 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN BEE HIVE - Frame |
| 1 | 5 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN BUBBLE INN - Frame |
| 1 | 6 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN BUG HOUSE - Frame |
| 1 | 7 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN BYRD HOUSE - Joisted Masonry |
| 1 | 8 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN CHATTER BOX - Frame |
| 1 | 9 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN CUCKOO'S NEST - Frame |
| 1 | 10 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN GATE HOUSE - Joisted Masonry |
| 1 | 11 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN GIGGLE BOX - Frame |
| 1 | 12 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN HANG OUT - Joisted Masonry |
| 1 | 13 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN HANG OVER - Frame |
| 1 | 14 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN HEART BREAK - Frame |
| 1 | 15 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN IDIOT'S DELIGHT - Joisted Masonry |
| 1 | 16 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN JUMBLE HOUSE - Joisted Masonry |
| 1 | 17 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN KEEP OUT - Joisted Masonry |
| 1 | 18 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN LOOK IN - Frame |
| 1 | 19 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN LOOK OUT - Joisted Masonry |
| 1 | 20 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN NUT HOUSE - Frame |
| 1 | 21 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN RACKET SHACK - Frame |
| 1 | 22 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN ROUGH HOUSE - Frame |
| 1 | 23 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN SHADY SHACK - Joisted Masonry |
| 1 | 24 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN SQUEEZE INN - Frame |
| 1 | 25 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN TUMBLE INN - Joisted Masonry |
| 1 | 26 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN TWIN CABIN - Joisted Masonry |
| 1 | 27 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN WIGGLE INN - Frame |
| 1 | 28 | 2689 HIGHWAY 39, HUNT, TX 78024 COMMISSARY - Frame |
| 1 | 29 | 2689 HIGHWAY 39, HUNT, TX 78024 GUEST HOUSE - Frame |
| 1 | 30 | 2689 HIGHWAY 39, HUNT, TX 78024 HANDY HUT (ARTS & CRAFTS) - Frame |
| 1 | 31 | 2689 HIGHWAY 39, HUNT, TX 78024 INFIRMARY - Frame |
| 1 | 32 | 2689 HIGHWAY 39, HUNT, TX 78024 LIBRARY - Frame |
| 1 | 33 | 2689 HIGHWAY 39, HUNT, TX 78024 MESS HALL - Frame |
| 1 | 34 | 2689 HIGHWAY 39, HUNT, TX 78024 PUMP HOUSE - Frame |
| 1 | 35 | 2689 HIGHWAY 39, HUNT, TX 78024 REC HALL - Frame |

 Copyright, Insurance Services Office, Inc., 1999 

| | | |
|---|---|---|
| 1 | 36 | 2689 HIGHWAY 39, HUNT, TX 78024 STABLE - Frame |
| 1 | 37 | 2689 HIGHWAY 39, HUNT, TX 78024 STORAGE & CABIN HOUSE STORAGE - Frame |
| 1 | 38 | 2689 HIGHWAY 39, HUNT, TX 78024 TACK ROOM - Frame |
| 1 | 39 | 2689 HIGHWAY 39, HUNT, TX 78024 CASA DEL ARROYO - Frame |
| 1 | 40 | 2689 HIGHWAY 39, HUNT, TX 78024 CYPRESS COTTAGE - Frame |
| 1 | 41 | 2689 HIGHWAY 39, HUNT, TX 78024 GRANNY'S HOUSE - Joisted Masonry |
| 1 | 42 | 2689 HIGHWAY 39, HUNT, TX 78024 POP INN - Frame |
| 1 | 43 | 2689 HIGHWAY 39, HUNT, TX 78024 RANCH HOUSE - Frame |
| 1 | 44 | 2689 HIGHWAY 39, HUNT, TX 78024 SUGAR SHACK - Frame |
| 1 | 45 | 2689 HIGHWAY 39, HUNT, TX 78024 UP THE CREEK STAFF HOUSING - Frame |
| 1 | 46 | 2689 HIGHWAY 39, HUNT, TX 78024 WELL HOUSE - Frame |
| 1 | 47 | 2689 HIGHWAY 39, HUNT, TX 78024 WOOD DOCKS - Frame |
| 1 | 48 | 2689 HIGHWAY 39, HUNT, TX 78024 FENCES & ARBORS - Frame |
| 1 | 49 | 2689 HIGHWAY 39, HUNT, TX 78024 BILLBOARD - Frame |
| 1 | 50 | 2689 HIGHWAY 39, HUNT, TX 78024 RADIO/ TV ANTENNA TOWER - Frame |
| 1 | 51 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN SNUGGLE INN - Frame |
| 1 | 52 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN SUITE DREAMS - Frame |
| 1 | 53 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN UP TOP - Frame |
| 1 | 54 | 2689 HIGHWAY 39, HUNT, TX 78024 CANTEEN - Frame |
| 1 | 55 | 2689 HIGHWAY 39, HUNT, TX 78024 OFFICE CYPRESS LAKE - Frame |
| 1 | 56 | 2689 HIGHWAY 39, HUNT, TX 78024 CRAFTY CORNER - Frame |
| 1 | 57 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN LADYBUG LODGE - Frame |
| 1 | 58 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN TWINKLE HUT - Frame |
| 1 | 59 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN JOYFUL NOISE - Frame |
| 1 | 60 | 2689 HIGHWAY 39, HUNT, TX 78024 BANDAID BOX (INFIRMARY CL) - Frame |
| 1 | 61 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN HAPPY NEST - Frame |
| 1 | 62 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN RAINBOW RIDGE - Frame |
| 1 | 63 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN DO DROP INN - Frame |
| 1 | 64 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN HEAVEN'S LOFT - Frame |
| 1 | 65 | 2689 HIGHWAY 39, HUNT, TX 78024 JAMES HALL (DINING HALL) - Frame |
| 1 | 66 | 2689 HIGHWAY 39, HUNT, TX 78024 KITCHEN STORAGE - Frame |
| 1 | 67 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN PARADISE FOUND - Frame |
| 1 | 68 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN EASY DOES IT - Frame |
| 1 | 69 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN LAKESIDE - Frame |
| 1 | 70 | 2689 HIGHWAY 39, HUNT, TX 78024 CABIN CLIFF HANGER - Frame |
| 1 | 71 | 2689 HIGHWAY 39, HUNT, TX 78024 TACK ROOM (CL) - Frame |
| 1 | 72 | 2689 HIGHWAY 39, HUNT, TX 78024 PAVILION GYM - Frame |
| 2 | 1 | 120 DAKOTA RUN, HUNT, TX 78024 DAKOTA RUN - Frame |
| | | PIO = PROPERTY IN THE OPEN |
| | | **AS PER THE MOST RECENT SCHEDULE OF VALUES ON FILE WITH THE CARRIER |

**COVERAGES PROVIDED** **Insurance At The Described Premises Applies Only For Coverages For Which A Limit Of Insurance Is Shown**

| Prem. No. | Bldg.No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 1 | B | $291,996 | SPECIAL | 90% | Incl. |
| 1 | | BLKT BI/EE/RV | $3,200,000 | SPECIAL | 50% | Incl. |

 Copyright, Insurance Services Office, Inc., 1999 

| Prem. No. | Bldg.No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 1 | BPP | $83,594 | SPECIAL | 90% | Incl. |
| 1 | 2 | B | $49,044 | SPECIAL | 90% | Incl. |
| 1 | 2 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 3 | B | $46,864 | SPECIAL | 90% | Incl. |
| 1 | 3 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 4 | B | $48,569 | SPECIAL | 90% | Incl. |
| 1 | 4 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 5 | B | $40,092 | SPECIAL | 90% | Incl. |
| 1 | 5 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 6 | B | $58,000 | SPECIAL | 90% | Incl. |
| 1 | 6 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 7 | B | $45,664 | SPECIAL | 90% | Incl. |
| 1 | 7 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 8 | B | $48,902 | SPECIAL | 90% | Incl. |
| 1 | 8 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 9 | B | $44,684 | SPECIAL | 90% | Incl. |
| 1 | 9 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 10 | B | $18,397 | SPECIAL | 90% | Incl. |
| 1 | 10 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 11 | B | $58,046 | SPECIAL | 90% | Incl. |
| 1 | 11 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 12 | B | $66,552 | SPECIAL | 90% | Incl. |
| 1 | 12 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 13 | B | $48,268 | SPECIAL | 90% | Incl. |
| 1 | 13 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 14 | B | $47,291 | SPECIAL | 90% | Incl. |
| 1 | 14 | BPP | $557 | SPECIAL | 90% | Incl. |
| 1 | 15 | B | $53,276 | SPECIAL | 90% | Incl. |
| 1 | 15 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 16 | B | $103,591 | SPECIAL | 90% | Incl. |
| 1 | 16 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 17 | B | $28,667 | SPECIAL | 90% | Incl. |
| 1 | 17 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 18 | B | $58,000 | SPECIAL | 90% | Incl. |
| 1 | 18 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 19 | B | $103,337 | SPECIAL | 90% | Incl. |
| 1 | 19 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 20 | B | $48,902 | SPECIAL | 90% | Incl. |
| 1 | 20 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 21 | B | $18,539 | SPECIAL | 90% | Incl. |
| 1 | 21 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 22 | B | $65,960 | SPECIAL | 90% | Incl. |
| 1 | 22 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 23 | B | $81,182 | SPECIAL | 90% | Incl. |

 Copyright, Insurance Services Office, Inc., 1999 

| Prem. No. | Bldg.No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 23 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 24 | B | $46,958 | SPECIAL | 90% | Incl. |
| 1 | 24 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 25 | B | $179,699 | SPECIAL | 90% | Incl. |
| 1 | 25 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 26 | B | $91,329 | SPECIAL | 90% | Incl. |
| 1 | 26 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 27 | B | $58,046 | SPECIAL | 90% | Incl. |
| 1 | 27 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 28 | B | $122,023 | SPECIAL | 90% | Incl. |
| 1 | 28 | BPP | $22,292 | SPECIAL | 90% | Incl. |
| 1 | 29 | B | $98,010 | SPECIAL | 90% | Incl. |
| 1 | 29 | BPP | $3,344 | SPECIAL | 90% | Incl. |
| 1 | 30 | B | $62,475 | SPECIAL | 90% | Incl. |
| 1 | 30 | BPP | $2,230 | SPECIAL | 90% | Incl. |
| 1 | 31 | B | $142,884 | SPECIAL | 90% | Incl. |
| 1 | 31 | BPP | $2,787 | SPECIAL | 90% | Incl. |
| 1 | 32 | B | $58,400 | SPECIAL | 90% | Incl. |
| 1 | 32 | BPP | $2,230 | SPECIAL | 90% | Incl. |
| 1 | 33 | B | $2,401,217 | SPECIAL | 90% | Incl. |
| 1 | 33 | BPP | $167,187 | SPECIAL | 90% | Incl. |
| 1 | 34 | B | $33,561 | SPECIAL | 90% | Incl. |
| 1 | 34 | BPP | $11,146 | SPECIAL | 90% | Incl. |
| 1 | 35 | B | $133,896 | SPECIAL | 90% | Incl. |
| 1 | 35 | BPP | $5,573 | SPECIAL | 90% | Incl. |
| 1 | 36 | B | $43,636 | SPECIAL | 90% | Incl. |
| 1 | 37 | B | $76,982 | SPECIAL | 90% | Incl. |
| 1 | 37 | BPP | $22,292 | SPECIAL | 90% | Incl. |
| 1 | 38 | B | $43,636 | SPECIAL | 90% | Incl. |
| 1 | 38 | BPP | $16,719 | SPECIAL | 90% | Incl. |
| 1 | 39 | B | $41,929 | SPECIAL | 90% | Incl. |
| 1 | 39 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 40 | B | $124,592 | SPECIAL | 90% | Incl. |
| 1 | 40 | BPP | $6,687 | SPECIAL | 90% | Incl. |
| 1 | 41 | B | $103,257 | SPECIAL | 90% | Incl. |
| 1 | 41 | BPP | $2,230 | SPECIAL | 90% | Incl. |
| 1 | 42 | B | $311,711 | SPECIAL | 90% | Incl. |
| 1 | 42 | BPP | $11,146 | SPECIAL | 90% | Incl. |
| 1 | 43 | B | $432,885 | SPECIAL | 90% | Incl. |
| 1 | 44 | B | $115,057 | SPECIAL | 90% | Incl. |
| 1 | 44 | BPP | $2,230 | SPECIAL | 90% | Incl. |
| 1 | 45 | B | $397,825 | SPECIAL | 90% | Incl. |
| 1 | 46 | B | $14,396 | SPECIAL | 90% | Incl. |
| 1 | 46 | BPP | $2,230 | SPECIAL | 90% | Incl. |

 Copyright, Insurance Services Office, Inc., 1999 

| Prem. No. | Bldg.No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 47 | B | $2,926 | SPECIAL | 90% | Incl. |
| 1 | 48 | B | $29,260 | SPECIAL | 90% | Incl. |
| 1 | 49 | B | $11,704 | SPECIAL | 90% | Incl. |
| 1 | 50 | B | $11,704 | SPECIAL | 90% | Incl. |
| 1 | 51 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 51 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 52 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 52 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 53 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 53 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 54 | B | $86,528 | SPECIAL | 90% | Incl. |
| 1 | 54 | BPP | $10,000 | SPECIAL | 90% | Incl. |
| 1 | 55 | B | $108,160 | SPECIAL | 90% | Incl. |
| 1 | 55 | BPP | $40,000 | SPECIAL | 90% | Incl. |
| 1 | 56 | B | $86,954 | SPECIAL | 90% | Incl. |
| 1 | 56 | BPP | $1,115 | SPECIAL | 90% | Incl. |
| 1 | 57 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 57 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 58 | B | $70,404 | SPECIAL | 90% | Incl. |
| 1 | 58 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 59 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 59 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 60 | B | $70,404 | SPECIAL | 90% | Incl. |
| 1 | 60 | BPP | $5,000 | SPECIAL | 90% | Incl. |
| 1 | 61 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 61 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 62 | B | $70,404 | SPECIAL | 90% | Incl. |
| 1 | 62 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 63 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 63 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 64 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 64 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 65 | B | $1,393,430 | SPECIAL | 90% | Incl. |
| 1 | 65 | BPP | $200,000 | SPECIAL | 90% | Incl. |
| 1 | 66 | B | $43,264 | SPECIAL | 90% | Incl. |
| 1 | 66 | BPP | $10,000 | SPECIAL | 90% | Incl. |
| 1 | 67 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 67 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 68 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 68 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 69 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 69 | BPP | $2,778 | SPECIAL | 90% | Incl. |
| 1 | 70 | B | $67,901 | SPECIAL | 90% | Incl. |
| 1 | 70 | BPP | $2,778 | SPECIAL | 90% | Incl. |

 Copyright, Insurance Services Office, Inc., 1999 

| Prem. No. | Bldg.No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 71 | B | $7,571 | SPECIAL | 90% | Incl. |
| 1 | 71 | BPP | $7,000 | SPECIAL | 90% | Incl. |
| 1 | 72 | B | $1,000,000 | SPECIAL | 90% | Incl. |
| 2 | 1 | B | $105,338 | SPECIAL | 90% | Incl. |

* If Extra Expense Coverage, limits on Loss Payment

**OPTIONAL COVERAGES** Applicable only when entries are made in the schedule below.

| | | | Agreed Value | | Replace Cost (X) | | |
|---|---|---|---|---|---|---|---|
| Prem. No. | Bldg. No. | Expiration Date | Cov. | Amount | Building | Pers. Prop | Incl. "Stock" |
| 1; 2 | 1-72; 1 | | | | X | | |
| 1 | 1-35, 37-42, 44, 46, 51-71 | | | | | X | |

| Inflation Guard (%) | | *Monthly Limit of | *Maximum Period | *Extended Period |
|---|---|---|---|---|
| Bldg. | Pers. Prop. | Indemnity (Fraction) | Of Indemnity (X) | Of Indemnity (Days) |

*Applies to business income only.

**MORTGAGE HOLDERS**

| PREM. NO. | BLDG.NO. | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|---|
| 1 & 2 | ** | WELLS FARGO BANK, NA - 301 JUNCTION HWY, KERRVILLE, TX 78028 |

**PROPERTY PREMIUM:** $119,995.00

Premium above includes N/A for the Terrorism Risk Insurance Act.

**DEDUCTIBLE**

The deductible is $10,000

**Exceptions:** Building
Business Personal Property

**FORMS APPLICABLE**

| | | | |
|---|---|---|---|
| CP0090(07/88) | CP0010(10/12) | CP1030(09/17) | CP0030(10/12) |
| CP0140(07/06) | CP1075(12/20) | CP0405(09/17) | CP1218(10/12) |
| CP1525(10/12) | CP0411(09/17) | 90610(09/17) | CP1036(10/12) |
| 141737(11/21) | 141745(11/21) | 128471(11/21) | 128472(11/21) |
| CP0142(03/12) | | | |

**FORMS APPLICABLE TO SPECIFIC PREMISES / COVERAGES**

| PREM. NO. | BLDG. NO. | COVERAGES | FORM NUMBER |
|---|---|---|---|

 Copyright, Insurance Services Office, Inc., 1999 

**COVERAGE KEY**

| | | |
|---|---|---|
| BI/EE/RV | = | Business Income (and Extra Expense) including Rental Value |
| BI/EE | = | Business Income (and Extra Expense) other than Rental Value |
| RV | = | Rental Value |
| BI/RV | = | Business Income (without Extra Expense) |
| Value | = | including Rental Value |
| BI | = | Business Income (without Extra Expense) other than Rental Value |
| LEASEHOLD | | Leaseholder Interest |
| LLBLDG | = | Legal Liability Real Property |
| EE | = | Extra Expense |
| B | = | Building |
| B & BPP | = | Blanket Building and Business Personal Property |
| BPP | = | Business Personal Property |
| BIDEP | = | Business Income from Dependent Properties |
| TIB | = | Tenants Improvements and Betterments |
| PPO | = | Personal Property of Others |
| LLBPP | = | Legal Liability Personal Property |


Copyright, Insurance Services Office, Inc., 1999

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987 

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

**a.** Someone insured by this insurance;

**b.** A business firm:

**(1)** Owned or controlled by you; or

**(2)** That owns or controls you; or

**c.** Your tenant.

This will not restrict your insurance.


Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.


© Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;


© Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.


© Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | | |
|---|---|---|
| Limit of Insurance: | | $ 90,000 |
| Amount of Deductible: | | $ 500 |
| Amount of Loss: | | $ 80,000 |
| Amount of Loss Payable: | | $ 79,500 |
| | | ($80,000 – $500) |
| Debris Removal Expense: | | $ 40,000 |
| Debris Removal Expense Payable | | |
| | Basic Amount: | $ 10,500 |
| | Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

 © Insurance Services Office, Inc., 2011 

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

 © Insurance Services Office, Inc., 2011 

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011 

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

 © Insurance Services Office, Inc., 2011 

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.


© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.


© Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;
2. Pollutant Clean-up And Removal;
3. Increased Cost Of Construction; and
4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
– 250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

 © Insurance Services Office, Inc., 2011 

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

 © Insurance Services Office, Inc., 2011 

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

 © Insurance Services Office, Inc., 2011 

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1);**

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2);** and

**(4)** Subtract the deductible from the figure determined in Step **(3).**

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| | | |
|---|---|---|
| When: | The value of the property is: | $ 250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1):** $250,000 x 80% = $200,000
(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| | | |
|---|---|---|
| When: | The value of the property is: | $ 250,000 |
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| | | |
|---|---|---|
| When: | The value of the property is: | |
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $ 100,000 |
| | Personal Property at Location 2: | $ 75,000 |
| | | $ 250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |
| Step **(1)**: | $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below) | |
| Step **(2)**: | $180,000 ÷ $225,000 = .80 | |
| Step **(3)**: | $50,000 x .80 = $40,000 | |
| Step **(4)**: | $40,000 – $1,000 = $39,000 | |

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

 © Insurance Services Office, Inc., 2011 

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| | | |
|---|---|---|
| If: | The applicable Limit of Insurance is: | $ 100,000 |
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.


© Insurance Services Office, Inc., 2011

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.


© Insurance Services Office, Inc., 2011

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.


© Insurance Services Office, Inc., 2016

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

 © Insurance Services Office, Inc., 2016 

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

 © Insurance Services Office, Inc., 2016 

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 © Insurance Services Office, Inc., 2016 

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or


© Insurance Services Office, Inc., 2016

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

 © Insurance Services Office, Inc., 2016 

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

**(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

**(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.


© Insurance Services Office, Inc., 2016

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.


© Insurance Services Office, Inc., 2016

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 © Insurance Services Office, Inc., 2016 

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011 

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

 © Insurance Services Office, Inc., 2011 

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

 © Insurance Services Office, Inc., 2011 

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

 © Insurance Services Office, Inc., 2011 

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

 © Insurance Services Office, Inc., 2011 

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**(1)** Prepaid freight – outgoing;

**(2)** Returns and allowances;

**(3)** Discounts;

**(4)** Bad debts;

**(5)** Collection expenses;

**(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

**(7)** Cost of merchandise sold (including transportation charges);

**(8)** Cost of other supplies consumed (including transportation charges);

**(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| | | |
|---|---|---|
| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 150,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

 © Insurance Services Office, Inc., 2011 

**Example 2 (Adequate Insurance)**

| | | |
|---|---|---|
| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| | | |
|---|---|---|
| When: | The Limit of Insurance is: | $ 120,000 |
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| | |
|---|---|
| Days 1–30: | $ 40,000 |
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 90,000 |

We will pay:

| | |
|---|---|
| Days 1–30: | $ 30,000 |
| Days 31–60: | $ 20,000 |
| Days 61–90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or


© Insurance Services Office, Inc., 2011

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| | | |
|---|---|---|
| When: | The Limit of Insurance is: | $ 100,000 |
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1)**: $100,000 ÷ $200,000 = .50

Step **(2)**: .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

**1.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "Operations" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

**3.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**6.** "Suspension" means:

**a.** The slowdown or cessation of your business activities; or

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

 © Insurance Services Office, Inc., 2011 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2006 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The following exclusion is added to Paragraph **B. Exclusions:**

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including electronic data).

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**B. Exceptions And Limitations**

**1. Fire Or Explosion**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**2. Additional Coverage**

The exclusion in Paragraph **A.** does not apply to the extent that coverage is provided in the:

**a.** Additional Coverage – Electronic Data; or

**b.** Additional Coverage – Interruption Of Computer Operations.

**3. Electronic Commerce Endorsement**

The exclusion in Paragraph **A.** does not apply to the Electronic Commerce (E-Commerce) endorsement when attached to your policy.

**C. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under the Standard Property Policy or the Causes Of Loss – Basic, Broad or Special Forms and if applicable to the premises described in the Declarations:

Vandalism does not include a cyber incident as described in Paragraph **A.**

 © Insurance Services Office, Inc., 2020 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Building Number/ Premises Number | Coverage A | Coverage B Limit Of Insurance | Coverage C Limit Of Insurance | Coverages B And C Combined Limit Of Insurance |
|---|---|---|---|---|
| SEE / SCHEDULE | ☐ | $ | $ 100,000 | $ * |
| / | ☐ | $ | $ | $ * |
| / | ☐ | $ | $ | $ * |
| **Post-Loss Ordinance Or Law Option:** **Yes** ☐ **No** ☒ | | | | |
| *Do **not** enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages **B** and **C,** or if one of these Coverages is not applicable. | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** Each Coverage – Coverage **A,** Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies with respect to an ordinance or law that regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises, subject to the following:

**1.** The requirements of the ordinance or law are in force at the time of loss. But if the Post-Loss Ordinance Or Law Option is indicated in the Schedule as being applicable, then Paragraph **B.2.** applies instead of this Paragraph **B.1.**

**2.** The requirements of the ordinance or law are in force at the time of loss; or the ordinance or law is promulgated or revised after the loss but prior to commencement of reconstruction or repair and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy.

**3.** Coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**4.** Coverage under this endorsement applies only if:

**a.** The building sustains only direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

**b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

However, there is no coverage under this endorsement if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the

 © Insurance Services Office, Inc., 2016 

ordinance or law, even if the building has also sustained covered direct physical damage.

5. If coverage applies under this endorsement based on the terms of Paragraph **B.4.b.,** we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/ or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

   (Paragraph **F**. of this endorsement provides an example of this procedure.)

   However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

6. We will not pay under this endorsement for:

   **a.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

   **b.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

7. We will not pay under this endorsement for any loss in value or any cost incurred due to an ordinance or law that you were required to comply with before the time of the current loss, even in the absence of building damage, if you failed to comply.

**C. Coverage**

1. **Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

   With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

   Coverage **A** is included within the Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. Coverage **A** does not increase the Limit of Insurance.

2. **Coverage B – Demolition Cost Coverage**

   With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

   The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

3. **Coverage C – Increased Cost Of Construction Coverage**

   **a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

   **(1)** Repair or reconstruct damaged portions of that building; and/or

   **(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

   when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

   However:

   **(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

   **(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

   The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

   **b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with Paragraph **C.3.a**. above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in Paragraph **C.3.a.:**

   **(1)** The cost of excavations, grading, backfilling and filling;

   **(2)** Foundation of the building;

   **(3)** Pilings; and

   **(4)** Underground pipes, flues and drains.


© Insurance Services Office, Inc., 2016

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **3.b.**

**D. Loss Payment**

**1.** All following loss payment provisions, **D.2.** through **D.5.,** are subject to the apportionment procedures set forth in Paragraph **B.5.** of this endorsement.

**2.** When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**a.** If the Replacement Cost Coverage Option applies and such building is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

**(1)** The amount you would actually spend to repair, rebuild or reconstruct such building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy is endorsed to cover Earthquake and/or Flood as a Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

**b.** If the Replacement Cost Coverage Option applies and such building is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

**(1)** The actual cash value of such building at the time of loss; or

**(2)** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy is endorsed to cover Earthquake and/or Flood as a Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

**3.** Unless Paragraph **D.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

**a.** The amount you actually spend to demolish and clear the site of the described premises; or

**b.** The applicable Limit Of Insurance shown for Coverage **B** in the Schedule.

**4.** Unless Paragraph **D.5.** applies, loss payment under Coverage **C** – Increased Cost Of Construction Coverage will be determined as follows:

**a.** We will not pay under Coverage **C:**

**(1)** Until the building is actually repaired or replaced, at the same or another premises; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

**(1)** The increased cost of construction at the same premises; or

**(2)** The applicable Limit Of Insurance shown for Coverage **C** in the Schedule.

**c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

**(1)** The increased cost of construction at the new premises; or

**(2)** The applicable Limit Of Insurance shown for Coverage **C** in the Schedule.

**5.** If a Combined Limit Of Insurance is shown for Coverages **B** and **C** in the Schedule, Paragraphs **D.3.** and **D.4.** do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **B** and **C** in the Schedule. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

**a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

**b.** With respect to the Increased Cost of Construction:

**(1)** We will not pay for the increased cost of construction:

**(a)** Until the building is actually repaired or replaced, at the same or another premises; and

**(b)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

**(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**E.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**F.** Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Paragraph **B.5.**).

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.
$30,000 ÷ $100,000 = .30

**Step 2:** Apply that proportion to the Ordinance or Law loss.
$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**G.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

 © Insurance Services Office, Inc., 2016 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| **Location Number:** | **Building Number:** | **Applicable Clause (Enter C.1., C.2., C.3. or C.4.):** |
|---|---|---|
| **Description Of Property:** | | |
| **Loss Payee Name:** AS REQUIRED BY WRITTEN CONTRACT AND ON FILE WITH COMPANY UNLESS SPECIFICALLY DECLINED. | | |
| **Loss Payee Address:** | | |
| **Location Number:** | **Building Number:** | **Applicable Clause (Enter C.1., C.2., C.3. or C.4.):** |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| **Location Number:** | **Building Number:** | **Applicable Clause (Enter C.1., C.2., C.3. or C.4.):** |
| **Description Of Property:** | | |
| **Loss Payee Name:** | | |
| **Loss Payee Address:** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

 © Insurance Services Office, Inc., 2011 

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**C.** The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

**2. Lender's Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**(1)** Warehouse receipts;

**(2)** A contract for deed;

**(3)** Bills of lading;

**(4)** Financing statements; or

**(5)** Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**(1)** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**(2)** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**(3)** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**(4)** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(a)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(b)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**3. Contract Of Sale Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

**b.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**(1)** Adjust losses with you; and

**(2)** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**c.** The following is added to the **Other Insurance** Condition:

 © Insurance Services Office, Inc., 2011 

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**4. Building Owner Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

**b.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**c.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

 © Insurance Services Office, Inc., 2011 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME CHANGES – EDUCATIONAL INSTITUTIONS

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

**SCHEDULE**

| | | |
|---|---|---|
| **Premises Number:** | 1-2 | |
| **Description Of Each School Term In An Annual Period:** | | |
| **Limited Coverage** | ☐ | |
| **Extension Of Recovery Period Option** | 12 | **months** |
| **Premises Number:** | | |
| **Description Of Each School Term In An Annual Period:** | | |
| **Limited Coverage** | ☐ | |
| **Extension Of Recovery Period Option** | | **months** |
| **Premises Number:** | | |
| **Description Of Each School Term In An Annual Period:** | | |
| **Limited Coverage** | ☐ | |
| **Extension Of Recovery Period Option** | | **months** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A.** The **Definition** of "period of restoration" is replaced by the following:

**3.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The day before the opening of the next school term following the date when, with reasonable speed and similar quality, the property at the described premises should be repaired, rebuilt or replaced; or

**(2)** The date when the school term is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**a.** Regulates the construction, use or repair, or requires the tearing down of any property; or

**b.** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**B.** The **Additional Coverage – Extended Business Income** is replaced by the following. However, if the Extension Of Recovery Period Option applies, in accordance with Section **C.** of this endorsement, then the Extended Business Income Coverage does not apply.

**d. Extended Business Income**

 © Insurance Services Office, Inc., 2011 

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you sustain during the school term following the date the property is actually repaired, rebuilt or replaced, if that date is 60 days or less before the scheduled opening of the next school term.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**C.** If the Extension Of Recovery Period Option is indicated as applicable in the Schedule, then the following applies (instead of the Extended Business Income Coverage in Section **B.** of this endorsement):

**Extension Of Recovery Period**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you sustain during the number of months (as indicated in the Schedule) following the end of the "period of restoration".

However, the Extension Of Recovery Period does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Causes of Loss.

**D.** If Limited Coverage is indicated by an "X" or other notation in the Schedule, the definition of "operations" is replaced by the following:

"Operations" means:

**a.** Your business activities, occurring at the described premises, which generate tuition and related fees from students, including fees from room, board, laboratories and other similar sources.

"Operations" does not include:

**(1)** Bookstores;

**(2)** Athletic events;

**(3)** Activity related to research grants; or

**(4)** Business activities other than those which generate tuition and related fees from students.

**b.** The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.


© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 001 | 033 | P-9 |
| | | |
| | | |
| **Describe Any "P-9":** PREM.NO. 001, BLDG.NO. 033: MESS HALL - ANSUL SYSTEM | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

As a condition of this insurance, you are required to:

**1.** Maintain the protective safeguards listed in the Schedule, and over which you have control, in complete working order;

**2.** Actively engage and maintain in the "on" position at all times any automatic fire alarm or other automatic system listed in the Schedule; and

**3.** Notify us if you know of any suspension of or impairment in any protective safeguard listed in the Schedule.

However, if part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form

Causes Of Loss – Broad Form

Causes Of Loss – Special Form

Mortgageholders Errors And Omissions Coverage Form

Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph **A.**

**C.** The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1" Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

**a.** Any automatic fire protective or extinguishing system, including connected:

**(1)** Sprinklers and discharge nozzles;

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

 © Insurance Services Office, Inc., 2016 

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

**a.** Hood;

**b.** Grease removal device;

**c.** Duct system; and

**d.** Wet chemical fire extinguishing equipment.

**"P-9",** the protective system described in the Schedule.

 © Insurance Services Office, Inc., 2016 

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# WINDSTORM OR HAIL DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
COUNTRY CLUB PREMIER PROPERTY COVERAGE FORM
PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE
FORM BUSINESS INCOME AND EXTRA EXPENSE COVERAGE PART

**SCHEDULE ***

| Prem. No. | Bldg. No. | PROPERTY COVERED, OR BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE | WINDSTORM OR HAIL<br>DEDUCTIBLE PERCENTAGE, OR<br>MONETARY (DOLLAR) DEDUCTIBLE, OR<br>“PERIOD OF RESTORATION” (HOURS) | MINIMUM PER OCCURRENCE DEDUCTIBLE |
|---|---|---|---|---|
| 1 | 1-72 | BLDG (PER SOV ON FILE W COMPANY) | 5% | $10,000 |
| 2 | 1 | BLDG (PER SOV ON FILE W COMPANY) | 5% | $10,000 |
| 1 | 1-35, 37-42, 44, 46, 51-71 | BPP | 5% | $10,000 |
| 1-2 | ** | BLANKET BI/EE/RV | 72 HR | |

* Information required to complete this schedule, if not shown on this endorsement, will be shown in the Declarations or by endorsement hereto.

The Windstorm or Hail Deductible, as shown in the Schedule, applies to loss or damage to Covered Property caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage. If loss or damage from a covered weather condition other than Windstorm or Hail occurs, and that loss or damage would not have occurred but for the Windstorm or Hail, such loss or damage shall be considered to be caused by Windstorm or Hail and therefore part of the Windstorm or Hail occurrence.

The Windstorm or Hail, “Period of Restoration” (hours), as shown in the Schedule, applies to the “Period of Restoration” for Business Income (and Extra Expense) coverage, if any, as specified in this endorsement.

With respect to Covered Property at a location identified in the Schedule, no other deductible, or “Period of Restoration”, applies to Windstorm or Hail.

The Windstorm or Hail Deductible, and “Period of Restoration” (hours), applies whenever there is an occurrence of Windstorm or Hail.

As used in this endorsement, the terms "specific insurance" and "blanket insurance" have the following meanings: Specific insurance covers each item of insurance (for example, each building or personal property in a building) under a separate Limit of Insurance. Blanket insurance covers two or more items of insurance (for example, a building and personal property in that building, or two buildings) under a single Limit of Insurance. Items of insurance and corresponding Limit(s) of Insurance are shown in the Declarations.

**WINDSTORM OR HAIL DEDUCTIBLE CLAUSE**

**A.** **We** will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible(s) shown in the Schedule. We will then pay the amount of loss or damage in excess of that (those) Deductible(s), up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage.

When property is covered under the Coverage Extension for Newly Acquired or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to:

**a.** a percentage of the value(s) of the property at time of loss, if a Deductible percentage is shown in the Schedule. The applicable percentage for Newly Acquired or Constructed Property is the highest percentage shown in the Schedule for any described premises; or

**b.** the highest monetary (dollar) Deductible shown in the schedule; or

**c.** if both Deductible percentage and monetary (dollar) Deductible amounts are shown in the Schedule, then the applicable Deductible will be the greater of the deductibles determined by a. and b. above.

**B.** Calculation of the Percentage Deductible – Specific Insurance

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage as shown in the Schedule, of the Limit(s) of Insurance applicable to the property that has sustained loss or damage.

**C.** Calculation of the Percentage Deductible – Blanket Insurance

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage as shown in the Schedule, of the value(s) of the property that has sustained loss or damage. The value(s) to be used are those shown in the most recent Statement of Values on file with us.

**D.** Minimum Per Occurrence Deductible

In any one occurrence of loss or damage, the minimum amount that will be deducted from all loss or damage, regardless of the number of locations, or number of buildings, involved in the loss, is the Minimum Per Occurrence Deductible shown in the Schedule.

If more than one Minimum Per Occurrence Deductible applies to Covered Property, as a result of one occurrence, you shall pay the highest applicable deductible.

**WINDSTORM OR HAIL "PERIOD OF RESTORATION"**

In the event of loss or damage to Covered Property by an occurrence of Windstorm or Hail, as covered by this endorsement, the Business Income "Period of Restoration" is amended as follows:

"Period of Restoration" means the period of time that:

**a.** Begins:

**(1)** the number of hours as shown in the Schedule after the time of direct physical loss or damage for Business Income coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense coverage; caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

Nothing in this endorsement implies or affords coverage for any loss or damage that is excluded under the terms of the Water Exclusion or any other exclusion in this policy. If this policy is endorsed to cover Flood under the Flood Coverage Endorsement (or if you have a flood insurance policy), a separate Flood Deductible applies to loss or damage attributable to Flood, in accordance with the terms of that endorsement or policy.

All other terms and conditions of the policy remain the same.

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATIONS ON COVERAGE FOR ROOF SURFACING

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number | Building Number | Indicate Applicability (Paragraph A. and/or Paragraph B.) |
|---|---|---|
| ALL | ALL | PARAGRAPH B |
| 001 | 1-33, 35-45 | PARAGRAPH A |
| 002 | 001 | PARAGRAPH A |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule as being subject to this Paragraph **A.:**

Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

**B.** The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.:**

We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

**C.** For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.


© Insurance Services Office, Inc., 2011

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# EQUIPMENT BREAKDOWN COVERAGE
# (Including Electronic Circuitry Impairment)

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS – SPECIAL FORM

The following is a summary of Coverages and Limits Of Insurance provided according to the "x" shown in the corresponding box ( ☐ ) in the Schedule below. If no "x" is shown in the corresponding box shown in the Schedule below, then the limits of insurance in the endorsement apply.

**SCHEDULE**

| **COVERAGE** | **LIMIT OF INSURANCE** | | | | |
|---|---|---|---|---|---|
| Data Restoration | | ☐ $50,000 | ☐ $75,000 | ☐ $100,000 | ☐ $250,000 |
| Expediting Expenses | | ☐ $50,000 | ☐ $75,000 | ☐ $100,000 | ☐ $250,000 |
| Hazardous Substances | | ☐ $50,000 | ☐ $75,000 | ☐ $100,000 | ☐ $250,000 |
| Ice Rink Excavation Costs | ☐ $25,000 | ☐ $50,000 | ☐ $75,000 | ☐ $100,000 | ☐ $250,000 |
| Spoilage | | ☐ $50,000 | ☐ $75,000 | ☐ $100,000 | ☐ $250,000 |

The Deductible shown in the Declarations applies unless a Special Deductible is shown below.

| **Special Deductibles** | |
|---|---|
| Combined, All Coverages | |
| Excavation Costs Limitation | Minimum |
| Direct Coverage | |
| Indirect Coverages | Days<br>times ADV |
| Spoilage | or % of loss<br>Minimum |


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**OTHER CONDITIONS**

**A.** The following is added as an **Additional Coverage** to the **Causes of Loss—Special Form**.

**Additional Coverage—Equipment Breakdown**

The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below. Without an "accident" or "electronic circuitry impairment", there is no Equipment Breakdown Coverage.

**(1)** We will pay for direct physical damage to Covered Property that is the direct result of an "accident" or "electronic circuitry impairment". We will consider "electronic circuitry impairment" to be physical damage to "covered equipment".

**(2)** The following coverages also apply to the direct result of an "accident" or "electronic circuitry impairment". However, with respect to coverage **(2)(i)** Service Interruption below and any Dependent Properties coverage provided by this coverage part, coverage will apply only to the direct result of an "accident" and will not apply to the direct result of an "electronic circuitry impairment". These coverages do not provide additional amounts of insurance.

**(a)** Business Income and Extra Expense

**(i)** Any insurance provided under the coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in the Schedule above, then with respect to this endorsement only, the "period of restoration" will begin immediately after the "accident" or "electronic circuitry impairment", and the deductible shown in the Schedule above will apply.

**(ii)** The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense.

**(b)** Data Restoration

**(i)** We will pay for your reasonable and necessary cost to research, replace and restore lost "data".

**(ii)** The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $25,000 unless otherwise shown in the Schedule above.

**(c)** Expediting Expenses

**(i)** With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

**i.** Make temporary repairs; and

**ii.** Expedite permanent repairs or permanent replacement.

**(ii)** The most we will pay for loss or expense under this coverage is $25,000 unless otherwise shown in the Schedule above.

**(d)** Hazardous Substances

**(i)** We will pay your additional cost to repair or replace Covered Property because of contamination by a "hazardous substance". This includes the additional expenses to clean up or dispose of such property.

**(ii)** This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in **(2)(j)(i)ii.** below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

**(iii)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $25,000 unless otherwise shown in the Schedule above.

**(e)** Ice Rink Piping

We will pay for loss or damage caused by or resulting from an "accident" to "buried vessels or piping" which form a part of an ice rink refrigeration and under floor heating system.

**(f)** Ice Rink Excavation Costs


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will pay to excavate "buried vessels or piping" that is part of an ice rink refrigeration and under floor heating system during the repair or replacement following an "accident" to "buried vessels or piping" and to restore the excavated area to the same condition prior to the "accident."

The most we will pay for excavation costs of "buried vessels or piping," including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $5,000 unless otherwise shown in the Schedule above.

**(g)** Off Premises Equipment Breakdown

**(i)** We will pay for physical damage to transportable "covered equipment" that, at the time of the "accident" or "electronic circuitry impairment", is not at a covered location. As respects this Off Premises Equipment Breakdown coverage only, the "accident" or "electronic circuitry impairment" may occur in any country except one in which the United States has imposed sanctions, embargoes or similar restrictions on the provision of insurance

**(ii)** We will also pay for your reasonable and necessary cost to research, replace and restore lost "data" contained within "covered equipment" as described under **(i)** above. This amount may not exceed the limit applicable to Data Restoration coverage.

**(iii)** The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, and Data Restoration as described in **(ii)** above is $10,000.

**(h)** Public Relations

**(i)** This coverage only applies if you have sustained an actual loss of Business Income covered under this endorsement.

**(ii)** We will pay for your reasonable costs for professional services to create and disseminate communications, when the need for such communications arises directly from the interruption of your business. This communication must be directed to one or more of the following:

**i.** The media;

**ii.** The public; or

**iii.** Your customers, clients, or members.

**(iii)** Such costs must be incurred during the "period of restoration" or up to 30 days after the "period of restoration" has ended.

**(iv)** The most we will pay for loss or expense under this coverage is $5,000.

**(i)** Service Interruption

**(i)** Any insurance provided for Business Income, Extra Expense, Data Restoration or Spoilage is extended to apply to your loss, damage or expense caused by a failure or disruption of service. The failure or disruption of service must be caused by an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, "cloud computing services", wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

**(ii)** "Cloud computing services" must be provided by a professional provider with whom you have a contract.

**(iii)** With respect to the Data Restoration portion of this Service Interruption coverage, coverage will also apply to "data" stored in the equipment of a provider of "cloud computing services".

**(iv)** Unless otherwise shown in the Schedule above, Service Interruption coverage will not apply unless the failure or disruption of service exceeds 24 hours immediately following the "accident". If the interruption exceeds 24 hours, coverage will begin at the time of the interruption, and the applicable deductible will apply.

**(v)** The most we will pay in any "one equipment breakdown" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense, Data Restoration or Spoilage.


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(j)** Spoilage

**(i)** We will pay for:

**i.** Physical damage to "perishable goods" due to spoilage;

**ii.** Physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

**iii.** Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**(ii)** If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident" or "electronic circuitry impairment", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

**(iii)** The most we will pay for loss, damage or expense under this coverage is $25,000 unless otherwise shown in the Schedule above.

**(3) Exclusions**

All exclusions in the **Causes of Loss—Special Form** apply except as modified below and to the extent that coverage is specifically provided by this endorsement.

**(a)** The following exclusion is modified:

With respect to this endorsement only, the last paragraph of Exclusion **B.2.d.** is deleted and replaced with the following:

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in an "accident" or "electronic circuitry impairment", we will pay for the loss, damage or expense caused by that "accident" or "electronic circuitry impairment".

**(b)** The following exclusions are added:

**(i)** We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment":

**i.** Fire, including smoke from a fire;

**ii.** Explosion of gas or unconsumed fuel within the furnace of any boiler or fired vessel or within the passages from that furnace to the atmosphere;

**iii.** Any other explosion, except as specifically covered under this endorsement;

**iv.** Any earth movement, including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action;

**v.** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump. However, if electrical "covered equipment" requires drying out because of the above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies;

**vi.** Vandalism; or

**vii.** Your failure to use all reasonable means to protect Covered Property from damage following an "accident" or "electronic circuitry impairment".

**(ii)** Coverage under this endorsement does not apply to an "accident" or "electronic circuitry impairment" caused by or resulting from:

**i.** Lightning;

**ii.** Windstorm or hail. However, this exclusion does not apply when:

**a.** "Covered equipment" located within a building or structure suffers an "accident" or "electronic circuitry impairment" that results from wind-blown rain, snow, sand or dust; and


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

**iii.** Smoke; aircraft or vehicles; riot or civil commotion; sprinkler leakage; elevator collision;

**iv.** Breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse or molten material;

**v.** A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or

**vi.** Water or other means used to extinguish a fire.

**(iii)** With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

**i.** Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business; or

**ii.** Any increase in loss resulting from an agreement between you and your customer or supplier.

**(iv)** We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident" or "electronic circuitry impairment": Any "fungus", wet rot, dry rot or bacteria, including any presence, growth, proliferation, spread or any activity of "fungus", wet rot, dry rot or bacteria. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such "fungus", wet rot, dry rot or bacteria. However, this exclusion does not apply to spoilage of personal property that is "perishable goods", to the extent that such spoilage is covered under Spoilage coverage.

**(v)** We will not pay for any loss or damage to animals.

**(c)** Exclusions **(b)(ii)i., (b)(ii)ii., (b)(ii)iii.** and **(b)(ii)iv.** above shall not apply if:

**(i)** The excluded cause of loss occurs away from any covered location and causes an electrical surge or other electrical disturbance;

**(ii)** Such surge or disturbance is transmitted through utility service transmission lines to the covered location and results in an "accident" or "electronic circuitry impairment"; and

**(iii)** The loss, damage or expense caused by such surge or disturbance is not covered elsewhere under the policy.

**(d)** Any cause of loss set forth in exclusion **(b)(ii)iv.** above that is not a Covered Cause of Loss in this coverage part shall be excluded only as respects Service Interruption coverage.

**(4) Definitions**

The following definitions are added with respect to this endorsement only:

**(a)** "Accident"

**(i)** "Accident" means a fortuitous event that causes direct physical damage to "covered equipment". The event must be one of the following:

**i.** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**ii.** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances, or wires;

**iii.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

**iv.** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

**v.** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**(ii)** None of the following is an "accident":


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**i.** Defect, programming error, programming limitation, computer virus, malicious code, loss of "data", loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind; or

**ii.** Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident".

**(b)** "Boilers and vessels" means:

**(i)** Any boiler, including attached steam, condensate, and feedwater piping; and

**(ii)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in the Schedule above.

**(c)** "Buried vessels or piping" means any piping or vessel buried or encased in the earth, concrete, or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

**(d)** "Cloud computing services" means professional, on-demand, self-service data storage or data processing services provided through the Internet or over telecommunications lines. This includes services known as IaaS (infrastructure as a service), PaaS (platform as a service), SaaS (software as a service) and NaaS (network as a service). This includes business models known as public clouds, community clouds and hybrid clouds. "Cloud computing services" include private clouds if such services are owned and operated by a third party.

**(e)** "Covered equipment"

**(i)** "Covered equipment" means, unless otherwise specified in the Schedule above, Covered Property:

**i.** That generates, transmits, or utilizes energy; or

**ii.** Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

"Covered equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

**(ii)** None of the following is "covered equipment":

**i.** Structure, foundation, cabinet, or compartment;

**ii.** Insulating or refractory material;

**iii.** Sewer piping, "buried vessels or piping", or piping forming a part of a sprinkler or fire suppression system, except as provided under **A.2.(e)** Ice Rink Piping and **A.2.(f)** Ice Rink Excavation Costs;

**iv.** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**v.** "Vehicle" or any equipment mounted on a "vehicle";

**vi.** Satellite, spacecraft, or any equipment mounted on a satellite or spacecraft;

**vii.** Dragline, excavation, or construction equipment; or

**viii.** Equipment manufactured by you for sale.

**(f)** "Data" means information or instructions stored in digital code capable of being processed by machinery.

**(g)** "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

**(h)** "Electronic circuitry impairment"

**(i)** "Electronic circuitry impairment" means a fortuitous event involving "electronic circuitry" within "covered equipment" that causes the "covered equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. This definition is subject to the conditions specified in **(ii), (iii)** and **(iv)** below.


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(ii)** We shall determine that the reasonable and appropriate remedy to restore such "covered equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered equipment".

**(iii)** The "covered equipment" must be owned or leased by you, or operated under your control.

**(iv)** None of the following is an "electronic circuitry impairment":

**i.** Any condition that can be reasonably remedied by:

**a.** Normal maintenance, including but not limited to replacing expendable parts, recharging batteries, or cleaning;

**b.** Rebooting, reloading, or updating software or firmware; or

**c.** Providing necessary power or supply.

**ii.** Any condition caused by or related to:

**a.** Incompatibility of the "covered equipment" with any software or equipment installed, introduced, or networked within the prior 30 days; or

**b.** Insufficient size, capability, or capacity of the "covered equipment".

**iii.** Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

**(i)** "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**(j)** "Media" means material on which "data" is recorded, such as solid state drives, hard disks, optical disks, flash drives, magnetic tapes, or floppy disks.

**(k)** "One equipment breakdown" means: If an initial "accident" or "electronic circuitry impairment" causes other "accidents" or "electronic circuitry impairments", all will be considered "one equipment breakdown". All "accidents" or "electronic circuitry impairments" that are the result of the same "accident" or "electronic circuitry impairment" will be considered "one equipment breakdown".

**(l)** "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

**(m)** "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus. However, "production machinery" does not mean any boiler, or fired or unfired pressure vessel.

This term does not appear elsewhere in this endorsement, but may appear in the Schedule above.

**(n)** "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to: car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor, or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle".

**B.** The Building and Personal Property Coverage Form is modified as follows.

The definitions stated above also apply to section **B.** of this endorsement.

**(1) Deductible**

The deductible shown on the Commercial Property Coverage Part Declarations applies unless a separate Equipment Breakdown Coverage deductible is shown in the Schedule above. If a separate Equipment Breakdown deductible is shown, the following applies:

Only as regards Equipment Breakdown Coverage, section **D.** Deductible is deleted and replaced with the following:

**(a)** Deductibles for Each Coverage


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(i)** Unless the Schedule indicates that the deductible is combined for all coverages, multiple deductibles may apply to any "one equipment breakdown".

**(ii)** We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule above. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.

**(iii)** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one equipment breakdown", only the highest deductible for each coverage will apply.

**(b)** Direct and Indirect Coverages

**(i)** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule above.

**(ii)** Unless more specifically indicated in the Schedule above:

**i.** Indirect Coverages Deductibles apply to Business Income and Extra Expense.

**ii.** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

**(c)** Application of Deductibles

**(i)** Dollar Deductibles

We will not pay for loss, damage or expense resulting from any “one equipment breakdown” until the amount of loss, damage or expense exceeds the applicable deductible shown in the Schedule above. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, up to the applicable Limit of Insurance.

**(ii)** Time Deductible

If a time deductible is shown in the Schedule above, we will not be liable for any loss occurring during the specified number of hours or days immediately following the “accident” or “electronic circuitry impairment”. If a time deductible is expressed in days, each day shall mean twenty-four consecutive

**(iii)** Multiple of Average Daily Value (ADV)

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" or "electronic circuitry impairment" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or "electronic circuitry impairment" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration". The number indicated in the "schedule" will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

**(iv)** Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage, or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductibl

**(2) Conditions**

**(a)** The following conditions are in addition to the Conditions in the Building and Personal Property Coverage Form, the Commercial Property Conditions and the Common Policy Conditions.

**(i)** Suspension


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**i.** Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" or "electronic circuitry impairment" to that "covered equipment". This can be done by mailing or delivering a written notice of suspension to:

**a.** Your last known address; or

**b.** The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment". If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**(ii)** Jurisdictional Inspections

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**(iii)** Coinsurance

If a coinsurance percentage is shown in a "schedule" for specified coverages, the following condition applies.

We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

**(b)** As respects this endorsement only, the Valuation Condition in the Building and Personal Property Coverage Form is deleted and replaced with the following:

Valuation

We will determine the value of Covered Property as follows:

**(i)** Except as specified otherwise, our payment for damaged Covered Property will be the smallest of:

**i.** The cost to repair the damaged property;

**ii.** The cost to replace the damaged property on the same site; or

**iii.** The amount you actually spend that is necessary to repair or replace the damaged property.

**(ii)** The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment, or property.

**(iii)** Except as described in **(iv)** below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

**(iv)** Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident" or "electronic circuitry impairment", we will pay your additional cost to replace with equipment that is better for the environment, safer for people or more energy or water efficient than the equipment being replaced. However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This provision does not apply to the replacement of component parts or to any property to which Actual Cash Value applies and does not increase any of the applicable limits.

**(v)** The following property will be valued on an Actual Cash Value basis:

**i.** Any property that does not currently serve a useful or necessary function for you;

**ii.** Any Covered Property that you do not repair or replace within 24 months after the date of the "accident" or "electronic circuitry impairment"; and


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**iii.** Any Covered Property for which Actual Cash Value coverage is specified in a Schedule.

**(vi)** If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

**i.** The property was manufactured by you;

**ii.** The sales price of the property is less than the replacement cost of the property; or

**iii.** You are unable to replace the property before its anticipated sale.

**(vii)** Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

**i.** For mass-produced and commercially available software, at the replacement cost.

**ii.** For all other "data" and "media", at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

The most we will pay for loss, damage or expense under this endorsement arising from any “one equipment breakdown” is the applicable Limit of Insurance in the Declarations unless otherwise shown in the Schedule above. Coverage provided under this endorsement does not provide an additional amount of insurance.

All other terms and conditions remain unchanged.

Scott [signature]

Authorized Representative



© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

EQUIPMENT BREAKDOWN COVERAGE (Including Electronic Circuitry Impairment)

A. The following coverages are added:

1. Defense

   If a claim or "suit" is brought against you alleging that you are liable for damage to property of another in your care, custody or control that was directly caused by an "accident" or "electronic circuitry impairment" to "covered equipment" we will either:

   a. Settle the claim or "suit"; or

   b. Defend you against the claim or "suit" but keep for ourselves the right to settle it at any point.

2. Supplementary Payments

   We will pay, with respect to any claim or "suit" we defend:

   a. All expenses we incur;

   b. The cost of bonds to release attachments, but only for bond amounts within the Limit of Insurance. We do not have to furnish these bonds;

   c. All reasonable expenses incurred by you at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work;

   d. All costs taxed against you in any "suit" we defend;

   e. Pre-judgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer; and

   f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the Limit of Insurance shown in the Declarations.

   These payments will not reduce the Limit of Insurance.

B. As respects Equipment Breakdown Coverage only, the following are added

1. Bankruptcy

   The bankruptcy or insolvency of you or your estate will not relieve us of an obligation under this coverage section.

2. Legal Action Against Us

   No one may bring a legal action against us under this Equipment Breakdown coverage unless:

   a. There has been full compliance with all the terms of this Equipment Breakdown coverage;

   b. The action is brought within 2 years and 1 day from the date that cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action; and


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. We agree in writing that you have an obligation to pay for damage to Covered Property of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

C. With respect to Equipment Breakdown Coverage only, the following Definition is added:

"Suit" means a civil proceeding and includes:

1. An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent; or
2. Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our consent.

All other terms and conditions of the policy remain the same.

Authorized Representative


© 2015, The Hartford Steam Boiler Inspection and Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# ADDITIONAL COVERED PROPERTY

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

The following property shown in the Schedule below is deleted from the **Property Not Covered** Paragraph under the **Coverage** Section and added to the **Covered Property** Paragraph under the **Coverage** Section, but only if such item(s) of property are also listed on the Statement of Values when a limit of insurance is shown.

**SCHEDULE***

| Prem. No. | Bldg. No. | Paragraph Reference (Withdrawal of Property Not Covered) | Description of Property | Enter Building or Personal Property** |
|---|---|---|---|---|
| 001 | 047 | | WOOD DOCKS | BLDG |
| 001 | 048 | | FENCES & ARBORS | BLDG |
| 001 | 049 | | BILLBOARD | BLDG |
| 001 | 050 | | RADIO/ TV ANTENNA TOWER | BLDG |
| SEE | SCHED | | | ** |

** Coverage will apply to the following types of property when listed on the Statement of Values with a limit shown per item or group of items: Foot bridges, permanently installed bulkheads, pilings, piers, wharves, docks, beach or diving platforms, watercraft less than twenty-six (26) feet in or out of the water at the described premises and their related equipment, personal property while waterborne, outboard motors under thirty (30) horsepower, radio and television antennas, satellite dishes, fences, roadways, paved surfaces, athletic surfaces and enclosures, smokestacks, insured owned above ground transmission lines, pumps, filters, floats, patios, service equipment and pools and amusement equipment including ropes courses, climbing walls/towers, playground equipment, miniature golf and similar types of equipment.

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# ADVANTAGE PLUS PROPERTY

This endorsement modifies and is subject to the insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CAUSES OF LOSS—SPECIAL FORM**

The following tables provide a summary of the Limits of Insurance for Additional Coverages and Coverage Extensions provided by this endorsement.

These coverages apply separately to each of your premises described in the Declarations.

If you purchase additional limits for any of these coverages at a specified location, the limits shown as Additional Coverages or Coverage Extensions will apply in excess of the insurance purchased separately. We will not pay more under this endorsement than the Limits of Insurance shown below under the Summary of Additional Coverages or Summary of Coverage Extensions.

**Summary of Additional Coverage**

| Limits Of Insurance | Subjects Of Insurance |
|---|---|
| $ 5,000 | Automated External Defibrillators (AEDs) |
| $ 100,000 | Business Income with Extra Expense (including Contingent) |
| $ 10,000<br>$ 10,000 | Money and Securities - On Your Premises<br>Money and Securities - Away From Your Premises |
| $ 50,000 | Debris Removal |
| $ 10,000 | Electronic Data Replace or Restore |
| $ 25,000 | Emergency Real Estate Consultant Fee |
| $ 25,000 | Fire Department Service Charge |
| $ 25,000 | Identity Theft Exposure |
| $ 50,000 | Key Individual Replacement Cost |
| $ 10,000 | Lease Cancellation Moving Expense |


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| Limits Of Insurance | Subjects Of Insurance |
|---|---|
| $ 10,000 | Lessors' Leasehold Interest |
| $ 2,500 | Lock Replacement |
| $ 25,000 | Loss Data Preparation |
| | Off-Premises Utility Failure: |
| $ 50,000 | Building and Personal Property |
| $ 50,000 | Business Income Coverage |
| Building Limit | Ordinance or Law—Loss to the Undamaged Portion of the Building |
| $ 500,000 | Ordinance or Law—Increased Cost of Construction and Demolition Cost combined |
| Personal Property Limit | Owned Watercraft (Less than twenty-one [21] feet in length) |
| | Personal Property while Airborne |
| | Pair, Set or Parts |
| $ 25,000 | Pollutant Clean Up and Removal |
| $ 10,000 | Reward Reimbursement |
| $ 25,000 | Signs—Attached or Unattached: Indoor and Outdoor |
| $ 25,000 | Temporary Meeting Space |
| $ 25,000 | Terrorism Travel Reimbursement |
| $ 25,000 | Workplace Violence Counseling |

**Summary of Coverage Extensions**

| Limits Of Insurance | Subjects Of Insurance |
|---|---|
| $ 50,000 | Accounts Receivable (Including credit or charge card slips) |
| $ 5,000 | Appurtenant Buildings or Structures – (buildings or structures other than garages, carports, storage sheds and pump houses are included in the Building Limit) |
| $ 10,000 | Earthquake Sprinkler Leakage |
| $ 60,000 | Media, Electronic Data, And Programs |
| $ 10,000 | Worldwide Laptop Coverage |
| $ 25,000 | Emergency Vacating Expense |
| $ 100,000 | Fine Arts (Including on exhibition at described premises) |
| $ 25,000 | Fire Extinguisher Recharge |
| $ 5,000 | Furs |
| $ 2,500 | Jewelry |
| $ 5,000 | Precious Alloys or Metals |


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

| Limits Of Insurance | Subjects Of Insurance |
|---|---|
| | |
| $ 1,000,000<br>$ 500,000 | Newly Acquired Locations:<br>Building (For ninety [90] days)<br>Business Personal Property (For ninety [90] days) |
| $ 50,000<br>$ 1,000 | Outdoor Property (Including trees, shrubs and plants)<br>Any one tree, shrub, plant or acre of sod |
| $25,000 per occurrence<br>$ 5,000 per person | Personal Effects |
| $ 50,000 | Property In Transit |
| $ 25,000 | Property Of Others |
| $ 500,000 | Property Off-Premises |
| $ 25,000 | Property Off-Premises - Property On Exhibition |
| $ 10,000 | Retaining Walls (Not part of building) |
| $ 25,000 | Spoilage |
| $ 100,000 | Valuable Papers and Records (Other than Electronic Data) |
| $ 100,000 | Water Backup or Overflow of Sewers or Drains |

**I.** The **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is amended as follows:

**A.** Under section **A. Coverage**, subsection **1. Covered Property,** paragraph **b. Your Business Personal Property** is replaced by:

**b. Your Business Personal Property** located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 2,000 feet of the described premises, consisting of the following property unless otherwise specified in the Declarations or on Your Business Personal Property—Separation of Coverage Form:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** “Stock”;

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

**B.** Section **A. Coverage,** subsection **2. Property Not Covered** is amended as follows:

**1.** Paragraph **i.** is replaced by:


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**i.** Personal property while waterborne;

**2.** Paragraph **p.(c)** is replaced by:

**(c)** Any owned or leased watercraft twenty-one (21) feet or less in length out of water at the described premises; or

**C.** Subsection **4. Additional Coverages** of Section **A. Coverage** is amended as follows:

**1.** Under paragraph **a. Debris Removal,** subparagraph **a.(4)** is replaced by:

**(4)** We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Debris Removal for debris removal expense, for each location, in any one occurrence or physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds twenty-five percent (25%) of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus **$50,000.**

**2.** Paragraph **c. Fire Department Service Charge** is replaced by:

**c.** When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Fire Department Service Charge for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No deductible applies to this Additional Coverage.

**3.** The last subparagraph of paragraph **d. Pollutant Clean-Up and Removal** is replaced by:

The most we will pay under this Additional Coverage for each described premises is the Limit of Insurance shown in the Summary of Additional Coverage for Pollutant Clean-Up and Removal for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate twelve (12) month period of this Policy.

**4.** Subparagraph **e. Increased Cost Of Construction** of Paragraph **4. Additional Coverages** replaced with the following:

**e. Ordinance or Law**

**Increased Cost of Construction and Demolition Cost**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law that requires you to demolish and clear the site of undamaged parts of the building, subject to the limitations stated in **e.(4)** through **e.(10)** of this Additional Coverage.

**(3)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(4)** through **e.(10)** of this Additional Coverage.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

**(4)** The ordinance or law referred to in **e.(2)** and **e.(3)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(5)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(6)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(7)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is the Ordinance or Law – Demolition and Increased Cost of Construction combined Limit of Insurance shown in the Summary of Coverage Extensions. The amount payable under this Additional Coverage is included in the Building Limit.

**(8)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(7) of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(7) of this Additional Coverage, is the increased cost of construction at the new premises.

**(9)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(10)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(7) of this Additional Coverage, is not subject to such limitation.

**Coverage for Loss to Portion of Undamaged Building**

This Additional Coverage applies only to buildings to which the Replacement Cost Coverage applies.

In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay for the loss in value of the undamaged portion of the damaged building as a consequence of enforcement of or compliance with an ordinance or law that requires demolition of undamaged parts of the same building.

**6.** Paragraph **f.(4) Electronic Data,** is replaced by:

**(4)** The most we will pay under this Additional Coverage—Electronic Data is the applicable Limit of Insurance shown in the Summary of Additional Coverage (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in

but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**D.** The following are added to subsection **4. Additional Coverages** of Section **A. Coverage:**

**a. Reward Reimbursement**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Reward Reimbursement for information leading to the arrest and conviction of persons responsible for crimes committed against the Insured. This Additional Coverage only applies when loss or damage is covered as a result of loss and only when the person responsible is convicted of the crime. The administration of the reward is completed by an approved, independent organization. No deductible applies to this coverage.

**b. Automated External Defibrillators**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Automated External Defibrillators per occurrence to cover physical loss or damage caused by a Covered Cause of Loss to Automated External Defibrillators located at each premises described in the Declarations.

**c. Business Income and Extra Expense**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Business Income and Extra Expense in any one occurrence to apply at each premises described in the Declarations pertaining to the following:

**(1) Business Income**

Business Income means the:

**(a)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**(b)** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(i)** Business Income Including "Rental Value".

**(ii)** Business Income Other Than "Rental Value".

**(iii)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 2,000 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 2,000 feet of the building or within 2,000 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

**(2) Extra Expense**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(a)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(b)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**(3) Extended Business Income**

**(a) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay the actual loss of Business Income Other Than Rental Value you sustain for a period up to ninety (90) consecutive days after the date you could restore your "operations," with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(b)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(i)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(ii)** Ends after a period up to ninety (90) consecutive days after the date you could restore tenant occupancy with reasonable speed, to the level which would generate the "Rental Value" amount that would have existed if no direct physical loss or damage had occurred.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(4) Contingent Business Income**

We will pay the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" for period up to ninety (90) consecutive days after the date you restore operations with reasonable speed. The "suspension" must be caused by direct physical loss of or damage to property operated by others on whom you depend to:

**(a)** Deliver materials or services to you or to others for your account (Contributing Locations). But any property which delivers any of the following services Is not a Contributing Location with respect to such services:

**(i)** Water supply services;

**(ii)** Power supply services;

**(iii)** Wastewater removal services; or


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(iv)** Communication supply services, including services relating to internet access or access to any electronic network;

**(a)** Accept your products or services (Recipient Locations);

**(b)** Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

**(c)** Attract customers to your business (Leader Locations).

However, coverage under this subparagraph (b) does not apply when the only loss to one of the types of property listed above is loss or damage to "electronic data", including destruction or corruption of "electronic data". If the one of the types of property listed above sustains loss or damage to "electronic data" and other property, coverage under subparagraph (b) will not continue once the other property is repaired, rebuilt or replaced.

**(5) Interruption Of Computer Operations**

**(a)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d**. therein.

**(b)** With respect to the coverage provided under this additional Coverage, the Covered Causes of Loss are subject to the following:

**(i)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(ii)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(iii)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(c)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is included in the Limit of Insurance shown in the Summary of Additional Coverages for Business Income and Extra Expense regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(d)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(c)** above has not been exhausted.

**(6) Definitions**

The following definitions apply to this Additional Coverage:

**(a)** "Operations" means:

**(i)** Your business activities occurring at the described premises; and

**(ii)** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** "Period of restoration" means the period of time that:

**(i)** Begins:

**(A)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(B)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**(ii)** Ends on the earlier of:

**(A)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(B)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(i)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

**(ii)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**(c)** "Rental Value" means Business Income that consists of:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**(ii)** Continuing normal operating expenses incurred in connection with that premises, including:

**(A)** Payroll; and

**(B)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**(d)** "Suspension" means:

**(i)** The slowdown or cessation of your business activities; or

**(ii)** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value".

**d. Money or Securities**

**(1) On your premises**

We will pay up to the applicable Limit of Insurance shown in the Summary of Additional Coverage for the loss of "money" or "securities" belonging to your business if at the time of the loss, the "money" or "securities" are at the described premises, at a bank or savings institution prior to deposit with that institution, within your living quarters, or in the possession of your partner(s), officer(s) or director(s), or employee(s) authorized to have use and custody of such property, or in transit between any of these places and results directly from:

**(a)** Theft, meaning the unlawful taking of property to your deprivation;

**(b)** Disappearance; or

**(c)** Destruction.

**(2) Away from your premises**

We will pay up to the applicable Limit of Insurance shown in the Summary of Additional Coverage for "money" and "securities" used in your business that are lost, damaged, or destroyed as a result of a covered cause of loss if:


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(a)** On your premises described in the Declarations or in a federally or state regulated savings or banking institution; or

**(b)** Away from your premises described in the Declarations while in transit by a person authorized by you, or within the living quarters of someone to whom you have entrusted the Covered Property.

**(3)** With respect to this Additional Coverage, we will not pay for loss:

**(a)** Resulting from accounting or arithmetical errors or omissions;

**(b)** Due to the giving or surrendering of property in any exchange or purchase;

**(c)** Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device; or

**(d)** loss involving virtual currency of any kind, by whatever name known, whether actual or fictitious including, but not limited to, digital currency, crypto currency or any other type of electronic currency.

**(4)** A loss caused by one or more persons, or involving a single act or series of related acts, is considered one occurrence.

**(5)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**(6)** In the event of loss or damage we will determine the value as follows:

**(a)** "Money" at its face value; and

**(b)** "Securities" at their value at the close of business on the day the loss is discovered.

**e. Emergency Real Estate Consultant Fee**

We will reimburse you up to the Limit of Insurance shown in the Summary of Additional Coverage for Emergency Real Estate Consultant Fee in any one policy year for any realtor's fee or real estate consultant's fee required by the Insured in order to relocate due to the loss or damage by a Covered Cause of Loss to the Insured's premises described on the Declarations.

**f. Identity Theft Expense**

**(1) Coverage**

We will pay for reimbursement of any present director, officer, partner or proprietor of the Named Insured for expenses incurred as the direct result of any Identity Theft occurring, discovered and reported during the policy period and if such Identity Theft arises out of the director's, officer's, partner's or proprietor's role with respect to the conduct of your business. No deductible applies to this coverage.

**(2) Limit of Insurance**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Identity Theft Expense.

**(3) Identity Theft** means the act of knowingly transferring or using, without lawful authorization, the identity of any officer, director, partner or proprietor of the Named Insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**(4) Identity Theft Expenses means:**

**(a)** Costs of notarizing documents required by financial institutions or similar creditors as testaments to fraud;

**(b)** Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar creditors; or

**(c)** Loan application fees for re-applying for loan(s) when the original application is rejected solely because of incorrect credit information.

**g. Key Individual Replacement Expenses**


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Key Individual Replacement Expenses per policy year for expenses incurred by the Named Insured to replace the Chief Executive Officer or Executive Director if that officer or director suffers an injury during the policy period which results in the loss of life during the policy period. No deductible applies to this coverage. We will not pay this benefit if benefit payment is also available from us on any other policy.

Key Individual Replacement Expenses mean:

**(1)** Costs of advertising the employment position opening;

**(2)** Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

**(3)** Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up employment contracts.

**h. Lease Cancellation Moving Expenses**

We will reimburse the Named Insured up to applicable Limit of Insurance shown in the Summary of Additional Coverage for Lease Cancellation Moving Expenses for moving expenses incurred when moving is made necessary by the cancellation of a lease at premises occupied by the Named Insured and described in the Declarations. The cancellation must result from direct physical loss of or damage to your Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss during the term of this Policy. No deductible applies for this coverage.

**i. Lessor's Leasehold Interest**

**(1)** Coverage

We will pay for loss of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by tenants. The cancellation must result from direct physical loss of or damage to your Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss during the term of this Policy. No deductible applies for this coverage.

**(a)** Covered Leasehold Interest means:

**(i)** Rent you were collecting at the described premises prior to the loss; and

**(ii)** Rental Value of the described premises after loss or damage has been repaired or rebuilt.

**(b)** Covered Leasehold Interest does not include:

**(i)** Prepaid rent;

**(ii)** Security or other deposits made by tenants; and

**(iii)** Insurance, taxes or other payments made on your behalf by tenants.

**(2)** Limits of Insurance

The most we will pay under this Additional Coverage is the lesser of the following:

**(a)** Your Covered Leasehold Interest for the twelve (12) months immediately following the date the described premises is actually repaired, rebuilt or replaced and tenantability is restored and ending with the normal expiration date of each canceled lease; or

**(b)** The Limit of Insurance shown in the Summary of Additional Coverage for all Covered Leasehold Interest of all tenants canceling their leases arising out of an occurrence at a premises described in the Declarations.

**j. Lock Replacement Coverage**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Lock Replacement Coverage in any one occurrence to cover the costs due to the theft of your keys used to secure a location described in the Declarations. No deductible applies to this coverage.

We will not pay more than the least of the following:


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Re-key the undamaged locks;

**(2)** Install new lock cylinders;

**(3)** Provide new master keys; or

**(4)** Replace existing undamaged locks with new locks of like kind and quality.

**k. Loss Data Preparation Costs**

We will pay up to the Limit of Insurance shown in Summary of Additional Coverage for Loss Data Preparation Costs for reasonable costs you incur in preparing loss data required by policy conditions after a covered property loss. This includes the cost of compiling inventories, obtaining appraisals and preparing other data to determine the extent of your loss; but does not include Attorney or Public Adjustor fees.

**l. Off-Premises Utility Failure – Building and Personal Property**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Off-Premises Utility Failure – Building and Personal Property for loss or damage to your Covered Property due to the interruption of utility service supplied to the described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to the following types of utility service properties not on your described premises:

**(1)** Water Supply Services, meaning the following types of property supplying services to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2)** Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(a)** Communication transmission lines, including optic fiber transmission lines; and

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

Communication Supply Service does not include overhead communication lines.

**(3)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission Lines.

Power Supply does not include overhead transmission lines.

We will only pay for loss or damage you sustain after the first twelve (12) hours following the direct physical loss or damage to the off-premises property to which this Additional Coverage applies.

As used in this Additional Coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**m. Off-Premises Utility Failure – Business Income**

We will pay up to the Limit of Insurance shown in the Summary of Additional Coverage for Off-Premises Utility Failure – Business Income for a "suspension" in "operations" at the described premises caused by an interruption in utility service supplied to that described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to the following types of utility service properties not on the described premises:


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(1)** Water Supply Services, meaning the following types of property supplying services to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2)** Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

**(a)** Communication transmission lines, including optic fiber transmission lines; and

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

Communication Supply Service does not include overhead communication lines.

**(3)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission Lines.

Power Supply does not include overhead transmission lines.

Coverage under this Additional Coverage does not apply to Business Income or Extra Expense related to interruption in utility service which causes loss or damage to "electronic data", including destruction of "electronic data".

We will only pay for loss or damage you sustain after the first twelve (12) hours following the direct physical loss or damage to the off-premises property to which this Additional Coverage applies.

As used in this Additional Coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**n. Pair, Set or Parts**

You may extend the insurance provided by the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** in accordance with the following:

**(1)** Pair or Set:

In case of lost or damaged article which is part of a pair or set we may:

**(a)** Repair or replace any part to restore the pair or set to its value before the loss or damage; or

**(b)** Pay a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

**(2)** Parts: In case of a loss to any part of a covered item consisting of several parts when it is complete, we will only pay for the value of the lost or damaged part. The value of property does not include antique, historic or sentimental value.

**o. Temporary Meeting Space**

We will reimburse you up to the Limit of Insurance shown in the Summary of Additional Coverage for Temporary Meeting Space in any one policy year for expenses incurred due to the temporary unavailability of the Named Insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater, during the policy period. Expenses will be reimbursed only for the rental of temporary meeting space required for meeting with parties who are not insured under this Policy. No deductible applies to this coverage.

**p. Terrorism Travel Reimbursement**


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We will reimburse you up to the Limit of Insurance shown in the Summary of Additional Coverage for Terrorism Travel Reimbursement in any one policy year for "Emergency Travel Expenses" incurred by a director or officer of the Named Insured due to the occurrence of a "Certified Act of Terrorism." No deductible applies to this coverage.

"Emergency Travel Expenses" are additional travel expenses incurred to reschedule comparable transport due to the cancellation of scheduled transport within forty-eight (48) hours of a "Certified Act of Terrorism."

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

**(1)** The act resulted in insured losses in excess of $5 million in the aggregate attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**(2)** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the Policy or affect the conduct of the United States Government by coercion.

**q. Workplace Violence Counseling**

In the event that an incidence of "workplace violence" occurs at any time on the covered premises during the policy period, we will reimburse you for expenses incurred for the emotional counseling of your employees during the policy period or within six months from the date of the "workplace violence." The limit for this coverage will be the Limit of Insurance shown in the Summary of Additional Coverage for Workplace Violence Counseling per policy period regardless of the number of insureds or claims made. No deductible applies to this coverage.

"Workplace Violence" means the intentional use of, or threat to use deadly force by any person with the intent to cause harm and that results in bodily injury or death of a person while on the Named Insured's premises.

**E.** Subsection **5. Coverage Extensions** of Section **A. Coverage,** is amended as follows:

**1.** Under paragraph **a. Newly Acquired or Constructed Property,** the last paragraphs of subparagraph **(1) Buildings** and subparagraph **(2)(a) Your Business Personal Property** are replaced by:

**(a) Buildings**

The most we will pay for loss or damage under this Extension is the applicable Limit of Insurance shown in the Summary of Coverage Extensions at each building.

**(b) Your Business Personal Property**

The most we will pay for loss or damage under this Extension is the applicable Limit of Insurance shown in the Summary of Coverage Extensions at each building.

**2.** Under paragraph **a. Newly Acquired or Constructed Property,** subparagraph **(3)(b) Period of Coverage** is replaced by:

**(b)** Ninety (90) days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**3.** Paragraph **b. Personal Effects and Property of Others** is replaced by:

**b. Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, directors, partners, trustees, managers, employees or individuals in the Insured's care in a group residential facility, while those personal effects are at the premises described in the Declarations.

The most we will pay for loss or damage under this Extension is the Limits of Insurance shown in the Summary of Coverage Extensions for Personal Effects per occurrence and for any one person per occurrence at each described premises. Coverage does not apply if the property is already insured elsewhere.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is the applicable Limit of Insurance shown in the Summary of Coverage Extensions per occurrence at each described premises. Coverage does not apply if the property is already insured elsewhere.

Our payment for loss of or damage to personal effects or property of others will only be for the account of the owner of the property. If this coverage extension is used to cover someone else's property, we can settle all losses with you and make all payments to you.

This extension does not apply to loss or damage by theft.

**4.** Under paragraph **c. Valuable Papers and Records (Other Than Electronic Data),** sub-paragraph **(4)** is replaced by:

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is the Limit of Insurance shown in the Summary of Coverage Extensions for Valuable Papers and Records (other than "electronic data") at each described premises. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on **Your Business Personal Property** and therefore coverage of such costs is not additional insurance.

**5.** Under paragraph **d. Property Off-Premises,** subparagraph **(3)** is replaced by:

**(3)** The most we will pay for loss or damage under this Extension is the Limit shown in the Summary of Coverage Extensions for **Property Off-Premises,** other than Property at a fair, trade show or exhibition.

The most we will pay for loss or damage under this Extension is the Limit of Insurance shown in the Summary of Coverage Extensions for **Property Off-Premises** - Property On Exhibition at a fair, trade show or exhibition.

**6.** Under paragraph **e. Outdoor Property,** the last paragraph is replaced by:

The most we will pay for loss or damage under this Extension is the Limits of Insurance shown in the Summary of Coverage Extensions for Outdoor Property for any one occurrence, but not more than the any one tree, shrub, plant or acre of sod Limit, including debris removal. This limit applies to any one occurrence, regardless of the types or numbers of items lost or damaged in that occurrence.

**F.** Under section **A. Coverage,** the following are added to subsection **5. Coverage Extensions:**

**a. Accounts Receivable (Including credit or charge card slips)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to include your records of accounts receivable, including credit or charge card slips.

Accounts receivable records shall be limited to:

**(a)** All amounts due from your customers that you are unable to collect;

**(b)** Interest charges on any loans required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** Reasonable collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

**(d)** Other reasonable expenses that you incur to re-establish your records of accounts receivable.

**(2)** This Coverage Extension does not apply to:

**(a)** Bookkeeping, accounting or billing errors or omissions; or

**(b)** Loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**(3)** Accounts receivable loss payment shall be determined as follows:

**(a)** When there is proof that a loss has occurred but you cannot accurately establish the amount of accounts receivable outstanding at the time of the loss, the amount of the loss shall be based on your latest monthly statements and shall be computed as follows:

**(i)** Determine the amount of all outstanding accounts receivable at the end of the same fiscal month in the year immediately preceding the year in which the loss occurs;

**(ii)** Calculate the percentage of increase or decrease in your gross sales of goods and services for the twelve (12) fiscal months immediately preceding the month in which the loss occurred against the twelve (12) months prior to the period determined in step **(a);**

**(iii)** The total amount of accounts receivable as of the last day of the fiscal month in which the loss occurs shall be the amount determined in step **(a)** increased or decreased by the percentage determined in step **(b);** and

**(iv)** The established monthly amount of accounts receivable shall be adjusted for the normal fluctuation in the amount of accounts receivable in the fiscal month in which the loss occurs;

**(b)** We shall deduct from the established total amount of accounts receivable:

**(i)** The amount of any accounts evidenced by records not lost or damaged;

**(ii)** Any other amounts you are able to establish or collect; and

**(iii)** An amount to allow for probable bad debts which you normally would have been unable to collect;

**(c)** If you recover the amount of any accounts receivable that were included in the amount of the paid loss, you shall return the recovered amount to us, up to the total amount of the paid loss. You shall keep the amount of any accounts receivable you recover in excess of the amount of the paid loss

We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Accounts Receivable for loss or damage in any one occurrence.

**b. Appurtenant Buildings or Structures**

**(1)** You may extend the insurance that applies to **Buildings** to apply to direct physical loss or damage by a Covered Cause of Loss to incidental Appurtenant Buildings or Structures which are at the described premises but not specifically described in the Declarations; and

**(2)** You may extend the insurance that applies to Your Business Personal Property, Personal Property of Others, "Computer Equipment," "Data" and "Media," if any, to apply to direct physical loss or damage by a Covered Cause of Loss to such property located within incidental Appurtenant Buildings or Structures which are at the described premises but not specifically described in the Declarations.

**(3)** Appurtenant Buildings or Structures include storage buildings, garages, carports, pump houses, tent platforms, pavilions, shelters, boat and canoe racks, athletic backstops, permanently installed playground equipment, adventure course structures, climbing walls and above ground tanks. But incidental Appurtenant Buildings or Structures does not include:

**(a)** Outside signs, whether or not attached to buildings;

**(b)** Any property to which the **Outdoor Property** Coverage Extension applies; or

**(c)** Any property excluded under the **Property Not Covered** section.

We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Appurtenant Buildings or Structures for each for storage buildings, garages, carports and pump houses and all other structures identified above are included in the Building Limit.

**c. Media, Electronic Data, And Programs**

**(1)** The insurance provided by this coverage form is extended to cover "media", "electronic data", and "programs" which you own, lease, or rent from others, or for which you are legally responsible including the replacement cost to reproduce "programs" that are lost or accidentally erased, including documentation and source materials, if you actually replace or reproduce them. This Coverage Extension does not apply to "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

Computer "programs" and "electronic data" are covered solely as respects direct physical loss or damage by a "specified cause of loss", as defined in the Causes of Loss – Special Form


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The most we will pay is the Limit of Insurance shown in the Summary of Coverage Extensions for Media, Electronic Data and Programs.

**(2)** Valuation

"Computer equipment", "media", "electronic data", and "programs" loss payments shall be determined as follows:

**(a)** "Computer equipment" is valued at the total cost to repair or replace the damaged property without deduction for depreciation. However, we will not pay more than the actual cost to repair or replace the lost or damaged property with new property of the same kind, quality and capability on the same site and used for the same purpose.

**(b)** "Electronic data" and "programs" are valued at the actual cost to reproduce the data and programs, if you actually reproduce the data and programs. We will also pay any reasonable additional expense that you may incur in reproducing the data and programs to continue your normal computer operations. The most we will pay for this coverage is the Limit of Insurance shown in the Media, Electronic Data, And Programs Additional Coverage above.

We will not pay for data and programs that cannot be reproduced due to lack of backup, support documentation or records unless specified articles are described and agreed values are shown in the Declarations. If shown, we will pay for each article lost at the agreed value.

**(c)** "Media" items are valued at actual cost to repair or replace with similar like, kind and quality, up to the limit shown in the Media, Electronic Data, And Programs Additional Coverage above.

**d. Worldwide Laptop Coverage**

You may extend the coverage that applies to your Business Personal Property to cover laptops, notebooks and similar portable personal computers, including their peripherals and accessories, while such property is:

**(1)** In the care, custody and control of you or one of your employees; and

**(2)** Not located in the coverage territory as provided in this policy.

This Coverage Extension does not apply when such property is:

**(1)** At a location that is under a United States Department of State travel or trade restriction at the time of loss or damage; or

**(2)** In transit as checked luggage.

The most we will pay is the Limit of Insurance shown in the Summary of Coverage Extensions for Worldwide Laptop Coverage.

**e. Fine Arts**

**(1)** You may extend the insurance that applies to **Your Business Personal Property** to cover direct physical loss or physical damage to your Fine Arts, including while on exhibit at the described premises. We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Fine Arts at each location described in the Declarations for loss or damage in any one occurrence under this coverage extension.

**(2)** For the purposes of this Extension, Fine Arts mean paintings, lithographs, rare books, manuscripts, pictures, prints, etchings, drawings, rugs, tapestries, bronzes, statuary, pottery, porcelains, marbles, antique furniture and other bona fide works of art; or items of rarity or historical value that you own or are in your care, custody or control.

**(3)** Fine arts are valued at the appraised value at the time of loss, or if there is no appraisal at the greater of:

**(a)** the original acquisition cost, or

**(b)** the market value at the time of loss.

With respect to Property Not Covered while on exhibition at fairgrounds at the described premises is not applicable.

**f. Fire Protection Device Recharge**

You may extend the insurance that applies to your Building to recharge or refill your fire protective devices that are permanently installed in buildings at the described premises. This Coverage Extension only applies when such devices have been discharged while being used to combat a covered fire. We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Fire Protection Device Recharge to recharge or refill fire protective devices under this Coverage Extension.

**g. Retaining Walls**

You may extend the insurance that applies to **Building** to cover direct physical loss or physical damage to retaining walls not attached to your **Building** located at a described premises.

We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Retaining Walls in any one occurrence to apply at each location described in the Declarations under this Coverage Extension—Retaining Walls. However, we will not pay under this Coverage Extension—Retaining Walls for physical loss or physical damage caused by or resulting from tree roots, freezing, thawing or normal deterioration.

**G.** Under section **C. Limits Of Insurance,** the second paragraph is replaced by:

**Signs**

The most we will pay for loss or damage to outdoor signs, whether or not attached to the buildings or structures inside or outside, is the Limit of Insurance shown in the Summary of Additional Coverages for Signs in any one occurrence.

**H.** Under section **F. Additional Conditions,** the following condition is added:

**Other Insurance**

If there is other insurance covering the same loss or damage as would be payable under this endorsement, the additional insurance provided under this endorsement will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether collectable or not.

**I.** Under section **E. Loss Conditions,** the following is added to paragraph **a. Description Of Terms** of subsection **6. Vacancy:**

A building is not considered vacant if business personal property has been removed to another building on the same premises or if the removal pertains to the seasonal operation of the premises.

**J.** Under section **G. Optional Coverages,** the following is added to subsection **3. Replacement Cost:**

The cost of repair or replacement includes Architect fees when Architect services are required by law, code or otherwise necessary to reconstruct the damaged property following a loss.

**K.** Section **H. DEFINITIONS** is amended to include the following:

**1.** "Computer equipment" means electronic data processing systems including keyboards, display screens, terminals, printers, and related peripheral equipment used solely for data processing operations. "Computer equipment" shall not include such equipment held for sale, distribution, or which is manufactured in the course of your business.

**2.** "Electronic data" means information, instruction, or "programs" that are recorded on your "media", including original source material used to enter data.

**3.** "Media" means magnetic tapes, compact discs, diskettes, disk packs, cards, or other standardized data recording materials which can be read by your "computer equipment".

**4.** "Money" means:

**(a)** Currency, coins and bank notes in current use and having a face value; and

**(b)** Travelers checks, register checks and money orders held for sale to the public.

**5.** "Programs" means software that are purchased or written specifically to be used with "computer equipment".

**6.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

**(a)** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**II.** The **CAUSES OF LOSS—SPECIAL FORM** is amended as follows:

**A.** Under section **B. Exclusions,** the following amendments apply:

Paragraph **1.b. Earth Movement** is amended by the addition of the following:

We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Sprinkler Leakage for damages resulting from Sprinkler Leakage which is caused by Earth Movement.

Paragraph **1.e. Utility Services** is amended by the addition of the following:

However, this exclusion does not apply to the extent that coverage is provided under the Additional Coverages for Off-Premises Utility Failure - Building and Personal Property and Off-Premises Utility Failure - Business Income Coverage

**B.** Under section **C. Limitations,** the following amendments apply:

Paragraph **3.a**. is replaced by:

**a.** The Limit of Insurance shown in the Summary of Coverage Extensions for Furs for furs, fur garments and garments trimmed with fur.

Paragraph **3.b.** is replaced by:

**b.** The Limit of Insurance shown in the Summary of Coverage Extensions for Jewelry for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones. This limit does not apply to jewelry and watches worth $100 or less per item.

Under paragraph **3.,** the following special limit is added:

The Limit of Insurance shown in the Summary of Coverage Extensions for Precious Alloys or Metals for bullion, gold, silver, platinum and other precious alloys or metals.

**C.** Under section **F. Additional Coverage Extensions,** subsection **1. Property in Transit,** paragraph **c.** is replaced by:

**c.** The most we will pay for loss or damage under this Extension is the Limit of Insurance shown in the Summary of Coverage Extensions for Property in Transit.

**D.** The following are added to section **F. Additional Coverage Extensions:**

**Emergency Vacating Expense**

We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Emergency Vacating Expense for reasonable expenses you incur due to the emergency vacating of your premises described in the Declarations when the vacating is necessary due to the imminent danger of loss of life or harm to occupants due to a Covered Cause of Loss.

**Water Backup or Overflow of Sewers or Drains**

You may extend the insurance provided by the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** to include loss caused by or resulting from water that backs up or overflows or is otherwise discharged from a sewer, drain, sump or sump pump. For the purposes of this Additional Coverage Extension only, under the **CAUSES OF LOSS-SPECIAL FORM,** section **B. Exclusions,** subparagraph **1.g.(3), Water,** is deleted in its entirety. The most we will pay under this extension is the Limit of Insurance shown in the Summary of Coverage Extensions for Water Backup or Overflow of Sewers or Drains for any one occurrence, unless a higher limit is shown in the Declarations. As used in this Additional Coverage Extension, occurrence shall mean an event, including repeated and continuous exposure to essentially the same harmful conditions, which occurs during this policy period or occurs into another policy period.

**Spoilage Coverage**

You may extend the insurance that applies to Your Business Personal Property to insure against direct physical loss or damage to "perishable stock" caused by or resulting from the Covered Causes of Loss of Breakdown or Contamination or Power Outage.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

We will pay up to the Limit of Insurance shown in the Summary of Coverage Extensions for Spoilage under this Additional Coverage Extension—Spoilage Coverage.

**a. Covered Property**

**Covered Property** means "perishable stock" owned by you or by others that is in your care, custody or control located at:

**(1)** The premises described in the Declarations;

**(2)** Premises of a cold storage warehouse; or

**(3)** Premises of a consignee.

**b.** "Perishable Stock" means personal property:

**(1)** Maintained under controlled conditions for its preservation; and

**(2)** Susceptible to loss or damage if the controlled conditions change.

**c. Covered Causes of Loss**

**(1)** Breakdown or Contamination, meaning:

**(a)** Change in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at the described premises; and

**(b)** Contamination by the refrigerant.

**(2)** Power Outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to a covered cause of loss.

**d. Additional Exclusions**

**(1)** Only the following exclusions contained in paragraph **B.1.** of the **CAUSES OF LOSS—SPECIAL FORM** applicable to this Coverage Part apply to this Coverage Extension—Spoilage:

**(a)** Earth Movement;

**(b)** Governmental Action;

**(c)** Nuclear Hazard;

**(d)** War and Military Action; or

**(e)** Water

and the Cyber Incident Exclusion or the Cyber Incident Exclusion with Ensuing Cause(s) of Loss Exceptions, whichever applies.

**(2)** The following exclusions are added to the **CAUSES OF LOSS—SPECIAL FORM** applicable to this Extension and apply only to the insurance provided under this Additional Coverage Extension—Spoilage.

We will not pay for loss or damage caused by or resulting from:

**(a)** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**(b)** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**(c)** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**(i)** Lack of fuel; or

**(ii)** Governmental order.

**(d)** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(e)** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part is replaced by the term Policy.

**B. Legal Action Against Us**

**1.** The **Legal Action Against Us** Commercial Property Condition is replaced by the following, except as provided in **B.2.** below:

**Legal Action Against Us**

**a.** Except as provided in Paragraph **b.,** no one may bring a legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all of the terms of this Coverage Part; and

**(2)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

**b.** With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:

**(1)** There has been full compliance with all the terms of this Coverage Part; and

**(2)** The action is brought within the earlier of the following:

**(a)** Two years and one day from the date we accept or reject the claim; or

**(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

**2.** Paragraph **B.1.** above does not apply to the Legal Action Against Us Loss Condition in the Legal Liability Coverage Form **CP 00 40.**

**C. Appraisal**

**1.** Except as provided in **C.2.** below, the **Appraisal** Loss Condition in the:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM;
BUILDERS RISK COVERAGE FORM;
CONDOMINIUM ASSOCIATION COVERAGE FORM;
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM;
EXTRA EXPENSE COVERAGE FORM;
LEASEHOLD INTEREST COVERAGE FORM;
TOBACCO SALES WAREHOUSES COVERAGE FORM; and
STANDARD PROPERTY POLICY

is replaced by the following:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

 © Insurance Services Office, Inc., 2011 

**2.** The **Appraisal** Condition in the:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM; and
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

is replaced by the following:

**Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense and the amount of loss.

If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

**D.** Under the **Duties In The Event Of Loss Or Damage** Loss Condition:

**a.** Paragraph **a.(2)** is replaced by the following:

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved. However, with respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

**b.** The provision requiring signed, sworn proof of loss is replaced by the following:

Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**E.** Under the Loss Payment Condition, the provisions pertaining to notice of our intentions and the time period for payment of claims are deleted and replaced by the following:

**1. Claims Handling**

**a.** Within 15 days after we receive written notice of claim, we will:

**(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(2)** Begin any investigation of the claim; and

**(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**b.** We will notify you in writing as to whether:

**(1)** The claim or part of the claim will be paid;

**(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(3)** More information is necessary; or

**(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **b.(1)** through **b.(4)** above, within:

**(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

 © Insurance Services Office, Inc., 2011 

**2.** We will pay for covered loss or damage within five business days after:

**a.** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Coverage Part, we will make payment within five business days after the date you have complied with such terms.

The following paragraphs are added:

**3. Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **E.1.** and **E.2.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

**a.** Is declared a disaster under the Texas Disaster Act of 1975; or

**b.** Is determined to be a catastrophe by the State Board of Insurance.

**4.** The term "business day", as used in the Loss Payment Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**F.** The following is added to the **Valuation** Loss Condition:

**Chapter 862 – Subsection 862.053. Policy A Liquidated Demand.** A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. This subsection does not apply to personal property.

**G.** Paragraphs **d.** and **f.** of the **Mortgageholders** Additional Condition are replaced by the following:

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**H.** The following is added to Paragraph **D.1.** in the **Duties In The Event Of Accident, Claim Or Suit** Loss Condition in the Legal Liability Coverage Form:

We will notify the first Named Insured in writing of:

**1.** An initial offer to settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

**2.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

 © Insurance Services Office, Inc., 2011 

Renewal of No. AIP0003450404901
Policy No. AIP0003450404902

AIG

Coverage is provided by
GRANITE STATE INSURANCE COMPANY
(a capital stock company)
1271 Ave of the Americas FL 37
New York, NY 10020-1304

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Named Insured & Mailing Address**
CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
2689 HIGHWAY 39
HUNT, TX 78024

**Producer's Name & Mailing Address**
K&K INSURANCE GROUP, INC.
1712 MAGNAVOX WAY
P.O. BOX 2338
FORT WAYNE, IN 46801

**POLICY PERIOD:** From 03/01/2025 to 03/01/2026 at 12:01 A.M. Standard Time at your mailing address shown above.

**FORM OF BUSINESS:** [X] CORPORATION [ ] PARTNERSHIP [ ] LIMITED LIABILITY COMPANY [ ] INDIVIDUAL [ ] OTHER

**Business Description:** CAM/CONFERENCE CENTER

**Location of all Premises you Own, Rent or Occupy: SEE ATTACHED SCHEDULE**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**POLICY PREMIUM: *** $52,217.00

**PREMIUM SHOWN IS PAYABLE:** On file with company.
*This policy is subject to annual audit. N/A

**Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002 as amended by the Terrorism Risk Insurance Program Reauthorization Act 2015:** N/A

**SCHEDULE OF STATE TAXES, FEES AND SURCHARGES, IF APPLICABLE:****
** State Taxes, Fees and Surcharges shown are in addition to the above referenced Policy Premium.


Includes copyrighted material of Insurance Services Office, Inc., with its permission. ISO Properties, Inc., 2000

Renewal of No. AIP0003450404901
Policy No. AIP0003450404902

**ENDORSEMENTS ATTACHED TO THIS POLICY:**

| | | | |
|---|---|---|---|
| 141731(11/21) | CG0001(04/13) | 62898(07/12) | CG4029(09/22) |
| 58332(07/93) | 64004(07/12) | 78689(07/03) | 82540(07/12) |
| CG2106(12/23) | CG4014(12/20) | CG2132(05/09) | CG4032(05/23) |
| CG2001(12/19) | CG2026(12/19) | CG2407(01/96) | CG2034(12/19) |
| CG2155(09/99) | CG2412(11/85) | 142048-TX(12/22) | 128496(11/21) |
| 128497(11/21) | 128499(11/21) | 141718(11/21) | 141725(11/21) |
| 102095(08/14) | 128494(11/21) | CG0136(10/08) | CG2639(12/07) |
| CG0103(06/06) | CG0069(12/23) | CG4035(12/23) | 110325(01/14) |
| 110310(01/14) | 110332(01/14) | | |

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORMS, AND FORMS AND ENDORSEMENTS IF ANY ISSUED TO FORM A PART THEREOF COMPLETE THE ABOVE NUMBERED POLICY

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $300,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |

**CLASSIFICATION AND PREMIUM**

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE Prem/ Comp Ops / Prod/ Ops | ADVANCE PREMIUM Prem/ Prod/Comp Ops / Ops |
|---|---|---|---|---|
| LOC: ADDRESS LOC:<br>TERR: | | | | *SEE FORM 141731 |
| 1. 2689 HIGHWAY 39, HUNT, TX, 78024 | | * | * | * |
| 2. 120 DAKOTA RUN, HUNT, TX, 78024 | | * | * | * |

Total: SEE FORM 141731

A = AREA
C = TOTAL COST
M = ADMISSIONS
O = TOTAL OPERATING EXPENSES
P = PAYROLL
S = GROSS SALES
T = OTHER
U = UNITS (EACH)

Date Issued: 03/01/2025


Includes copyrighted material of Insurance Services Office, Inc., with its permission. ISO Properties, Inc., 2000

# LIABILITY SCHEDULE AND PREMIUM RECAP

**POLICY NUMBER:** AIP0003450404902

| LOC NO | *DESCRIPTION SUBLINE - CLASS CODE | | **PREMIUM BASE ACT. EXPOSURE | RATES | PREMIUMS |
|---|---|---|---|---|---|
| | | | EXPOSURE, RATES AND PREMIUMS ARE INCLUDED UNLESS OTHERWISE STATED BELOW: | | |
| 0001 | 347 | Medical Personnel as additional insured | U | | |
| 0001 | 347 | 41421a Camps - For Profit-Including Day Camps | U | | |
| 0001 | 347 | 40047a Animals - Saddle Private | U | | |
| 0001 | 347 | 63010a - Dwellings One Family (Lessor's Risk Only) | U | | |
| 0001 | 347 | 47254a Rifle/Pistol Ranges | U | | |
| 0001 | 347 | 40040f Amusement Devices - Water Elements | U | | |
| 0001 | 347 | 40045b - Animals-Draft - Hay & Sleigh Rides | R | | |
| 0001 | 347 | 48925a - Swimming Pool | U | | |
| 0001 | 334 | Broadened Coverage | U | | |
| 0001 | 334 | Fireworks - Primary | U | | |
| 0001 | 334 | 44222 Guides or Outfitters | S | | |
| 0001 | 336 | 44222 Guides or Outfitters | S | | |
| 0001 | 347 | Sexual Abuse | U | | |
| 0002 | 347 | Medical Personnel as additional insured | U | | |
| 0002 | 347 | 41421a Camps - For Profit-Including Day Camps | U | | |
| 0002 | 334 | Broadened Coverage | U | | |
| 0002 | 347 | Sexual Abuse | U | | |
| | | | | **TOTAL PREMIUMS** | $44,571.00 |

*SUBLINE KEY

| | | |
|---|---|---|
| 332 | - | Liquor Liability |
| 334 | - | Premises/Operations |
| 335 | - | Owners/Contractors Protective or Principals Protective |
| 336 | - | Products/Completed Operations |
| 350 | - | Pollution Liability |
| 345 | - | Other Composite Rated/Premises/Operations ONLY |
| 346 | - | Other Composite Rated/Product/Completed Operations ONLY |
| 347 | - | Other Composite Rated - BOTH Premises/Operations AND Product/Completed Operations or type in subline |

**PREMIUM/EXPOSURE BASE KEY

| | | |
|---|---|---|
| A | - | Area (per 1,000 square feet) |
| C | - | Total Cost (per $1,000) |
| E | - | Admissions (per head) |
| M | - | Admissions (per 1,000) |
| P | - | Payroll (per $1,000) |
| R | - | Receipts (per $100) |
| S | - | Gross Sales (per $1,000) |
| U | - | Units (per unit) or type in base |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012 

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".


© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 © Insurance Services Office, Inc., 2012 

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".


© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012 

**COVERAGE C – MEDICAL PAYMENTS**

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

 © Insurance Services Office, Inc., 2012 

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.


© Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012 

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.


© Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012 

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.


© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.


© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.


© Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# RADIOACTIVE MATTER EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions,** is amended to add:

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions,** is amended to add:

"Personal and advertising injury" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

Scott [signature]

Authorized Representative


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SEXUAL ABUSE OR SEXUAL MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to damages arising out of:

**1.** The actual, alleged or threatened sexual abuse or sexual molestation of any person committed by anyone; or

**2.** The negligent:

**a.** Employment;

**b.** Investigation;

**c.** Supervision;

**d.** Reporting to the proper authorities, or failure to so report; or

**e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

 © Insurance Services Office, Inc., 2021 

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIP0003450404902
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** GRANITE STATE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY**

# TOTAL LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY**

This insurance does not apply to any "bodily injury", "property damage", "personal injury", or "advertising injury", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

Authorized Representative

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# ERISA EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions,** is amended to add:

"Bodily injury" or "property damage" arising out of any obligation you incur under the Employee Retirement Income Security Act of 1974, Public Law 93-406, any law amendatory thereof or any regulation pertaining thereto.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions** is amended to add:

"Personal and advertising injury" arising out of any obligation you incur under the Employee Retirement Income Security Act of 1974, Public Law 93-406, any law amendatory thereof or any regulation pertaining thereto.

Scott [signature]

Authorized Representative

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIP0003450404902
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** GRANITE STATE INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGUS EXCLUSION

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a. Any "fungus(i)", "mold(s)", mildew or yeast, or

b. Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew or yeast, or

c. Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

d. Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including "mold(s)", rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and "fungi" that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

It is understood that to the extent any coverage may otherwise be provided under this policy or any of its other endorsements, the provisions of this exclusion will supercede.

**ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.**

Scott [signature]

Authorized Representative

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# ASBESTOS AND SILICA EXCLUSION ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - COVERAGES, COVERAGE A. - BODILY INJURY and PROPERTY DAMAGE LIABILITY,**
**2. - Exclusions**, is amended to add the following exclusions:

**Asbestos**

"Bodily injury" or "property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

**Silica**

"Bodily injury" or "property damage" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

**Section I. - COVERAGES, COVERAGE B. - PERSONAL and ADVERTISING INJURY LIABILITY,**
**2. - Exclusions** is amended to add the following exclusions:

**Asbestos**

"Personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

**Silica**

"Personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

All other terms, conditions and exclusions of the policy shall remain unchanged.

Scott [signature]

Authorized Representative


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Material Or Information**

"Bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal material or information, including:

**a.** Patents, trade secrets, processing methods, customer lists;

**b.** Financial information, credit card information;

**c.** Health information, biometric information; or

**d.** Any other type of nonpublic material or information.

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal material or information.

**B.** The following is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Material Or Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal material or information, including:

**a.** Patents, trade secrets, processing methods, customer lists;

**b.** Financial information, credit card information;

**c.** Health information, biometric information; or

**d.** Any other type of nonpublic material or information.

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal material or information.

 © Insurance Services Office, Inc., 2022 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANNABIS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**a.** The design, cultivation, manufacture, storage, processing, packaging, handling, testing, distribution, sale, serving, furnishing, possession or disposal of "cannabis"; or

**b.** The actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, contact with, exposure to, existence of, or presence of "cannabis"; or

**2.** "Property damage" to "cannabis".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **A.1.** or **A.2.** above.

However, Paragraph **A.1.b.** does not apply to "bodily injury" or "property damage" arising out of the actual, alleged, threatened or suspected inhalation, ingestion, absorption or consumption of, or contact with, "cannabis" by:

**(1)** An insured; or

**(2)** Any other person for whom you are legally responsible;

but only if the "bodily injury" or "property damage" does not arise out of your selling, serving or furnishing of "cannabis" to any person described above.

**B.** The exclusion in Paragraph **A.** does not apply to "personal and advertising injury" arising out of the following offenses:

**1.** False arrest, detention or imprisonment; or

**2.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

**C.** The following definition is added to the **Definitions** section:

"Cannabis":

**1.** Means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

**2.** Paragraph **C.1.** above includes, but is not limited to, any of the following containing such THC or cannabinoid:

**a.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

**b.** Any compound, by-product, extract, derivative, mixture or combination, such as:

**(1)** Resin, oil or wax;

**(2)** Hash or hemp; or

**(3)** Infused liquid or edible cannabis;

whether or not derived from any plant or part of any plant set forth in Paragraph **C.2.a.**

 © Insurance Services Office, Inc., 2020 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

 © Insurance Services Office, Inc., 2008 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**b.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Perfluoroalkyl And Polyfluoroalkyl Substances**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened or suspected inhalation, ingestion, absorption, consumption, discharge, dispersal, seepage, migration, release or escape of, contact with, exposure to, existence of, or presence of, any "perfluoroalkyl or polyfluoroalkyl substances".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "perfluoroalkyl or polyfluoroalkyl substances", by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

**"Perfluoroalkyl or polyfluoroalkyl substances" means any:**

**1.** Chemical or substance that contains one or more alkyl carbons on which hydrogen atoms have been partially or completely replaced by fluorine atoms, including but not limited to:

**a.** Polymer, oligomer, monomer or nonpolymer chemicals and their homologues, isomers, telomers, salts, derivatives, precursor chemicals, degradation products or by-products;

**b.** Perfluoroalkyl acids (PFAA), such as perfluorooctanoic acid (PFOA) and its salts, or perfluorooctane sulfonic acid (PFOS) and its salts;

**c.** Perfluoropolyethers (PFPE);

**d.** Fluorotelomer-based substances; or

**e.** Side-chain fluorinated polymers; or

**2.** Good or product, including containers, materials, parts or equipment furnished in connection with such goods or products, that consists of or contains any chemical or substance described in Paragraph **C.1.**

 © Insurance Services Office, Inc., 2022 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

 © Insurance Services Office, Inc., 2018 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** |
|---|
| ANY PERSON OR ORGANIZATION TO WHOM YOU ARE OBLIGATED BY VALID WRITTEN CONTRACT TO PROVIDE SUCH COVERAGE. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

 © Insurance Services Office, Inc., 2018 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Premises and Operations:**

FOOD AND BEVERAGE DISTRIBUTION

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

**1.** On, from or in connection with the use of any premises described in the Schedule, or

**2.** In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

 Copyright, Insurance Services Office, Inc., 1994 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Section II – **Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) from whom you lease equipment when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement you have entered into with the additional insured; or

**2.** Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

 © ISO Properties, Inc., 2018 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 1998 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Watercraft:**

ALL OWNED OR LEASED BOATS UNDER 51'

**Additional Premium:** INCLUDED

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**1.** Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

**2.** WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

 © Insurance Services Office, Inc., 1984, 1992 

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# SEXUAL MISCONDUCT LIABILITY COVERAGE ENDORSEMENT
## (OCCURRENCE – DEFENSE IN ADDITION TO THE LIMITS OF INSURANCE)
## TEXAS

This endorsement modifies insurance provided by the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

| | **Limits Of Insurance** | | **Deductible** | |
|---|---|---|---|---|
| | | | | |
| **Sexual Misconduct Liability Coverage** | $1,000,000 | Each "Insured Event" Limit | N/A | Each "Insured Event" |
| | $2,000,000 | Aggregate Sexual Misconduct Limit | | |
| These Sexual Misconduct Liability Limits of Insurance are subject to the General Aggregate Limit of Insurance of the Policy. | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**I.** The following exclusion is added to the policy and is applicable to "bodily injury" and "property damage" under **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and "personal and advertising injury" under **COVERAGE B - PERSONAL AND ADVERTISING INJURY**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury", caused by, arising out of, or resulting from:

**1.** Any actual, threatened or alleged "sexual misconduct" and resulting "bodily injury" including, but not limited to mental or emotional injury of any person, committed by or alleged against any person, including, but not limited to any:

**a.** Insured;

**b.** "Employee" of such insured;

**c.** "Leased worker" of such insured;

**d.** "Temporary worker" of such insured;

**e.** "Volunteer worker" of such insured;

**f.** Independent contractor under contract with you regardless of any duty to defend and/or indemnify such independent contractor contained in such contract and notwithstanding whether you would be liable in the absence of such contract;

**g.** Patron of such insured; or

**h.** Other person; or

**2.** Any act or failure to act to stop or prevent actual or threatened "sexual misconduct" and resulting "bodily injury" including, but not limited to mental or emotional injury of any person, by any person in Paragraph **1.** above

and regardless of the theory of liability or cause of action alleged in the “claim” against the insured, including, but not limited to, vicarious liability, negligent employment, negligent investigation, negligent instruction, negligent supervision, negligent reporting to the proper authorities, or failure to so report, negligent retention, negligent hiring, negligent credentialing, negligent placement, and/or negligent training.

**II. SECTION I – COVERAGES** is amended to include the following Coverage:

**SEXUAL MISCONDUCT LIABILITY COVERAGE**

With respect to this endorsement, the exclusion in Section I. of this endorsement above does not apply to the Sexual Misconduct Liability Coverage:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of an “insured event” to which this insurance applies. We will have the right and duty to defend the insured against any “claim” seeking those damages even if the allegations of the “suit” are groundless, false or fraudulent. However, we will have no duty to defend the insured against any “claim” seeking damages for an “insured event” to which this insurance does not apply. We may, at our discretion, investigate any alleged "insured event" and settle any “claim” that may result. But:

**(1)** The amount we will pay for damages under this Sexual Misconduct Liability Coverage is limited as described in Section III – Limits of Insurance of the Policy; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of:

**(a)** judgments and/or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**; or

**(b)** judgments and/or settlements under this Sexual Misconduct Liability Coverage.

**b.** “Defense expenses” are in addition to and shall not reduce the applicable limit of insurance for Sexual Misconduct Liability Coverage.

**c.** For this Sexual Misconduct Liability Coverage to apply, all of the following conditions must be met:

**(1)** The “insured event” forming the basis of the “claim” must first occur during the policy period;

**(2)** Prior to the effective date of this policy, none of your “executive officers”, directors, principals, partners, claim managers, insurance managers, risk managers, human resource directors, in-house counsel, or any “employee” authorized by you to give or receive notice of a “claim” had knowledge of any actual or alleged “insured event”, or of any circumstance(s) that could reasonably give rise to a “claim” under this endorsement. If such “executive officers”, directors, principals, partners, claim managers, insurance managers, risk managers, human resource directors, in-house counsel, or any “employee” authorized by you to give or receive notice of a “claim” had such knowledge prior to the effective date of this policy of any “insured event” or of any circumstance(s) that could reasonably give rise to a “claim” under this endorsement, then any continuation, change or resumption of such “insured event” or circumstance during or after the policy period will be deemed to have been known prior to this policy period; and

**(3)** The “insured event” must occur within the “coverage territory”.

**d.** An “insured event” will be deemed to have been known to have occurred at the earliest time when any “executive officer”, director, principal, partner, claim manager, insurance manager, risk manager, human resource director, in-house counsel, or any “employee” authorized by you to give or receive notice of a “claim”:

**(1)** Reports all, or any part, of the “insured event” to us or any other insurer;

**(2)** Receives a written or verbal demand or “claim” for damages because of the “insured event”; or

**(3)** Becomes aware by any other means that an “insured event” has occurred or has begun to occur.

**e.** All “claims” arising out of an “insured event” shall be deemed to be a single “claim” and shall be deemed to have been made at the time that the first of such “claims” is made against the insured.

**2. Exclusions**

This insurance does not apply to:

**a. Workers’ Compensation and Similar Laws**

Any obligation under a workers' compensation, disability benefits, unemployment compensation law, or any similar law.

**b. Contractual Liability**

An "insured event" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**c. Employer's Liability**

Any “claim” made by or on behalf of:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**d. Intentional Acts**

**(1)** Any individual who allegedly committed the “insured event”;

**(2)** Any “insured event”, if you or any other insured knew that such “insured event” was allegedly committed by the individual, but failed to prevent or stop it; or

**(3)** Any intentional failure by you or any other insured to report an “insured event” to the proper authorities.

However, we will provide a civil defense to an insured until it is determined by final adjudication that such insured committed the “insured event”, failed to prevent or stop the “insured event” or failed to report an “insured event” to the proper authorities. If it is determined by final adjudication that such insured committed the “insured event”, failed to prevent or stop the “insured event” or failed to report an “insured event” to the proper authorities, we will not pay any damages with respect to such insured, nor will we defend or pay any “defense expenses” after such final adjudication

**e. Prior Sexual Misconduct of Individual Insured**

Any “claim” arising out of an actual or alleged “insured event” perpetrated by any individual insured if, prior to the date of the “insured event” out of which such “claim” arises, any:

**(1)** Of your “executive officers”, directors, principals, partners, claim managers, insurance managers, risk managers, human resource directors, or in-house counsel;

**(2)** “Employees” authorized by you to give or receive notice of a “claim”; or

**(3)** “Employees” who supervise such individual insured

were aware of any prior history of “sexual misconduct”, or any “claims” or allegations of “sexual misconduct” made or any circumstances that could reasonably give rise to a “claim” of “sexual misconduct”, or an “insured event” against that same individual insured.

**f. Prior Circumstances**

Any “claim” arising out of any circumstances that have been notified to any insurer prior to the effective date of this Policy.

**g. Punitive, Exemplary, Multiplied Damages, Fines or Penalties**

Punitive damages, exemplary damages, or the multiple portion of multiplied damages or any fines or penalties.

**h. Employment Related Practices**


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Any refusal to employ, termination of employment, discrimination, retaliation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, wrongful reference or other similar actions, practices or policies related to employment.

**i. Patient Against Patient**

"Sexual misconduct" against a patient perpetrated by another patient.

**III.** With respect to **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, Subparagraph **1.a.(2)** of each Coverage is deleted in its entirety and replaced with the following:

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of:

**(a)** judgments and/or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**; or

**(b)** judgments and/or settlements under the Sexual Misconduct Liability Coverage.

**IV.** For the purposes of this Sexual Misconduct Liability Coverage Endorsement only (hereinafter, the "Endorsement"), **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** is deleted in its entirety and replaced with the following:

**DEFENSE EXPENSES**

We will pay "defense expenses" with respect to any "claim" we investigate or settle or any "suit" against an insured that we defend. "Defense expenses" are in addition to and shall not reduce the applicable limit of insurance for Sexual Misconduct Liability Coverage.

**V.** For the purposes of this Endorsement only, Paragraphs **2.** and **3.** of **SECTION II - WHO IS AN INSURED** are deleted in their entirety and replaced with the following:

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "sexual misconduct":

**(1)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(2)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Subparagraph **(1)** above; or

**(3)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Subparagraph **(1)** or **(2)** above.

**b.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage under this provision does not apply to "sexual misconduct" that occurred before you acquired or formed the organization.

**VI.** Paragraphs **1.** and **2.** of **SECTION III – LIMITS OF INSURANCE** are deleted in their entirety and replaced with the following:

**1.** The Limits of Insurance shown in the Declarations, the Schedule of the Sexual Misconduct Liability Coverage Endorsement (hereinafter, the "Schedule") and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** “Insured events”;

**c.** “Claims” made or "suits" brought; or

**d.** Persons or organizations making “claims” or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical Expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard";

**c.** Damages under Coverage **B**; and

**d.** Damages under the Sexual Misconduct Liability Coverage.

**VII.** Paragraphs **8.** and **9.** are added to **SECTION III – LIMITS OF INSURANCE** as follows:

**8.** Subject to **2.** above, the Aggregate Sexual Misconduct Limit shown in the Schedule is the most we will pay for the sum of all damages for all “claims” arising out of all “insured events” under this Sexual Misconduct Liability Coverage.

**9.** Subject to **2.** or **8.** above, whichever amount remaining is less, the Each “Insured Event” Limit shown in the Schedule is the most we will pay for all damages for all “claims” arising out of any one “insured event”.

**10.** Any amendment of the General Aggregate to apply per location, per project, per event, per insured or any other basis does not apply to the coverage provided under this endorsement.

**VIII.** With respect to this Endorsement only, Paragraph **2. Duties In The Event of Occurrence, Offense, Claim or Suit** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and replaced with the following:

**2. Duties in the Event of an Insured Event or Claim**

**a.** Notice of incident. You shall give us written notice as soon as practicable after an insured becomes aware of an “insured event” or any circumstance(s) that could reasonably give rise to a “claim” covered by this Endorsement. Such notice shall include as much detail as possible and shall include, to the extent possible:

**(1)** The identity of the persons alleging “sexual misconduct”;

**(2)** The identities of the insureds who allegedly committed the “sexual misconduct”;

**(3)** The date the alleged “insured event” took place; and

**(4)** Any other information or documentation pertinent to the alleged “insured event”.

**b.** If a “claim” is made or “suit” is brought against any insured you must:

**(1)** Immediately record the specifics of the “claim” and the date it is received;

**(2)** Notify us in writing as soon as practicable;

**(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the “claim”;

**(4)** Authorize us to obtain records and other information;

**(5)** Submit to examination under oath at such times as we reasonably may require concerning any matter relating to this insurance or any “claim”;

**(6)** Cooperate with us in the investigation, settlement or defense of the “claim”; and

**(7)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to any insured because of injury or damage to which this insurance may also apply.

**c.** No insured will, except at that insured’s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**IX.** Paragraph **18.** of **SECTION V – DEFINITIONS** is deleted in its entirety and replaced with the following:


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**18.** "Suit" means a civil proceeding in which damages because of "sexual misconduct" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**X.** In addition to the definitions in **SECTION V – DEFINITIONS** of the Policy which apply to this endorsement, the following additional definitions apply to this endorsement only and supersede any similar definitions of the policy to the contrary:

**1.** "Claim" means a written demand or written notice for damages received by an insured. "Claim" includes a "suit".

**2.** "Defense expenses" mean

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim", including actual loss of earnings up to $250 a day because of time off from work.

**d.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**e.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**3.** "Insured event" means an act or a series of related acts of "sexual misconduct" of any person, committed by anyone, that occurs on the premises or as part of the operations to which this insurance applies regardless of the:

**a.** Number of acts of "sexual misconduct";

**b.** Number of "victims";

**c.** Number of "claims" made against an insured alleging "sexual misconduct";

**d.** Length of time over which such acts of "sexual misconduct" occur; or

**e.** Number of policy periods over which such "insured events" occur.

All acts of "sexual misconduct" shall be deemed to be one "insured event" and the "insured event" shall be deemed to have occurred in its entirety when the first act of "sexual misconduct" is committed.

**4.** "Sexual misconduct" means any sexual act (even if consensual) including, but not limited to sexual abuse, sexual molestation, sexual harassment, sexual misconduct, sexual assault, sexual victimization, sexual intimacy, sexual contact, sexual advances, sexual exploitation, requests for sexual favors, verbal, visual or physical conduct of a sexual nature, coercion to engage in sexual activities and licentious or immoral misconduct.

For purposes of this endorsement, abuse means an act which is committed with the intent to cause harm.

**5.** "Victim" means a person who is the object of "sexual misconduct".

**XI.** The Policy is amended to include the following Section:

**DEDUCTIBLE APPLICABLE TO THE SEXUAL MISCONDUCT LIABILITY COVERAGE ONLY**

The Deductible shown in the Schedule of this endorsement applies on an each and every "insured event" basis and shall be paid by you. The Deductible shall be applied to the payment of judgments and/or settlements.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

We may advance payment of part or all of the Deductible amount and upon notification of such payment made, you must promptly reimburse us for the Deductible amounts advanced by us.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# CAMPER MEDICAL PAYMENTS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to the operation of any camp by you or the operation of any camp on your behalf, the following is added to **SECTION I – COVERAGES, COVERAGE C – MEDICAL PAYMENTS**, paragraph **2. Exclusions**:

We will not pay expenses for "bodily injury":

**Camper**

To any camper.

All other terms and conditions of the policy remain the same.

Authorized Representative

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# COMMERCIAL GENERAL LIABILITY BROADENED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions**, paragraph **a.** is replaced by:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**B. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions,** paragraph **g. (2)** is replaced by:

**(2)** A watercraft you do not own that is:

**(a)** Less than fifty-one (51) feet long; and

**(b)** Not being used to carry persons or property for a charge;

**C. SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY,** subsection **2. Exclusions,** paragraphs **b.** and **c.** are replaced by:

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, if done at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, whose first publication took place before the beginning of the policy period.

**D. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B,** paragraphs **1.b.** and **1.d.** are replaced by:

**b.** Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

**E. SECTION II - WHO IS AN INSURED,** paragraph **3.a.** is replaced by**:**

**a.** Coverage under this provision is afforded only until the one hundred eightieth (180th) day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**F.** The following are added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **2. Duties In The Event of Occurrence, Offense, Claim Or Suit:**

**e.** Knowledge of the "occurrence," offense, claim or "suit" by the agent, servant, or "employee" of an insured shall not in itself constitute your knowledge unless one of your officers, manager or partners has received notice of the "occurrence," offense, claim or "suit."

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

**f.** Failure by the agent, servant or "employee" of an insured (other than an officer, manager or partner) to notify us of an "occurrence" shall not constitute a failure to comply with paragraphs **a.** and **b.** of this condition.

**G.** The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Unintentional Error or Omission**

Any unintentional error or omission in the description of or failure to completely describe, any premises or operations intended to be covered by this Coverage Part will not invalidate or affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery.

**H.** The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **8. Transfer of Rights of Recovery Against Others to Us:**

**Waiver of Transfer of Rights of Recovery Against Others to Us (Waiver of Subrogation) - Automatic**

We waive any right of recovery against any person or organization, because of any payment we make under this Coverage Part, to whom the insured has waived it right of recovery in a written contract or agreement. Such waiver by us applies only to the extent that the insured has waived its right of recovery against such person or organization prior to loss.

**I.** With respect to this endorsement, **SECTION V - DEFINITIONS,** paragraphs **3.** and **14.** are replaced by**:**

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution or abuse of process;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Any publication of material including, but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Any publication of material, including but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**J. Broadened Coverage—Damage to Premises Rented to You**

**1.** The word **fire** is replaced with the phrase **fire or explosion** where it appears in:

**a. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions,** paragraph **j. Damage to Property;**

**b. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** subsection **2. Exclusions,** last paragraph;

**c. SECTION III - LIMITS OF INSURANCE,** subsection **6.;** and

**d. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** subsection **4. Other Insurance,** paragraph **b.(1)(a)(ii)**.


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** The Limit of Insurance applicable to Damage to Premises Rented to You is $300,000 unless a higher limit is specified on the Commercial General Liability Coverage Part Supplemental Declarations.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# EARNED PREMIUM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is effective only when indicated by an "x".

| | | |
|---|---|---|
| ☐ | Premium Fully Earned at Inception | |
| ☐ | Premium Fully Earned at Inception | % (Percentage of Policy Term Premium) |
| ☐ | Balance Earned (Indicate when 100% of premium is earned) | |
| ☐ | Total Premium | |
| ☒ | 90% of the annual premium is earned during the term of the event or season | |
| ☐ | Premium Fully Earned as follows: | |
| ☐ | 90% of Total Premium is Fully Earned in the event of cancellation prior to: | |
| ☐ | Total Policy Premium is Fully Earned in the event of cancellation after: | |
| ☐ | Event Premiums: | |

If Event Premiums is selected above, the following premiums apply to each category of event indicated and are Fully Earned as of the beginning of each event:

| EVENT | PREMIUM PER EVENT |
|---|---|
| | |
| | |
| | |
| | |
| | |

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# DAMAGE TO PREMISES RENTED TO YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SCHEDULE**

Described Premises: As On File with Company

Number of Days that the Damage to Premises Rented coverage applies: 365

**SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions,** subparagraph **j. Damage to Property** is replaced by:

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to the premises described in the Schedule above, including the contents of such premises, rented to you for the period of days shown in the Schedule above. A separate limit of insurance applies to Damage To Premises Rented To You as described in **SECTION III - LIMITS OF INSURANCE.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# MEDICAL EMPLOYEES AND VOLUNTEERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**I.** Paragraph **2.a.** of **SECTION II - WHO IS AN INSURED** is amended to include as an insured any of your "employee(s)" or "volunteer workers(s)" who are licensed medical professionals, but only while acting at your direction and within the scope of their duties providing health care services or first aid related services to "employee(s)," "volunteer worker(s)" or others on your behalf related to the conduct of your business.

**II.** Subparagraph **2.a.(1)(d)** of **SECTION II - WHO IS AN INSURED** is deleted.

**III.** With respect to coverage provided by this endorsement, the following additional exclusions are added to paragraph **2. Exclusions** of the **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

**1.** Liability arising out of any insured's activities while acting in the capacity as a proprietor, superintendent, executive officer, director, medical director, partner, trustee or employee of any hospital, sanitarium, clinic with bed-and-board facilities, or laboratory; or any business enterprise or governmental body, subdivision or agency not named as a Named Insured under this policy;

**2.** Any claim based upon or arising out of or resulting from either undue familiarity, sexual abuse or licentious, immoral or sexual behavior intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, either known or unknown by any insured or any of your customers or patrons;

**3.** Any claim based upon or arising out of any acts or services performed by any insured who is not registered, licensed or certified to perform such acts or services, if such licensing, registration or certification is required by law or by any federal, state, or local governmental, regulatory, or administrative agency; or

**4.** The performance of either general anesthesia or any procedure carried out under general anesthesia.

**IV.** With respect to this endorsement, the following additional Condition is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:**

If other valid and collectible insurance with any other insurer including any formal self-insured retention program is available covering a loss also covered by this endorsement, the insurance afforded by this endorsement shall be in excess of and shall not contribute with such other insurance. Nothing herein shall be construed to make this policy subject to the terms, conditions and limitations of other insurance.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative


Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# TEXAS
# CRISIS RESPONSE COVERAGE EXTENSION ENDORSEMENT

**THIS COVERAGE EXTENSION ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR "CRISIS RESPONSE COSTS" AND "CRISIS MANAGEMENT LOSS" IN THE EVENT OF A "CRISIS EVENT" AS DEFINED HEREIN. THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY.**

**Schedule**

**CRISIS RESPONSE NOTIFICATION TELEPHONE NUMBER: 877-244-3100**

| **Crisis Response Coverage Extension** | **Limits of Insurance** | |
|---|---|---|
| Crisis Response Aggregate Limit | **$ 250,000** | |
| Each Crisis Response Costs Limit | **$ 250,000** | Each "Crisis Event" |
| Each Crisis Management Loss Limit | **$ 50,000** | Each "Crisis Event" |

Notwithstanding any provisions to the contrary in the policy to which this Coverage Extension is attached, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this Coverage Extension, the policy is extended to provide "crisis response costs" and "crisis management loss" resulting from a "crisis event".

**SECTION I. – CRISIS RESPONSE COVERAGE EXTENSION**

**A.** We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" and/or "crisis management loss" arising out of:

**1.** "Bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct"; or

**2.** An imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct";

But only with respect to a "crisis event" to which this Coverage Extension applies.

The amount we will reimburse you or pay on your behalf for such "crisis response costs" and/or "crisis management loss" is limited as described in SECTION III – CRISIS RESPONSE LIMITS OF INSURANCE. No self-insured retention or deductible shall apply to this Coverage Extension.

**B.** We will reimburse you or pay on your behalf "crisis response costs" and/or "crisis management loss" arising out of a "crisis event" only if:

**1.** The "bodily injury", "property damage", personal and advertising injury" or "sexual misconduct" or an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" takes place in the "coverage territory";

**2.** The "crisis event" commences to occur during the policy period, and

**3.** Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event". The end of the policy period will not cut short this thirty (30) day period.

All related or interrelated "crisis events" shall be treated as one "crisis event" and shall be deemed to have occurred in their entirety when the first of such "crisis events" occurs.

 © All rights reserved. 

**SECTION II. – EXCLUSIONS**

If this Coverage Extension is attached to a Commercial General Liability Coverage Form, the exclusions of the policy also apply to this Coverage Extension, except for the following Exclusions, which do not apply to this Coverage Extension: Expected or Intended Injury; Liquor Liability; Workers' Compensation And Similar Laws; Employer's Liability; Pollution; Aircraft, Auto or Watercraft; Mobile Equipment; Damage To Property; Damage to Your Product; Damage to Your Work; Damage To Impaired Property Or Property Not Physically Injured; and Recall Of Products, Work Or Impaired Property.

If this Coverage Extension is attached to a Professional Liability or Professional Errors and Omissions Policy, the exclusions of the policy also apply to this Coverage Extension, except for the following Exclusions, which do not apply to this Coverage Extensions: Bodily Injury; Property Damage; Personal and Advertising Injury; Dishonest, Fraudulent or Criminal Acts; Workers' Compensation And Similar Laws; Employer's Liability; Pollution; Aircraft, Auto or Watercraft; Prior Knowledge; Misappropriation of Funds; or Unfair Trade Practices.

**SECTION III. – CRISIS RESPONSE LIMITS OF INSURANCE**

**A.** The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of Insureds, "crisis events", or "affected persons".

**B.** The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this Coverage Extension.

**C.** Subject to Paragraph B. above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

**D.** Subject to Paragraph B. above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" or all related or interrelated "crisis events" will be deemed to be one "crisis event".

**SECTION IV. – DEFINITIONS**

The definitions of the policy apply to this Coverage Extension. However, the following additional definitions applicable to this Coverage Extension supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning as follows:

**A.** "Affected persons" means those individuals, including your employees, who suffer direct "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" or directly experience an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct".

**B.** "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

**C.** "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada. "Coverage territory" shall also include "crisis events" occurring anywhere in the world if such "crisis event" occurs during an event officially sponsored, organized and controlled by you or during travel thereto or returning therefrom.

**D.** "Crisis event" means:

  **1.** A man-made emergency situation that involves "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" or an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct", sustained by an "affected person(s)", including, but not limited to :

    **a.** arson;

    **b.** an explosion or bombing;

    **c.** the taking of hostages;

    **d.** a mass shooting;

    **e.** terrorism (if covered under the policy only);

    **f.** intentional contamination of food, drink, or pharmaceuticals;

 © All rights reserved. 

**g.** a building, structure or equipment collapse;

**h.** an automobile, watercraft or aircraft accident; or

**i.** any event that results in dismemberment, permanent paralysis or traumatic brain injury to an individual.

**2.** Adverse media coverage of any kind which first occurs during the policy period and results from an emergency situation described in Subparagraph **1.** above, regardless of when such emergency situation occurs.

**E.** "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing that is hired by you to perform services of the type covered under "crisis management loss" in connection with a "crisis event".

**F.** "Crisis management loss" means reasonable and necessary fees and expenses charged by a "crisis management firm" or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees.

"Crisis management loss" shall not include "crisis response costs" or "defense costs".

**G.** "Crisis response costs" means:

**1.** Reasonable and necessary "emergency transport expenses", "emergency psychology expenses", travel expenses, and temporary living expenses incurred by you to provide relief and/or support to "affected persons" and the immediate family members of such "affected persons",

**2.** Expenses incurred by you to secure the scene of a "crisis event"; and

**3.** Any other expenses pre-approved by the Company.

"Crisis response costs" shall not include "defense costs" or "crisis management loss".

**H.** "Defense costs" means legal fees and expenses incurred by you for legal advice or services sought in anticipation of, or upon actual receipt of, a claim alleging liability and seeking damages for "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct" or an imminent threat of "bodily injury", "property damage", "personal and advertising injury" or "sexual misconduct"..

**I.** "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event", to transport an "affected person" sustaining "bodily injury" or "sexual misconduct" in a "crisis event" to a medical treatment facility.

**J.** "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons" and incurred within the first fourteen (14) days of a "crisis event". This does not include the costs or expenses of any medications or hospitalizations. Such psychology or counseling services must be approved by the "crisis management firm".

**K.** "Property damage" means:

**1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**2.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "crisis event" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media including cloud stored data which are used with electronically controlled equipment.

**L.** "Sexual misconduct" means any sexual act (even if consensual) including, but not limited to, sexual abuse, sexual molestation, sexual harassment, sexual misconduct, sexual assault, sexual victimization, sexual intimacy, sexual contact, sexual advances, sexual exploitation, requests for sexual favors, verbal or physical conduct of a sexual nature, coercion to engage in sexual activities and licentious or immoral misconduct.

**SECTION V. – CONDITIONS**

 © All rights reserved. 

The general and/or common conditions of the policy apply to this Coverage Extension. However, the following conditions applicable to this Coverage Extension supersede any similar conditions in the policy to the contrary.

**A. Insured's Duties in the Event of a "Crisis Event"**

1. You must see to it that we are notified by telephone within twenty-four (24) hours of a "crisis event" which may result in "crisis response costs" or "crisis management loss". The call must be made to the phone number indicated in the Schedule of this Coverage Extension. . If necessary, we will provide you with an approved "crisis management firm" unless we agree to accept a "crisis management firm" that you have selected.

2. Thereafter you must provide written notice, as soon as practicable. To the extent possible, this written notice should include:

   a. How, when and where the "crisis event" took place;

   b. The names and addresses of any "affected parties" and witnesses; and

   c. The nature and location of any injury or damage arising out of the "crisis event".

3. If reimbursement is sought directly by you, you must submit a claim for reimbursement of "crisis response costs" and "crisis management loss" within ninety (90) days after incurring such "crisis response costs" or "crisis management loss". Such claim(s) must include invoices and/or receipts supporting such "crisis response costs" or "crisis management loss" for each and every expense in excess of fifty (50) dollars.

4. Written notice and claim submission as required in Paragraphs **1.** and **2.** of this section, respectively, shall be mailed or delivered to:

   Attn: Crisis Response Dept
   175 Water Street, 20th Floor
   New York, NY 10038

**B.** Method of Sharing

If "crisis response costs" and/or "crisis management loss" provided by this Coverage Extension are also provided by any other insurance issued to you by us or any of our affiliated companies (whether or not such costs or loss are referred to using these same terms), we will share the limits of insurance in the following manner:

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this Coverage Extension.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative

 © All rights reserved. 

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# CAMP DIRECTOR LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

In consideration of the additional premium charged, it is agreed that the policy is amended as follows:

**1.** For the purpose of this endorsement, the un-qualified word "insured" shall mean only the individual camp director(s) or assistant director(s) designated on this endorsement, their respective spouses, and those "employees" acting under the personal direction, control or supervision of the designated director or assistant director.

**2.** The following is added to Subparagraph **a.** of Paragraph **1. Insuring Agreement** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES):**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render services pertaining to camp operations shall be deemed to be caused by an "occurrence," for which this policy provides coverage on behalf of the insured.

**3.** The extensions of coverage provided by the preceding paragraphs are subject to the following exclusions, as well as all exclusions appearing in **Paragraph 2. of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES)** and Paragraph **2.** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (SECTION I - COVERAGES):**

This coverage does not apply to:

**a.** liability of others assumed by the insured under any contract or agreement, either oral or in writing;

**b.** injury caused by a person under the influence of intoxicants or narcotics;

**c.** liability arising out of the ownership, maintenance, use, entrustment to others, including "loading or unloading" of any vehicle, mobile equipment, watercraft or aircraft;

**d.** any loss or claim arising directly or indirectly from an insured's activities as an officer, director, "employee", or "volunteer worker" of any organization or activity other than that of the Named Insured;

**e.** any loss, claim, or obligation based on or arising out of any Securities Act or the Employees Retirement Income and Security Act of 1974, or amendments or additions thereto;

**f.** liability arising out of Admiralty Law;

**g.** liability arising out of the performance of any dishonest, fraudulent, or criminal act or omission;

**h.** claims for or arising out of the infringement of any copyright, trademark, or patent;

**i.** liability based on or attributable to any failure or omission on the part of insured to effect or maintain insurance; or

**j.** the conduct of any business enterprise which is controlled, operated, or managed by the insured in a fiduciary capacity, other than in connection with the normal and usual operations of a camp.

Camp Director(s) and Assistant Camp Director(s):

ANY DIRECTORS AND/OR ASSISTANTS AS RESPECTS THEIR DUTIES ON BEHALF OF THE NAMED INSURED AS INDICATED ON THE POLICY.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TEXAS CHANGES – YOUR RIGHT TO CLAIM AND OCCURRENCE INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE VERSION)

Paragraph **10. Your Right To Claim And "Occurrence" Information** of **Section IV – Conditions** is replaced by the following:

**10. Your Right To Claim And "Occurrence" Information**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

**a.** A list or other record of each "occurrence", not previously reported to any other insurer, of which we were notified in accordance with Paragraph **2.a.** of the Section **IV** – Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition. We will include the date and brief description of the "occurrence" if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable General Aggregate Limit and Products-Completed Operations Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information within 30 days of receipt of the request.

We compile claim and "occurrence" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.


© Insurance Services Office Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

 © ISO Properties, Inc., 2006 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

 © ISO Properties, Inc., 2005 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF LAW ADDRESSING DATA PRIVACY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

**Violation Of Law Addressing Data Privacy**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** Any federal, state or local statute, ordinance, regulation or other law that addresses, prohibits, or limits access to, use of or the printing, dissemination, disposal, obtaining, collecting, storing, safeguarding, recording, retention, sending, transmitting, communicating, selling or distribution of any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information.

Any such federal, state or local statute, ordinance, regulation or other law includes but is not limited to:

**(1)** The Illinois Biometric Information Privacy Act (BIPA), including any amendment of or addition to such law; or

**(2)** The California Consumer Privacy Act (CCPA), including any amendment of or addition to such law; or

**b.** Any law of a jurisdiction other than the United States of America (including its territories and possessions) or Puerto Rico that is similar to any statute, ordinance, regulation or other law described in Paragraph a. above, including but not limited to the European Union's General Data Protection Regulation.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Violation Of Law Addressing Data Privacy**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** Any federal, state or local statute, ordinance, regulation or other law that addresses, prohibits, or limits access to, use of or the printing, dissemination, disposal, obtaining, collecting, storing, safeguarding, recording, retention, sending, transmitting, communicating, selling or distribution of any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information.

Any such federal, state or local statute, ordinance, regulation or other law includes but is not limited to:

**(1)** The Illinois Biometric Information Privacy Act (BIPA), including any amendment of or addition to such law; or

**(2)** The California Consumer Privacy Act (CCPA), including any amendment of or addition to such law; or

**b.** Any law of a jurisdiction other than the United States of America (including its territories and possessions) or Puerto Rico that is similar to any statute, ordinance, regulation or other law described in Paragraph **a.** above, including but not limited to the European Union's General Data Protection Regulation.

 © Insurance Services Office, Inc., 2022 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INCIDENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Cyber Incident**

"Bodily injury" or "property damage" arising out of a "cyber incident".

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other similar cost or expense incurred by you or others arising out of a "cyber incident".

**B.** The following is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Cyber Incident**

"Personal and advertising injury" arising out of a "cyber incident".

This exclusion applies even if damages are claimed for notification costs, credit or identity monitoring expenses, forensic expenses, public relations expenses, data restoration expenses, extortion expenses or any other similar cost or expense incurred by you or others arising out of a "cyber incident".

**C.** For the purposes of this endorsement, the following definition is added to the **Definitions** Section:

"Cyber incident" means any:

**1.** Unauthorized access to or use of any computer system.

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

 © Insurance Services Office, Inc., 2022 

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

**THIS IS A CLAIMS-MADE COVERAGE FORM.**

# EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the Policy.

**SCHEDULE**

**NOTICE**

- **THIS IS CLAIMS-MADE AND REPORTED COVERAGE. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS EPL COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS OR SUITS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE EPL COVERAGE PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. VARIOUS PROVISIONS IN THIS EPL COVERAGE RESTRICT COVERAGE. PLEASE READ THE ENTIRE EPL COVERAGE FORM CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.**
- **THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS UNDER THIS EPL COVERAGE SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. AMOUNTS INCURRED FOR DEFENSE COSTS SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.**

| | | |
|---|---|---|
| **EPL Coverage Period:** | From: 03/01/25<br>To: 03/01/26 | At 12:01 A.M. Standard Time at your mailing address shown on the Declarations page of this policy |
| **EPL Aggregate Limit of Liability:** | $500,000 | Annual aggregate for all “loss” combined, including “defense costs”. |
| **EPL Deductible Amount:** | $10,000 | For “loss” arising from claims or suits alleging the same “wrongful employment act” or “related wrongful employment acts”. |
| **EPL Retroactive Date:** | 05-27-2009 | If no date is shown, “we” will consider the EPL Retroactive Date to be the date of organization of the “named insured”. The EPL Retroactive Date will remain the same through all subsequent renewals. No change will be made to the EPL Retroactive Date unless at the sole request of the insured. |
| **EPL Coverage Premium:** | $6,372.00 | EPL Premium for the EPL Coverage Period |
| **Third Party Violations Premium (Optional):** | $1,274.00 | If coverage for “third party violations” has been paid for, the premium will be shown and coverage is in force. Otherwise, there is no coverage available for “third party violations”. |
| | **TOTAL EPL COVERAGE PREMIUM:** | $7,646.00 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

This insurance does not apply to “loss” arising out of a “wrongful employment act” that arises out of incidents or circumstances of which “you” had knowledge prior to the effective date of this EPL Coverage or the first EPL Coverage Endorsement issued by “us” of which this EPL Coverage is an uninterrupted renewal.

Throughout this Coverage Endorsement (hereinafter referred to as “EPL Coverage”), the words “you” and “your” refer to the “named insured(s)” shown in the Declarations and any other person(s) or organization(s) qualifying as a “named insured” under this EPL Coverage. The words “we”, “us” and “our” refer to the company providing this insurance.

The word “insured” means any person or organization qualifying as such under SECTION III. WHO IS AN INSURED.

Other words and phrases that appear in “quotations” have special meaning. Refer to SECTION VII. DEFINITIONS.

© 2010 The Hartford Steam Boiler Inspection and Insurance Company

The terms and conditions of the Cancellation Clause of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this EPL Coverage, unless specifically stated otherwise in an endorsement(s) attached hereto.

## SECTION I. WHAT IS COVERED

### A. Insuring Agreement

1. "We" shall pay those "losses" arising out of an "insured's" "wrongful employment act" (other than a "third party violation") against "your" "employees", "recognized volunteers" and applicants for employment to which this insurance applies.
2. If coverage for "third party violations" is shown on the Schedule above, then "we" shall pay those "losses" arising out of an "insured's" "third party violation".
3. For coverage to apply under this EPL Coverage, the "wrongful employment act" must commence or take place after the Retroactive Date, but before the end of the "EPL coverage period". If no Retroactive Date appears on the Schedule above, then the Retroactive Date shall be the date of organization of the "named insured." A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or Extended Reporting Periods (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage.
4. A "claim" or "suit" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:
   a. When written notice of such "claim" or "suit" is received and recorded by any "insured" or by "us", whichever comes first; or
   b. When "we" make any settlement in accordance with the terms of this EPL Coverage.

### B. Defense

1. "We" have the right and duty to defend and appoint an attorney to defend any "claim" or "suit" brought against any "insured" for a "wrongful employment act" to which this insurance applies, even if the "claim" or "suit" is groundless or fraudulent.

   At the time a "claim" or "suit" is first reported to "us", "you" may request that "we" appoint a defense attorney of "your" choice. "We" will give full consideration to any such request.
2. "We" have the right to investigate and settle any "claim" or "suit" that "we" believe is proper. "You" shall be entitled to consent to such settlement, provided "your" consent is not unreasonably withheld and is provided as soon as practicable.

   If "you" refuse to consent to any settlement that "we" recommend and that is acceptable to the claimant, then "our" liability under this EPL Coverage for such "claim" or "suit" shall not exceed the amount for which we could have settled had "your" consent not been withheld at the time of "our" recommendation. "You" shall thereafter negotiate and defend that "claim" or "suit" at "your" own cost and without "our" involvement.
3. "We" shall pay all reasonable costs "we" ask the "insured" to incur while helping "us" investigate or defend a "claim" or "suit". "We", however, will not pay more than $250 per day for earnings lost by the "insured" because of time taken off from work.
4. "We" shall pay premiums for appeal bonds, or bonds to release property being used to secure a legal obligation, for a covered "suit". "We" shall only pay, however, for bonds valued up to "our" EPL Aggregate Limit of Liability. "We" shall have no obligation to appeal or to obtain these bonds.
5. Payments for "defense costs" are included within the EPL Aggregate Limit of Liability. They are not in addition to the EPL Aggregate Limit of Liability. "Our" duty to defend or to make payment of any "claim" or "suit" pursuant to Paragraphs **1.** through **4.** of this Clause **B.**, ends after the EPL Aggregate Limit of Liability has been exhausted by payment of "loss", including "defense costs".
6. "We" shall pay all interest on that amount of any judgment within the EPL Aggregate Limit of Liability:
   a. Which accrues after entry of judgment; and
   b. Before "we" pay, offer to pay, or deposit in court that part of the judgment within the EPL Aggregate Limit of Liability.

   These interest payments shall be in addition to and not part of the EPL Aggregate Limit of Liability.

### C. Transfer of Control

1. "You" may take over control of any outstanding "claim" or "suit" previously reported to "us", but only if "we", in "our" sole discretion, decide that you should, or if a court orders "you" to do so.

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

2. Notwithstanding Paragraph 1. of this Clause C., in all events, if the EPL Aggregate Limit of Liability is exhausted, "we" will notify "you" of all outstanding "claims" or "suits" and "you" will take over control of the defense. "We" will help transfer control of the "claims" and "suits" to "you".

3. "We" shall take whatever steps are necessary to continue the defense of any outstanding "claim" or "suit" and avoid a default judgment during the transfer of control to "you". If "we" do so, "we" shall not waive or give up any of "our" rights. "You" shall pay all reasonable expenses "we" incur for taking such steps after the EPL Aggregate Limit of Liability is exhausted.

## SECTION II. EXCLUSIONS–WHAT IS NOT COVERED

This insurance does not apply to:

**A. Criminal Acts**

Any liability arising out of any dishonest, fraudulent, criminal, or malicious act by or at the direction of any "insured". However, to the extent that a "claim" or "suit" is otherwise covered under this EPL Coverage "we" will defend a "claim" or "suit" asserting a dishonest, fraudulent, criminal or malicious act until such time as the "insured" is determined to have committed such dishonest, fraudulent, criminal or malicious act;

The "wrongful employment act(s)" of an "insured" shall not be imputed to any other "insured" for the purpose of determining the applicability of this Exclusion A.;

**B. "Property Damage"**

Any liability arising out of "property damage";

**C. "Bodily Injury"**

Any liability arising out of "bodily injury";

**D. Workers' Compensation, Social Security and Unemployment, Disability and Retirement Benefits**

Any liability arising out of any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. This exclusion, however, shall not apply to "loss" arising from a "claim" or "suit" for "retaliation";

**E. Contractual Liability**

Any liability arising out of any actual or alleged contractual liability of any "insured" under any express contract or agreement. This exclusion, however, shall not apply to any liability the "insured" would have in the absence of such express contract or agreement;

**F. ERISA, FLSA, NLRA, WARN, COBRA, and OSHA**

Any liability for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law.

It is acknowledged that "claims" and "suits" for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all "claims" and "suits" which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

1. The refusal, failure or inability of any "insured(s)" to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

2. Improper deductions from pay taken by any "insured(s)" from any "employee(s)" or purported employee(s); or

3. Failure to provide or enforce legally required meal or rest break periods;

Notwithstanding the foregoing, this Exclusion F. shall not apply to the extent that a "claim" or "suit" is for "retaliation";

**G. Prior Knowledge**

Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured"

1. Had knowledge of; or

2. Could have reasonably foreseen might result in a "claim" or "suit"

and which were known to the "insured" prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal;

**H. Prior Notice**

Any liability arising out of the facts alleged, or to the same or "related wrongful employment acts" alleged or contained in any "claim" or "suit" which has been reported, or in any circumstances of which notice

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

has been given, under any policy of which this EPL Coverage is a renewal or replacement or which it may succeed in time;

**I. Prior Litigation**

Any liability arising out of any prior

**1.** Litigation; or

**2.** Administrative or regulatory proceeding or investigation

of which an "insured" had notice, or alleging the same or "related wrongful employment acts" alleged or contained in such pending or prior litigation or administrative or regulatory proceeding or investigation which the "insured" had knowledge of prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal.

**J. War and Military Action**

Any liability arising from war and military action including any of the following and any consequence of the following:

**1.** War, including undeclared or civil war;

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**K. Nuclear Risk**

Any liability caused by or resulting from nuclear reaction or radiation, or radioactive contamination, however caused, even though any other cause or event contributes concurrently or in any sequence to the "loss".

## SECTION III. WHO IS AN INSURED

**A. Individual**

If "you" are shown in the Schedule of this EPL Coverage as an individual, "you" and "your" spouse or "Domestic Partner" are "insureds", only for the conduct of a business of which "you" are the sole owner.

**B. Corporation**

If "you" are shown in the Schedule of this EPL Coverage as a corporation or organization other than a partnership, joint venture, or limited liability company, "you" and "your" "subsidiaries" are "insureds".

**C. Partnership or Joint Venture**

If "you" are shown in the Schedule of this EPL Coverage as a partnership or joint venture, "you" are an "insured". "Your" members, partners or co-venturers and their spouses or "Domestic Partners" are also "insureds", but only for the conduct of "your" business.

**D. Limited Liability Company**

If "you" are shown in the Schedule of this EPL Coverage as a limited liability company, "you" are an "insured." "Your" members are also "insureds", but only with respect to the conduct of "your" business. "Your" managers are "insureds", but only with respect to their duties as "your" managers.

**E. Trusts**

If "you" are shown in the Schedule of this EPL Coverage as a trust, "you" are an "insured". "Your" trustees are also "insureds", but only with respect to their duties as trustees.

**F. "Employees"**

"Your" "employees", executive officers and directors are "insureds", only for the conduct of "your" business within the scope of their employment or their duties as executive officers or directors.

**G. Extensions**

**1.** Subject otherwise to the terms hereof, this EPL Coverage shall cover "loss" arising from any "claims" or "suits" made against the estates, heirs, or legal representative of deceased individual "insureds", and the legal representatives of individual "insureds", in the event of incompetency, who were individual "insureds" at the time the "wrongful employment acts", upon which such "claims" or "suits" are based, were committed.

**2.** Subject otherwise to the terms hereof, this EPL Coverage shall cover "loss" arising from all "claims" and "suits" made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or "Domestic Partner" of an individual "insured", including a "claim" or "suit" that seeks damages recoverable from marital community property, property jointly held by the individual "insured" and the spouse or "Domestic Partner", or property transferred from the individual "insured" to the spouse or "Domestic Partner"; provided, however, that this extension shall not afford coverage for a "claim" or "suit" arising out of any "wrongful employment act" of the spouse or "Domestic Partner", but shall apply only to "claims" or "suits" arising out of

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

any "wrongful employment acts" of an individual "insured", subject to this EPL Coverage's terms, conditions and exclusions.

## SECTION IV. LIMIT OF LIABILITY (including "defense costs")

**A.** The EPL Aggregate Limit of Liability shown in the Schedule of this EPL Coverage and the information contained in this section limits the most "we" shall pay for all "loss" (other than post-judgment interest described in **Section I.**, Clause **B.**, Paragraph **6.**) arising out of "claims" and "suits" first made against "insureds" during the "EPL coverage period" or Extended Reporting Periods (if applicable), regardless of:

1. The number of persons or organizations covered by this EPL Coverage; or
2. The number of "claims" made or "suits" brought; or
3. The length of the "EPL coverage period".

**B.** The EPL Aggregate Limit of Liability is the most "we" shall pay for all "losses" (other than post-judgment interest described in **Section I.**, Clause **B.**, Paragraph **6.**), including amounts incurred for "defense costs".

**C.** The EPL Aggregate Limit of Liability for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to the EPL Aggregate Limit of Liability for the "EPL coverage period".

**D.** All "claims" and "suits" arising from the same or "related wrongful employment acts" shall be treated as arising out of a single "wrongful employment act".

**E.** All "claims" or "suits" arising out of one "wrongful employment act" shall be deemed to be made on the date that the first such "claim" is made or "suit" is brought. All "claims" asserted in a "class action suit" will be treated as arising out of a single "wrongful employment act".

**F.** Any "claim" or "suit" which is made subsequent to the "EPL coverage period" or Extended Reporting Periods (if applicable) which, pursuant to **Section VI.**, Clause **D.**, Paragraphs **3.** and **4.** is considered made during the "EPL coverage period" or Extended Reporting Periods (if applicable) shall also be subject to the one EPL Aggregate Limit of Liability stated in the Schedule of this EPL Coverage.

## SECTION V. DEDUCTIBLE

"You" shall be responsible for the deductible amount shown in the Schedule of this EPL Coverage with respect to each "claim" and "suit" and "you" may not insure against it. A single deductible amount shall apply to "loss" arising from all "claims" and "suits" alleging the same "wrongful employment act" or "related wrongful employment acts". Expenses "we" incur in investigating, defending and settling "claims" and "suits" are included in the deductible. The deductible is not included within the EPL Aggregate Limit of Liability.

At our option, "we" may pay any part or all of the EPL Deductible Amount to effect settlement of any "claim" or "suit" and upon notification of the action taken, "you" shall promptly reimburse "us" for such part of the deductible that has been paid by "us".

## SECTION VI. CONDITIONS

"We" have no duty to provide coverage under this EPL Coverage, unless there has been full compliance with all the Conditions contained in this EPL Coverage.

**A. Assignment**

The interest of any "insured" is not assignable. "You" cannot assign or transfer "your" interest in this EPL Coverage without "our" written consent attached to the EPL Coverage.

**B. Bankruptcy or Insolvency**

"Your" bankruptcy, insolvency or inability to pay, will not relieve "us" from the payment of any "claim" or "suit" covered by this EPL Coverage.

Under no circumstances will "your" bankruptcy, insolvency, or inability to pay require "us" to drop down, in any way replace, or assume any of "your" obligations with respect to the Deductible provisions of this EPL Coverage.

**C. Coverage Territory**

"We" cover "wrongful employment acts" anywhere in the world, but only if the "claim" is made and the "suit" is brought for such "wrongful employment act" in the United States of America, its territories and possessions, Puerto Rico, or Canada.

**D. Duties in the Event of an Incident, "Claim" or "Suit"**

1. If, during the "EPL coverage period", incidents or events occur which "you" reasonably believe may give rise to a "claim" or "suit" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's representative; or notice of a complaint filed with EEOC, DOL or OFCCP (or similar federal, state or local agency); or upon an oral "claim", allegation or threat, "you" shall give written notice to "us" as soon as practicable and either:
   a. Anytime during the "EPL coverage period"; or
   b. Anytime during the Extended Reporting Periods (if applicable).

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

2. If a "claim" is made or a "suit" is brought against any "insured", "you" must:

   a. Immediately record the specifics of the "claim" or "suit" and the date received; and

   b. Provide "us" with written notice, as described in Paragraph **3.** of this Clause **D.**, as soon as practicable.

3. Such written notice of "claim" or "suit" shall contain:

   a. The identity of the person(s) alleging a "wrongful employment act";

   b. The identity of the "insured(s)" who allegedly were involved in the incidents or events;

   c. The date the alleged incidents or events took place; and

   d. The written notice or a memorandum of the oral "claim", allegation or threat referred to above.

   If written notice is given to "us" during the "EPL coverage period" or Extended Reporting Periods (if applicable), pursuant to the above requirements, then any "claim" or "suit" which is subsequently made against any "insureds" and reported to "us" alleging, arising out of, based upon or attributable to such circumstances or alleging any "related wrongful employment act" to such circumstances, shall be considered made at the time such notice of such circumstances was first given.

4. If "you" submit written notice of a "claim" or "suit", pursuant to this Clause D., then any "claim" or "suit" that may subsequently be made against an "insured" and reported to "us" alleging the same or a "related wrongful employment act" to the "claim" or "suit" for which such notice has been given shall be deemed, for the purpose of this insurance, to have been first made during the "EPL coverage period" or Extended Reporting Period (if applicable) in effect at the time such written notice was first submitted to "us".

5. "You" and any other "insured" must:

   a. Immediately send "us" copies of any demands, notices, summonses or legal papers received in connection with any "claim" or "suit";

   b. Authorize "us" to obtain records and other information;

   c. Cooperate with "us" in the investigation, settlement or defense of the "claim" or "suit";

   d. Assist "us", upon "our" request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply;

   e. Not take any action, nor fail to take any required action, that prejudices the rights of the "insureds" or "us" with respect to such "claim" or "suit".

6. No "insureds" will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without "our" prior written consent.

**E. Transfer of Rights of Recovery Against Others to "Us"**

"You" may be able to recover all or part of a "loss" from someone other than "us". "You", therefore, shall do all that is possible after a "loss" to preserve any such right of recovery. If "we" make a payment under this EPL Coverage, that right of recovery shall belong to "us". "You" shall do whatever is necessary, including signing documents, to help "us" obtain that recovery.

**F. Extended Reporting Periods**

1. "You" shall have the right to the Extended Reporting Periods described in Paragraph **2.** of this Clause **F.**, in the event that:

   a. "You" or "we" shall cancel this EPL Coverage;

   b. "You" or "we" shall refuse to renew this EPL Coverage; or

   c. "We" renew this EPL Coverage on an other than a claims-made basis or with a Retroactive Date later than the Retroactive Date shown on the Schedule of this EPL Coverage;

2. If an event as specified in Paragraph **1.** of this Clause **F.** has occurred, "you" shall have the right to the following:

   a. An Automatic Extended Reporting Period of thirty (30) days after the effective date of cancellation or nonrenewal at no additional premium in which to give to "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Automatic Extended Reporting Period for any "wrongful employment acts" occurring before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage; and

   b. Upon payment of an additional premium of 100% of the full annual premium applicable to this EPL Coverage, a Supplemental Extended Reporting Period of one (1) year immediately following the effective date


© 2010 The Hartford Steam Boiler Inspection and Insurance Company

of cancellation or nonrenewal in which to give to "us" written notice of "claims" first made or "suits" first brought against the "insureds" during said Supplemental Extended Reporting Period for any "wrongful employment acts" occurring before the end of the "EPL coverage period" and are otherwise covered by this EPL Coverage.

To obtain the Supplemental Extended Reporting Period, "you" must request it in writing and pay the additional premium due, within thirty (30) days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If "we" do not receive the written request as required, "you" may not exercise this right at a later date.

This insurance, provided during the Supplemental Extended Reporting Period, is excess over any other valid and collectible insurance that begins or continues in effect after the Supplemental Extended Reporting Period becomes effective, whether the other insurance applies on a primary, excess, contingent, or any other basis.

**G. Change in Control of "Named Insured"**

In the event of a "Transaction" then this EPL Coverage shall continue in full force and effect as to "wrongful employment acts" occurring prior to the effective time of the "Transaction", but there shall be no coverage afforded by any provision of this EPL Coverage for any actual or alleged "wrongful employment acts" occurring after the effective time of the "Transaction". This EPL Coverage may not be cancelled after the effective time of the "Transaction" and the entire premium for this EPL Coverage shall be deemed earned as of such time. "You" shall also have the right to the Extended Reporting Periods described in Clause F. of this Section VI.

"You" shall give "us" written notice of the "Transaction" as soon as practicable, but not later than thirty (30) days after the effective date of the "Transaction".

**H. Legal Action Against "Us"**

No person or organization has the right to join "us" as a party or otherwise bring "us" into a "suit" asking for damages from an "insured".

**I. Other Insurance**

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this EPL Coverage shall be primary.

**J. EPL Coverage Changes**

This EPL Coverage contains all the agreements between "you" and "us" concerning this insurance. The first "named insured" in the Schedule of this EPL Coverage is authorized to request changes in this EPL Coverage. This EPL Coverage can only be changed by a written endorsement "we" issue and make part of this EPL Coverage.

**K. Representations**

Any and all relevant provisions of this EPL Coverage may be voidable by "us" in any case of fraud, intentional concealment, or misrepresentation of material fact by any "insured".

**L. Special Rights and Duties of the First "Named Insured"**

"You" agree that when there is more than one person and/or entity covered under this EPL Coverage, the first "named insured" in the Schedule of this EPL Coverage shall act on behalf of all "insureds" as to:

1. Giving of notice of a "claim" or "suit";
2. Giving and receiving notice of cancellation or nonrenewal;
3. Payment of premiums and receipt of return premiums;
4. Acceptance of any endorsements issued to form a part of this EPL Coverage; or
5. Purchasing or deciding not to purchase the Supplemental Extended Reporting Period.

**M. Separation of Insureds**

Except with respect to the EPL Aggregate Limit of Liability and any rights or duties specifically assigned to the first "named insured" in Clause L. of this Section VI, this insurance applies:

1. As if each "named insured" were the only "named insured"; and
2. Separately to each insured against whom a "claim" or "suit" is made.

**N. Tie-In of Limits**

As respects any "claim" or "suit" in which at least one person/entity claimed against is an "insured" under this EPL Coverage and at least one person/entity claimed against is an insured under any other EPL Coverage issued to "you" by "us" (the "Other Policy"), the combined EPL Aggregate Limit of Liability under both this EPL Coverage and the Other Policy for all "losses" arising from such "claims" or "suits" combined shall not exceed the highest applicable limit of insurance under either this EPL Coverage or the Other Policy. This limitation shall apply even if both this EPL Coverage and the Other Policy have been triggered due to a "claim" or "suit" made against the same person/entity but alleging "wrongful

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

employment acts" both in his, her or its capacity as an insured under the "Other policy" and as an "insured" under this EPL Coverage.

**O. Headings**

The descriptions in the headings of this EPL Coverage are solely for convenience, and form no part of the terms and conditions of coverage.

## SECTION VII. DEFINITIONS

**A.** "Bodily injury" means physical injury, sickness, or disease, including death resulting therefrom.

**B.** "Claim" means a written demand for monetary and non-monetary relief (including any request to toll or waive any statute of limitations). The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you". However, in no event, shall the term "claim" include any labor or grievance proceeding, which is subject to a collective bargaining agreement.

**C.** "Class action suit" means any suit seeking certification or certified as a class action by a federal or state court.

**D.** "Defense costs" means reasonable and necessary fees, costs and expenses consented to by "us" resulting solely from the investigation, adjustment, defense and appeal of a "claim" or "suit" against "you". In no event shall "Defense Costs" include "your" or "our" routine on-going expenses, including, without limitation, the salaries of "your" or "our" "employees", officers or staff attorneys.

**E.** "Domestic partner" means any natural person legally recognized as a domestic or civil union partner under:

1. The provisions of any applicable federal, state or local law; or
2. The provisions of any formal program established by "you".

**F.** "Employee" means an individual whose labor or service is engaged by and directed by "you" for remuneration, whether such individual is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal, and temporary "employees".

An individual who is an independent contractor or leased to "you" shall also be an "employee". Independent contractors who do not provide ongoing and routine services solely for "you" shall not be considered "employees", including but not limited to independent trade contractors (e.g. plumber, electrician).

**G.** "EPL coverage period" means the period commencing on the effective date shown in the Schedule of this EPL Coverage. This period ends on the earlier of the expiration date or the effective date of cancellation of this EPL Coverage. If "you" became an "insured" under this EPL Coverage after the effective date, the "EPL coverage period" begins on the date "you" became an "insured".

**H.** "Loss(es)" means monetary amounts to which this insurance applies and which "you" are legally obligated to pay (including front pay and back pay), judgments, settlements, pre- and post-judgment interest on that part of any judgment paid by "us", statutory attorney fees, and "defense costs"; however, "loss" shall not include:

1. Civil or criminal fines or penalties imposed by law;
2. Taxes;
3. Employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;
4. Any liability or costs incurred by any "insured" to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar; or
5. Matters which may be deemed uninsurable under the law pursuant to which this EPL Coverage shall be construed.

Where permitted by law, "loss" shall include punitive or exemplary damages imposed upon any "insured" (subject to the policy's other terms, conditions and exclusions).

**I.** "Named insured" means the person or organization designated in the Schedule page of this EPL Coverage.

**J.** "Property damage" means physical injury to, or destruction of, tangible property including the loss of use thereof, or loss of use of tangible property, which has not been physically injured or destroyed.

**K.** "Recognized volunteer" means an uncompensated individual who volunteers labor or services to "you", but only when performing such labor or services at the request of and under the direction of "you".

**L.** "Related wrongful employment act(s)" means "wrongful employment acts" which are the same, related or continuous, or "wrongful employment acts"

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

which arise from a common nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts", regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of actions.

**M.** "Retaliation" means a "wrongful employment act" of an "insured" alleged to be in response to, the actual or attempted exercise by an "employee" of any right that such "employee" has under the law. Provided, however, "retaliation" shall not include the "wrongful employment act" of an "insured" alleged to be in response to the threat of or the actual filing of any claim or suit under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower law".

**N.** "Subsidiary" means:

**1.** Any for-profit organization which, on or before the inception of the "EPL coverage period", is more than fifty (50%) percent owned by the "named insured", either directly or indirectly through one or more of its "subsidiaries"; or

**2.** A for-profit organization which becomes a "subsidiary" during the "EPL coverage period", but only upon the condition that within ninety (90) days of its becoming a "subsidiary", the "named insured" shall have provided "us" with full particulars of the new "subsidiary" and agreed to any additional premium or amendment of the provisions of this EPL Coverage required by "us" relating to such new "subsidiary". Further, coverage as shall be afforded to the new "subsidiary" is conditioned upon the "named insured" paying when due any additional premium required by "us" relating to such new "subsidiary".

An organization becomes a "subsidiary" when the "named insured" owns more than fifty (50%) percent ownership interest in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries". An organization ceases to be a "subsidiary" when the "named insured" ceases to own more than a fifty (50%) percent ownership in such "subsidiary", either directly, or indirectly through one or more of its "subsidiaries".

In all events, coverage as is afforded under this EPL Coverage with respect to a "claim" made or "suit" brought against any "subsidiary" or an "insured" of any "subsidiary", shall only apply to "wrongful employment act(s)" commenced or allegedly commenced after the effective time that such "subsidiary" became a "subsidiary", and prior to the time that such "subsidiary" ceased to be a "subsidiary".

**O.** "Suit" means a civil proceeding or an administrative proceeding seeking money damages, and includes an arbitration, mediation or any other alternative dispute resolution procedure seeking such damages, to which the "insured" must submit or may submit with "our" consent. "Suit" shall not include any civil proceeding or administrative proceeding arising from any labor or grievance dispute which is subject to a collective bargaining agreement.

**P.** "Third party violation" means any actual or alleged discrimination or sexual harassment against "your" customers, vendors or clients. "Third party violation" shall also include any of the following as it relates to such discrimination or sexual harassment:

**1.** Violation of an individual's civil rights;

**2.** Libel;

**3.** Slander;

**4.** Humiliation;

**5.** Mental anguish;

**6.** Infliction of emotional distress;

**7.** Defamation; or

**8.** Invasion of privacy;

**Q.** "Transaction" means any of the following that occur during the "EPL coverage period":

**1.** The "named insured" shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

**2.** Any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty (50%) percent of the voting power for the election of directors or General Partners of the "named insured" (in the event the "named insured" is a Partnership), or acquires the voting rights of such an amount of such securities; or

**3.** A General Partner of the "named insured" (in the event the "named insured" is a partnership) withdraws, resigns or is terminated;

**R.** "Whistleblower law" means a statute, rule or regulation, which protects an employee against discrimination from his or her employer, if the employee discloses or threatens to disclose to a superior or any governmental agency; or who gives testimony relating to, any action with respect to the employer's operations, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, and professional codes of ethics.

**S.** "Wrongful employment act(s)" means any actual or alleged:

**1.** Wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

**2.** Harassment or coercion (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

**3.** Discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

**4.** "Retaliation" (including lockouts);

**5.** Employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

**6.** Employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

**7.** Wrongful failure to employ or promote;

**8.** Wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

**9.** Wrongful discipline;

**10.** Failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act";

**11.** Negligent supervision or hiring by an "insured", relating to any of the above;

**12.** Violation of an individual's civil rights relating to any of the above;

**13.** "Third party violations", but only if coverage for "third party violations" is shown on the Schedule above.

All other terms and conditions of the policy remain the same.


© 2010 The Hartford Steam Boiler Inspection and Insurance Company

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIP0003450404902
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** GRANITE STATE INSURANCE COMPANY

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE

1. **SECTION II. EXCLUSIONS-WHAT IS NOT COVERED,** Clause **G. Prior Knowledge** is replaced by the following:

   **G. Prior Knowledge**

   Any liability arising out of incidents, circumstances or "wrongful employment acts", which an "insured"

   **1.** Had knowledge of; and

   **2.** Could have reasonably foreseen might reasonably result in a "claim" or "suit"

   and which were known to the "insured" prior to the effective date of this EPL Coverage or the first EPL Coverage issued by "us" of which this EPL Coverage is an uninterrupted renewal;

2. **SECTION VI. CONDITIONS,** Clause **K. Representations** is deleted.

3. **SECTION VI. CONDITIONS,** Clause **N. Tie-In of Limits** is replaced by the following:

   **N. Tie-In of Limits**

   As respects any "claim" or "suit" in which at least one person/entity claimed against is an "insured" under this EPL Coverage and at least one person/entity claimed against is an insured under any other EPL Coverage in the same package or policy issued to "you" by "us" (the "Other Coverage"), the combined EPL Aggregate Limit of Liability under both this EPL Coverage and the Other Coverage for all "losses" arising from such "claims" or "suits" combined shall not exceed the highest applicable limit of insurance under either this EPL Coverage or the Other Coverage. This limitation shall apply even if both this EPL Coverage and the Other Coverage have been triggered due to a "claim" or "suit" made against the same person/entity but alleging "wrongful employment acts" both in his, her or its capacity as an insured under the "Other Coverage" and as an "insured" under this EPL Coverage.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative

 © 2010 The Hartford Steam Boiler Inspection and Insurance Company 

☐ New Hampshire Insurance Company
☐ Illinois National Insurance Co.
☐ Granite State Insurance Company

1271 Ave of the Americas FL 37
New York, NY 10020-1304

Employment Practices Liability Insurance
Supplemental Application

NOTICES: THE EMPLOYMENT PRACTICES LIABILITY COVERAGE ENDORSEMENT PROVIDES THAT THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

IF AN EMPLOYMENT PRACTICES LIABILITY COVERAGE ENDORSEMENT IS ISSUED, IT WILL BE ON A CLAIMS-MADE BASIS AND REPORTED BASIS. PLEASE READ THE ENTIRE EMPLOYMENT PRACTICES LIABILITY COVERAGE ENDORSEMENT CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED.

.

---

**INSTRUCTIONS:** The words "you", "your" and "Applicant" refer to the Named Applicant and all the other entities applying for coverage. If your answer to any question in this Application requires additional space, please complete your answer on an attachment. This Application, its respective attachments, and any other related information or documentation you provide (or indicate is available on a website) will constitute a single "Application".

1. Named Applicant: ____________________________________________________________

2. Address of Named Applicant: ____________________________________________________
   City: ____________________ Primary State of Operations: __________ Zip Code: ___________

3. Applicant's Primary Nature of Business: ________________________ SIC Code (if known) :__________

4. Please select the Limit of Liability you would like to purchase:

   100,000*________ $250,000*______ $500,000______$1,000,000______

   *Please note limit not available in Arkansas or New Mexico

5. Please select the Deductible you would like to purchase:

   $2,500________ $5,000________ $10,000______ $25,000_______ $50,000________ *

   * Please note the minimum Deductible for California risks is $5K.

6. Would you like your quote to include coverage for claims brought by third party customers and vendors?

   Yes______ No______

7. Years of continuous operation: ________

8. Has the Insured filed for bankruptcy within the past 5 years or received any negative opinions from an accountant as to its ability to continue as a "going concern"? Yes_______ No_______

9. Total Number of Insured Locations: ________

10. **Please complete grid below**:
A. Total Number of Employees.

| | California | | | Alabama, Alaska, District of Columbia, Florida, Illinois, Michigan, New York or Texas | | | All Other States | | |
|---|---|---|---|---|---|---|---|---|---|
| | Current | Prior | 2nd Prior | Current | Prior | 2nd Prior | Current | Prior | 2nd Prior |
| **Full Time Employees including:** Full-time Seasonal , Temporary and Leased Employees, Volunteers and Independent Contractors | | | | | | | | | |
| **Part Time Employees including:** Part-time Seasonal , Temporary and Leased Employees, Volunteers and Independent Contractors | | | | | | | | | |

B. Percentage of employees that are: Salaried ______% Non-salaried ______%

C. Employee turnover summary (by %)

| | Last Year | Current Year | Projected |
|---|---|---|---|
| Voluntary Termination | | | |
| Involuntary Terminations | | | |
| Layoffs | | | |
| Other | | | |

D. Are there any staff reductions and/or mergers and acquisitions planned within the next 12 months?

Yes______ No______ If "Yes", please provide details:

E. What is the percentage of union workers? _____%

F. Compensation distribution: _____% < $50,000 _____% $50,000 - $100,000 _____% > $100,000

11. Does the Applicant utilize an employment handbook, website or written employment materials (such as anti-harassment or anti-discrimination policies) to advise employees of their rights to work free of harassment and discrimination in the workplace? Yes______ No______

If Yes, do employees sign or acknowledge receipt of the handbook? Yes______ No______

A. Are all job applicants required to complete and sign an employment application? Yes______
No______

B. Is there a dedicated Human Resource Department/Function? Yes______ No______

C. Do all employees have written performance evaluations? Yes______ No______
If "Yes", how often? __________

D. Do you post all notices required by law? Yes______ No______

12. Has the Applicant implemented a formal procedure for recording and handling employee discrimination and harassment complaints? Yes______ No______

13. Does the Applicant have a policy against harassment, discrimination, and civil rights violations with respect to customers, clients and other third parties? Yes______ No______

14. Are the Applicant's employees trained on the company's anti-harassment and anti-discrimination policies? Yes______ No______

**Please Complete the Following for New Business Applicants Only:**

15. Have there been any past or are there any present claims or lawsuits alleging an act of harassment, discrimination or wrongful termination against the Applicant, its business, its employees or an executive officer of the Applicant? Yes_______ No_______ (If Yes, please provide complete details).

16. Have there been any claims or lawsuits alleging an act of harassment, discrimination, or violation of civil rights that have been received from customers, clients, and/or third parties within the past three years? Yes______ No______________ (If Yes, please provide complete details).

17. Does the Named Applicant, it subsidiaries, or any director, officer or manager of the applicant know of any act, incident, error or omission which could give rise to a claim(s), suit(s) or action(s) under the proposed Employment Practices Liability coverage? Yes_______ No_______ (If Yes, please provide complete details)

*It is agreed that with respect to Questions 15, 16 and 17 above, if such claim(s), suit(s), investigation(s), action(s), proceeding(s), inquiry, violation, knowledge, information or involvement exists, then such claim(s), suit(s), investigation(s), action(s), proceeding(s) or inquiry and any claim or action arising there from or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage.*

18. Has the Applicant ever had an application for employment practices liability coverage declined or have you ever had an employment practices liability policy cancelled or non-renewed?

Yes______ No______

19. Is the applicant currently insured under any Employment Practices Liability insurance policy?

Yes ______ No_______

Current EPL Carrier: _____________ Limit:___________ Deductible:_____________ Premium:_________

(If Yes, please provide a copy of the Declarations page and the EPL coverage form)

THE UNDERSIGNED AUTHORIZED OFFICER, OWNER OR MANAGER OF THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE. THE UNDERSIGNED AUTHORIZED OFFICER, OWNER OR MANAGER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE OF THIS APPLICATION AND THE EFFECTIVE DATE OF THE INSURANCE, HE/SHE (UNDERSIGNED) WILL, IN ORDER FOR THE INFORMATION TO BE ACCURATE ON THE EFFECTIVE DATE OF THE INSURANCE, IMMEDIATELY NOTIFY THE INSURER OF SUCH CHANGES, AND THE INSURER MAY WITHDRAW OR MODIFY ANY OUTSTANDING QUOTATIONS AND/OR AUTHORIZATIONS OR AGREEMENTS TO BIND THE INSURANCE.

SIGNING OF THIS APPLICATION DOES NOT BIND THE APPLICANT OR THE INSURER TO COMPLETE THE INSURANCE, BUT IT IS AGREED THAT THIS APPLICATION SHALL BE THE BASIS OF THE CONTRACT SHOULD AN EMPLOYMENT PRACTICES LIABILITY COVERAGE ENDORSEMENT BE ISSUED, AND THE APPLICATION IS DEEMED TO BE ATTACHED TO AND SHALL BECOME A PART OF THE POLICY.

ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION, REGARDLESS OF WHETHER SUCH DOCUMENTS ARE ATTACHED TO THE POLICY, ARE HEREBY INCORPORATED BY REFERENCE INTO THIS APPLICATION AND MADE A PART HEREOF.

THE INSURED REPRESENTS THAT THE INFORMATION FURNISHED IN THIS APPLICATION IS COMPLETE, TRUE AND CORRECT. ANY MISREPRESENTATION, OMISSION, CONCEALMENT OR INCORRECT STATEMENT OF A MATERIAL FACT, IN THIS APPLICATION OR OTHERWISE, SHALL BE GROUNDS FOR THE RESCISSION OF ANY BOND OR POLICY ISSUED.

**NOTICE TO APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO ALABAMA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION FINES OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

**NOTICE TO ARKANSAS, NEW MEXICO AND WEST VIRGINIA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT, OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO CALIFORNIA APPLICANTS:** FOR YOUR PROTECTION CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM: ANY PERSON WHO KNOWINGLY PRESENTS FALSE OR FRAUDULENT INFORMATION TO OBTAIN OR AMEND INSURANCE COVERAGE OR TO MAKE A CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.

**NOTICE TO COLORADO APPLICANTS**: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

**NOTICE TO FLORIDA APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

**NOTICE TO KANSAS APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARED WITH KNOWEDLGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE WHICH SUCH PERSON KNOWS TO CONTAIN MATERIAL FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT.

**NOTICE TO KENTUCKY APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

**NOTICE TO LOUISIANA APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MAINE APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

**NOTICE TO MARYLAND APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY AND WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

**NOTICE TO MINNESOTA APPLICANTS:** A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

**NOTICE TO NEW JERSEY APPLICANTS**: ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW YORK APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

**NOTICE TO OHIO APPLICANTS**: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

**NOTICE TO OKLAHOMA APPLICANTS:** WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY (365:15-1-10, 36 §3613.1).

**NOTICE TO OREGON APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR, CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE GUILTY OF A FRAUDULENT ACT, WHICH MAY BE A CRIME AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO PENNSYLVANIA APPLICANTS**: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS**: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

**NOTICE TO VERMONT APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE STATEMENT IN AN APPLICATION FOR INSURANCE MAY BE GUILTY OF A CRIMINAL OFFENSE AND SUBJECT TO PENALTIES UNDER STATE LAW.

Please read the following statement carefully and sign where indicated. If the Employment Practices Liability Coverage Part/Endorsement is issued, this signed statement is deemed to be attached to and shall become a part of the policy.

The undersigned authorized officer, owner or manager of the Applicant hereby acknowledges that he/she is aware that the limit of liability contained in the Employment Practices Liability coverage part or endorsement shall be reduced, and may be completely exhausted, by the costs of legal defense and, in such event, the insurer shall not be liable for the costs of legal defense or for the amount of any judgment or settlement to the extent that such exceeds the limit of liability of the Employment Practices Liability coverage part or endorsement.

The undersigned authorized officer, owner or manager of the Applicant hereby acknowledges that he/she is aware that legal defense costs that are incurred shall be applied against the deductible amount.

Signed ______________________________________
(Applicant)
Date ______________________________________
Title ______________________________________
(Must be signed by Officer, Owner or Manager)

Attest ______________________________________
Broker ______________________________________
License Number ________________________________
Address ________________________________
________________________________

# INLAND MARINE -- DECLARATIONS

POLICY NUMBER AIP0003450404902

COMPANY NAME GRANITE STATE INSURANCE COMPANY

PRODUCER NAME AND NUMBER K&K INSURANCE GROUP, INC.

NAME OF INSURED CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.

MAILING ADDRESS 2689 HIGHWAY 39
HUNT, TX 78024

POLICY PERIOD: From 03/01/2025 to 03/01/2026 at
12:01 a.m. Standard Time at your mailing address shown above.

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM, WE PROVIDE THE INSURANCE AS DESCRIBED IN THIS POLICY.

BUSINESS DESCRIPTION CAM/CONFERENCE CENTER

LOSS PAYABLE NAME AND MAILING ADDRESS

LOCATION ADDRESS VARIOUS

FORMS APPLICABLE TO ALL COVERAGES

| | | | |
|---|---|---|---|
| IM7500(10/09) | IM7506(01/12) | CL0700(10/06) | IM7854(04/04) |
| IM7902(04/04) | IM7855(01/10) | 142026(11/22) | 142019(08/22) |

PREMIUM $2,942.00 PAYABLE

PREMIUM ABOVE INCLUDES FOR THE TERRORISM RISK INSURANCE ACT.

COUNTERSIGNATURE Scott [signature] (Authorized Representative) DATE 03/01/2025

Company Officer's Signature



Copyright, American Association of Insurance Services, Inc., 2004

# SCHEDULED PROPERTY FLOATER

In this coverage form, the words "you" and "your" mean the persons or organizations named as the insured on the declarations and the words "we", "us", and "our" mean the company providing this coverage.

Refer to the Definitions section at the end of this coverage form for additional words and phrases that have special meaning. These words and phrases are shown in quotation marks.

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Scheduled Property Floater. This coverage is also subject to the "schedule of coverages" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "schedule of coverages".

## PROPERTY COVERED

"We" cover the following property unless the property is excluded or subject to limitations.

1. **Coverage** -- "We" cover direct physical loss caused by a covered peril to:

   a. "your" property; and

   b. property of others in "your" care, custody, and control.

2. **Coverage Limitation** -- "We" only cover "your" property and property of others that are described on the "schedule of coverages".

## PROPERTY NOT COVERED

1. **Aircraft Or Watercraft** -- "We" do not cover aircraft or watercraft.

2. **Buildings And Land** -- "We" do not cover buildings or land including land on which covered property is located.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Money And Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

5. **Vehicles** -- "We" do not cover automobiles or any self-propelled vehicles that are designed for highway use.

6. **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## COVERAGE EXTENSIONS

**Provisions That Apply To Coverage Extensions** -- The following Coverage Extensions indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

Copyright, American Association of Insurance Services, Inc., 2009

However, if no "limit" is indicated for a Coverage Extension within this coverage form, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, the coverages provided below are part of and not in addition to the applicable "limit" for coverage described under Property Covered.

The "limit" provided under a Coverage Extension cannot be combined or added to the "limit" for any other Coverage Extension or Supplemental Coverage, including a Coverage Extension, Supplemental Coverage, or other coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following Coverage Extensions are not subject to and not considered in applying coinsurance conditions.

**Debris Removal** --

1. **Coverage** -- "We" pay the cost of debris removal. Debris removal means the costs for the demolition, clearing, and removal of debris of covered property if such debris results from a covered peril.

2. **We Do Not Cover** -- This coverage does not include costs to:

   a. extract "pollutants" from land or water; or

   b. remove, restore, or replace polluted land or water.

3. **Limit** -- "We" do not pay any more under this coverage than 25% of the amount "we" pay for the direct physical loss or damage exclusive of the costs for debris removal. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

4. **Additional Limit** -- "We" pay up to an additional $5,000 for debris removal expense when the debris removal expense exceeds 25% of the amount "we" pay for direct physical loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

5. **You Must Report Your Expenses** -- "We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

## SUPPLEMENTAL COVERAGES

**Provisions That Apply To Supplemental Coverages** -- The following Supplemental Coverages indicate an applicable "limit". This "limit" may also be shown on the "schedule of coverages".

If a different "limit" is indicated on the "schedule of coverages", that "limit" will apply instead of the "limit" shown below.

However, if no "limit" is indicated for a Supplemental Coverage within this coverage form, coverage is provided up to the full "limit" for the applicable covered property unless a different "limit" is indicated on the "schedule of coverages".

Unless otherwise indicated, a "limit" for a Supplemental Coverage provided below is separate from, and not part of, the applicable "limit" for coverage described under Property Covered.

The "limit" available for coverage described under a Supplemental Coverage:

a. is the only "limit" available for the described coverage; and

b. is not the sum of the "limit" indicated for a Supplemental Coverage and the "limit" for coverage described under Property Covered.

Copyright, American Association of Insurance Services, Inc., 2009

The "limit" provided under a Supplemental Coverage cannot be combined or added to the "limit" for any other Supplemental Coverage or Coverage Extension, including a Supplemental Coverage, Coverage Extension, or other coverage that is added to this policy by endorsement.

If coinsurance provisions are part of this policy, the following Supplemental Coverages are not subject to and not considered in applying coinsurance conditions.

1. **Newly Acquired Property** --

   a. **Coverage** -- "We" cover direct physical loss caused by a covered peril to additional property that:

      1) is similar to the property described on the "schedule of coverages"; and
      2) "you" acquire during the policy period.

   b. **Limit** -- The most that "we" pay for any loss under this supplemental coverage is the least of:

      1) the value of covered property as described in the Valuation section of this coverage form; or
      2) $15,000.

   c. **Time Limitation** -- "We" extend coverage to the additional property that "you" acquire for up to 60 days.

      This supplemental coverage will end when any of the following first occur:

      1) this policy expires;
      2) 60 days after "you" obtain the additional property; or
      3) "you" report the additional property to "us".

   d. **Additional Premium** -- "You" must pay any additional premium due from the date "you" acquire the additional property.

2. **Pollutant Cleanup And Removal** --

   a. **Coverage** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period.

   b. **Time Limitation** -- The expenses to extract "pollutants" are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

   c. **We Do Not Cover** -- "We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants".

      However, "we" pay the cost of testing that is necessary for the extraction of "pollutants" from land or water.

   d. **Limit** -- The most "we" pay for each location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12-month period of this policy.

## PERILS COVERED

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss or damage caused directly or indirectly by one or more of the following excluded causes or events. Such loss or damage is excluded regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

Copyright, American Association of Insurance Services, Inc., 2009

a. **Civil Authority** -- Order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement** -- Any "earth movement".

However, if eruption, explosion, or effusion of a volcano results in "volcanic action", "we" will pay for the loss or damage caused by that "volcanic action".

If "earth movement" results in fire, "we" will pay for the loss or damage caused by that fire. If "earth movement" (other than eruption, explosion, or effusion of a volcano) results in explosion, "we" will pay for the loss or damage caused by that explosion.

This exclusion does not apply to covered property while in transit.

c. **Flood** -- "Flood".

"We" also do not cover waterborne material carried or otherwise moved by "flood", whether or not driven by wind, including storm surge, or material carried or otherwise moved by mudslide or mudflow.

However, if "flood" results in fire, explosion, or sprinkler leakage, "we" will pay for the loss or damage caused by that fire, explosion, or sprinkler leakage.

This exclusion does not apply to covered property while in transit.

d. **Nuclear Hazard** -- Nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

e. **Sewer, Septic Tank, Sump, Or Drain Backup And Water Below The Surface** --

1) Water or waterborne material that backs up, overflows or is otherwise discharged through a sewer or drain, sump or septic tank, eaves trough or downspout; or
2) water or waterborne material below the surface of the ground, whether naturally or artificially occurring, including but not limited to water or waterborne material that exerts pressure on or flows, seeps, or leaks through or into a building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.

But if sewer, drain, sump, septic tank, eaves trough, or downspout backup and water or waterborne material below the surface results in fire, explosion, or sprinkler leakage, "we" cover the loss or damage caused by that fire, explosion, or sprinkler leakage.

This exclusion does not apply to covered property while in transit.

f. **War And Military Action** --

1) War, including undeclared war or civil war; or
2) a warlike action by a military force, including action taken to prevent or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

Copyright, American Association of Insurance Services, Inc., 2009

3) insurrection, rebellion, revolution, or unlawful seizure of power including action taken by governmental authority to prevent or defend against any of these.

With regard to any action that comes within the "terms" of this exclusion and involves nuclear reaction, nuclear radiation, or radioactive contamination, this War And Military Action exclusion will apply in place of the Nuclear Hazard exclusion.

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

a. **Contamination Or Deterioration** -- "We" do not pay for loss or damage caused by or resulting from contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

b. **Criminal, Fraudulent, Dishonest, Or Illegal Acts** -- "We" do not pay for loss or damage caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by:

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;
4) "your" partners, officers, directors, trustees, joint venturers, or "your" members or managers if "you" are a limited liability company; or
5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

c. **Electrical Currents** -- "We" do not pay for loss or damage caused by or resulting from arcing or by electrical currents other than lightning.

But if arcing or electrical currents other than lightning result in a "specified peril", "we" do cover the loss or damage caused by that "specified peril".

d. **Explosion, Rupture, Or Bursting** -- "We" do not pay for loss or damage caused by or resulting from explosion, rupture, or bursting of steam boilers, steam or gas turbines, steam pipes, or steam engines. This exclusion applies only to loss or damage to the steam boilers, steam or gas turbines, steam pipes, or steam engines in which the loss occurred.

e. **Loss Of Use** -- "We" do not pay for loss or damage caused by or resulting from loss of use, delay, or loss of market.

f. **Mechanical Breakdown** -- "We" do not pay for loss or damage caused by or resulting from any mechanical, structural, or electrical breakdown or malfunction including a breakdown or malfunction resulting from a structural, mechanical, or reconditioning process.

g. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

This exclusion does not apply to covered property in the custody of a carrier for hire.

Copyright, American Association of Insurance Services, Inc., 2009

h. **Pollutants** -- "We" do not pay for loss or damage caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants":

1) unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril"; or
2) except as specifically provided under the Supplemental Coverages - Pollutant Cleanup and Removal.

"We" do cover any resulting loss caused by a "specified peril".

i. **Temperature/Humidity** -- "We" do not pay for loss or damage caused by or resulting from dryness, dampness, humidity, or changes in or extremes of temperature.

But if dryness, dampness, humidity, or changes in or extremes of temperature result in a "specified peril", "we" do cover the loss of damage caused by that "specified peril".

j. **Theft From An Unattended Vehicle** -- "We" do not pay for theft from an unattended vehicle except when it is securely locked, its windows are fully closed, and there is visible evidence that entry into the vehicle was forced.

This exclusion does not apply to covered property in the custody of a carrier for hire.

k. **Voluntary Parting** -- "We" do not pay for loss or damage caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

l. **Wear And Tear** -- "We" do not pay for loss or damage caused by or resulting from wear and tear, marring, or scratching.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **You Must Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

   a. **Payment Of Reasonable Costs** -- "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. "Our" payment of reasonable costs does not increase the "limit".

   b. **We Do Not Pay** -- "We" do not pay for such repairs or emergency measures performed on property that has not been damaged by a peril insured against.

3. **Proof Of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

Copyright, American Association of Insurance Services, Inc., 2009

c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

d. changes in title of the covered property during the policy period; and

e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Actual Cash Value --**The value of covered property will be based on the actual cash value at the time of loss (with a deduction for depreciation).

2. **Pair Or Set** -- The value of a lost or damaged article that is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss To Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "schedule of coverages" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

Copyright, American Association of Insurance Services, Inc., 2009

4. **Coinsurance** --

a. **When Coinsurance Applies** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of the covered property that is indicated on the "schedule of coverages".

b. **How We Determine Our Part Of The Loss** -- "Our" part of the loss is determined using the following steps:

1) multiply the percent indicated on the "schedule of coverages" by the value of the covered property at the time of loss;
2) divide the "limit" for covered property by the result determined in b.1) above;
3) multiply the total amount of loss, after the application of any deductible, by the result determined in b.2) above.

The most "we" pay is the amount determined in b.3) above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

c. **If There Is More Than One Limit** -- If there is more than one "limit" indicated on the "schedule of coverages" for this coverage part, this procedure applies separately to each "limit".

d. **If There Is Only One Limit** -- If there is only one "limit" indicated on the "schedule of coverages" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

e. **When Coinsurance Does Not Apply** -- Conditions for coinsurance do not apply unless a coinsurance percentage is indicated on the "schedule of coverages".

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** --

a. **Proportional Share** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

b. **Excess Amount** -- If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Loss Payment Options** --

a. **Our Options** -- In the event of loss covered by this coverage form, "we" have the following options:

1) pay the value of the lost or damaged property;
2) pay the cost of repairing or replacing the lost or damaged property;
3) rebuild, repair, or replace the property with other property of equivalent kind and quality, to the extent practicable, within a reasonable time; or
4) take all or any part of the property at the agreed or appraised value.

Copyright, American Association of Insurance Services, Inc., 2009

b. **Notice Of Our Intent To Rebuild, Repair, Or Replace** -- "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** --

a. **Adjustment And Payment Of Loss** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

b. **Conditions For Payment Of Loss** -- An insured loss will be payable 30 days after:

1) a satisfactory proof of loss is received; and
2) the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property Of Others** --

a. **Adjustment And Payment Of Loss To Property Of Others** -- Losses to property of others may be adjusted with and paid to:

1) "you" on behalf of the owner; or
2) the owner.

b. **We Do Not Have To Pay You If We Pay The Owner** -- If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits brought by the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the value of covered property, either party may demand that these amounts be determined by appraisal.

If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit To Others** -- Insurance under this coverage will not directly or indirectly benefit anyone having custody of "your" property.

Copyright, American Association of Insurance Services, Inc., 2009

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   a. **Your Death** -- On "your" death, "we" cover the following as an insured:

      1) the person who has custody of "your" property until a legal representative is qualified and appointed; or
      2) "your" legal representative.

      This person or organization is an insured only with respect to property covered by this coverage.

   b. **Policy Period Is Not Extended** -- This coverage does not extend past the policy period indicated on the declarations.

5. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein; or

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration Of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a. all of the "terms" of this coverage have been complied with; and

Copyright, American Association of Insurance Services, Inc., 2009

b. the suit has been brought within two years after "you" first have knowledge of the loss.

If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

## DEFINITIONS

1. "Earth movement" means:

a. earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. landslide, mudslide or mudflow;

c. mine subsidence whether or not the non-natural mine is currently in use;

d. any other movement of earth, including sinking (other than "sinkhole collapse"), shifting, or rising of earth including, but not limited to, erosion, expansion, shrinking, freezing, thawing, improper soil compaction, and movement of water under the surface of the ground that cause cracking, settling, or shifting of foundations, buildings, or structures; or

e. eruption, explosion, or effusion of a volcano.

2. "Flood" means an overflowing or inundation by water of an area that was previously and normally dry or not covered by water, whether caused artificially or naturally, by human or animal forces or by an act of nature. "Flood" includes, but is not limited to:

a. overflow of inland or tidal waters, waves, tidal waves, or tsunamis, or spray that results from any of these, all whether driven by wind or not, including but not limited to storm surge;

b. unusual and rapid accumulation or runoff of surface waters from any source; or

c. mudslides or mudflows if caused by:

1) unusual and rapid accumulation or runoff of surface waters or waves; or
2) currents of water exceeding anticipated cyclical levels.

3. "Limit" means the amount of coverage that applies.

4. "Pollutant" means:

a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

5. "Schedule of coverages" means:

a. all pages labeled "schedule of coverages" or schedules that pertain to this coverage; and

b. declarations or supplemental declarations that pertain to this coverage.

Copyright, American Association of Insurance Services, Inc., 2009

6. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

7. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

   Falling objects does not include loss to:

   a. personal property in the open; or

   b. the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roofs or walls are first damaged by a falling object.

   Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

8. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

9. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow.

   "Volcanic action" does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss or damage to the covered property.



Copyright, American Association of Insurance Services, Inc., 2009

# SCHEDULE OF COVERAGES
## SCHEDULED PROPERTY FLOATER

(The entries required to complete this schedule will be shown below or on the "schedule of coverages".)

## COVERED PROPERTY

| Item No. | Described Property | "Limit" |
|---|---|---|
| | SCHEDULED BOATS - NON-MOTORIZED | $10,000 |
| | SCHEDULED EQUIPMENT** | $273,525 |
| | UNSCHEDULED EQUIPMENT | $10,000 |

## COVERAGE EXTENSIONS

Additional Debris Removal Expenses

## SUPPLEMENTAL COVERAGES

Newly Acquired Property

Pollutant Cleanup And Removal

Copyright, American Association of Insurance Services, Inc., 2012

## DEDUCTIBLE AND COINSURANCE

### DEDUCTIBLE

Deductible Amount $1,000

### COINSURANCE

X Not Applicable

80% 90%
100% Other %

### ADDITIONAL INFORMATION

**AS PER MOST CURRENT SCHEDULE ON FILE WITH CARRIER

Copyright, American Association of Insurance Services, Inc., 2012

This endorsement changes the policy
**-- PLEASE READ THIS CAREFULLY --**

# VIRUS OR BACTERIA EXCLUSION

## DEFINITIONS

**Definitions Amended --**

When "fungus" is a defined "term", the definition of "fungus" is amended to delete reference to a bacterium.

When "fungus or related perils" is a defined "term", the definition of "fungus or related perils" is amended to delete reference to a bacterium.

## PERILS EXCLUDED

The additional exclusion set forth below applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

1. The following exclusion is added under Perils Excluded, item 1.:

   **Virus or Bacteria --**

   "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

   This exclusion applies to, but is not limited to, any loss, cost, or expense as a result

   a. any contamination by any virus, bacterium, or other microorganism; or

   b. any denial of access to property because of any virus, bacterium, or other microorganism.

2. **Superseded Exclusions** -- The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

## OTHER CONDITIONS

**Other Terms Remain in Effect --**

The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.



Copyright, American Association of Insurance Services, Inc., 2006

# LOSS PAYABLE OPTIONS

If indicated on the Loss Payable Schedule, the following conditions apply to the property described on the schedule. The following conditions apply in addition to the policy "terms" which are contained in the Inland Marine Coverage(s).

## LOSS PAYABLE

Any loss will be adjusted with "you" and will be payable to "you" and the loss payee described on the schedule as "your" and their interests appear.

## LENDER'S LOSS PAYABLE

Any loss will be payable to "you" and the loss payee described on the schedule as interests appear. If more than one loss payee is named, they will be paid in order of precedence.

The insurance for the loss payee continues in effect even when "your" insurance may be void because of "your" acts, neglect, or failure to comply with the coverage "terms". The insurance for the loss payee does not continue in effect if the loss payee is aware of changes in ownership or substantial increase in risk and does not notify "us".

If "we" cancel this policy, "we" notify the loss payee at least ten days before the effective date of cancellation if "we" cancel for "your" nonpayment of premium, or 30 days before the effective date of cancellation if "we" cancel for any other reason.

"We" may request payment of the premium from the loss payee, if "you" fail to pay the premium.

If "we" pay the loss payee for a loss where "your" insurance may be void, the loss payee's right to collect that portion of the debt from "you" then belongs to "us". This does not affect the loss payee's right to collect the remainder of the debt from "you". As an alternative, "we" may pay the loss payee the remaining principal and accrued interest in return for a full assignment of the loss payee's interest and any instruments given as security for the debt.

If "we" choose not to renew this policy, "we" give written notice to the loss payee at least ten days before the expiration date of this policy.

## CONTRACT OF SALE

Any loss will be adjusted with "you" and will be payable to "you" and the loss payee described on the schedule as "your" and their interests appear.

The loss payee shown on the schedule is a person or organization "you" have entered into a contract with for the sale of covered property.

When covered property is the subject of a contract of sale, the word "you" also means the loss payee.


Copyright, American Association of Insurance Services, Inc., 2004

# LOSS PAYABLE SCHEDULE

(The entries required to complete this schedule
will be shown below or on the "schedule of coverages".)

Indicate applicable provision:

- [X] Loss Payable
- [ ] Lender's Loss Payable
- [ ] Contract of Sale

## SCHEDULE

| Location Number | Address | Covered Property | Name and Address of Loss Payee |
|---|---|---|---|
| | | | AS REQUIRED BY WRITTEN CONTRACT AND ON FILE WITH COMPANY UNLESS SPECIFICALLY DECLINED. |



Copyright, American Association of Insurance Services,

**– PLEASE READ THIS CAREFULLY –**

# REPLACEMENT COST ENDORSEMENT

## VALUATION

The Actual Cash Value provision under Valuation is replaced by the following:

**Replacement Cost** -- The value of covered property will be based on the replacement cost without any deduction for depreciation.

1. **Replacement Cost Limitation** -- The replacement cost is limited to the cost of repair or replacement with similar materials and used for the same purpose. The payment will not exceed the amount "you" spend to repair or replace the damaged or destroyed property.
2. **Replacement Cost Does Not Apply Until Repair Or Replacement** -- Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced.
3. **Time Limitation** -- "You" may make a claim for actual cash value before repair or replacement takes place, and later for the replacement cost if "you" notify "us" of "your" intent within 180 days after the loss.

   However, "your" failure to notify "us" of "your" intent to make a claim for the replacement cost within 180 days after the loss will not be reason to deny such claim unless "your" failure to meet the notice requirement operates to prejudice "our" rights under this policy.

 **Copyright, American Association of Insurance Services, Inc., 2010**

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 12:01 A.M.: 03/01/2025
Forms a part of Policy No.: AIP0003450404902

# ADDITIONAL PROPERTY COVERED – WATERCRAFT AND PROPERTY WHILE WATERBORNE ENDORSEMENT

This endorsement modifies insurance provided under the following:

SCHEDULED PROPERTY FLOATER

**I.** Paragraph 1. **Aircraft Or Watercraft,** under section **PROPERTY NOT COVERED** is deleted in its entirety and replaced with the following:

**1. Aircraft** – "We" do not cover aircraft.

**II.** Paragraph **6. Waterborne Property**, under section **PROPERTY NOT COVERED** is deleted in its entirety.

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative



Contains copyrighted material of the American Association of Insurance Services.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A.** The following exclusion is added to **Perils Excluded:**

"We" will not pay for loss or damage caused directly or indirectly by, or consisting of the following. Such loss or damage is excluded regardless of any other causes, events, or conditions that contributes concurrently, in any sequence to or aggravate the loss, whether such causes, events, or conditions act to produce the loss before, at the same time as, or after the excluded causes, events, or condition.

**Cyber Incident**

**1.** Unauthorized access to or use of any computer system (including electronic data).

**2.** Malicious code, virus or any other harmful code that is directed at, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

**3.** Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation

**B. Fire Or Explosion Exception**

If a cyber incident as described in Paragraphs **A.1.** through **A.3.** of this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**C. Vandalism**

The following is added to vandalism:

Vandalism does not include a cyber incident as described in Paragraph **A.**

All other terms and conditions of the policy remain the same.

Scott [signature]

Authorized Representative



Contains copyrighted material of the American Association of Insurance Services.

# CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES)

The Crime And Fidelity Coverage Part (Commercial Entities) consists of this Declarations form and the Commercial Crime Coverage Form.

**Named Insured:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.

Coverage is provided only if an amount is shown opposite an Insuring Agreement. If the amount is left blank or "Not Covered" is inserted, such Insuring Agreement and any other reference thereto in this Coverage Part will be deemed to be deleted therefrom.

| Insuring Agreements | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1. Fidelity | | |
| a. Employee Theft | $50,000 | $500 |
| b. ERISA Plan Official Dishonesty | | N/A |
| c. Employee Theft Of Clients' Property | | |
| 2. Forgery Or Alteration | | |
| a. Forgery Of Negotiable Instruments | $100,000 | $1,000 |
| b. Forgery Of Payment Card Instruments | | N/A |
| 3. Inside The Premises - Theft Of Money And Securities | | |
| 4. Inside The Premises - Robbery Or Safe Burglary Of Other Property | | |
| 5. Outside The Premises | | |
| 6. Computer And Funds Transfer Fraud | | |
| 7. Fradulent Impersonation | | |
| 8. Money Orders And Counterfeit Money | | |

**If Added By Endorsement:**

| Insuring Agreement(s) Or Coverage(s) | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| | | |

**Percentage Of Deductible Amount Over Which Losses Must Be Reported:**

**Percentage Of Total Assets Applicable To Subsidiary Acquisitions:**

 © Insurance Services Office, Inc., 2021 

| **Endorsements Forming Part Of This Coverage Part When Issued:** | |
|---|---|
| CR0021(06/22) | CR0247(06/22) |
| **Cancellation Of Prior Insurance Issued By Us:** | |
| **By acceptance of this Coverage Part, you give us notice cancelling prior Policy Numbers , the cancellation to be effective at the time this Coverage Part becomes effective.** | |

 © Insurance Services Office, Inc., 2021 

# COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy:

**1.** The words "you" and "your" refer to:

**a.** The first Named Insured shown in the Declarations; and

**b.** Any "employee benefit plan", "subsidiary" or other entity that is named as an Insured in the Declarations or included as an Insured by endorsement.

The first Named Insured in Paragraph **a.** above will act for itself and for every other Insured for all purposes of this insurance.

**2.** The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.,** which is "discovered" by a "designated person" during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.h.:**

### 1. Fidelity

**a. Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" includes forgery.

**b. ERISA Plan Official Dishonesty**

We will pay for loss of or damage to "money", "securities" and "other property" belonging to an "ERISA employee benefit plan" resulting directly from "fraud or dishonesty" committed by:

**(1)** An "ERISA plan official", whether identified or not; or

**(2)** You, but only if you are a sole proprietor;

acting alone or in collusion with other persons.

**c. Employee Theft Of Clients' Property**

We will pay for loss of or damage to "money", "securities" and "other property" sustained by your "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" includes forgery.

### 2. Forgery Or Alteration

**a.** Forgery Of Negotiable Instruments

**(1)** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(a)** Made or drawn by or drawn upon you; or

 © Insurance Services Office, Inc., 2021 

**(b)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act will be treated the same as the original it replaced.

**(2)** If you are sued for refusing to pay any instrument covered in Paragraph **(1)** above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**b.** Forgery Of Payment Card Instruments

We will pay for loss resulting directly from "forgery" of written instruments required in conjunction with any credit, debit or charge card issued to:

**(1)** You; or

**(2)** Any of your "employees" or "ERISA plan officials";

for business purposes.

**3. Inside The Premises – Theft Of Money And Securities**

We will pay for:

**a.** Loss of "money" and "securities" inside the "premises" or "financial institution premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" or "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

**4. Inside The Premises – Robbery Or Safe Burglary Of Other Property**

We will pay for:

**a.** Loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

We will pay for:

**a.** Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer And Funds Transfer Fraud**

We will pay for:

**a.** Loss resulting directly from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

 © Insurance Services Office, Inc., 2021 

**(2)** Change of "electronic data" or "computer program" within;

any "computer system", provided that the fraudulent entry or fraudulent change causes, with regard to Paragraphs **(1)** and **(2)** above:

**(a)** "Money", "securities" or "other property" to be transferred, paid or delivered to a person, entity or account beyond your control; or

**(b)** Your account at a "financial institution" to be debited or deleted;

without your knowledge or consent.

**b.** Loss resulting directly from a "financial institution" debiting your "transfer account" in reliance upon a "transfer instruction" purportedly issued by you directing the "financial institution" to transfer, pay or deliver "money" or "securities" from that account, but which "transfer instruction" proves to have been fraudulently issued by an imposter without your knowledge or consent.

**7. Fraudulent Impersonation**

We will pay for:

**a.** Loss resulting directly from you having acted upon a "transfer instruction" that was, in fact, issued by a "client" or "vendor", but in which the bank account information or wire transfer instructions of such "client" or "vendor" had been changed by you acting in good faith reliance upon a "change of account request" purportedly issued by an "authorized person" or the "client" or "vendor", but which "change of account request" proves to have been fraudulently issued by an imposter without the knowledge or consent of the "authorized person", "client" or "vendor" and the fraudulent act resulted in you transferring, paying or delivering "money" or "securities" to a person, entity or account beyond your control; or

**b.** Loss resulting directly from you having acted in good faith reliance upon a "transfer instruction" purportedly issued by an "authorized person", "client" or "vendor" and you transferred, paid or delivered "money" or "securities" to a person, entity or account beyond your control, but which "transfer instruction" proves to have been fraudulently issued by an imposter without the knowledge or consent of the "authorized person", "client" or "vendor".

**8. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from you having accepted in good faith in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss will not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence", unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1. Exclusions Applicable To All Insuring Agreements**

This insurance does not cover:

**a. Acts Committed By You, Your Partners Or Members**

Loss resulting from "theft" or any other fraudulent or dishonest act committed by:

**(1)** You; or

 © Insurance Services Office, Inc., 2021 

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons, except when covered under Insuring Agreement **A.1.b.**

**b. Acts Committed By Your Employees, ERISA Plan Officials, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other fraudulent or dishonest act committed by any of your "employees", "ERISA plan officials", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.a., A.1.b.** or **A.1.c.**

**c. Acts Committed By Your Employees Or ERISA Plan Officials Prior To The Policy Period**

Loss caused by any "employee" or "ERISA plan official" if the "employee" or "ERISA plan official" had also committed "theft" or any other fraudulent or dishonest act prior to the effective date of this insurance and you or a "designated person", not in collusion with the "employee" or "ERISA plan official", learned of such "theft" or fraudulent or dishonest act prior to the Policy Period shown in the Declarations.

**d. Confidential Or Personal Information**

**(1)** The disclosure of your or another person's or entity's confidential or personal information; or

**(2)** The use of another person's or entity's confidential or personal information, except that this Paragraph (2) does not apply to loss otherwise covered under this insurance that results directly from the use of your or an "employee benefit plan" participant's confidential or personal information.

For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, "client", customer or "vendor" information, financial information, payment card information, health information, retirement or health savings account information or any other type of nonpublic information.

**e. Data Security Breach**

Fees, costs, fines, penalties and other expenses incurred by you, which are related to the access to or disclosure of another person's or entity's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, "client", customer or "vendor" information, financial information, payment card information, health information, retirement or health savings account information or any other type of nonpublic information.

**f. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**g. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance; or

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**h. Kidnap, Ransom, Extortion And Other Unlawful Demands**

**(1)** Loss resulting from the surrender of ransom in response to an unlawful demand including, but not limited to, an unlawful demand arising out of:

**(a)** An actual or alleged kidnap or threat to do bodily harm to any person, other than "robbery" covered under this insurance;

 © Insurance Services Office, Inc., 2021 

**(b)** A threat to do damage to any property or to contaminate, pollute or render substandard your products or goods;

**(c)** A threat to introduce a denial of service attack into any "computer system";

**(d)** A threat to introduce a virus or other malicious instruction into any "computer system", which would encrypt, damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system"; or

**(e)** A threat to access, download, disseminate, divulge or utilize:

**(i)** Your information or the information of any other natural person or entity; or

**(ii)** Weaknesses in the source code within any "computer system";

except when covered under Insuring Agreement **A.1.a.** or **A.1.b.**

**(2)** Loss resulting from payment of any kind in response to a denial of service attack, ransomware, virus or other malicious instruction introduced into any "computer system" that denies or restricts access, encrypts, downloads or otherwise damages, destroys or corrupts any "computer system", "electronic data" or "computer program", except when covered under Insuring Agreement A.1.a. or A.1.b.

**(3)** Fees, costs and expenses incurred by you arising out of any act or event in Paragraph (1) or (2) above.

**i. Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you, which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**j. Nuclear, Biological Or Chemical Hazard**

Loss or damage resulting from the dispersal or application of pathogenic or poisonous biological or chemical materials, nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident, however caused.

**k. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**l. Virtual Currency**

Loss involving virtual currency of any kind, by whatever name known, whether actual or fictitious including, but not limited to, digital currency, cryptocurrency or any other type of electronic currency.

**m. War And Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2. Additional Exclusions Applicable To Specific Insuring Agreements**

**a.** Insuring Agreement **A.1.a.** does not cover:

**(1) ERISA Employee Benefit Plans**

Loss of property belonging to any "ERISA employee benefit plan".

**(2) Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(a)** An inventory computation; or

 © Insurance Services Office, Inc., 2021 

**(b)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(3) Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**(4) Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel a warehouse receipt or any papers connected with it.

**b.** Insuring Agreement **A.1.b.** does not cover:

**Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**c.** Insuring Agreement **A.1.c.** does not cover:

**(1) Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

However, where your "client" establishes wholly apart from such computations that it has sustained a loss resulting from "theft" caused by an identified "employee", then you may offer your "client's" inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(2) Trading**

Loss resulting from trading, whether in your "client's" name or in a genuine or fictitious account.

**(3) Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel a warehouse receipt or any papers connected with it.

**d.** Insuring Agreement **A.2.b.** does not cover:

**Non-compliance With Payment Card Issuer's Requirements**

Loss arising from any credit, debit or charge card if you have not complied fully with the provisions, conditions or other terms under which the card was issued.

**e.** Insuring Agreements **A.3., A.4.** and **A.5.** do not cover:

**(1) Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**(2) Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**(3) Fire**

Loss or damage resulting from fire, however caused, except:

**(a)** Loss of or damage to "money" and "securities"; and

**(b)** Loss from damage to a safe or vault.

 © Insurance Services Office, Inc., 2021 

**(4) Money Operated Devices**

Loss of property contained in any money operated device, unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**(5) Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semitrailers or equipment and accessories attached to them.

**(6) Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property", by vandalism or malicious mischief.

**(7) Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any fraudulent or dishonest act to voluntarily part with title to or possession of any property.

**f.** Insuring Agreement **A.6.** does not cover:

**(1) Authorized Access**

Loss resulting from a fraudulent:

**(a)** Entry of "electronic data" or "computer program" into; or

**(b)** Change of "electronic data" or "computer program" within;

any "computer system" by an "employee" or other person or entity with authorized access to that "computer system".

**(2) Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification or other cards, or the information contained on such cards.

**(3) Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**(4) Fraudulent Instructions**

Loss resulting from an "employee" or other person or entity acting upon any kind of instruction to:

**(a)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(b)** Debit or delete your account;

which instruction proves to be fraudulent, except for a "financial institution" acting upon an instruction to debit your "transfer account" when covered under Insuring Agreement **A.6.b.**

**(5) Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

## E. Conditions

The following conditions apply in addition to the Common Policy Conditions:

### 1. Conditions Applicable To All Insuring Agreements

**a. Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through:

**(1)** Consolidation or merger with; or

**(2)** Purchase or acquisition of assets or liabilities of;

 © Insurance Services Office, Inc., 2021 

another entity, such "premises" and "employees" will automatically be covered under this insurance.

Notice to us of an increase in the number of "premises" or "employees" is not required and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

**b. Cancellation Or Termination**

The following applies in addition to the Cancellation provision in the Common Policy Conditions:

**(1) Coverage Termination**

**(a)** This insurance terminates in its entirety immediately upon:

**(i)** The effective date of a "change of control" of the first Named Insured; or

**(ii)** The voluntary dissolution or liquidation of the first Named Insured.

**(b)** This insurance terminates as to any Insured, other than the first Named Insured, immediately upon:

**(i)** The effective date of a "change of control" of that Insured; or

**(ii)** The voluntary dissolution or liquidation of that Insured.

If this insurance terminates for any reason specified in Paragraph **(a)** or **(b)** above, we will send the first Named Insured any premium refund due. The refund will be pro rata.

**(2) Individual Insured Or Coverage Cancellation**

We, or the first Named Insured shown in the Declarations, may cancel this insurance as to any Insured, or on any Insuring Agreement or coverage in accordance with the provisions of the Cancellation Common Policy Condition.

**(3) Termination Of Coverage As To Any Employee Or ERISA Plan Official**

This insurance terminates as to any "employee" or "ERISA plan official":

**(a)** As soon as:

**(i)** A "designated person"; or

**(ii)** An "employee" in your Human Resources Department or its equivalent;

not in collusion with the "employee" or "ERISA plan official", learns of "theft" or any other fraudulent or dishonest act committed by the "employee" or "ERISA plan official", whether before or after becoming employed by you; or

**(b)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**d. Consolidation – Merger – Acquisition**

**(1)** Except as provided in Paragraph (2) below, if you consolidate or merge with another entity where you are the surviving entity, or you purchase or acquire the assets or liabilities of another entity:

**(a)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or


© Insurance Services Office, Inc., 2021

acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(b)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance will apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to loss involving such consolidation, merger or purchase or acquisition of assets or liabilities must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

Any "employee benefit plan" acquired in such consolidation, merger or purchase or acquisition will automatically be included as an Insured under this insurance.

**(2)** For "subsidiaries" you acquire in which you own greater than 50% of the voting stock or voting rights, the coverage provided by this insurance will automatically apply to loss sustained by such acquired "subsidiary" resulting directly from an "occurrence" taking place at any time which is "discovered" by a "designated person" during the Policy Period shown in the Declarations, except as provided in the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.,** or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.h.,** provided that:

**(a)** The assets of the acquired "subsidiary" do not exceed the Percentage Of Total Assets Applicable To Subsidiary Acquisitions shown in the Declarations, which is based on your total assets as reflected in your most recent fiscal year-end consolidated financial statements immediately preceding the effective date of this insurance; and

**(b)** The acquired "subsidiary" has not had any paid or reported claims of the type covered under this insurance for the three-year period prior to the date of such acquisition.

You are not required to provide notice of the acquisition to us and you are not required to pay any additional premium for the remainder of the Policy Period shown in the Declarations.

Any "employee benefit plan" of an acquired "subsidiary" will automatically be included as an Insured under this insurance.

**e. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**f. Duties In The Event Of Loss**

Upon "discovery" of loss or a situation that may result in loss of or damage to "money", "securities" or "other property":

**(1)** Except as provided in Paragraph **(2)** below, you must:

**(a)** Notify us as soon as possible;

**(b)** Give us a detailed, sworn proof of loss within 120 days;

**(c)** Cooperate with us in the investigation and settlement of any claim;

**(d)** Produce for our examination all pertinent records;

**(e)** Submit to examination under oath at our request and give us a signed statement of your answers; and

**(f)** Secure all of your rights of recovery against any person or entity responsible for the loss and do nothing to impair those rights.

**(2)** If a Deductible Amount applies to the loss and a percentage is shown in the Declarations as the Percentage Of Deductible Amount Over Which Losses Must Be Reported, you do not have to notify us if the amount of loss at the time of "discovery" does not exceed such percentage of the applicable Deductible Amount.

However, if you later learn that the amount of such loss exceeds, or may reasonably be expected to exceed, the percentage of the applicable Deductible Amount, then you must:

**(a)** Notify us no later than 15 days from the earliest of:

**(i)** The date you learned that such loss exceeded the percentage of the applicable Deductible Amount;

**(ii)** The effective date of termination or cancellation of this insurance; or

 © Insurance Services Office, Inc., 2021 

**(iii)** The termination of the period of time provided in the Extended Period To Discover Loss Condition **E.1.h.(1)**;

**(b)** Give us a detailed, sworn proof of loss within 120 days from the date you gave us notice; and

**(c)** Comply with the requirements set forth in Paragraphs **(1)(c)** through **(1)(f)** above.

**(3)** If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.a., A.1.b., A.1.c. or A.2.**) involves a violation of law, you must notify the local law enforcement authorities.

**g. Employee Benefit Plans**

Any payment we make for loss sustained by any "employee benefit plan" will be made to the plan sustaining the loss and will fully release us on account of such loss.

**h. Extended Period To Discover Loss**

We will pay for loss that you sustain prior to the effective date of cancellation or termination of this insurance in its entirety, as to any Insured or on any Insuring Agreement or coverage, which is "discovered" by a "designated person":

**(1)** Except as provided in Paragraph **(2)** below, no later than one year from the date of that cancellation or termination. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you or that Insured, whether from us or another insurer, which replaces in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than one year from the date of that cancellation or termination with regard to any "ERISA employee benefit plan". However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you or that "ERISA employee benefit plan", whether from us or another insurer, that provides, at a minimum, the same coverage afforded by Insuring Agreement **A.1.b.** in an amount that is no less than the minimum amount of coverage required under ERISA and which also provides that such coverage applies to loss sustained prior to its effective date.

**i. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance.

**(2)** If a "designated person" of any Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(5)** Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that plan, will fully release us on account of such loss.

**j. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within two years from the date the loss was "discovered".

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**k. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**l. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

 © Insurance Services Office, Inc., 2021 

**(1) Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(a)** Partly during the Policy Period shown in the Declarations; and

**(b)** Partly during the policy period(s) of any prior cancelled or terminated insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation or termination of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the policy period(s) of any prior cancelled or terminated insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided that:

**(a)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the policy period(s) of any other prior insurance.

**(3)** In settling loss under Paragraphs **(1)** and **(2)** above:

**(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other deductible amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this condition:

**Example Number 1**

The Insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B,** $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(b)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy A of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B,** $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy A = $25,000).

The most we will pay for this loss is $150,000.

**Example Number 3**

The Insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

**Policy A**

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

**Policy C**

Issued prior to Policy **B.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

**Policy D**

Issued prior to Policy **C.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $350,000; under Policy **B,** $250,000; under Policy **C,** $600,000; and under Policy **D,** $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(b)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).


© Insurance Services Office, Inc., 2021

**(c)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

**(d)** We will not make any further payment under Policy **D**, as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for this loss is $1,000,000.

**m. Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate**

**(1)** If loss is "discovered" by a "designated person" during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the policy period of any prior cancelled or terminated insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided that:

**(a)** This insurance became effective at the time of cancellation or termination of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

**(2)** In settling loss subject to this condition:

**(a)** The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled or terminated insurance.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled or terminated insurance.

**(3)** The insurance provided under this condition is subject to the following:

**(a)** If loss covered under this condition is also partially covered under the Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate Condition **E.1.l.,** the amount recoverable under this condition is part of, not in addition to, the amount recoverable under Condition **E.1.l.**

**(b)** For loss covered under this condition that is not subject to Paragraph **(a)** above, the amount recoverable under this condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

**(i)** This insurance as of its effective date; or

**(ii)** The prior cancelled or terminated insurance had it remained in effect.

**n. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(a)** above, we will only pay for the amount of loss that exceeds:

**(i)** The limit of insurance and deductible amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the limit of insurance and deductible amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

 © Insurance Services Office, Inc., 2021 

**(b)** However, if loss covered under this insurance is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any deductible amount applicable to that other insurance.

**o. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That is held by you in any capacity; or

**(3)** For which you are legally liable, provided that you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or entity. Any claim for loss that is covered under this insurance must be presented by you.

**p. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**q. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, will be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2) Recoveries do not include any recovery:**

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**r. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world.

**s. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or entity for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**t. Valuation – Settlement**

The value of any loss for purposes of coverage under this insurance will be determined as follows:

**(1) Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(a)** At face value in the "money" issued by that country; or

**(b)** In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(2) Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(a)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or


© Insurance Services Office, Inc., 2021

**(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**(i)** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

**(ii)** Limit of Insurance applicable to the "securities".

**(3) Property Other Than Money And Securities**

**(a)** Loss of or damage to property other than "money" and "securities" for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The Limit of Insurance applicable to the lost or damaged property;

**(ii)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

**(iii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **(a)** above:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage occurred.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(c)** We will, at your option, pay for loss or damage to such property:

**(i)** In the "money" of the country in which the loss or damage was sustained; or

**(ii)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(d)** Any property that we pay for or replace becomes our property.

**2. Additional Conditions Applicable To Specific Insuring Agreements**

**a. Under Insuring Agreement A.1.b.**

**(1) Limit Of Insurance**

You are responsible for selecting a Limit of Insurance for "ERISA employee benefit plans" covered under Insuring Agreement **A.1.b.** that is equal to, or greater than, the minimum amounts of coverage required under ERISA as set forth in Paragraphs **(a)** and **(b)** below.

**(a)** For "ERISA employee benefit plans" holding no employer securities:

**(i)** 10% of the amount of funds handled as of the effective date of this insurance; or

**(ii)** $500,000;

whichever is less, but in no event less than $1,000.

**(b)** For "ERISA employee benefit plans" holding employer securities:

**(i)** 10% of the amount of funds handled as of the effective date of this insurance; or

**(ii)** $1,000,000;

whichever is less, but in no event less than $1,000.

If two or more "ERISA employee benefit plans" are covered under Insuring Agreement **A.1.b.,** the Limit of Insurance must be written in an amount sufficient to cover each plan as if they were separately insured.

If at the time of "discovery" of loss sustained by an "ERISA employee benefit plan", the Limit of Insurance for Insuring Agreement **A.1.b.** no longer complies with the minimum amount of coverage required for such plan, we will automatically increase the Limit of Insurance for such plan so as to equal such required minimum

 © Insurance Services Office, Inc., 2021 

amount of coverage. You are not required to pay any additional premium for the increase in the Limit of Insurance.

If the minimum amounts of coverage required under ERISA are amended after the effective date of this insurance, the amended minimum amounts of coverage will automatically apply to the "ERISA employee benefit plans" covered under Insuring Agreement **A.1.b.** You are not required to pay any additional premium for the remainder of the Policy Period shown in the Declarations.

**(2) Payment For Loss Sustained By Multiple Plans**

Any payment we make for loss:

**(a)** Sustained by two or more "ERISA employee benefit plans"; or

**(b)** Of commingled "money", "securities" or "other property" of two or more "ERISA employee benefit plans";

will be made to each such plan sustaining loss in the proportion that the amount of coverage required under ERISA for each such plan bears to the total amount of coverage on all plans sustaining loss.

**(3) Deductible Amount**

Section **C.** Deductible does not apply to loss sustained by an "ERISA employee benefit plan" covered under Insuring Agreement **A.1.b.**

**b. Under Insuring Agreement A.1.c.**

The **Ownership Of Property; Interests Covered** Condition **E.1.o.** is replaced by the following:

**Ownership Of Property; Interests Covered**

The property covered under this Insuring Agreement is limited to property:

**(1)** That your "client" owns or leases;

**(2)** That your "client" holds for others in any capacity; or

**(3)** For which your "client" is legally liable, provided that your "client" was liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or entity, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by you.

**c. Under Insuring Agreement A.2.**

**(1) Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**(2) Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**(3) Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Condition Applicable To Insuring Agreement A.5.**

**Armored Motor Vehicle Companies**

We will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**e. Under Insuring Agreement A.7.**

**(1) Change Of Account Requests**


© Insurance Services Office, Inc., 2021

You must make a reasonable effort to verify, but not through email, the authenticity of any "change of account request" with:

**(a)** The "client" or "vendor" purporting to have issued the "change of account request"; or

**(b)** An "authorized person", but not the "authorized person" purporting to have issued the "change of account request";

and contemporaneously document the result of your effort before transferring any property.

**(2) Transfer Instructions**

You must make a reasonable effort to verify, but not through email, the authenticity of any "transfer instruction" with:

**(a)** The "client" or "vendor" purporting to have issued the "transfer instruction"; or

**(b)** An "authorized person", but not the "authorized person" purporting to have issued the "transfer instruction";

and contemporaneously document the result of your effort before transferring any property.

**F. Definitions**

**1.** "Authorized person" means:

**a.** Any "employee", partner, "member", "manager", director or trustee;

**b.** Any "ERISA plan official"; or

**c.** You (but only if you are a sole proprietor);

who, with regard to Paragraphs **a., b.** and **c.** above, has the authority to:

**(1)** Act upon "change of account requests" or direct others to act upon such requests; or

**(2)** Issue "transfer instructions" or direct others to issue such instructions.

**2.** "Change of account request" means an instruction received by you, which is transmitted:

**a.** By email, text message, instant message, telefacsimile, telephone or other electronic means; or

**b.** In writing;

directing you to change a "client's" or "vendor's" bank account information or wire transfer instructions.

**3.** "Change of control" means:

**a.** The acquisition of any Insured of more than 50% of its assets by an entity other than another Insured, or the merger or consolidation of any Insured into or with an entity other than another Insured, such that the acquired Insured is not the surviving entity; or

**b.** The obtaining by any person, entity or affiliated group of persons or entities of the right to:

**(1)** Elect, appoint or designate more than 50% of the board of directors, board of trustees or functional equivalent thereof, of any Insured; or

**(2)** Exercise a majority control of the board of directors, board of trustees or a functional equivalent thereof, of any Insured.

**4.** "Client" means any natural person or entity to whom you provide goods or services in exchange for a fee or pursuant to a written agreement.

**5.** "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enables the computer or devices to receive, process, store or send "electronic data".

**6.** "Computer system" means:

**a.** Any computer, including transportable or handheld devices, electronic storage devices and related peripheral components;

**b.** Any systems and applications software; and


© Insurance Services Office, Inc., 2021

**c.** Any related telecommunications networks, including the Internet, connected to or used in conjunction with such computer or devices:

which, with regard to Paragraphs **a.**, **b.** and **c.** above:

**(1)** Collects, transmits, processes, stores or retrieves "electronic data"; and

**(2)** Is:

**(a)** Owned, leased or operated by you;

**(b)** Owned and operated by an "employee" who has agreed in writing to your personal device use policy; or

**(c)** Operated by an authorized third party while performing services for you, but only with respect to your "electronic data".

**7.** "Counterfeit money" means an imitation of "money", which is intended to deceive and to be taken as genuine.

**8.** "Custodian" means you, or any of your partners, "members" or "employees" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**9.** "Designated person" means:

**a.** Any insurance risk manager;

**b.** Any partner, "member", "manager", director or trustee;

**c.** Any elected, appointed or otherwise titled officer;

**d.** The highest-ranking "employee" at the "premises" where such "employee" performs the majority of his or her duties; or

**e.** Any administrator, fiduciary, director, trustee, officer or manager of an "employee benefit plan";

of any Insured.

**10.** "Discovery", "discover" or "discovered" means the time when a "designated person" first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discovery", "discover" or "discovered" also means the time when a "designated person" first receives notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**11.** "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**12.** "Employee":

**a.** Means:

**(1)** Any natural person:

**(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other fraudulent or dishonest act committed by the "employee";

**(b)** Whom you compensate directly by salary, wages or commissions; and

**(c)** Whom you have the right to direct and control while performing services for you;

**(2)** Any natural person who is furnished temporarily to you:

**(a)** To substitute for a permanent "employee" defined in Paragraph **(1)** above, who is on leave; or

**(b)** To meet seasonal or short-term workload conditions;

while that person is subject to your direction and control and performing services for you;


© Insurance Services Office, Inc., 2021

**(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary "employee" defined in Paragraph **(2)** above;

**(4)** Any natural person who is:

**(a)** An administrator, director, trustee, manager or "employee", except an administrator or manager who is an independent contractor, of a "Non-ERISA employee benefit plan"; or

**(b)** A director, trustee or "employee" of an Insured sponsoring a "Non-ERISA employee benefit plan", while that person is engaged in handling "money", "securities" or "other property" of the plan;

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained by you as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties;

**(7)** Any natural person employed by an entity merged or consolidated with you prior to the effective date of this insurance; and

**(8)** Any natural person who is your "manager", director or trustee while:

**(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors, board of trustees or functional equivalent thereof, to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** Does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **a.** above.

**13.** "Employee benefit plan" means any "ERISA employee benefit plan" or "Non-ERISA employee benefit plan":

**a.** Shown in the Declarations as the first Named Insured; or

**b.** Included as an Insured and is sponsored:

**(1)** Solely by another Insured; or

**(2)** Jointly by another Insured and an employee organization, including a labor organization, solely for the benefit of that Insured's "employees".

**14.** "ERISA employee benefit plan" means any welfare or pension benefit plan that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**15.** "ERISA plan official":

**a.** Means any natural person who is:

**(1)** An administrator, fiduciary, director, trustee, manager or "employee" of an "ERISA employee benefit plan"; or

**(2)** A director, trustee or "employee" of an Insured sponsoring an "ERISA employee benefit plan", while that person is engaged in handling "money", "securities" or "other property" of such plan.

**b.** Does not mean:

Any agent, broker, financial institution, registered representative, investment advisor, independent contractor or representative of the same general character.

**16.** "Financial institution" means:

**a.** With regard to Insuring Agreement **A.3.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

**(2)** An insurance company.

**b.** With regard to Insuring Agreement **A.6.:**

 © Insurance Services Office, Inc., 2021 

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

**(2)** An insurance company; or

**(3)** A stock brokerage firm or investment company.

**c.** For Insuring Agreements other than Insuring Agreements **A.3.** and **A.6.,** any financial institution.

**17.** "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution" listed in Paragraph **16.a.**

**18.** "Forgery" means the signing of the name of another person or entity with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**19.** "Fraud or dishonesty" means larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion, willful misapplication or other fraudulent or dishonest act, including any act or arrangement prohibited by title 18, section 1954 of the U.S. Code.

**20.** "Manager" means a natural person serving in a directorial capacity for a limited liability company.

**21.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

**22.** "Messenger" means you, or your relative, or any of your partners, "members" or "employees" while having care and custody of property outside the "premises".

**23.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value;

**b.** Traveler's checks and money orders held for sale to the public; and

**c.** In addition, includes:

**(1)** Under Insuring Agreements **A.1.a., A.1.b., A.1.c.** and **A.2.,** deposits in your account at any "financial institution"; and

**(2)** Under Insuring Agreement A.6., deposits in your account at any "financial institution" listed in Paragraph **F.16.b.**

**24.** "Non-ERISA employee benefit plan" means any welfare or pension benefit plan other than an "ERISA employee benefit plan".

**25.** "Occurrence" means:

**a.** Under Insuring Agreements **A.1.a. and A.1.c.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts, whether or not related; or

**(3)** A series of acts, whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

**b.** Under Insuring Agreement **A.1.b.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts, whether or not related; or

**(3)** A series of acts, whether or not related;

committed by an "ERISA plan official" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

**c.** Under Insuring Agreement **A.2.:**

 © Insurance Services Office, Inc., 2021 

**(1)** An individual act;

**(2)** The combined total of all separate acts, whether or not related; or

**(3)** A series of acts, whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

**d.** Under all other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events, whether or not related; or

**(3)** A series of acts or events, whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under the Loss Sustained During Prior Insurance Conditions **E.1.l.** and **E.1.m.**

**26.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this insurance.

**27.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**28.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**29.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**30.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**31.** "Subsidiary":

**a.** Means any entity covered under this insurance:

**(1)** In which on or before the effective date of this insurance you own, directly or indirectly, greater than 50% of the outstanding securities or voting rights representing the present right to elect, appoint, or exercise a majority control over such entity's board of directors, board of trustees or functional equivalent thereof; or

**(2)** That you form or acquire during the Policy Period shown in the Declarations in which you own, directly or indirectly, greater than 50% of the outstanding securities or voting rights representing the present right to elect, appoint or exercise a majority control over such entity's board of directors, board of trustees or functional equivalent thereof, subject to Paragraph **E.1.d.(2)** of the Consolidation – Merger – Acquisition Condition.

**b.** Does not mean:

Any joint venture or partnership in which you have an ownership interest, unless the joint venture or partnership is added as an Insured by endorsement.

 © Insurance Services Office, Inc., 2021 

**32.** "Theft" means:

**a.** The unlawful taking of property to the deprivation of the Insured; or

**b.** Solely with regard to Insuring Agreement **A.1.c.,** the unlawful taking of property to the deprivation of a "client".

**33.** "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities".

**34.** "Transfer instruction" means:

**a.** With regard to Insuring Agreement **A.6.b.,** an instruction received by a "financial institution", which is transmitted:

**(1)** By email, text message, instant message, telefacsimile, telephone or other electronic means; or

**(2)** In writing, other than an instrument covered under Insuring Agreement **A.2.;**

directing the "financial institution" to transfer, pay or deliver "money" or "securities" from your "transfer account" to a person, entity or account beyond your control.

**b.** With regard to Insuring Agreement **A.7.,** an instruction received by you, which is transmitted:

**(1)** By email, text message, instant message, telefacsimile, telephone or other electronic means; or

**(2)** In writing;

directing you to transfer, pay or deliver "money" or "securities" to a person, entity or account beyond your control.

**35.** "Vendor" means a natural person or entity that provides or has provided goods or services to you pursuant to a written agreement but does not include any financial institution or armored motor vehicle company.

**36.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

 © Insurance Services Office, Inc., 2021 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY
COMMERCIAL FIDELITY AND FORGERY POLICY
GOVERNMENT CRIME POLICY
GOVERNMENT FIDELITY AND FORGERY POLICY
KIDNAP/RANSOM AND EXTORTION POLICY

**A.** Under the Commercial Crime Policy and Commercial Fidelity And Forgery Policy, Paragraph **(b)** of **(1) Policy Cancellation** under the **Cancellation Or Termination** Condition is replaced by the following:

**(b)** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

**B.** Under the Commercial Crime Policy, Commercial Fidelity And Forgery Policy, Government Crime Policy and Government Fidelity And Forgery Policy, Paragraph **(1)(e)** of the **Duties In The Event Of Loss** Condition is replaced with the following:

**(e)** Submit to examination under oath at our request and give us a signed statement of your answers. A parent or guardian may be present during any examination of a minor; and

**C.** Under the Commercial Crime Policy, Commercial Fidelity And Forgery Policy, Government Crime Policy and Government Fidelity And Forgery Policy, the following is added to **(1) Policy Cancellation** under the **Cancellation Or Termination** Condition:

**(g)** If this Policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this Policy solely because the policyholder is an elected official.

**(h)** If this Policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(i)** Fraud in obtaining coverage;

**(ii)** Failure to pay premiums when due;

**(iii)** An increase in hazard within the control of the Insured which would produce an increase in rate;

**(iv)** Loss of our reinsurance covering all or part of the risk covered by the Policy; or

**(v)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**D.** Under the Kidnap/Ransom And Extortion Policy, Paragraph **b.(2)** of the **Cancellation Of Policy** Condition is replaced with the following:

**(2)** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

**E.** Under the Kidnap/Ransom And Extortion Policy, Paragraph **(8)** of the **Duties In The Event Of An Occurrence** Condition is replaced with the following:

**(8)** Submit to examination under oath at our request and give us a signed statement of your answers. A parent or guardian may be present during any examination of a minor; and

**F.** Under the Kidnap/Ransom And Extortion Policy, the following is added to the **Cancellation Of Policy** Condition:

 © Insurance Services Office, Inc., 2021 

**(7)** If this Policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this Policy solely because the policyholder is an elected official.

**(8)** If this Policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

**(a)** Fraud in obtaining coverage;

**(b)** Failure to pay premiums when due;

**(c)** An increase in hazard within the control of the Insured which would produce an increase in rate;

**(d)** Loss of our reinsurance covering all or part of the risk covered by the Policy; or

**(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**G.** The following is added and supersedes any other provision to the contrary:

**Nonrenewal**

**1.** We may elect not to renew this Policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this Policy solely because the policyholder is an elected official.

**2.** If we elect not to renew this Policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, not later than the 60th day before the expiration date. If notice is mailed or delivered later than the 60th day before the expiration date, this Policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's rate.

**H.** The following is added to Section **E. Conditions:**

**Claims Handling**

**1.** Not later than 15 days after we receive written notice of claim, we will:

**a.** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**b.** Begin any investigation of the claim; and

**c.** Request all items, statements, and forms that we reasonably believe, at that time, will be required from you. We will supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**2.** We will notify you in writing as to whether:

**a.** The claim or part of the claim will be paid;

**b.** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**c.** More information is necessary; or

**d.** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in Paragraphs **2.a.** through **2.d.,** not later than 15 business days after the date we receive all items, statements, and forms we required to secure final proof of loss.
If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim not later than 45 days after the date of such notice.

**3.** We will pay for covered loss or damage not later than the fifth business day after we have notified you that payment of the claim or part of the claim will be made.

However, if payment of the claim or part of the claim is conditioned on your performance of an act, we will make payment not later than the fifth business day after the date the act is performed.

**4.** The term "business day", as used in this endorsement, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

 © Insurance Services Office, Inc., 2021 

**I.** The **Legal Action Against Us** Condition is replaced by the following:

**Legal Action Against Us**

You may not bring any legal action against us involving loss unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

**J.** Under the Government Crime Policy and Government Fidelity And Forgery Policy, Paragraph **(b)** of **(1) Policy Cancellation** under the **Cancellation Or Termination** Condition is replaced by the following:

**(b)** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

**(i)** If this Policy has been in effect for 90 days or less, we may cancel for any reason except that, under provisions of the Texas Insurance Code, we may not cancel this Policy solely because the policyholder is an elected official.

**(ii)** If this Policy has been in effect for more than 90 days, we may cancel this Policy if:

**i.** The Named Insured does not pay any portion of the premium when due;

**ii.** The Insured submits a fraudulent claim;

**iii.** The Texas Department of Insurance determines that continuation of the Policy would result in a violation of the Insurance Code or other law governing the business of insurance in the state; or

**iv.** There is an increase in the hazard covered by the Policy that is within the control of the Insured and that would produce an increase in the premium rate of the Policy.

**K.** Under the Government Crime Policy and Government Fidelity And Forgery Policy, the following is added and supersedes any other provision to the contrary:

**Nonrenewal**

If we elect not to renew this Policy, we will mail or deliver to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 30 days before the expiration date.

 © Insurance Services Office, Inc., 2021 

# BANNER PAGE

**USER ID: LNIGAM**
**USER NAME: LORENCE NIGAM DISCARD**

**PRODUCT: 335**

**DIVISION: Leisure**

**DATE ACCEPTED: 03/13/2025 00:03:00**

**INSURED: CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.**

**ENDORSEMENT NO : 0**

**POLICY NO : AIX0003450405002**

**COPY FOR: missing**

**POLICY STATE: TX**

**EMAIL: YES**

EXHIBIT
J

K&K INSURANCE

insuring the world's fun ®

03/21/2025

BILL HERTEL
HERTEL INSURORS GROUP, LLP
8500 BLUFFSTONE COVE, SUITE B 201
AUSTIN, TX 78759

Re: Policy Number: AIX0003450405002
CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.

Dear Bill,

Thank you for providing the opportunity for K&K Insurance to serve your client's insurance needs.

Enclosed is the insurance coverage document(s). Please carefully review the coverages, limits and exclusions and contact me immediately if changes or additions are necessary. An additional premium or a credit may occur for any changes.

Premium should be remitted to our office in accordance with the payment schedule upon which we have agreed.

Sincerely,

Lena Massie

Lena Massie
Underwriting Professional II

Enclosure

1712 Magnavox Way, P.O. Box 2338
Fort Wayne, IN 46801-2338
800-637-4757 Fax: 260-459-5866
**www.kandkinsurance.com**
California License #0334819

K&K INSURANCE
1712 Magnavox Way P.O. Box 2338
Fort Wayne, Indiana 46801
PH (800) 237-2917
Fax (312) 381-9077
http://www.kandkinsurance.com

# K&K INCIDENT REPORT

(PLEASE PRINT)

| | |
|---|---|
| NATURE | ☐ BODILY INJURY ☐ PROPERTY DAMAGE ☐ OTHER ______ |
| TIME & PLACE OF INCIDENT | DATE: ______ TIME: ______ ☐ AM ☐ PM<br>EVENT NAME: ______<br>EVENT TYPE: ______ SANCTIONED BY: ______<br>LOCATION: ______ |
| HAPPENED TO | NAME: ______ SSN: ______<br>DATE OF BIRTH: ______ SEX: ☐ MALE ☐ FEMALE PHONE: ( ) ______<br>ADDRESS: ______<br>CITY: ______ STATE: ______ ZIP: ______ |
| FUNCTION | AS: ☐ ATHLETE ☐ PARTICIPANT ☐ VOLUNTEER ☐ SPECTATOR ☐ BYSTANDER ☐ OFFICIAL<br>☐ OTHER: ______ |
| APPARENT INJURY OR DAMAGE | BODY PART: ______<br>CONDITION: (Laceration, Concussion, Sprain, Fracture, Etc.): ______<br>☐ ON-SITE CARE ONLY, BY (PHYSICIAN) (EMT) (TRAINER) OTHER: ______<br>☐ AMBULANCE, TAKEN TO: ______ CITY: ______<br>☐ FATALITY |
| OCCASION | WHAT WAS THE SITUATION AND EXACT LOCATION AT THE TIME OF THE INCIDENT? ______ |
| INCIDENT DESCRIPTION | DESCRIBE WHAT HAPPENED: ______ |
| WITNESSES (If known) | NAME: ______ NAME: ______<br>ADDRESS: ______ ADDRESS: ______<br>PHONE: ( ) ______ PHONE: ( ) ______ |
| INSURED | NAME OF INSURED: ______ POLICY #: ______<br>CLUB NAME: ______ PHONE: ( ) ______<br>CITY: ______ STATE ______ |
| INSURED REPRESENTATIVE | ☐ COACH ☐ OFFICIAL ☐ TRAINER ☐ PROMOTER ☐ TEAM/LEAGUE REPRESENTATIVE ☐ OTHER: ______<br>NAME: ______ PHONE: ( ) ______<br>TITLE: ______ ORGANIZATION ______<br>SIGNATURE: ______ DATE: ______ |

COMPLETE ALL SECTIONS AND FAX OR MAIL IMMEDIATELY TO:
K&K INSURANCE GROUP, INC., P.O. BOX 2338, FORT WAYNE, IN 46801-2338
THIS FORM MUST INCLUDE THE INSURED NAME, POLICY NUMBER, AND SIGNATURE OF THE INSURED/REPRESENTATIVE BEFORE RETURNING OR PROCESSING MAY BE DELAYED

(NON-PA)1029-07/22

Dear Participant: If you have an appointment with a doctor as the result of a sport related injury, please show this document to the doctor's insurance secretary. You should be identified as a member of the following preferred provider networks and/or their affiliates.

Dear Doctor or Provider: This document indicates that this patient is a participant in the following preferred provider networks and/or their affiliates:

The First Health Network HYGEIA PHCS

## INSTRUCTIONS FOR COMPLETING THE ACCIDENT INSURANCE FORM TO THE INJURED PERSON/PARENT /GUARDIAN

To the injured person/parent/guardian:

Complete part II of this claim form. Attach current itemized physician, hospital, or other provider's bills for accident medical expenses as well as the primary carrier's explanation of benefit showing their payment and denial. These bills must show the patient's name, condition (diagnosis), type of treatment given, date the expense was incurred, and the charges made. Return this form to K&K Insurance Group, Inc. Please note: Claim forms will be returned if not fully completed and signed. Omission of vital information will cause a delay in claim processing.

(NON-PA)1029-07/22

# FRAUD WARNINGS

NOTICE TO APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME, AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO ALABAMA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO RESTITUTION, FINES, OR CONFINEMENT IN PRISON, OR ANY COMBINATION THEREOF.

NOTICE TO ARKANSAS, LOUISIANA, RHODE ISLAND, AND WEST VIRGINIA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NOTICE TO COLORADO APPLICANTS: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AUTHORITIES.

NOTICE TO DISTRICT OF COLUMBIA APPLICANTS: WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

NOTICE TO FLORIDA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE.

NOTICE TO KANSAS APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD, PRESENTS, CAUSES TO BE PRESENTED OR PREPARES WITH KNOWLEDGE OR BELIEF THAT IT WILL BE PRESENTED TO OR BY AN INSURER, PURPORTED INSURER, BROKER OR ANY AGENT THEREOF, ANY WRITTEN, ELECTRONIC, ELECTRONIC IMPULSE, FACSIMILE, MAGNETIC, ORAL, OR TELEPHONIC COMMUNICATION OR STATEMENT AS PART OF, OR IN SUPPORT OF, AN APPLICATION FOR THE ISSUANCE OF, OR THE RATING OF AN INSURANCE POLICY FOR PERSONAL OR COMMERCIAL INSURANCE, OR A CLAIM FOR PAYMENT OR OTHER BENEFIT PURSUANT TO AN INSURANCE POLICY FOR COMMERCIAL OR PERSONAL INSURANCE THAT SUCH PERSON KNOWS TO CONTAIN MATERIALLY FALSE INFORMATION CONCERNING ANY FACT MATERIAL THERETO; OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT.

NOTICE TO KENTUCKY APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

NOTICE TO MAINE APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

NOTICE TO MARYLAND APPLICANTS: ANY PERSON WHO KNOWINGLY OR WILLFULLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR WHO KNOWINGLY OR WILLFULLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NOTICE TO MINNESOTA APPLICANTS: A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

NOTICE TO NEW JERSEY APPLICANTS: ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO NEW MEXICO APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

SIGNATURE: ______________________________

NOTICE TO OHIO APPLICANTS: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

NOTICE TO OKLAHOMA APPLICANTS: WARNING: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

NOTICE TO OREGON APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, MAY BE GUILTY OF A FRAUDULENT ACT, WHICH MAY BE A CRIME, AND MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO PENNSYLVANIA APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

# POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

# POLICYHOLDER NOTICE

## Taxes, Assessments and/or Surcharges

The taxes, assessments and/or surcharges shown on the declarations page or any premium schedule are collected on behalf of the applicable State(s) and in accordance with such State's laws and regulations. The payment of these taxes, assessments and/or surcharges is the responsibility of the Named Insured. In the event the applicable State implements a new tax, assessment and/or surcharge or increases such tax, assessment and/or surcharge during the term of this policy, the Named Insured shall remain responsible for the payment of all amounts due under the policy, including those newly implemented or increased taxes, assessments and/or surcharges.

Any newly implemented or increased taxes, assessments and/or surcharges shall apply on the effective date dictated by the applicable State regardless:

1. Of when the Insurance Company implements the new or increased tax, assessment or surcharge into its systems; or
2. If the Insurance Company recalculates the Named Insured's premium in accordance with the policy's terms and conditions as part of a premium audit after the end of the policy period.

 © All rights reserved. 

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**NAT'L UNION FIRE INS CO OF PITTSBURGH PA**
To get information or file a complaint with your insurance company or HMO:
**Call: AIG at 212-770-7000**
**Toll-free: 866-397-1933**
**Email: GCMS@aig.com**
**Mail: Attn: Complaints, 1271 Avenue of the Americas, Floor 37**
**New York, NY 10020-1304**

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state: Call with a question: 1-800-252-3439
File a complaint: www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov
Mail: Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**NAT'L UNION FIRE INS CO OF PITTSBURGH PA**
Para obtener información o para presentar una queja ante su compañía de seguros o HMO:
**Llame a: AIG al 212-770-7000**
**Teléfono gratuito: 866-397-1933**
**Correo electrónico: GCMS@aig.com**
**Dirección postal: Attn: Complaints, 1271 Avenue of the Americas, Floor 37**
**New York, NY 10020-1304**

**El Departamento de Seguros de Texas**
Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:
Llame con sus preguntas al: 1-800-252-3439 Presente una queja en: www.tdi.texas.gov
Correo electrónico: ConsumerProtection@tdi.texas.gov
Dirección postal: Consumer Protection, MC: CO-CP, Texas Department of Insurance, P.O. Box 12030, Austin, TX 78711-2030

# EXCESS LIABILITY DECLARATIONS

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

A CAPITAL STOCK COMPANY
HOME OFFICE: 2595 INTERSTATE DRIVE, SUITE 103, HARRISBURG, PA 17110
ADMINISTRATIVE/MAILING ADDRESS: 175 WATER STREET, NEW YORK, NY 10038

---

**POLICY NUMBER:** AIX0003450405002 **RENEWAL OF:** AIX0003450405001

**PRODUCER:** K&K INSURANCE GROUP, INC.

**ADDRESS:** 1712 MAGNAVOX WAY
P.O. BOX 2338
FORT WAYNE, IN 46801

**ITEM 1.** **NAMED INSURED:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.

(and as more fully set forth in the First Underlying Insurance Policy)

**ADDRESS:** 2689 HIGHWAY 39
HUNT, TX 78024

**ITEM 2.** **POLICY PERIOD:** **FROM:** Mar 1, 2025 12:00:00 AM **TO:** Mar 1, 2026 12:00:00 AM
AT 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.** **LIMITS OF INSURANCE:**

The Limits of Insurance, subject to all the terms of this policy, are:

| | |
|---|---|
| $5,000,000 | Each Occurrence |
| $5,000,000 | Aggregate (as defined in the First Underlying Insurance Policy) |

**ITEM 4.** **SCHEDULE OF UNDERLYING INSURANCE:**

| First Underlying Insurance Policy<br>Insurer, Policy No. and Term | Applicable Limits<br>Each Occurrence<br>Aggregate (where applicable) |
|---|---|
| | **See Attached Schedule of Underlying Insurance** |

| Other Underlying Insurance<br>Insurer, Policy No. and Term | Applicable Limits<br>Each Occurrence<br>Aggregate (where applicable) |
|---|---|
| | **See Attached Schedule of Underlying Insurance** |

**ITEM 5.** **POLICY PREMIUM:** $

**ACT OF TERRORISM PREMIUM:** EXCLUDED

**ITEM 6.** Notice to:

A) Notice of Occurrence:

| | |
|---|---|
| Via e-mail to: | KK.Claims@kandkinsurance.com |
| Via Facsimile: | 312-381-9079 |
| Via mail to: | 1712 Magnavox Way, PO Box 2338<br>Fort Wayne, IN 46804-2338 |
| B) All other Notices: | KK.General@kandkinsurance.com |

**ITEM 7.** **ENDORSEMENTS ATTACHED:**

| | | | |
|---|---|---|---|
| 141636(05/21) | 118950(02/20) | 89644(06/13) | 60225(02/20) |
| 137957(02/20) | 124421(01/17) | 89057(07/16) | 74802(03/20) |

**COUNTERSIGNED** 03/13/2025 **BY** [signature]

**DATE** **AUTHORIZED REPRESENTATIVE**

# ADDENDUM TO THE DECLARATIONS

By signing below, the President and the Secretary of the Insurer agree on behalf of the Insurer to all the terms of this Policy.

President

Secretary

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurance Company, either below or on the Declarations page of the Policy.

Thomas McGrath
AUTHORIZED COMPANY REPRESENTATIVE

Granite State Insurance Company
Illinois National Insurance Co.
New Hampshire Insurance Company
American Home Assurance Company
National Union Fire Insurance Company of Pittsburgh, Pa.

# Notification

## CHANGE TO INSURER'S ADDRESS

Please be advised that all references to the address 175 Water Street, New York, NY 10038 contained in the Policy, Policy Declarations, riders, endorsements, and Policy notices are hereby deleted in their entirety and replaced with the following: 1271 Ave of the Americas FL 37, New York, NY 10020-1304

All other terms and conditions of the Policy remain the same.

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIX0003450405002
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** NAT'L UNION FIRE INS CO OF PITTSBURGH PA

# TERRORISM EXCLUSION – CERTIFIED AND NON-CERTIFIED ACTS ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

**I. Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **certified act of terrorism** as defined in the Terrorism Risk Insurance Act of 2002, as amended (hereinafter, "TRIA") regardless of any other cause or event contributing concurrently or in any sequence with a **certified act of terrorism.**

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

**A.** to be an act of terrorism;

**B.** to be a violent act or an act that is dangerous to:

**1.** human life;

**2.** property; or

**3.** infrastructure;

**C.** to have resulted in damage within the United States, or outside of the United States in the case of:

**1.** an air carrier or vessel described in TRIA; or

**2.** the premises of a United States mission; and

**D.** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**II. Non-Certified Acts of Terrorism Exclusion**

This insurance does not apply to any loss, injury, damage, claim or suit, arising directly or indirectly as a result of a **non-certified act of terrorism** regardless of any other cause or event contributing concurrently or in any sequence with a **non-certified act of terrorism.**

**A. Non-certified act of terrorism** means any act that is not a **certified act of terrorism** as defined herein and:

**1.** involves the use of force or violence against person or property; or

**2.** is dangerous to human life or property; or

**3.** interferes with or disrupts an electronic or communication system; and

**4.** is undertaken by any group or person, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**a.** a government;

**b.** the civilian population of a country, state or community; or

**c.** to disrupt the economy of a country, state or community.

**B.** However, the exclusion provided under Subsection **II.A.** only applies when one or more of the following are attributed to an incident of a **non-certified act of terrorism.**


© American International Group, Inc.
All Rights Reserved.

1. The **non-certified act of terrorism** involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of:

   a. Any nuclear reaction;

   b. Radioactive materials or **nuclear materials** in any form and from any source;

   c. Radionuclides;

   d. Radiation emitted from any radioactive source whether natural or manmade; and/or

   e. Electromagnetic pulses; or

2. The **non-certified act of terrorism** involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of pathogenic or poisonous chemical or **biological** materials, whether natural, manmade, living or dead; or

3. The total insured industry-wide losses exceed $25,000,000. In determining whether the$25,000,000 threshold is exceeded, the Company will include all insured industry-wide loss or damage sustained by all persons and entities affected by the **non-certified act of terrorism**. For the purpose of this provision, insured industry-wide loss or damage means loss or damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

   Multiple incidents of **non-certified acts of terrorism** which occur within a 72-hour period and objectively appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in this Subsection **II.B.3.** are met.

4. With respect to commercial liability policies, fifty or more persons sustain death or serious physical injury. For purposes of this provision, serious physical injury means:

   a. Physical injury that involves substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

**III.** With respect to commercial property policies:

**A.** If a **certified act of terrorism** or **non-certified act of terrorism** (hereinafter, collectively an **act of terrorism**) results in an ensuing fire, this Policy covers such loss or damage caused by such fire following, subject to the Policy's terms and conditions, but only if the covered property insured hereunder is located in a state of the United States, the District of Columbia, Puerto Rico or a territory or possession of the United States that, pursuant to an applicable standard fire policy statute, regulation or other law, prohibits the exclusion of fire following an **act of terrorism**. Such coverage for fire following an **act of terrorism** applies only to direct physical loss or damage to covered property insured hereunder, and to no other coverage provided by the Policy.

**B.** Notwithstanding Subsection **III.A.** above, to the extent not prohibited by the law of the jurisdiction to which this Policy is subject, this Policy does not cover fire following an **act of terrorism** that involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of any nuclear reaction; radioactive materials or **nuclear materials** in any form and from any source; radionuclides; radiation emitted from any radioactive source whether natural or manmade; electromagnetic pulses; and/or pathogenic or poisonous chemical or **biological** materials, whether natural, manmade, living or dead.

**C.** Notwithstanding any other valuation provision of this Policy to the contrary, any covered property insured hereunder that sustains loss or damage due to fire following an **act of terrorism**, covered pursuant to Subsection **III.A**. above, shall be valued at Actual Cash Value at the time and place of the loss.

**IV. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Policy, such as losses excluded by a nuclear exclusion, pollution exclusion or war exclusion.

**V. Definitions:** The following definitions apply to this endorsement:


© American International Group, Inc.
All Rights Reserved.

**A.** **Nuclear materials** means **source material**, **special nuclear material** or **by-product material**. **Source material, special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**B.** **Biological** materials include all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin- producing agents, and poisons produced by biological organisms.

All other terms and conditions of the Policy remain the same.

Authorized Representative


© American International Group, Inc.
All Rights Reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIX0003450405002
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** NAT'L UNION FIRE INS CO OF PITTSBURGH PA

# ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

Authorized Representative

 © All rights reserved. 

# EXCESS LIABILITY POLICY FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as shown in Item 1 of the Declarations. The Words "we", "us" and "our" refer to the Company providing this insurance.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. Coverage

**A.** We will pay on your behalf the Ultimate Net Loss after the applicable limits of liability of the Underlying Insurance shown in Item 4 of the Declarations have been exhausted by actual payment of damages whether payment of such limits is made by underlying insurers or the Insured for any loss(es) covered by this policy, but only up to an amount not exceeding our Limits of Insurance as shown in Item 3 of the Declarations. Except for the terms, definitions, conditions and exclusions of this policy, the coverage provided by this policy shall follow the terms, definitions, conditions and exclusions of the First Underlying Insurance Policy as shown in Item 4 of the Declarations. However, the coverage provided by this policy shall not be broader than the coverage provided by the First Underlying Insurance Policy.

Furthermore, in no event shall this policy follow the terms, definitions, conditions or exclusions in the First Underlying Insurance Policy or provide coverage under this policy with respect to or as a result of any of the following provisions in the First Underlying Insurance Policy:

1. liberalization clause;
2. crisis management or crisis response provisions; or
3. any provision providing coverage for liability that is subject to a sublimit of insurance that is less than the Limits of Insurance shown in Item 4 of the Declarations.

The following changes to the First Underlying Insurance Policy made after inception hereof shall not be binding upon us unless we have agreed in writing to such changes:

1. any change which is subject to an additional premium charge,
2. the inclusion of an additional coverage extension endorsement, or
3. any change to the terms, definitions, conditions or exclusions that broadens the scope of the coverage already provided.

It is, however, specifically agreed that if any of the Underlying Insurance (as shown in Item 4 of the Declarations), with limits of liability in excess of the First Underlying Insurance Policy but underlying to this policy exclude or limit any part of the coverage provided by the First Underlying Insurance Policy, then this policy shall not drop down to apply in the place of such excluded or limited coverage and we will only be liable to the same extent we would have been had such exclusion or limitation not been present.

**B.** The Limits of Insurance shown in Item 3 of the Declarations state the most we will pay regardless of the number of Insureds, claims made or suits brought or persons or organizations making claims or bringing suits but only after the Underlying Insurance (as shown in Item 4 of the Declarations) or the Insured have paid or have been held liable to pay the full amount of the applicable underlying limits as stated in the Schedule of Underlying endorsement.

 © American International Group, Inc. All rights reserved. 

Defense expenses to which this policy applies shall not reduce the Limits of Insurance stated above except to the extent defense expenses covered under the First Underlying Insurance Policy reduce the limits of liability of the First Underlying Insurance Policy.

The aggregate limit shown in Item 3 of the Declarations applies in the same manner as the aggregate limits provided by the First Underlying Insurance Policy.

**C.** Maintenance of Underlying Insurance

The limits of insurance of the Underlying Insurance shown in Item 4 of the Declarations shall be maintained in full effect during the period of this policy except for any reduction or exhaustion of aggregate limits contained therein solely by the payment for damages by the underlying insurers or the Insured for accidents or occurrences, whichever is applicable, to which this policy applies.

If you fail to comply with this requirement, we will only be liable to the same extent that we would had you fully complied with this requirement.

## II. Definitions

**A.** Ultimate Net Loss

The term "Ultimate Net Loss" means that amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurance, excepting however the Underlying Insurance shown in Item 4 of the Declarations.

## III. Conditions

**A.** Cancellation

The cancellation provisions of this policy will follow the cancellation provisions of the First Underlying Insurance Policy except as provided by endorsement to this policy.

Payment or tender of any unearned premium by us shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

**B.** Other Insurance

If other valid and collectible insurance is available to the Insured covering Ultimate Net Loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such other insurance.

**C.** Defense

We will have the right and duty to assume charge of the settlement or defense of any claim made, suit brought, or proceeding instituted against the Insured that seeks payment for Ultimate Net Loss to which this policy applies if both of the following requirements are satisfied:

1. the applicable limits of the Underlying Insurance as shown in Item 4 of the Declarations have been exhausted by actual payment of Ultimate Net Loss covered by this policy, whether payment of such limits is by underlying insurers and/or the Insured; and

2. the First Underlying Insurance Policy has the right and duty to defend such claim, suit, or proceeding in accordance with the terms and conditions of the First Underlying Insurance Policy.

Prior to exhaustion of all Underlying Insurance, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured. We will, however, have the right and shall be given the opportunity to participate in the defense of any claims, suits or proceedings relative to any accident or occurrence which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

The Insured must cooperate with us in the defense of each claim, suit or proceeding.

 © American International Group, Inc. All rights reserved. 

The Insured shall not settle any claim, suit, or proceeding for an amount within our Limits of Insurance without our written consent.

We shall not be obligated to defend any claim, suit or proceeding after the applicable Limits of Insurance of this policy have been exhausted.

**D.** Duties in the Event of an Occurrence, Claim or Suit:

If a claim or suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing as soon as practicable. Written notice should be mailed, delivered, emailed or faxed in accordance with Item 6 of the Declarations page of this policy.

## IV. Exclusions

This insurance shall not apply to:

**A.** 1. Ultimate Net Loss arising out of the manufacture of, mining of, use of sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

2. Any obligation of the Insured to indemnify any party because of damages arising out of such Ultimate Net Loss as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. Any obligation to defend any suit or claim against the Insured seeking damages, if such suit or claim arises from Ultimate Net Loss as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**B.** Ultimate Net Loss arising out of any obligation of the Insured under any "No Fault," "Uninsured Motorist" or "Underinsured Motorist" law. However, this exclusion shall not apply if an endorsement providing coverage for such liability is attached to this Policy.

In **Witness Whereof,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

By signing below, our President and Secretary agree on our behalf to all the terms of this policy.

____________________________ Secretary

____________________________ President

This policy shall not be valid unless signed at the time of issuance by our authorized representative, either below or on the Declarations page of the policy.

____________________________ Authorized Representative


© American International Group, Inc. All rights reserved.

# SCHEDULE OF UNDERLYING INSURANCE

Issued to: CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
Policy Number: AIX0003450405002
By: NAT'L UNION FIRE INS CO OF PITTSBURGH PA

---

FIRST UNDERLYING INSURANCE POLICY, which is excess of underlying insurance, including any self-insured retentions as set forth in the First Underlying Insurance Policy:

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO AND POLICY PERIOD | LIMITS |
|---|---|---|
| GENERAL LIABILITY | GRANITE STATE INSURANCE COMPANY, AIP0003450404902, 03/01/2025 - 03/01/2026 | $1,000,000 EACH OCCURRENCE<br>$1,000,000 PERSONAL & ADVERTISING INJURY<br>$2,000,000 AGGREGATE (WHERE APPLICABLE)<br>$2,000,000 PRODUCTS/ COMPLETED OPERATIONS AGGREGATE |

---

OTHER UNDERLYING INSURANCE:

| TYPE OF POLICY OR COVERAGE | INSURER, POLICY NO AND POLICY PERIOD | LIMITS |
|---|---|---|
| COMMERCIAL AUTO LIABILITY | NEW HAMPSHIRE INSURANCE COMPANY, 01-CA-044250184-2, 03/01/2025 - 03/01/2026 | $1,000,000 EACH OCCURRENCE AGGREGATE (WHERE APPLICABLE) |
| EMPLOYER'S LIABILITY | TEXAS MUTUAL, 0012120501, 03/01/2025 - 03/01/2026 | $1,000,000 EACH ACCIDENT<br>$1,000,000 (By accident)<br>**Policy limit $1,000,000 EACH EMPLOYEE (by Disease)**<br>**or unlimited in states where benefits are unlimited (WHERE APPLICABLE) |

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIX0003450405002
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** NAT'L UNION FIRE INS CO OF PITTSBURGH PA

# EXCESS LIABILITY POLICY FORM

## Access or Disclosure of Confidential or Personal Information and Data-Related Liability Exclusion Endorsement

This policy is amended as follows:

**Section IV. Exclusions** is amended to include the following exclusion:

This insurance shall not apply to:

Ultimate Net Loss arising out of:

1. any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
2. the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described above.

For purposes of this endorsement only, **Section II. Definitions** is amended as follows:

The term "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

All other terms, definitions, conditions, and exusions of this policy remain unchanged.

Authorized Representative

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIX0003450405002
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** NAT'L UNION FIRE INS CO OF PITTSBURGH PA

# EXCESS LIABILITY POLICY FORM

## Violation of Communication or Information Law Exclusion Endorsement

This policy is amended as follows:

**Section IV. Exclusions** is amended to include the following additional exclusion:

This insurance shall not apply to:

> Ultimate Net Loss arising out of any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, which addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

It is understood that to the extent any coverage may otherwise be available under this policy or any of its endorsements, the provisions of this exclusion will supercede.

All other terms and conditions of this policy remain unchanged.

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT**

**This endorsement, effective 12:01 A.M.,** 03/01/2025
**Forms a part of Policy No.** AIX0003450405002
**Issued to:** CAMP MYSTIC, INC; NATURAL FOUNTAINS PROPERTIES, INC.
**By:** NAT'L UNION FIRE INS CO OF PITTSBURGH PA

# TEXAS AMENDATORY ENDORSEMENT
# CANCELLATION AND NONRENEWAL

Wherever used in this endorsement: 1)"Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, or Named Insured stated in the declarations page; and 3) "Liability insurance" means the following types of insurance: general liability, professional liability other than medical professional liability, commercial multi-peril coverage, and any other types of lines of liability insurance designated by the State Board of Insurance.

It is hereby agreed that the cancellation provision of this policy is deleted in its entirety and replaced by the following:

**CANCELLATION AND NONRENEWAL**

A. Cancellation

1. This policy may be canceled by the Insured by surrender thereof to the Insurer or any of its authorized agents or by mailing to the Insurer written notice stating when thereafter the cancellation shall be effective.
2. Except as provided by subsection A.3. below, the Insurer may not cancel this policy if it is:
   a) a policy of liability insurance that is a renewal or continuation policy; or
   b) a policy of liability insurance that is in its initial policy period after the 60th day following the date on which the policy was issued.
3. The Insurer may cancel this policy at any time during the term of the policy for the following reasons:
   a) fraud in obtaining coverage;
   b) failure to pay premiums when due;
   c) an increase in hazard within the control of the Insured that would produce an increase in rate;
   d) loss of the Insurer's reinsurance covering all or part of the risk covered by the policy; or
   e) the Insurer being placed in supervision, conservatorship, or receivership, if the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver.
4. The Insurer shall deliver or mail to the Insured first named in the Declarations written notice of cancellation at the address shown on the policy not less than the 10th day before the date on which the cancellation takes effect. Such written notice shall state the reasons(s) for cancellation.
5. The Insurer may not cancel this policy based solely on the fact that the Insured is an elected official.
6. If this policy provides property coverage or general liability coverage under a commercial property, commercial general liability, commercial multi-peril or business owner policy, and covers a condominium association, and the condominium Property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured thirty (30) days before the effective date of cancellation. The Insurer will also provide thirty (30) days written notice to each unit-owner to whom the Insurer issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to the Insurer.

 © All rights reserved. 

Nonrenewal

1. The Insurer may refuse to renew this policy by delivering or mailing to the Insured first named in the Declarations written notice of nonrenewal at the address shown on the policy. Such written notice shall state the reason(s) for nonrenewal. The notice must be delivered or mailed not later than the 60th day before the date on which the policy expires. If the notice is delivered or mailed later than the 60th day before the date on which the policy expires, the coverage shall remain in effect until the 61 day after the date on which the notice is delivered or mailed. If notice is delivered or mailed, proof of delivery or mailing will be sufficient proof of notice. Earned premium for any period of coverage that extends beyond the expiration date of the policy shall be computed pro rata based on the previous year's rates.
2. The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.
3. The Insurer may not refuse to renew this policy based solely on the fact that the Insured is an elected official.
4. If this policy provides property coverage or general liability coverage under a commercial property, commercial general liability, commercial multi-peril or business owner policy, and covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the Insurer will mail or deliver written notice of nonrenewal, at least thirty (30) days before the expiration or anniversary date of the policy, to:
   a. The first Named Insured; and
   b. Each unit-owner to whom the Insurer issued a certificate or memorandum of insurance.

The Insurer will mail or deliver such notice to each last mailing address known to the Insurer.

All other terms, conditions and exclusions of the policy shall remain unchanged.

Scott Lenhard

Authorized Representative


© All rights reserved.